CASE NO. 19-13347-AA

## IN THE

# Ｕｎｉｔｅｄ Ｓｔａｔｅｓ Ｃｏｕｒｔ ｏｆ Ａｐｐｅａｌｓ
### FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

v.

CHARLES JACKSON FRIEDLANDER,

*Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 8:08-CR-00318-JDW-TGW-1
JAMES D. WHITTEMORE, UNITED STATES DISTRICT JUDGE

---

## APPENDIX

---

James B. Craven, III
ATTORNEY AT LAW
349 West Main Street
P. O. Box 1366
Durham, NC 27702
919-688-8295
jbc64@mindspring.com

*Counsel for Appellant*

Joseph E. Parrish
Parrish & Goodman, PLLC
915 N. Franklin Street
Suite 2302
Tampa, FL 33602
813-643-4529
jparrish@parrishgoodman.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Tab

District Court Docket Sheet [8:08-cr-00318-JDW-TGW-1]...........................Docket

Indictment
    Filed July 30, 2008..........................................................................................8

Judgment
    Entered July 22, 2009 ..................................................................................292

Motion for Compassionate Release
    Filed June 27, 2019 .....................................................................................328

United States' Motion to Dismiss and Opposition to
Defendant's Motion for Compassionate Release with Attachments
    Filed July 8, 2019........................................................................................331

        Ex. A:   Public Information Inmate Data..............................................331-1

        Ex. B:   Inmate Request to Staff..........................................................331-2

        Ex. C:   DOJ Letter dated June 21, 2019.............................................331-3

        Ex. D:   Declaration of Sara Beyer ......................................................331-4

Response in Opposition to Government's Motion to Dismiss and
Opposition to Compassionate Release with Attachments
    Filed July 15, 2019......................................................................................332

        Ex. A:   Letters to Warden from James B. Craven, III, Esq.................332-1

        Ex. C:   CV of Joseph Julian Plaud, Ph.D. ..........................................332-3

        Ex. D:   Memorandum Opinion and Order...........................................332-4

United States' Supplemental Response
To Defendant's Motion for Compassionate Release
    Filed August 12, 2019.................................................................................337

Order
   Entered August 14, 2019 ...................................................................339

Notice of Appeal
   Filed August 27, 2019.......................................................................340

Certificate of Service .........................................................................C.O.S.

Docket

# DOCKET
## 8:08-CR-00318-JDW-TGW-1

APPEAL, CLOSED

# U.S. District Court
# Middle District of Florida (Tampa)
# CRIMINAL DOCKET FOR CASE #: 8:08-cr-00318-JDW-TGW-1

Case title: USA v. Friedlander
Other court case number: 8:08-mj-1353-TGW
Magistrate judge case number: 8:08-mj-01353-TGW

Date Filed: 07/30/2008
Date Terminated: 07/22/2009

---

Assigned to: Judge James D.
Whittemore
Referred to: Magistrate Judge Thomas
G. Wilson

Appeals court case numbers: '09-13811-
A', 19-13347-A 11th Circuit

### Defendant (1)

**Charles Jackson Friedlander**
50328-018
BUTNER LOW
FEDERAL CORRECTIONAL
INSTITUTION
Inmate Mail/Parcels
P.O. BOX 999
BUTNER, NC 27509
*TERMINATED: 07/22/2009*
*also known as*
Charles Friedlander
*TERMINATED: 07/22/2009*

represented by **George E. Tragos**
Tragos & Sartes, PL
Suite 800
601 Cleveland St
Clearwater, FL 33755
727/441-9030
Fax: 727/441-9254
Email: george@greeklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joseph E. Parrish**
Parrish & Goodman PLLC
915 N. Franklin Street, Unit 2302
Tampa, FL 33602
813-643-4529
Fax: 813-315-6535
Email: jparrish@parrishgoodman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Victor Daniel Martinez**
Victor D. Martinez, PA
423 S Hyde Park Ave
Tampa, FL 33606

813/289-0600
Fax: 813/287-2833
Email: vmartinez@tampabay.rr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter Anthony Sartes**
The Law Offices of Tragos & Sartes, PL
Suite 800
601 Cleveland St
Clearwater, FL 33755
727-441-9030
Fax: 727-441-9254
Email: peter@greeklaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

COERCION OR ENTICEMENT OF
FEMALE
(1)

**Disposition**

360 MONTHS Federal Bureau of
Prisons; LIFE term of Supervised
Release; $25,000 Fine; $100 Special
Assessment

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

18:2422b Use computer to entice
minors for sex

**Disposition**

---

**Surety**

**Charles Jackson Friedlander**

---

**Plaintiff**

**USA**                                              represented by

**Amanda C. Kaiser**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813/274-6000
Fax: 813/274-6103
Email: amanda.kaiser@usdoj.gov
*TERMINATED: 07/08/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Colin P. McDonell**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813-274-6000
Fax: 813-274-6102
Email: colin.mcdonell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adelaide G. Few**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813/274-6325
Fax: 813/274-6220
Email: TPADocket.Mailbox@usdoj.gov
*TERMINATED: 07/08/2019*
*ATTORNEY TO BE NOTICED*

**Craig Robert Gestring**
US Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798
813-274-6000
Email: Craig.gestring@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2008 | 1 | COMPLAINT as to Charles Friedlander (1). (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |

| 07/25/2008 | 3 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Charles Friedlander. Signed by Magistrate Judge Thomas G. Wilson on 7/25/2008. (Wilson, Thomas) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
|---|---|---|
| 07/25/2008 | | Arrest of Charles Friedlander on 7/25/08 (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 4 | Remark - Order Appointing Federal Public Defender should be terminated; appointment was made in error. (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 5 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: INITIAL appearance as to Charles Friedlander held on 7/25/2008. Defendant retained own attorney. Government requested detention, defendant requested continuance of detention hearing and preliminary exam hearing. Detention and preliminary exam hearings set 8/1/08 at 10 AM. (3:57-4:04) (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 6 | NOTICE OF HEARING as to Charles Friedlander. Detention Hearing set for 8/1/2008 at 10:00 AM in Courtroom 12 A before Magistrate Judge Thomas G. Wilson. Preliminary Examination set for 8/1/2008 at 10:00 AM in Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/28/2008 | 7 | ARREST WARRANT returned executed on 7/25/08 as to Charles Friedlander. (CAW) [8:08-mj-01353-TGW] (Entered: 07/29/2008) |
| 07/30/2008 | 8 | INDICTMENT returned in open Court as to Charles Jackson Friedlander (1) count(s) 1. Modified on 8/1/2008 (LYB). (Entered: 07/31/2008) |
| 08/01/2008 | 9 | NOTICE of attorney appearance Adelaide G. Few appearing for USA. (Few, Adelaide) (Entered: 08/01/2008) |
| 08/01/2008 | 10 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: ARRAIGNMENT as to Charles Friedlander (1) Count 1 held on 8/1/2008. Defendant(s) pled not guilty. Trial set 9/2/08 and status set 8/8/08 at 9:30 AM before Judge James Whittemore. (10:16-10:18) (CAW) (Entered: 08/01/2008) |
| 08/01/2008 | 11 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: Detention Hearing as to Charles Friedlander held on 8/1/2008. Government requested detention; defendant requested bond and presented testimony of Dr. Paul Kaufman, William Hayden, Dr. Mitchell Kroungold & Attorney Howard Hujsa; Court to consider setting $1,000,000 secured bond (Forfeiture Agreements) with other special conditions. Defense counsel to notify court when arrangements completed with for law enforcement officers and another hearing will be held to set conditions of release. (10:18-11:30) (CAW) (VLD). (Entered: 08/01/2008) |
| 08/01/2008 | 12 | PRETRIAL discovery order and notice as to Charles Friedlander Jury Trial set for 9/2/2008 at 09:30 AM in Courtroom 13 B before Judge James D. Whittemore. Status Conference set for 8/8/2008 at 09:30 AM in Courtroom 13 B before Judge James D. Whittemore. Please see order for discovery motions |

| | | deadlines. Signed by Magistrate Judge Thomas G. Wilson on 8/1/2008. (CAW) (Entered: 08/01/2008) |
|---|---|---|
| 08/07/2008 | 13 | NOTICE of attorney appearance: George E. Tragos appearing for Charles Jackson Friedlander (Tragos, George) (Entered: 08/07/2008) |
| 08/08/2008 | 14 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 8/8/2008. Court Reporter: Linda Starr (AO) (Entered: 08/13/2008) |
| 08/08/2008 | 15 | ORAL MOTION to continue trial by Charles Jackson Friedlander. (AO) (Entered: 08/13/2008) |
| 08/08/2008 | 16 | ORAL ORDER ruling deferred 15 Motion to continue trial as to Charles Jackson Friedlander (1). Upon the filing of a written motion to continue and signed speedy trial waiver to date certain, the case will be continued to the November, 2008 trial term. Status Conference set for 9/5/2008 at 09:30 AM in Courtroom 13 B before Judge James D. Whittemore. By Judge James D. Whittemore on 8/8/2008. (AO) (Entered: 08/13/2008) |
| 08/13/2008 | 17 | NOTICE OF HEARING as to Charles Jackson Friedlander. Bond Hearing set for 8/19/2008 at 10:30 AM in Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (CAW) (Entered: 08/13/2008) |
| 08/15/2008 | 18 | NOTICE *of Attempted Compliance* by Charles Jackson Friedlander re 11 Detention Hearing (Attachments: # 1 Exhibit Exhibit A - Minutes, # 2 Exhibit Exhibit B - Resumes)(Tragos, George) (Entered: 08/15/2008) |
| 08/15/2008 | 19 | SUPPLEMENT re 18 Notice (other) *Of Attempted Compliance* (Attachments: # 1 Exhibit Resume)(Tragos, George) (Entered: 08/15/2008) |
| 08/18/2008 | 20 | NOTICE canceling bail review hearing scheduled for 8/19/08 at 10:30 AM as to Charles Jackson Friedlander pursuant to parties' request. Hearing RESET at 2:30 PM on 8/21/08 before Magistrate Judge Thomas G. Wilson in Courtroom 12A. (CAW) (Entered: 08/18/2008) |
| 08/20/2008 | 21 | TRANSCRIPT of Excerpt from Detention Hearing (Testimony of Dr. Mitchell Kroungold) as to Charles Jackson Friedlander held on 8/1/08 before Judge Thomas G. Wilson. Court Reporter/Transcriber Dennis Miracle, Telephone number 352/622-7212. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/10/2008, Redacted Transcript Deadline set for 9/22/2008, Release of Transcript Restriction set for 11/18/2008. (DM) (Entered: 08/20/2008) |
| 08/20/2008 | 22 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the |

| | | |
|---|---|---|
| | | document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Dennis Miracle (DM) (Entered: 08/20/2008) |
| 08/21/2008 | 23 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: BOND Hearing as to Charles Jackson Friedlander held on 8/21/2008. Bail set at $1,000,000 with other conditions. To be released at noon on 8/22/08 (2:41-3:24) (CAW) (Entered: 08/22/2008) |
| 08/22/2008 | 24 | WAIVER of speedy trial through December 1, 2008 by Charles Jackson Friedlander (Tragos, George) (Entered: 08/22/2008) |
| 08/22/2008 | 25 | MOTION to continue trial by Charles Jackson Friedlander. (Tragos, George) (Entered: 08/22/2008) |
| 08/22/2008 | 26 | NOTICE OF HEARING as to Charles Jackson Friedlander. Status Conference RESET for 9/25/2008 at 01:30 PM in Courtroom 13 B before Judge James D. Whittemore. Case is set on the October 6, 2008 Trial Term.(AO) (Entered: 08/22/2008) |
| 08/22/2008 | 27 | SURETY BOND secured by agreements to forfeit property entered as to Charles Jackson Friedlander in amount of $ $1,000,000. Signed by Magistrate Judge Thomas G. Wilson. (MRH) (Entered: 08/22/2008) |
| 08/22/2008 | 28 | AGREEMENT to forfeit property located in Ft. Myers by Charles Jackson Friedlander as to Charles Jackson Friedlander. (MRH) (Entered: 08/22/2008) |
| 08/22/2008 | 29 | AGREEMENT to forfeit property located in Washington, D.C. by Charles Jackson Friedlander as to Charles Jackson Friedlander. (MRH) (Entered: 08/22/2008) |
| 08/22/2008 | 30 | ORDER Setting Conditions of Release as to Charles Jackson Friedlander (1) Personal Surety bond secured by agreements to forfeit property in the amount of $1,000.00. Signed by Magistrate Judge Thomas G. Wilson on 8/21/2008. (MRH) (Entered: 08/22/2008) |
| 08/26/2008 | 31 | ORDER granting 15 and 25 Motions to continue trial as to Charles Jackson Friedlander. Jury Trial set for November 2008 trial term which commences 11/3/2008 at 8:45 AM; Status Conference set for 10/3/2008 at 9:30 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 8/25/2008. (KE) (Entered: 08/26/2008) |
| 08/27/2008 | 32 | NOTICE *of Filing* by Charles Jackson Friedlander (Attachments: # 1 Exhibit Resumes)(Tragos, George) (Entered: 08/27/2008) |
| 09/05/2008 | 33 | Joint MOTION Date Certain and Protection of Dates by Charles Jackson Friedlander. (Tragos, George) Modified on 9/8/2008 (MRH). NOTE: TERMINATED. TWO MOTION RELIEFS NEEDED. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 09/05/2008) |
| 09/08/2008 | 34 | Joint MOTION for a Date Certain, Joint MOTION for protection of Dates by Charles Jackson Friedlander. (Tragos, George) (Entered: 09/08/2008) |
| 09/08/2008 | 35 | |

| | | |
|---|---|---|
| | | ORDER denying 34 Joint Motion for a Date Certain and Protection of Dates. Signed by Judge James D. Whittemore on 9/8/2008. (KE) (Entered: 09/08/2008) |
| 09/11/2008 | 36 | MOTION to amend/correct *Conditions of Bond* by Charles Jackson Friedlander. (Tragos, George) (Entered: 09/11/2008) |
| 09/23/2008 | 37 | Amended MOTION to amend/correct *Conditions of Bond* by Charles Jackson Friedlander. (Tragos, George) Modified on 9/24/2008 (MRH). NOTE: INCORRECT CODE. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 09/23/2008) |
| 09/24/2008 | 38 | ENDORSED ORDER referring 37 Defendant's Amended MOTION to Amend *Conditions of Bond* to Magistrate Judge Thomas G. Wilson for disposition. Signed by Judge James D. Whittemore on 9/24/2008. (KE) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 09/24/2008) |
| 09/24/2008 | 39 | Amended MOTION to modify conditions of release by Charles Jackson Friedlander. (Tragos, George) (Entered: 09/24/2008) |
| 10/01/2008 | 40 | Unopposed MOTION to continue trial *to December 2008 docket* by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/01/2008) |
| 10/03/2008 | 41 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 10/3/2008. Court Reporter: Linda Starr (AO) (Entered: 10/06/2008) |
| 10/03/2008 | 42 | RENEWED ORAL MOTION for Trial Date Certain by Charles Jackson Friedlander. (AO) (Entered: 10/06/2008) |
| 10/03/2008 | 43 | ORAL ORDER granting 42 renewed motion for trial date certain. Case is set for trial date certain 11/17/08.. By Judge James D. Whittemore on 10/3/2008. (AO) (Entered: 10/06/2008) |
| 10/16/2008 | 44 | ORDER denying as moot 36 Motion to amend/correct as to Charles Jackson Friedlander (1); granting in part and denying in part 39 Motion to Modify Conditions of Release as to Charles Jackson Friedlander (1) (please view order to see modification of conditions). Signed by Magistrate Judge Thomas G. Wilson on 10/15/2008. (CAW) (Entered: 10/16/2008) |
| 10/16/2008 | 45 | TRIAL CALENDAR for trial term beginning November 3, 2008 as to Charles Jackson Friedlander. Jury Trial set for 11/17/2008 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 10/16/2008. (AO) (Entered: 10/16/2008) |
| 10/17/2008 | 46 | MOTION for disclosure *of Government Exhibits and Incorp. Memo of Law* by Charles Jackson Friedlander. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Tragos, George) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 10/17/2008) |
| 10/17/2008 | 47 | MOTION in limine *(Photographs) and Incorp. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/17/2008) |
| 10/17/2008 | 48 | |

| | | |
|---|---|---|
| | | MOTION in limine *(E-Mails/IM's)* by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/17/2008) |
| 10/17/2008 | 49 | Unopposed MOTION to Allow Laptop and Cellular Phones in Federal Courthouse by Charles Jackson Friedlander. (Tragos, George) Modified on 10/20/2008 (MRH). NOTE: TERMINATED. INCORRECT CODE. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 10/17/2008) |
| 10/20/2008 | 50 | MOTION to allow electronic equipment, specifically cell phone and laptop computer by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/20/2008) |
| 10/21/2008 | 51 | ORDER granting in part and denying in part 50 motion to allow electronic equipment as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 10/20/2008. (KE) (Entered: 10/21/2008) |
| 10/21/2008 | 52 | ORDER denying as moot 40 Motion to continue trial as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 10/21/2008. (KE) (Entered: 10/21/2008) |
| 10/22/2008 | 53 | BILL of particulars as to Charles Jackson Friedlander. (Few, Adelaide) (Entered: 10/22/2008) |
| 10/22/2008 | 54 | MOTION to allow electronic equipment, specifically Laptop *Computer* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 10/22/2008) |
| 10/23/2008 | 55 | ORDER granting 54 Government's motion to allow electronic equipment into courthouse. Signed by Judge James D. Whittemore on 10/23/2008. (KE) (Entered: 10/23/2008) |
| 10/30/2008 | 56 | MOTION to extend time to to reply to motions *Dkt No. 46, Dkt No. 47, and Dkt No. 48* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 10/30/2008) |
| 10/30/2008 | 57 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 10/30/2008) |
| 10/30/2008 | 58 | TRIAL BRIEF by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 10/30/2008) |
| 10/30/2008 | 59 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 10/30/2008) |
| 10/31/2008 | 60 | ORDER granting 56 Government's motion for extension of time to respond to Defendant's motions. Signed by Judge James D. Whittemore on 10/30/2008. (KE) (Entered: 10/31/2008) |
| 11/04/2008 | 61 | PROPOSED VOIR DIRE questions by Charles Jackson Friedlander (Tragos, George) (Entered: 11/04/2008) |
| 11/04/2008 | 62 | PROPOSED JURY INSTRUCTIONS by Charles Jackson Friedlander (Tragos, George) (Entered: 11/04/2008) |
| 11/04/2008 | 63 | |

| | | PROPOSED verdict form filed by Charles Jackson Friedlander (Tragos, George) (Entered: 11/04/2008) |
|---|---|---|
| 11/05/2008 | 64 | NOTICE *of reciprocal discovery (Rule 16)* by Charles Jackson Friedlander (Tragos, George) (Entered: 11/05/2008) |
| 11/05/2008 | 65 | MOTION Preclude Gov't from Admitting 404(B) Evidence by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/05/2008) |
| 11/05/2008 | 66 | NOTICE *of Filing* by Charles Jackson Friedlander (Attachments: # 1 Exhibit Expert Summary, # 2 Exhibit Kroungold CV, # 3 Exhibit Berlin CV, # 4 Exhibit DiMarco CV)(Tragos, George) (Entered: 11/05/2008) |
| 11/06/2008 | 67 | Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence by Charles Jackson Friedlander. (Attachments: # 1 Exhibit A)(Tragos, George) (Entered: 11/06/2008) |
| 11/07/2008 | 68 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 47 MOTION in limine *(Photographs) and Incorp. Memo of Law* (Kaiser, Amanda) (Entered: 11/07/2008) |
| 11/07/2008 | 69 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 48 MOTION in limine *(E-Mails/IM's)* (Attachments: # 1 Exhibit Government Exhibits 1 and 2)(Kaiser, Amanda) (Entered: 11/07/2008) |
| 11/07/2008 | 70 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 46 MOTION for disclosure *of Government Exhibits and Incorp. Memo of Law* (Kaiser, Amanda) (Entered: 11/07/2008) |
| 11/07/2008 | 71 | MOTION in limine *to preclude the government from referencing any prior case or investigations against the Defendant and Inc. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/07/2008) |
| 11/10/2008 | 72 | ORDER granting 46] Motion for disclosure as to Charles Jackson Friedlander (1) to the extent that the Government shall IDENTIFY, by 11/13/08, the exhibits which it intends to use at trial.. Signed by Magistrate Judge Thomas G. Wilson on 11/10/2008. (CAW) (Entered: 11/10/2008) |
| 11/10/2008 | 73 | MOTION in limine *to Exclude Expert Witnesses and Request for Daubert Hearing* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) Modified on 11/10/2008 (MRH). NOTE: ATTORNEY NOTIFIED. MOTION FOR HEARING TO BE FILED AS SEPARATE MOTION. (Entered: 11/10/2008) |
| 11/10/2008 | 74 | MOTION for hearing *Daubert Hearing* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 11/10/2008) |
| 11/10/2008 | 75 | MOTION to continue trial by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 11/10/2008) |
| 11/10/2008 | 76 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 67 Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence (Attachments: # 1 Exhibit Exhibits 1 through 9)(Kaiser, Amanda) (Entered: 11/10/2008) |

| 11/10/2008 | 77 | NOTICE *of Filing* by Charles Jackson Friedlander (Attachments: # 1 Exhibit 1- Caputi Resume, # 2 Errata 2- Prast resume)(Tragos, George) (Entered: 11/10/2008) |
|---|---|---|
| 11/10/2008 | 78 | MOTION in limine *to Preclude the Government from Presenting Corp. Romanowski's Expert Medical Opinion in the Presence of the Jury and Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/10/2008) |
| 11/10/2008 | 79 | MOTION in limine *to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable FL Laws and Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/10/2008) |
| 11/11/2008 | 80 | RESPONSE 73 MOTION in limine *to Exclude Expert Witnesses and Request for Daubert Hearing*, 74 MOTION for hearing *Daubert Hearing* by Charles Jackson Friedlander *and Incorporated Memorandum of Law* (Tragos, George) (Entered: 11/11/2008) |
| 11/12/2008 | 81 | NOTICE OF HEARING on all pending motions: 78 MOTION in Limine *to Preclude the Government from Presenting Corp. Romanowski's Expert Medical Opinion in the Presence of the Jury*; 79 MOTION in Limine *to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable FL Laws*; 47 MOTION in Limine *(Photographs)*; 71 MOTION in Limine *to Preclude the Govt from Referencing any Prior Case or Investigations Against the Defendant*; 48 MOTION in Limine *(E-Mails/IM's)*; 74 MOTION for *Daubert Hearing*; 65 MOTION Preclude Govt from Admitting 404(B) Evidence; 73 MOTION in Limine *to Exclude Expert Witnesses*; 67 Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence; and 75 Government's MOTION to Continue Trial. Motion Hearing set for 11/14/2008 at 9:30 AM in Courtroom 13B before Judge James D. Whittemore. (KE) (Entered: 11/12/2008) |
| 11/12/2008 | 82 | MOTION to allow electronic equipment, specifically laptop and cell phone by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/12/2008) |
| 11/13/2008 | 83 | MEMORANDUM in support by Charles Jackson Friedlander re 80 Response *Regarding Expert Testimony* (Tragos, George) (Entered: 11/13/2008) |
| 11/13/2008 | 84 | ORDER granting in part and denying in part 82 Defendant's Motion to allow electronic equipment into courthouse. Signed by Judge James D. Whittemore on 11/13/2008. (KE) (Entered: 11/13/2008) |
| 11/13/2008 | 85 | MOTION to allow electronic equipment, specifically Laptop Computer *on November 14, 2008 at 9:30 a.m., Motions Hearing* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 11/13/2008) |
| 11/14/2008 | 86 | MOTION to amend/correct 74 MOTION for hearing *Daubert Hearing* filed by USA by USA as to Charles Jackson Friedlander. (Attachments: # 1 Exhibit) (Kaiser, Amanda) (Entered: 11/14/2008) |
| 11/14/2008 | 89 | Minute Entry for proceedings held before Judge James D. Whittemore: MOTION hearing as to Charles Jackson Friedlander re 79 MOTION in limine *to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of* |

|  |  | *Applicable FL Laws* filed by Charles Jackson Friedlander, <u>71</u> MOTION in limine *to preclude the government from referencing any prior case or investigations* filed by Charles Jackson Friedlander, <u>78</u> MOTION in limine *to Preclude the Government from Presenting Corp. Romanowski's Expert Medical Opinion* filed by Charles Jackson Friedlander, <u>85</u> MOTION to allow electronic equipment, specifically Laptop Computer *on November 14, 2008 at 9:30 a.m., Motions Hearing* filed by USA, <u>86</u> MOTION to amend/correct <u>74</u> MOTION for hearing *Daubert Hearing* filed by USA USA, <u>67</u> Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence filed by Charles Jackson Friedlander, <u>47</u> MOTION in limine *(Photographs) and Incorp. Memo of Law* filed by Charles Jackson Friedlander, <u>65</u> MOTION Preclude Gov't from Admitting 404(B) Evidence filed by Charles Jackson Friedlander, <u>73</u> MOTION in limine *to Exclude Expert Witnesses and Request for Daubert Hearing* filed by USA, <u>48</u> MOTION in limine *(E-Mails/IM's)* filed by Charles Jackson Friedlander, <u>75</u> MOTION to continue trial filed by USA, <u>74</u> MOTION for hearing *Daubert Hearing* filed by USA held on 11/14/2008. Court Reporter: Linda Starr (AO) (Entered: 11/17/2008) |
|---|---|---|
| 11/14/2008 | 90 | ORAL ORDER denying <u>47</u> Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 91 | ORAL ORDER granting in part and denying in part <u>48</u> Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 93 | ORAL ORDER granting in part and denying in part <u>67</u> Amended Motion to Preclude Government from Admitting 404(b) Evidence as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 94 | ORAL ORDER granting in part and denying in part <u>71</u> Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 95 | ORAL ORDER deferred ruling and granting in part <u>73</u> Motion in Limine and Request for Daubert Hearing as to Charles Jackson Friedlander (1). Daubert Hearing is scheduled for Monday 11/17/08 at 1:15 P.M. By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 96 | ORAL ORDER granting <u>74</u> Motion for Daubert Hearing as to Charles Jackson Friedlander (1). Daubert Hearing is scheduled for 11/17/08 at 1:15 P.M. By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 97 | ORAL ORDER provisionally denying <u>75</u> Motion to continue trial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 98 | ORAL ORDER denying <u>78</u> Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 99 | |

| | | |
|---|---|---|
| | | ORAL ORDER denying <u>79</u> Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 100 | ORAL ORDER denying as moot <u>85</u> motion to allow electronic equipment for 11/14/08 hearing as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 101 | ORAL ORDER granting <u>86</u> Motion to amend/correct Dkt. 74 Motion for Daubert Hearingas to Charles Jackson Friedlander (1). Daubert Hearing is scheduled 11/17/08 at 1:15 P.M. By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/17/2008 | <u>87</u> | MEMORANDUM in opposition by Charles Jackson Friedlander re <u>74</u> Motion for hearing *Daubert Hearing* (Tragos, George) (Entered: 11/17/2008) |
| 11/17/2008 | <u>88</u> | NOTICE *of Filing* by Charles Jackson Friedlander (Attachments: # <u>1</u> Exhibit Summary Chart)(Tragos, George) Modified on 11/17/2008 (MRH). NOTE: TERMINATED. INCORRECT EXHIBIT ATTACHMENT. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 11/17/2008) |
| 11/17/2008 | 92 | ORAL ORDER denying as moot <u>65</u> Motion to Preclude Government from Admitting 404(b) Evidence as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/17/2008 | <u>102</u> | Minute Entry for proceedings held before Judge James D. Whittemore: DAUBERT hearing held on 11/17/2008 as to Charles Jackson Friedlander. Court Reporter: Linda Starr (AO) (Entered: 11/17/2008) |
| 11/17/2008 | 103 | ORAL SCHEDULING ORDER as to Charles Jackson Friedlander Status Conference set for 11/24/2008 at 04:00 PM ; Jury Trial set for 12/8/2008 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. By Judge James D. Whittemore on 11/17/2008. (AO) (Entered: 11/17/2008) |
| 11/20/2008 | <u>104</u> | TRIAL CALENDAR for trial term beginning December 1, 2008 as to Charles Jackson Friedlander. Jury Trial set for 12/8/2008 at 08:45 AM; Status Conference set for 11/24/2008 at 04:00 PM in Courtroom 13 B before Judge James D. Whittemore Signed by Judge James D. Whittemore on 11/20/2008. (AO) (Entered: 11/20/2008) |
| 11/24/2008 | <u>106</u> | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 11/24/2008. Court Reporter: Linda Starr (AO) (Entered: 11/25/2008) |
| 11/25/2008 | <u>105</u> | NOTICE of intent to use evidence by Charles Jackson Friedlander (Tragos, George) (Entered: 11/25/2008) |
| 11/25/2008 | 107 | NOTICE OF HEARING as to Charles Jackson Friedlander. Jury Trial set for 12/8/2008 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 11/25/2008) |
| 12/02/2008 | <u>108</u> | Unopposed MOTION to travel by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/02/2008) |
| | | |

| | | |
|---|---|---|
| 12/02/2008 | 109 | MOTION to allow electronic equipment, specifically Cell phone and Laptop by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/02/2008) |
| 12/02/2008 | 110 | MOTION in limine *to Exclude Expert Testimony and/or in the Alternative Request for Daubert Hearing* by USA as to Charles Jackson Friedlander. (Attachments: # 1 Exhibit Exhibit 1)(Kaiser, Amanda) (Entered: 12/02/2008) |
| 12/02/2008 | 111 | ORDER granting 108 Motion to Travel as to Charles Jackson Friedlander (1). Signed by Magistrate Judge Thomas G. Wilson on 12/2/2008. (Wilson, Thomas) (Entered: 12/02/2008) |
| 12/03/2008 | 112 | MOTION to allow electronic equipment, specifically Laptop Computer *on December 4, 2008* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 12/03/2008) |
| 12/03/2008 | 113 | MOTION to allow electronic equipment, specifically Laptop Computer *beginning December 8, 2008 through the duration of Trial* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 12/03/2008) |
| 12/04/2008 | 114 | ORDER granting in part and denying in part 109 motion to allow electronic equipment as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 12/2/2008. (KE) (Entered: 12/04/2008) |
| 12/04/2008 | 115 | WITNESS LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 116 | ENDORSED ORDER granting 112 Government's Motion to Bring Laptop Computer into Courthouse. Amanda Kaiser, AUSA is permitted to bring a laptop computer into the Courthouse on 12/4/08, subject to inspection and approval by Court Security. Signed by Judge James D. Whittemore on 12/4/2008. (KE) (Entered: 12/04/2008) |
| 12/04/2008 | 117 | MOTION for miscellaneous relief, specifically Allow Witness to Remain in the Courtroom *and be Excluded from Fed. Rule of Evidence 615 and Incorp. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 118 | EXHIBIT LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 119 | MOTION for miscellaneous relief, specifically for Additional Jurors by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 120 | RESPONSE in opposition by Charles Jackson Friedlander re 110 Motion in limine *Exclude Expert Testimony and Incorp. Memo of Law* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 121 | NOTICE of attorney appearance: Peter Anthony Sartes appearing for Charles Jackson Friedlander (Sartes, Peter) (Entered: 12/04/2008) |
| 12/04/2008 | 122 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/04/2008) |
| 12/04/2008 | 123 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/04/2008) |

| 12/04/2008 | 124 | ENDORSED ORDER denying 119 Defendant's Motion for Additional Jurors. Signed by Judge James D. Whittemore on 12/4/2008. (KE) (Entered: 12/04/2008) |
| 12/04/2008 | 125 | ORDER granting 113 Government's motion to allow laptop computer into courthouse for trial. Signed by Judge James D. Whittemore on 12/4/2008. (KE) (Entered: 12/04/2008) |
| 12/05/2008 | 126 | WITNESS LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 127 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 128 | PROPOSED VOIR DIRE questions by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 129 | WITNESS LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 130 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/07/2008 | 131 | MOTION for miscellaneous relief, specifically Permit evidence under Fed. R. 106 and Incorporated memorandum of law by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/07/2008) |
| 12/08/2008 | 132 | Minute Entry for proceedings held before Judge James D. Whittemore: Voir Dire and Trial held on 12/8/2008 - DAY 1, as to Charles Jackson Friedlander. Court Reporter: Linda Starr (AO) (Entered: 12/09/2008) |
| 12/08/2008 | 133 | ORAL ORDER granting 117 Motion Relief as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/8/2008. (AO) (Entered: 12/09/2008) |
| 12/08/2008 | 134 | ORAL MOTION to modify conditions of release by Charles Jackson Friedlander. (AO) (Entered: 12/09/2008) |
| 12/08/2008 | 135 | ORAL ORDER granting in part and denying in part 134 Motion to Modify Conditions of Release as to Charles Jackson Friedlander (1). Court will permit the defendant to switch to a GPS monitoring system supervised by Pretrial Services. By Judge James D. Whittemore on 12/8/2008. (AO) (Entered: 12/09/2008) |
| 12/09/2008 | 136 | ORDER MODIFYING PRETRIAL RELEASE MONITORING DEVICE as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 12/9/2008. (AO) (Entered: 12/09/2008) |
| 12/09/2008 | 137 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 2 as to Charles Jackson Friedlander held on 12/9/2008. Court Reporter: Linda Starr (AO) (Entered: 12/09/2008) |
| 12/10/2008 | 138 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 3 as to Charles Jackson Friedlander held on 12/10/2008. Court Reporter: Linda Starr (AO) (Entered: 12/11/2008) |

| 12/10/2008 | 139 | ORAL ORDER granting in part and denying in part 110 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/10/2008. (AO) (Entered: 12/11/2008) |
| 12/11/2008 | 140 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL- DAY 4 as to Charles Jackson Friedlander held on 12/11/2008. Court Reporter: Linda Starr (AO) (Entered: 12/12/2008) |
| 12/11/2008 | 141 | ORAL MOTION for Judgment of Acquittal by Charles Jackson Friedlander. (AO) (Entered: 12/12/2008) |
| 12/11/2008 | 142 | ORAL ORDER denying 141 Motion for acquittal as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/11/2008. (AO) (Entered: 12/12/2008) |
| 12/12/2008 | 143 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 5 as to Charles Jackson Friedlander held on 12/12/2008. Court Reporter: Linda Starr (AO) (Entered: 12/15/2008) |
| 12/15/2008 | 144 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 6 as to Charles Jackson Friedlander held on 12/15/2008. Court Reporter: Linda Starr (AO) (Entered: 12/16/2008) |
| 12/15/2008 | 145 | ORAL MOTION for miscellaneous relief, specifically Renews all previous motions by Charles Jackson Friedlander. (AO) (Entered: 12/16/2008) |
| 12/15/2008 | 147 | ORAL MOTION for miscellaneous relief, specifically for Mistrial by Charles Jackson Friedlander. (AO) (Entered: 12/16/2008) |
| 12/15/2008 | 148 | ORAL ORDER granting in part and denying in part 145 Oral Motion to renew all previous motions; denying 146 Oral Motion for Judgment of Acquittal; denying 147Oral Motion for Mistrial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/15/2008. (AO) (Entered: 12/16/2008) |
| 12/16/2008 | 146 | ORAL MOTION for judgment of acquittal by Charles Jackson Friedlander. (AO) (Entered: 12/16/2008) |
| 12/16/2008 | 149 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 7 as to Charles Jackson Friedlander held on 12/16/2008. Court Reporter: Linda Starr (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 150 | ORAL MOTION for miscellaneous relief, specifically Mistrial by Charles Jackson Friedlander. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 151 | ORAL ORDER denying 150 Motion for Mistrial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/16/2008. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 152 | ORAL MOTION to extend time to file post-trial motions by Charles Jackson Friedlander. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 153 | ORAL ORDER granting 152 Motion to extend time to file post-trial motions as to Charles Jackson Friedlander (1). Defendant is granted an extension of time to 30 days; Government's response is due 15 days thereafter.. By Judge James D. Whittemore on 12/16/2008. (AO) (Entered: 12/17/2008) |

| 12/16/2008 | 154 | TRIAL EXHIBIT LIST by USA as to Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 155 | TRIAL EXHIBIT LIST by Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 156 | COURT'S TRIAL EXHIBIT LIST as to Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 157 | COURT'S JURY INSTRUCTIONS as to Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 159 | WAIVER OF FORFEITURE HEARING BEFORE A JURY as to Charles Jackson Friedlander. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 160 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing set for 3/16/2009 at 01:30PM in Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 12/17/2008) |
| 12/17/2008 | 158 | JURY VERDICT as to Charles Jackson Friedlander (1) Guilty on Count 1. (AO) (Entered: 12/17/2008) |
| 12/18/2008 | 161 | NOTICE of exhibits placed in the exhibit room (jury trial - 1 box) as to Charles Jackson Friedlander (JLH) (Entered: 12/19/2008) |
| 01/06/2009 | 162 | NOTICE *of Mutual Mistake of Fact at Trial* by USA as to Charles Jackson Friedlander (Attachments: # 1 Attachment)(Kaiser, Amanda) (Entered: 01/06/2009) |
| 01/09/2009 | 163 | MOTION for new trial *& Inc. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (JNB). (Entered: 01/09/2009) |
| 01/12/2009 | 164 | MOTION for acquittal *(Renewed)* by Charles Jackson Friedlander. (Tragos, George) (Entered: 01/12/2009) |
| 01/23/2009 | 165 | **INCORRECT EVENT CODES USED; COUNSEL NOTIFIED TO REFILE**REPLY to response to motion by USA as to Charles Jackson Friedlander re 164 MOTION for acquittal *(Renewed)* (Kaiser, Amanda) Modified on 1/26/2009 (JLH). (Entered: 01/23/2009) |
| 01/23/2009 | 166 | **INCORRECT EVENT CODES USED; COUNSEL NOTIFIED TO RE-FILE**REPLY to response to motion by USA as to Charles Jackson Friedlander re 163 MOTION for new trial *& Inc. Memo of Law* (Kaiser, Amanda) Modified on 1/26/2009 (JLH). (Entered: 01/23/2009) |
| 01/23/2009 | 167 | NOTICE OF HEARING on motions: 164 *(Renewed)* MOTION for Acquittal; 163 MOTION for New Trial. Motion Hearing set for 2/5/2009 at 1:30 PM in Courtroom 13B before Judge James D. Whittemore. NOTE TO MARSHAL: DEFENDANT MUST BE PRESENT AT SAID HEARING.(KE) (Entered: 01/23/2009) |
| 01/26/2009 | 168 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 163 MOTION for new trial *& Inc. Memo of Law* (Kaiser, Amanda) (Entered: 01/26/2009) |

| | | |
|---|---|---|
| 01/26/2009 | 169 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 164 MOTION for acquittal *(Renewed)* (Kaiser, Amanda) (Entered: 01/26/2009) |
| 02/05/2009 | 170 | Minute Entry for proceedings held before Judge James D. Whittemore: MOTION hearing as to Charles Jackson Friedlander held on 2/5/2009, granting 163 Motion for new trial as to Charles Jackson Friedlander (1); denying as moot 164 Motion for acquittal as to Charles Jackson Friedlander (1). Court Reporter: Linda Starr (VLD) (Entered: 02/06/2009) |
| 02/06/2009 | 171 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 2/6/2009. Court Reporter: Linda Starr (AO) (Entered: 02/06/2009) |
| 02/06/2009 | 172 | ORAL SCHEDULING ORDER as to Charles Jackson Friedlander. Jury Trial set for 3/23/2009 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. By Judge James D. Whittemore on 2/6/2009. (AO) (Entered: 02/06/2009) |
| 02/06/2009 | 173 | MOTION for bond *(reinstate)* or to Set Bond & Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/06/2009) |
| 02/06/2009 | 174 | ORDER granting 163 Motion for new trial as to Charles Jackson Friedlander (1). Signed by Judge James D. Whittemore on 2/6/2009. (JNB) (Entered: 02/09/2009) |
| 02/09/2009 | 175 | EXHIBIT LIST by Charles Jackson Friedlander, (Motion Hearing) (KIT) (Entered: 02/09/2009) |
| 02/09/2009 | 176 | NOTICE of exhibits placed in the exhibit room (1 envelope - motion hearing) as to Charles Jackson Friedlander (JLH) (Entered: 02/10/2009) |
| 02/10/2009 | 177 | TRIAL CALENDAR for trial term March 2, 2009 as to Charles Jackson Friedlander. Jury Trial set for date certain on 3/23/2009 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 2/10/2009. (AO) (Entered: 02/10/2009) |
| 02/17/2009 | 178 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 173 MOTION for bond *(reinstate)* or to Set Bond & Incorp. Memo of Law (Kaiser, Amanda) (Entered: 02/17/2009) |
| 02/19/2009 | 179 | TRANSCRIPT of Detention Hearing (Excluding Testimony of Dr. Mitchell Kroungold) as to Charles Jackson Friedlander held on 8/1/08 before Judge Thomas G. Wilson. Court Reporter/Transcriber Dennis Miracle, Telephone number 352/622-7212. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/12/2009, Redacted Transcript Deadline set for 3/23/2009, Release of Transcript Restriction set for 5/20/2009. (DM) (Entered: 02/19/2009) |
| 02/19/2009 | 180 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be |

| | | |
|---|---|---|
| | | made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Dennis Miracle (DM) (Entered: 02/19/2009) |
| 02/24/2009 | 181 | NOTICE OF HEARING on Defendant's 173 MOTION to Reinstate Bond or to Set Bond.Motion Hearing set for 2/26/2009 at 4:00 PM in Courtroom 13B before Judge James D. Whittemore. NOTE TO USM: Defendant shall be present at said hearing.(KE) (Entered: 02/24/2009) |
| 02/24/2009 | 182 | MOTION for miscellaneous relief, specifically Preclude the Gov't from Admitting 404(B) evidence *(Renewed)* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 183 | MOTION for miscellaneous relief, specifically Preclude Gov't from Cross Examining Dr. Berlin regarding Testimony in first Trial that surround incorrect version of the DSM & Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 184 | MOTION in limine *Preclude Gov't from Presenting Nude or Explicit Photos of Adults & Incorp. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 185 | MOTION in limine *Preclude Gov't from Presenting e-Mails or Instant Messages of Explicit Correspondence with Adults & Incorp. Memo of Law (Renewed)* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 186 | Unopposed MOTION to allow electronic equipment, specifically Laptops and Cell Phones *(Renewed)* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 187 | PROPOSED verdict form filed by Charles Jackson Friedlander (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 188 | PROPOSED JURY INSTRUCTIONS by Charles Jackson Friedlander (Tragos, George) (Entered: 02/24/2009) |
| 02/25/2009 | 189 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 183 MOTION for miscellaneous relief, specifically Preclude Gov't from Cross Examining Dr. Berlin regarding Testimony in first Trial that surround incorrect version of the DSM & Incorp. Memo of Law (Kaiser, Amanda) (Entered: 02/25/2009) |
| 02/25/2009 | 190 | MOTION in limine *to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable fL Law in the Presence of the Jury and Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/25/2009) |
| 02/25/2009 | 191 | MOTION in limine *to Preclude the gov't from Presenting Corp. Romanowski's Expert Medical Opinion in the presence of the Jury and Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/25/2009) |
| 02/25/2009 | 192 | |

| | | |
|---|---|---|
| | | MOTION in limine *to Preclude the gov't from Referencing any Prior Case or Investigations against the Defendant and Incorp Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/25/2009) |
| 02/26/2009 | 193 | Minute Entry for proceedings held before Judge James D. Whittemore: denying 173 Motion for bond as to Charles Jackson Friedlander (1); MOTION hearing re 173 MOTION for bond *(reinstate) or to Set Bond* filed by Charles Jackson Friedlander held on 2/26/2009. Court Reporter: Linda Starr (AO) (Entered: 02/27/2009) |
| 02/27/2009 | 194 | MOTION to dismiss *Based on Double Jeoparady and Inc. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/27/2009) |
| 03/04/2009 | 195 | MOTION for miscellaneous relief, specifically to Obtain Exhibits from Trial by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/04/2009) |
| 03/05/2009 | 196 | MOTION to allow electronic equipment, specifically Laptop Computer by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/05/2009) |
| 03/05/2009 | 197 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 182 MOTION for miscellaneous relief, specifically Preclude the Gov't from Admitting 404(B) evidence *(Renewed)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Kaiser, Amanda) (Entered: 03/05/2009) |
| 03/05/2009 | 198 | ENDORSED ORDER granting 195 Government's Motion to Obtain Exhibits from Trial. Signed by Judge James D. Whittemore on 3/5/2009. (KE) (Entered: 03/05/2009) |
| 03/06/2009 | 199 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 184 MOTION in limine *Preclude Gov't from Presenting Nude or Explicit Photos of Adults & Incorp. Memo of Law* (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/06/2009 | 200 | MOTION for miscellaneous relief, specifically Obtain Exhibits from Trial by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/06/2009) |
| 03/06/2009 | 201 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 185 MOTION in limine *Preclude Gov't from Presenting e-Mails or Instant Messages of Explicit Correspondence with Adults & Incorp. Memo of Law (Renewed)* (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/06/2009 | 202 | TRIAL BRIEF by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 03/06/2009) |
| 03/06/2009 | 203 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 03/06/2009) |
| 03/06/2009 | 204 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 03/06/2009) |
| 03/06/2009 | 205 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 190 MOTION in limine *to Preclude the Gov't from Presenting Corp. Romanowski's* |

| | | *Recitation of Applicable fL Law in the Presence of the Jury and Memo of Law* (Kaiser, Amanda) (Entered: 03/06/2009) |
|---|---|---|
| 03/06/2009 | 206 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 191 MOTION in limine *to Preclude the gov't from Presenting Corp. Romanowski's Expert Medical Opinion in the presence of the Jury and Memo of Law* (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/10/2009 | 207 | ENDORSED ORDER granting 200 Defendant's MOTION to Obtain Exhibits from Trial. Signed by Judge James D. Whittemore on 3/10/2009. (KE) (Entered: 03/10/2009) |
| 03/10/2009 | 208 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 192 MOTION in limine *to Preclude the gov't from Referencing any Prior Case or Investigations against the Defendant and Incorp Memo of Law* (Kaiser, Amanda) (Entered: 03/10/2009) |
| 03/10/2009 | 209 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 194 MOTION to dismiss *Based on Double Jeoparady and Inc. Memo of Law* (Kaiser, Amanda) (Entered: 03/10/2009) |
| 03/10/2009 | 210 | ORDER granting 196 Government's motion to allow electronic equipment for trial. Signed by Judge James D. Whittemore on 3/10/2009. (KE) (Entered: 03/10/2009) |
| 03/11/2009 | 211 | ORDER granting in part and denying in part 186 Defendant's Renewed motion to allow electronic equipment. Signed by Judge James D. Whittemore on 3/11/2009. (KE) (Entered: 03/11/2009) |
| 03/11/2009 | 212 | TRIAL CALENDAR for trial term beginning March 18, 2009 as to Charles Jackson Friedlander. Jury Trial set for 3/23/2009 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 3/11/2009. (AO) (Entered: 03/11/2009) |
| 03/11/2009 | 214 | RECEIPT for return of GOVERNMENT exhibits and/or exhibit substitutes for re-trial as to Charles Jackson Friedlander. (JLH) (Entered: 03/12/2009) |
| 03/12/2009 | 213 | MOTION in limine *to Preclude Corp. Romanwoski from Stating Legal Conclusion in the Presence of the Jury and Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/12/2009) |
| 03/12/2009 | 215 | MOTION for miscellaneous relief, specifically for Jury Instruction regarding mandatory Sentence & Inc. memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/12/2009) |
| 03/12/2009 | 216 | MOTION for miscellaneous relief, specifically to allow Defendant to have access to Medication and Food During Trial by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/12/2009) |
| 03/13/2009 | 217 | RECEIPT for return of DEFENDANT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (Returned for re-trial) (JLH) (Entered: 03/13/2009) |
| 03/13/2009 | 218 | |

| | | |
|---|---|---|
| | | MOTION in limine *to Exclude Expert Witnesses and Request for Daubert Hearing* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/13/2009 | 219 | MOTION in limine *to Preclude Defense Counsel from Making Improper Arguments in His Opening Statements* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/13/2009 | 220 | ORDER denying 216 Motion to Allow Defendant to Have Access as to Charles Jackson Friedlander. Copy to USM. Signed by Judge James D. Whittemore on 3/13/2009. (KE) (Entered: 03/13/2009) |
| 03/13/2009 | 221 | MOTION for reconsideration *of Admissibility of Government's 404(B) Evidence Regarding Port St. Lucie Investigation* by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/13/2009 | 222 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 215 MOTION for miscellaneous relief, specifically for Jury Instruction regarding mandatory Sentence & Inc. memo of Law (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/16/2009 | 223 | ORDER denying 213 Defendant's Motion in Limine to Preclude Corporal Romanowski's [sic] From Stating a Legal Conclusion in the Presence of the Jury. Signed by Judge James D. Whittemore on 3/13/2009. (KE) (Entered: 03/16/2009) |
| 03/16/2009 | 224 | ORDER denying 215 Defendant's Motion for Jury Instruction Regarding Mandatory Sentence. Signed by Judge James D. Whittemore on 3/13/2009. (KE) (Entered: 03/16/2009) |
| 03/16/2009 | 225 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/16/2009) |
| 03/16/2009 | 226 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/16/2009) |
| 03/16/2009 | 227 | PROPOSED VOIR DIRE questions by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/16/2009) |
| 03/16/2009 | 228 | ORDER granting in part 182 Motion; granting 183 Motion (1); denying 184 Motion in Limine; granting in part and denying in part 185 Motion in Limine; denying 190 Motion in Limine; denying 191 Motion in Limine; granting in part and denying in part 192 Motion in Limine; granting 218 Motion in Limine; granting 219 Motion in Limine; denying 221 Motion for Reconsideration. A hearing is scheduled for 3/20/09 at 9:30 A.M. Lead counsel and Defendant to be present. Signed by Judge James D. Whittemore on 3/16/2009. (KE). (Entered: 03/16/2009) |
| 03/17/2009 | 229 | RESPONSE to motion by Charles Jackson Friedlander re 218 MOTION in limine *to Exclude Expert Witnesses and Request for Daubert Hearing* (Tragos, George) (Entered: 03/17/2009) |
| 03/17/2009 | 230 | WITNESS LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 03/17/2009) |

| 03/18/2009 | 231 | ORDER denying 194 Defendant's Motion to Dismiss Based on Double Jeopardy. Signed by Judge James D. Whittemore on 3/17/2009. (KE) (Entered: 03/18/2009) |
| --- | --- | --- |
| 03/18/2009 | 232 | NOTICE OF APPEAL (Interlocutory) by Charles Jackson Friedlander re 231 Order on motion to dismiss. Filing fee $ 455. (Tragos, George) Modified on 3/19/2009 (DG). NOTE: THIS ITEM WAS FILED INCORRECTLY DUE TO LACK OF COUNSEL'S ELECTRONIC SIGNATURE AND TRANSCRIPT ORDER FORM NEEDS TO BE FILED AS SEPARATE DOCUMENT. COUNSEL'S OFFICE NOTIFIED ON 3/19/09. (Entered: 03/18/2009) |
| 03/18/2009 | 233 | Emergency MOTION to stay Trial scheduled for March 23, 2009 *& Inc. Memo of Law* by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/18/2009) |
| 03/19/2009 | 234 | NOTICE OF APPEAL (Interlocutory) by Charles Jackson Friedlander re 231 Order on motion to dismiss. Filing fee $ 455. (Tragos, George) (Entered: 03/19/2009) |
| 03/19/2009 | | TRANSMITTAL of initial appeal package as to Charles Jackson Friedlander to USCA consisting of certified copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 234 Notice of appeal - interlocutory. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. Certified copy of paid appellate fee receipt attached. (DG) Modified on 3/19/2009 (DG). (Entered: 03/19/2009) |
| 03/19/2009 | 235 | ORDER denying 233 Defendant's Emergency Motion for Stay and Motion to Continue Trial as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 3/19/2009. (KE) (Entered: 03/19/2009) |
| 03/19/2009 | | USCA appeal fees received $ 455, receipt number T049662 as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory. (DG) (Entered: 03/19/2009) |
| 03/19/2009 | 236 | TRANSCRIPT information form filed by Charles Jackson Friedlander re 234 Notice of appeal - interlocutory. All necessary transcripts on file. (DG) (Entered: 03/19/2009) |
| 03/19/2009 | 237 | WITNESS LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/19/2009) |
| 03/19/2009 | 238 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/19/2009) |
| 03/20/2009 | 239 | TRANSCRIPT of Jury Trial Proceedings for dates of 8 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction |

| | | Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
|---|---|---|
| 03/20/2009 | 240 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 3/20/2009. Court Reporter: Linda Starr (AO) (Entered: 03/20/2009) |
| 03/20/2009 | 241 | TRANSCRIPT of Jury Trial Proceedings for dates of 9 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 242 | TRANSCRIPT of Jury Trial Proceedings for dates of 10 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 243 | TRANSCRIPT of Jury Trial Proceedings for dates of 11 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 244 | TRANSCRIPT of Jury Trial Proceedings for dates of 12 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 245 | TRANSCRIPT of Jury Trial Proceedings for dates of 15 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public |

| | | |
|---|---|---|
| | | terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 246 | TRANSCRIPT of Jury Trial Proceedings for dates of 16 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 247 | TRANSCRIPT of Motions Hearing for dates of 14 November 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 248 | TRANSCRIPT of Daubert Hearing for dates of 17 November 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 249 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPTS. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of these transcripts. If no such Notice is filed, the transcripts may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcripts to review for redaction purposes may purchase a copy from the court reporter or view the documents at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) Modified on 3/23/2009 (DG). (Entered: 03/20/2009) |
| 03/23/2009 | 250 | Minute Entry for proceedings held before Judge James D. Whittemore: Voir Dire held on 3/23/2009. DAY 1 OF TRIAL as to Charles Jackson Friedlander. Court Reporter: Linda Starr (AO) (Entered: 03/23/2009) |
| 03/23/2009 | 251 | |

| | | WITNESS LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 03/23/2009) |
|---|---|---|
| 03/24/2009 | 253 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 2 as to Charles Jackson Friedlander held on 3/24/2009. Court Reporter: Linda Starr (AO) (Entered: 03/24/2009) |
| 03/25/2009 | 252 | USCA ORDER (certified copy) as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory, that appellant's emergency motion to stay his upcoming trial pending disposition of this appeal is denied. The District Court correctly concluded that the trial should proceed despite the pendency of this appeal. EOD: 3/20/09 USCA number: 09-11354-A (DG) Modified on 3/25/2009 (DG). (Entered: 03/24/2009) |
| 03/25/2009 | 254 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 3 as to Charles Jackson Friedlander held on 3/25/2009. Court Reporter: Linda Starr (AO) (Entered: 03/25/2009) |
| 03/26/2009 | 255 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 4 as to Charles Jackson Friedlander held on 3/26/2009. Court Reporter: Linda Starr (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 256 | ORAL MOTION for directed verdict/acquittal by Charles Jackson Friedlander. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 257 | ORAL MOTION for Constitutionality Challenge by Charles Jackson Friedlander. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 258 | ORAL MOTION for Mistrial by Charles Jackson Friedlander. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 259 | ORAL ORDER denying 256 Oral Motion for directed verdict; ruling deferred 257 Oral Motion for Constitutionality Challenge; denying 258 Oral Motion for Mistrial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 3/26/2009. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 260 | MOTION for miscellaneous relief, specifically declare 18U.S.C. 2422 Unconstitutionally Overbroad & violative of the first Amendment & Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/26/2009) |
| 03/27/2009 | 261 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 5 as to Charles Jackson Friedlander held on 3/27/2009. Verdict rendered. Court Reporter: Linda Starr (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 262 | COURT'S JURY INSTRUCTIONS as to Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 263 | JURY VERDICT as to Charles Jackson Friedlander (1) Guilty on Count 1. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 264 | TRIAL EXHIBIT LIST by USA as to Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 265 | |

| | | TRIAL EXHIBIT LIST by Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
|---|---|---|
| 03/27/2009 | 266 | COURT'S TRIAL EXHIBIT LIST as to Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 267 | WAIVER OF FORFEITURE HEARING BEFORE A JURY as to Charles Jackson Friedlander. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 268 | ORAL MOTION to extend time to file Post-trial motions by Charles Jackson Friedlander. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 269 | ORAL ORDER granting 268 Motion to extend time to file post-trial motions as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 3/27/2009. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 270 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing set for 6/29/2009 at 03:00PM in Tampa Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 03/27/2009) |
| 03/30/2009 | 271 | TRANSCRIPT information form filed by Charles Jackson Friedlander for proceedings held on 12/8/08; 12/9/08; 12/10/08; 12/11/08; 12/12/08; 12/15/08; and 12/16/08 before Judge Whittemore re 234 Notice of appeal - interlocutory. Court reporter: Linda Starr.(Tragos, George) Modified on 3/31/2009 (DG). (Entered: 03/30/2009) |
| 04/02/2009 | 272 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 260 MOTION for miscellaneous relief, specifically declare 18U.S.C. 2422 Unconstitutionally Overbroad & violative of the first Amendment & Inc. Memo of Law (Kaiser, Amanda) (Entered: 04/02/2009) |
| 04/08/2009 | 273 | MOTION for new trial & Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 04/08/2009) |
| 04/15/2009 | 274 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 273 MOTION for new trial & Inc. Memo of Law (Kaiser, Amanda) (Entered: 04/15/2009) |
| 04/15/2009 | 275 | ORDER denying 260 Defendant's Motion to Declare 18 U.S.C. § 2422 Unconstitutionally Overbroad and Violative of the First Amendment. Signed by Judge James D. Whittemore on 4/14/2009. (KE) (Entered: 04/15/2009) |
| 04/20/2009 | 276 | ORDER denying 273 Motion for new trial as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 4/20/2009. (KE) (Entered: 04/20/2009) |
| 04/24/2009 | 277 | MOTION for miscellaneous relief, specifically Judgment of Acquittal (Renewed) by Charles Jackson Friedlander. (Tragos, George) (Entered: 04/24/2009) |
| 04/29/2009 | 278 | ORDER denying 277 Renewed Motion for Judgment of Acquittal as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 4/28/2009. (KE) (Entered: 04/29/2009) |
| 04/29/2009 | 279 | |

| | | |
|---|---|---|
| | | NOTICE of exhibits place din the exhibit room (jury trial - 3 folders) as to Charles Jackson Friedlander (JLH) (Entered: 04/30/2009) |
| 05/06/2009 | 280 | NOTIFICATION that transcripts has been filed by Linda Starr re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander, with District Court on 3/20/09. (DG) (Entered: 05/07/2009) |
| 05/14/2009 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving the initial appeal package on 3/23/09 re 234 Notice of appeal - interlocutory. (DG) (Entered: 05/14/2009) |
| 06/01/2009 | 281 | USCA ORDER (certified copy) as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory, that the appellant's motion to stay appeal pending filing of a Notice of Appeal to the District Court's rendition of the Judgment and Sentence, is granted. EOD: 5/28/09 USCA number: 09-11354-A (DG) (Entered: 06/01/2009) |
| 06/23/2009 | 282 | NOTICE *to the Court Regarding Forfeiture* by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 06/23/2009) |
| 06/26/2009 | 283 | SENTENCING MEMORANDUM by Charles Jackson Friedlander (Tragos, George) (Entered: 06/26/2009) |
| 06/29/2009 | 284 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 06/29/2009) |
| 06/29/2009 | 285 | Minute Entry for proceedings held before Judge James D. Whittemore: MINUTE ENTRY held on 6/29/2009 as to Charles Jackson Friedlander. Court Reporter: Sherrill L. Jackson (AO) (Entered: 06/29/2009) |
| 06/29/2009 | 286 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing reset for 7/28/2009 at 01:00PM in Tampa Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 06/29/2009) |
| 07/07/2009 | 287 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing set for 7/21/2009 at 10:00AM in Tampa Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 07/07/2009) |
| 07/20/2009 | 288 | EXHIBIT LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 07/20/2009) |
| 07/21/2009 | 289 | Minute Entry for proceedings held before Judge James D. Whittemore: SENTENCING held on 7/21/2009 for Charles Jackson Friedlander (1), Count(s) 1, 360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; $100 Special Assessment. Court Reporter: Linda Starr (AO) (Entered: 07/22/2009) |
| 07/21/2009 | 290 | SENTENCING HEARING EXHIBIT LIST by USA as to Charles Jackson Friedlander. (AO) (Entered: 07/22/2009) |
| 07/21/2009 | 291 | SENTENCING HEARING EXHIBIT LIST by Charles Jackson Friedlander. (AO) (Entered: 07/22/2009) |
| 07/22/2009 | 292 | JUDGMENT as to Charles Jackson Friedlander (1), Count(s) 1, 360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; |

| | | |
|---|---|---|
| | | $100 Special Assessment. Signed by Judge James D. Whittemore on 7/22/2009. (AO) (Entered: 07/22/2009) |
| 07/24/2009 | 293 | NOTICE OF APPEAL by Charles Jackson Friedlander re 292 Judgment Filing fee not paid. (Tragos, George) (Entered: 07/24/2009) |
| 07/24/2009 | 294 | TRANSCRIPT information form filed by Charles Jackson Friedlander for proceedings held on 2/5/09, 3-23/27-09, 7/21/09 before Judge Whittemore re 293 Notice of appeal (Tragos, George) (Entered: 07/24/2009) |
| 07/27/2009 | | TRANSMITTAL of initial appeal package as to Charles Jackson Friedlander to USCA consisting of certified copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 293 Notice of appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (SAH) (Entered: 07/27/2009) |
| 07/27/2009 | | USCA appeal fees received $455, receipt number T051184 as to Charles Jackson Friedlander re 293 Notice of appeal : (EJC) (Entered: 07/28/2009) |
| 07/27/2009 | 295 | NOTICE of exhibits placed in the exhibit room (sentencing - 1 folder) as to Charles Jackson Friedlander (JLH) (Entered: 07/29/2009) |
| 07/28/2009 | | TRANSMITTAL to USCA forwarding USCA appeal fees received $455, receipt number T051184 re 293 Notice of appeal as to Charles Jackson Friedlander (EJC) (Entered: 07/28/2009) |
| 08/07/2009 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving certified copies of paid appellate fee receipt and updated docket sheet on 7/30/09 re 293 Notice of appeal. (DG) (Entered: 08/07/2009) |
| 08/07/2009 | 296 | COURT REPORTER ACKNOWLEDGEMENT by Linda Starr re 293 Notice of appeal as to Charles Jackson Friedlander Estimated transcript filing date: 9/4/09. USCA number: 09-13811-A. (EJC) (Entered: 08/10/2009) |
| 08/19/2009 | 297 | SATISFACTION of Judgment as to Charles Jackson Friedlander. (Willing-FLU, Patricia) (Entered: 08/19/2009) |
| 09/25/2009 | 298 | MOTION for miscellaneous relief, specifically unseal record for appellate transcription by Charles Jackson Friedlander. (Sartes, Peter) (Entered: 09/25/2009) |
| 10/05/2009 | 299 | TRANSCRIPT of Jury Trial Proceedings for date of 23 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) NOTE: COURT REPORTER NOTIFIED BY EMAIL ON 10/6/09 THAT THIS ITEM NEEDS TO BE RE-DOCKETED AS THE TRANSCRIPT FILED WAS TRIAL PROCEEDINGS |

| | | |
|---|---|---|
| | | OF 3/26/09. Modified on 10/6/2009 (DG). Modified on 10/7/2009 (DG). Modified on 10/7/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 300 | TRANSCRIPT of Jury Trial Proceedings for date of 24 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 301 | TRANSCRIPT of Jury Trial Proceedings for date of 25 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 302 | TRANSCRIPT of Jury Trial Proceedings for date of 26 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 303 | TRANSCRIPT of Jury Trial Proceedings for date of 27 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 304 | TRANSCRIPT of Sentencing Proceedings for date of 21 July 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or |

| | | |
|---|---|---|
| | | purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 305 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPTS. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 306 | TRANSCRIPT of Motion Hearing for date of 5 February 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 307 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) Modified on 10/6/2009 (DG). Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/07/2009 | 308 | TRANSCRIPT of Jury Trial for date of 23 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/28/2009, Redacted Transcript Deadline set for 11/9/2009, Release of Transcript Restriction set for 1/5/2010. (LS) Modified on 10/13/2009 (DG). (Entered: 10/07/2009) |
| 10/07/2009 | 309 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request |

| | | |
|---|---|---|
| | | Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) (Entered: 10/07/2009) |
| 10/13/2009 | 310 | ENDORSED ORDER granting 298 Motion to Unseal Record for Appellate Transcription as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 10/13/2009. (KE) (Entered: 10/13/2009) |
| 11/17/2009 | 311 | RETURN of judgment executed as to Charles Jackson Friedlander on 9/8/09. Institution: FCC Butner, Medium II, Butner, NC. (MRH) (Entered: 11/17/2009) |
| 12/09/2009 | 312 | Corrected JUDGMENT as to Charles Jackson Friedlander (1), Count 1, 360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; $100 Special Assessment. Signed by Judge James D. Whittemore on 12/8/2009. Amended to correct USM number.(AO) (Entered: 12/09/2009) |
| 01/19/2010 | 313 | RETURN of judgment executed as to Charles Jackson Friedlander on 9/8/09. Institution: FCI Butner, Medium II, Butner, NC. (MRH) (Entered: 01/19/2010) |
| 01/28/2010 | 314 | CERTIFICATE of readiness sent to USCA as to Charles Jackson Friedlander re: 234 Notice of appeal - interlocutory, 293 Notice of appeal. ROA consists of: PSI; volume of pleadings: 2; volume of transcripts: 18; Exhibits: 6 [4 folders; 2 envelopes]. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 01/28/2010) |
| 01/28/2010 | | RECORD on appeal sent to USCA as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory, 293 Notice of appeal. Transmittal includes certified copy of docket sheet, PSI, volume of pleadings: 2, volume of transcripts: 18, volume of exhibits: 6 [4 folders; 2 envelopes]. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 01/28/2010) |
| 02/03/2010 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving the record on appeal on 2/1/10 re 234 Notice of appeal - interlocutory, 293 Notice of appeal. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 02/03/2010) |
| 02/03/2010 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving the certificate of readiness on 2/1/10 re 234 Notice of appeal - interlocutory, 293 Notice of appeal. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 02/03/2010) |
| 11/12/2010 | 315 | MANDATE of USCA AFFIRMED (certified copy) as to Charles Jackson Friedlander re 293 Notice of appeal, 234 Notice of appeal - interlocutory. EOD: 9/3/10. Issued as Mandate: 11/9/10; USCA number: 09-11354-AA / 09-13811-AA. ROA returned and consists of: volume of pleadings: 2, volume of transcripts: 18, volume of exhibits: 6 [4 folders; 2 envelopes]. (EJC) (Entered: 11/12/2010) |

| 04/08/2011 | 316 | Notification from the U.S. Court of Appeals, 11th Circuit, that WRIT OF CERTIORARI is denied by the U.S. Supreme Court as to Charles Jackson Friedlander The court's mandate having previously issued, no further action will be taken by this court. USCA number: 09-11354-FF (DG) (Entered: 04/08/2011) |
|---|---|---|
| 06/24/2011 | 317 | GOVERNMENT AND DEFENDANT EXHIBITS: The records in this case indicate that this case was disposed of more than thirty (30) days ago. The records also indicate that the Clerk's Office is in possession of various exhibits used during the proceedings.Pursuant to Local Rule 5.04, you are notified that you have thirty (30) days for the removal of the exhibits from the custody of the Clerk's Office, or the exhibits will be disposed of, or destroyed, as permitted by Local Rule 5.04. (JLH) (Entered: 06/24/2011) |
| 06/28/2011 | 318 | RECEIPT for return of GOVERNMENT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (JLH) (Entered: 07/06/2011) |
| 08/05/2011 | 319 | CLERK'S certificate of destruction of DEFENDANT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (JLH) (Entered: 08/05/2011) |
| 08/12/2011 | 320 | CLERK'S certificate of destruction of COURT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (JLH) (Entered: 08/12/2011) |
| 10/19/2011 | 321 | MOTION for miscellaneous relief, specifically Disclose Presentence Report by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/19/2011) |
| 10/24/2011 | 322 | ORDER granting 321 Defendant's Motion to Disclose Presentence Report to new counsel. Signed by Judge James D. Whittemore on 10/24/2011. (KE) (Entered: 10/24/2011) |
| 04/03/2012 | 323 | MOTION to vacate under 28 U.S.C. 2255 by Charles Jackson Friedlander. (Martinez, Victor) (Entered: 04/03/2012) |
| 04/03/2012 | | All Further pleadings related to the 2255 motion as to Charles Jackson Friedlander to be filed in civil case 8:12-CV-723-T-TGW (ARC) Modified on 4/6/2012 (AG). (Entered: 04/05/2012) |
| 04/06/2012 | 324 | ORDER terminating 323 Motion to vacate (2255) as to Charles Jackson Friedlander. Petitioner's motion remains under consideration in the corresponding civil file. See Case No. 8:12-CV-723-T-27TGW. Signed by Judge James D. Whittemore on 4/6/2012. (KE) (Entered: 04/06/2012) |
| 12/03/2012 | 325 | Remark: COPY OF CIVIL JUDGMENT IN CIVIL CASE NUMBER: 8:12-CV-723-T-27TGW. (BSN) (Entered: 12/03/2012) |
| 06/08/2015 | 326 | NOTICE of Inquiry by Charles Jackson Friedlander. Courtesy copy of docket sheet mailed to Jackson Friedlander. (RFK) (Entered: 06/08/2015) |
| 06/27/2019 | 327 | NOTICE OF ATTORNEY APPEARANCE: Joseph E. Parrish appearing for Charles Jackson Friedlander (Parrish, Joseph) (Entered: 06/27/2019) |
| 06/27/2019 | 328 | MOTION for Release from Custody *Compassionate Release* by Charles Jackson Friedlander. (Parrish, Joseph) (Entered: 06/27/2019) |
| 06/27/2019 | 329 | |

| | | |
|---|---|---|
| | | **ENDORSED ORDER directing the United States Attorney's Office to respond to Defendant's Motion for Compassionate Release (Dkt. 328) within 10 days as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 6/27/2019. (CAB)** (Entered: 06/27/2019) |
| 07/08/2019 | 330 | Notice of substitution of AUSA. Colin P. McDonell substituting for Amanda C. Kaiser and Adelaide Few. (McDonell, Colin) (Entered: 07/08/2019) |
| 07/08/2019 | 331 | MOTION to Dismiss *AND OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE* by USA as to Charles Jackson Friedlander. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (McDonell, Colin) (Entered: 07/08/2019) |
| 07/15/2019 | 332 | RESPONSE in Opposition by Charles Jackson Friedlander re 331 MOTION to Dismiss *AND OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Parrish, Joseph) (Entered: 07/15/2019) |
| 07/30/2019 | 333 | **ORDER directing United States to respond within three (3) days. Signed by Judge James D. Whittemore on 7/30/2019. (AKA)** (Entered: 07/30/2019) |
| 08/02/2019 | 334 | NOTICE OF ATTORNEY APPEARANCE Craig Robert Gestring appearing for USA. (Gestring, Craig) (Entered: 08/02/2019) |
| 08/02/2019 | 335 | MOTION to extend time to file response to motion by USA as to Charles Jackson Friedlander. (Gestring, Craig) (Entered: 08/02/2019) |
| 08/05/2019 | 336 | **ENDORSED ORDER granting 335 Government's Request for Additional Time to Respond. The Government's response is now due on or before August 12, 2019. Signed by Judge James D. Whittemore on 8/5/2019. (AKA)** (Entered: 08/05/2019) |
| 08/12/2019 | 337 | RESPONSE to Motion re 328 MOTION for Release from Custody *Compassionate Release* by USA as to Charles Jackson Friedlander (McDonell, Colin) (Entered: 08/12/2019) |
| 08/14/2019 | 338 | **ENDORSED ORDER denying as moot 331 Motion to Dismiss as to Charles Jackson Friedlander (1). The United States requested that its motion to dismiss be withdrawn. see Dkt. 337 Signed by Judge James D. Whittemore on 8/14/2019. (Whittemore, James)** (Entered: 08/14/2019) |
| 08/14/2019 | 339 | **ORDER denying 328 Defendant's Motion for Compassionate Release. Signed by Judge James D. Whittemore on 8/14/2019. (AKA)** (Entered: 08/14/2019) |
| 08/27/2019 | 340 | NOTICE OF APPEAL by Charles Jackson Friedlander re 339 Order on Motion for Release from Custody Filing fee not paid. (Parrish, Joseph) (Entered: 08/27/2019) |
| 08/28/2019 | 341 | TRANSMITTAL of initial appeal package as to Charles Jackson Friedlander to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 340 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and |

| | | available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (LSS) (Entered: 08/28/2019) |
|---|---|---|
| 09/03/2019 | 342 | USCA Appeal Fees received $ 505, receipt number TPA057948 as to Charles Jackson Friedlander re <u>340</u> Notice of Appeal (ARC) (Entered: 09/03/2019) |
| 09/03/2019 | | USCA Case Number as to Charles Jackson Friedlander. USCA Number: 19-13347-A for <u>340</u> Notice of Appeal filed by Charles Jackson Friedlander. (JNB) (Entered: 09/03/2019) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/23/2019 10:55:27 | | | |
| **PACER Login:** | jbcraven:2529131:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:08-cr-00318-JDW-TGW |
| **Billable Pages:** | 24 | **Cost:** | 2.40 |

∞

# TAB 8

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED

2008 JUL 30 PM 3:03

UNITED STATES OF AMERICA

v.                                                CASE NO.   8:08-cr- 318-T27TGW
                                                            18 U.S.C. § 2422(b)
CHARLES JACKSON FRIEDLANDER                                  18 U.S.C. § 2253

## INDICTMENT

The Grand Jury charges:

## COUNT ONE

Between on or about June 16, 2008 and on or about July 21, 2008, in

Hillsborough County and elsewhere, in the Middle District of Florida,

### CHARLES JACKSON FRIEDLANDER,

the defendant herein, did knowingly attempt to persuade, induce, entice, and coerce an

individual who had not attained the age of eighteen years to engage in a sexual act for

which any person can be charged with a criminal offense, by using a facility and means

of interstate commerce, that is, a telephone and a computer and modem with access to

the Internet via America Online.

In violation of Title 18, United States Code, Section 2422(b).

## FORFEITURES

1.      The allegations contained in Count One of this Indictment are hereby

realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant

to the provisions of Title 18, United States Code, Section 2253.

2. From his engagement in violations alleged in Count One of this Indictment, in violation of Title 18, United States Code, Section 2422(b), the defendant, CHARLES JACKSON FRIEDLANDER, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 2253(a)(2) and (a)(3), all of his interest in:

    a. Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

    b. Any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

    c. Specific property to be forfeited includes, but is not limited to:

        1) Gateway computer with Model Number GT5220 and Serial Number GCN6811002306;

        2) Dell Inspiron 2600 computer with Model Number PP04L and Serial Number 39038652469;

        3) 32 MB memory card;

        4) 8 compact disks; and

        5) Aiptek pen camera with Serial Number AC157323

        6) 1 floppy disc labeled "AOL ORG FOLDER 11/02"

        7) 1 Hewlett-Packard Photosmart camera with Model Number 635 and Serial Number CN39W1103D with a Fujifilm 4 MB memory card inside

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

2

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) [incorporated by Title 18, United States Code, Section 2253(b)], to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 2253.

A TRUE BILL,

Foreperson

ROBERT E. O'NEILL
United States Attorney

By: _____
FOR AMANDA C. KAISER
Assistant United States Attorney

By: _____
JAY L. HOFFER
Assistant United States Attorney
Deputy Chief, Special Prosecutions Section

No.  8:08-CR-_____

# UNITED STATES DISTRICT COURT

Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

CHARLES JACKSON FRIEDLANDER

## INDICTMENT

Violations:

Title 18, United States Code, Section 2242(b) - Count One

A true bill,

*Patricia Baufield*

Foreperson

Filed in open court this 30th day

of July, A.D. 2008.

_____
Clerk

Bail  $_____

GPO 863 525

N:\_Criminal Cases\F\Friedlander, Charles_2008R01924_ack\f_indictment_back.wpd

# TAB 292

AO 245B (Rev 06/05) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| | CASE NUMBER:    8:08-CR-318-T-27TGW |
| | USM NUMBER:    50238-018 |
| vs. | |
| CHARLES JACKSON FRIEDLANDER | |
| | Defendant's Attorney:   George Tragos & Peter Sartes, ret |

THE DEFENDANT:

__ pleaded guilty to count(s)  of the .
__ pleaded nolo contendere to count(s) which was accepted by the court.
 X  was found guilty on Count One of the Indictment, after a plea of not guilty.

| TITLE & SECTION | NATURE OF OFFENSE | OFFENSE ENDED | COUNT |
|---|---|---|---|
| 18 U.S.C. § 2422(b) | Child Enticement | July 21, 2008 | One |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

__ The defendant has been found not guilty on count(s)
__ Count(s)  (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

Date of Imposition of Sentence: July 21, 2009


JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

DATE: July  22 , 2009

| | | |
|---|---|---|
| Defendant: | CHARLES JACKSON FRIEDLANDER | Judgment - Page 2 of 6 |
| Case No.: | 8:08-CR-318-T-27TGW | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **THREE HUNDRED SIXTY (360) MONTHS.**

Defendant shall be given credit toward the service of a term of imprisonment for any time he/she has spent in official detention prior to the date the sentence commences -- (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the Defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence. 18 U.S.C. § 3585(b).

_X_ The Court makes the following recommendations to the Bureau of Prisons:  The Court recommends confinement at Butner, NC.

_X_ The defendant is remanded to the custody of the United States Marshal.
___ The defendant shall surrender to the United States Marshal for this district.

    ___ at ___ a.m./p.m. on ___.
    ___ as notified by the United States Marshal.

___ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.

    ___ before 2 p.m. on ___.
    ___ as notified by the United States Marshal.
    ___ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

___ at _____, with a certified copy of this judgment.

                                   _____
                                        United States Marshal

By:_____
                                     Deputy United States Marshal

AO 245B (Rev. 06/05) Sheet 3 - Supervised Release (Judgment in a Criminal Case)

| Defendant: | CHARLES JACKSON FRIEDLANDER | Judgment - Page 3 of 6 |
|---|---|---|
| Case No.: | 8:08-CR-318-T-27TGW | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **LIFE.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.
The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

X    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. However, the Court orders the defendant to submit to random drug testing not to exceed 104 tests per year. (Check, if applicable.)

_    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon. (Check, if applicable.)

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

If this judgment imposes a fine or restitution it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 06/05) Sheet 3C - Supervised Release (Judgment in a Criminal Case)

| | | |
|---|---|---|
| Defendant: | CHARLES JACKSON FRIEDLANDER | Judgment - Page 4 of 6 |
| Case No.: | 8:08-CR-318-T-27TGW | |

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall also comply with the following additional conditions of supervised release:

(X) Defendant shall participate as directed in a mental health program specializing in sex offender treatment approved by the probation officer and abide by the rules, requirements, and conditions of the treatment program, including submitting to polygraph and/or computer voice stress analysis (CVSA) testing. The results of the polygraph and/or CVSA examination may not be used as evidence in Court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions. Further, the defendant shall contribute to the costs of such treatment and/or polygraph testing not to exceed an amount determined reasonable by the probation officer based on ability to pay or availability of third party payment and in conformance withe the Probation Office's Sliding Scale for Treatment Services.

(X) The defendant shall register with state sexual offender registration agency(s) in any state where he resides, visits, is employed, carries on a vocation, or is a student, as directed by the probation officer.

(X) The probation officer shall provide state officials with all information required under Florida sexual predator and sexual offender notification and registration statutes (F.S. 943.0435) and may direct the defendant to report to these agencies personally for required additional processing, such as photographing, fingerprinting, and DNA collection.

(X) The defendant shall have no direct contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate including: schools, day-care centers, theme parks, playgrounds, etc.

(X) The defendant is prohibited from possessing, subscribing to or viewing any video, magazines, or literature depicting children in the nude and/or in sexually explicit positions.

(X) The defendant shall not possess or use a computer with access to any online service at any location (including employment) without written approval from the probation officer. This includes access through any internet service provider, bulletin board system, or any public or private computer network systems. The defendant shall permit routine inspection of his computer system, hard drives, and other media storage materials, to confirm adherence to this condition. This inspection shall be no more intrusive than is necessary to ensure compliance with this condition. The defendant shall inform his employer, or other third party who may be impacted by this condition, of this computer-related restriction and the computer inspection provision of the condition.

(X) The defendant shall submit to a search of his person, residence, place of business, computers, or vehicle conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall inform any other residents that the premises may be subject to a search pursuant to these conditions.

(X) The defendant shall provide the probation officer access to any requested financial information.

AO 245B (Rev 06/05) Sheet 5 - Criminal Monetary Penalties (Judgment in a Criminal Case)

| Defendant: | CHARLES JACKSON FRIEDLANDER | Judgment - Page 5 of 6 |
|---|---|---|
| Case No.: | 8:08-CR-318-T-27TGW | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Total Restitution** |
|---|---|---|---|
| **Totals:** | **$100.00** | **$25,000.00** | **$N/A** |

___ The determination of restitution is deferred until ____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

___ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |
| Totals: | $ | $ | |

_ Restitution amount ordered pursuant to plea agreement $ _____.

_ The defendant must pay interest on a fine or restitution of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

_ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    _ the interest requirement is waived for the ___ fine ___ restitution.

    _ the interest requirement for the ___ fine ___ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for the offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev 06/05) Sheet 6 - Schedule of Payments (Judgment in a Criminal Case)

| | |
|---|---|
| Defendant:    CHARLES JACKSON FRIEDLANDER | Judgment - Page 6 of 6 |
| Case No.:    8:08-CR-318-T-27TGW | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A.    __X__    Lump sum payment of $ _100.00 Special Assessment, and $25,000.00 Fine_ due immediately.

B.    ___    Payment to begin immediately (may be combined with ___ C, ___ D, or ___ F below); or

C.    ___    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ days (e.g., 30 or 60 days) after the date of this judgment; or

D.    ___    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____, (e.g., months or years) to commence _____ (e.g. 30 or 60 days) after release from imprisonment to a term of supervision; or

E.    ___    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time, or

F.    ___    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

___    Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate:

___    The defendant shall pay the cost of prosecution.

___    The defendant shall pay the following court cost(s):

___    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# TAB 328

IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | |
| | ) | No. 8:08 CR 318 |
| | ) | |
| CHARLES JACKSON FRIEDLANDER, | ) | MOTION FOR COMPASSIONATE RELEASE |
| | ) | |
| Defendant | ) | |

The defendant, Charles Jackson Friedlander, by his counsel, respectfully shows the Court pursuant to the First Step Act of December 21, 2018, the Second Chance Act of 2008, 34 U.S.C. 60541, et seq., and the Second Chance Reauthorization Act of 20018, also enacted December 21, 2018, that:

1. The defendant on July 21, 2009 was sentenced to a term of 360 months. He is now in BOP custody at LSCI Butner, North Carolina.

2. As of March 27, 2019, with BOP good time, he will have served just over 139 months. He will be 89 on May 28, 2019.

3. Charles Friedlander has the following serious medical conditions, documented by his BOP medical records, and by records of the Duke University Medical Center, where the BOP has sent him for needed outside care:

> Brittle Type II Diabetes Mellitus, very difficult to control, with unpredictable sharp changes in blood glucose levels without an obvious cause, together with greater likelihood and frequency of ketoacidosis and/or severe hypoglycemia.

> Total Erectile Dysfunction at least since 2008, due to brittle diabetes

> Osteoarthritis

> Extreme Fatigue

> Chronic Kidney Disease-Stage 3

> GERD (Gastroesophageal Reflux Disease)

> Hypertension

1

Prostate carcinoma/Prostate Hypertrophy

Hearing loss (hearing aids)

Sciatica

Gout

Multi basal cell carcinomas

Vincent's Stomatitis in mouth/gums (Acute Infectious Gingivostomatitis)

Elevated Cholesterol

Right Branch Bundle Block, a delay/blockage along the pathway that electric impulses travel to make the heart beat, in this case the right side of the ventricles.

Diabetic Retinopathy, the most common cause of vision loss in diabetes, change to retinal blood vessels causing them to bleed or leak fluid, distorting vision. This is a leading cause of blindness.

Severe Clinical Depression

Elevated Anxiety Disorder

Degenerative Back Disease

He has been wheelchair bound since 2012. And suffice it to say he is way out of warranty. Since May 1, 2019 he has fallen almost daily. That he has not broken a hip is remarkable, considering he is 89 years old. His BOP release date, on January 29, 2035, at age 104, is of course academic.

4.  Attached is a copy of a November 18, 2018 psychosexual evaluation of Charles Friedlander done by Dr. Joseph J. Plaud in Boston. Dr. Plaud concluded that:

    a.  Dr. Friedlander has not been a prior sexual offense recidivist, he has no contact-based victims; it is highly likely that years ago he engaged in sexualized fantasizing. His clinical presentation is inconsistent with a paraphilia diagnosis.

    b.  Dr. Frielander is now 88 years old, now within an age cohort associated with the absolute lowest rates of sexual offense recidivism.

2

c.  Dr. Friedlander does not have in general an antisocial lifestyle orientation, and given that he does not possess a paraphilia diagnosis, there is an insufficient foundation to conclude at this time that Dr. Friedlander would be in a band of sexual offense risk considered high or likely.

d.  Comparatively speaking, Dr. Friedlander's statistical risk analysis places him in a very low risk band in 2018.

e.  There are unique interpersonal issues in Dr. Friedlander's social functioning, including what most accurately from a psychological perspective can be described as social inadequacies that formed a basis for his sexual offense adjudication.

f.  Dr. Friedlander is in an age and risk-range, given his current health and medical issues in which terms of compassionate release is clearly in my professional judgment the best course of action concerning both public safety and the welfare of Dr. Friedlander.

It is worth noting that Dr. Plaud is a nationally known sex offender specialist who has on numerous occasions served as an expert for the Government, for the respondent, and for the Court, in proceedings under 18 U.S.C. 4248 in the District of Massachusetts and the Eastern District of North Carolina.

5.  The actuarial table in Section 8-46 of the General Statutes of North Carolina gives Charles Friedlander a life expectancy of 6.6 years, but that of course does not take into account his remarkable laundry list of serious health issues at 89.  Certainly no agent in his right mind would sell him a life insurance policy now.

6.  Charles Friedlander clearly meets the BOP standards, set out in Policy Statements 5050.49 and 5050.50 for Compassionate Release.  He also meets the compassionate release criteria of 18 U.S.C 3580(c)(1)(A)(i) and Section 1B1.13, Federal Sentencing Guidelines

7.  Formal requests for compassionate release have been submitted by Charles Friedlander and/or his counsel to the BOP.  All administrative rights to appeal the

3

failure of the BOP to bring a motion on the defendant's behalf have long been exhausted.

8. If released from BOP custody, Charles Friedlander will be on supervised release for life.

9. The release plan is for Charles Friedlander to live with William Hayden at 501 North Clinton Street-Apt. 3102, Chicago, Illinois 60654, where friends and family live, and can assist him, very near an assisted living facility, to which he would likely eventually move. He will have an adequate income and Social Security benefits, together with health insurance.

10. To our knowledge there have been at least seven cases to date in which compassionate release was ordered under the First Step Act of December 21, 2018. The first case was <u>United States v. Cheatham</u>, No. 3:06 CR 95 (E.D. Tennessee). In that case Steven Ray Cheatham was serving a sentence of 188 months for two armed bank robberies in less than a week in 2006. On January 30, 3019 Cheatham, then suffering from cancer, filed a motion similar to this one in this case, for compassionate release under the First Step Act of December 21, 2018. Chief Judge Varlan in Knoxville the very next day, January 31, 2019, granted the motion and reduced Cheatham's sentence to time served. Sadly, Cheatham died at FMC Butner, North Carolina, unaware he was a free man. That is exactly what we of course do <u>not</u> want to happen in this case.

In <u>United States v. Evans</u>, No. 4:15 CR 15 (S.D. Texas) Dr. Richard Evans, a "pill mill" physician with cancer, was ordered released on March 13, 2019, only five days after the filing of a motion similar to this one.

In <u>United States v. Garcia</u>, No. 2:11 CR 935-6 (CD California), Wilfred Garcia was ordered released on March 22, 2019. A copy of the release order is attached and incorporated herein.

In <u>United States v. Brittner</u>, No. 9:16 CR 15 (D. Montana) Steve Alan Brittner was ordered released on May 1, 2019. A copy of the release order is attached and incorporated herein.

In <u>United States v. Adams</u>, No. 4:09 CR 115 (N.D. Texas), Steven Ray Adams was ordered released on May 3, 2019. A copy of the release order is attached and incorporated herein.

In <u>United States v. Leggitt</u>, No. 4:12 CR 306 (E.D. Arkansas), Terry Wayne Leggitt was ordered released on March 6, 2019. A copy of that release order is attached and incorporated herein.

In <u>United States v. McGraw</u>, No. 2:02 CR 18 (S.D. Indiana), McGraw was ordered released on May 9, 2019. A copy of that release order is attached and incorporated herein.

In all but <u>Leggitt</u>, the Government and the BOP opposed release.

11. On April 9, 2019 Charles Friedlander was told by his Unit Team at LSCI Butner that:

Your age at sentencing was 78 and your current offense is 18 U.S.C. 2422(B) child enticement, which upon review of P.S. 5162.05 is listed in the categorization of offense. Therefore, based on your age at sentencing and your current offense, you do not meet the criteria for a compassionate release/RIS.

Attached and incorporated herein is a copy of the April 9, 2019 notification.

Also attached and incorporated is a copy of the BOP Program Statement 5162.05 of March 16, 2009, referenced in the unit team notification. At Page 6 of P.S. 5162.05, 18 U.S.C. 2422 is listed, <u>but</u> described as "coercion into <u>interstate travel</u> for illegal sexual activity," emphasis added. That statute, 18 U.S.C. 2422, last amended July 27, 2006, in 18 U.S.C. 2422(a), makes it unlawful to persuade induce, entice or coerce any individual to travel "in interstate as foreign commerce" etc. Charles Friedlander was convicted of violating not that section of 18 U.S.C. 2422, but rather 18 U.S.C. 2422(b) which makes it unlawful to persuade,

induce, entice or coerce any individual under 18, etc. There is no requirement that the minor travel in interstate commerce, unlike 18 U.S.C. 2422(a). The Congress could have inserted that requirement into 18 U.S.C. 2422(b) but did not do so. Attached and incorporated herein is a copy of 18 U.S.C. 2422, both sections. Accordingly it is our position that 18 U.S.C. 2422(b) is not included in the Categorization of Offenses set out in BOP P.S. 5162.05, and that Charles Friedlander thus is now eligible for compassionate release. Of course the determination as to how long a sentence is to be served is one for this Court, not for the BOP. Decisions about sentencing "should not be left to employees of the same Department of Justice that conducts the prosecution," and the BOP "is not charged with applying 18 U.S.C. 3553(a)," Setser v. United States, 566 U.S. 231 at 240, 242 (2012).

WHEREFORE, pursuant to the First Step Act of December 21, 2018, Second Chance Act of 2008, 34. U.S.C. 60541 et seq, and the Second Chance Reauthorization Act of 2018, also enacted December 21, 2018, respectfully prays the Court:

1. For compassionate release from BOP custody, to live in Chicago, Illinois under the supervision of the USPO for the Northern District of Illinois for the term of supervised release in the judgment herein.

2. For such other and further relief as the Court may deem just and equitable,

Respectfully submitted,

/s/ Joseph E. Parrish
Joseph E. Parrish
Attorney for the Defendant Charles Friedlander
Parrish & Goodman, PLLC
915 North Franklin Street-Unit 2302
Tampa, FL 33602
(813)315-6535


Of Counsel
/s/ James B. Craven III
James B. Craven III
NC State Bar 997
Attorney for the Defendant Charles J. Friedlander
P.O. Box 1366
Durham, NC 27702
(919)688-8295
JBC64@MINDSPRING.COM

6

<u>CERTIFICATE OF SERVICE</u>

I have this day served Government counsel electronically:

Maria Chapa Lopez, Esquire
United States Attorney
400 North Tampa Street-Suite 3200
Tampa, FL 33602

This        day of May 2019.

<u>/s/ Joseph E. Parrish</u>
Joseph E. Parrish

# Applied Behavioral Consultants, LLC

## Joseph J. Plaud, Ph.D.

**Licensed Psychologist and Health Service Provider**
**Specializing in Forensic Psychological Services**

166 Boston Street, Unit 3
Boston, Massachusetts 02125-1142

Office: (617) 620-5218  Facsimile: (617) 830-0830
Email: plaud@forensicbehavior.com
Web: https://forensicbehavior.com

November 18, 2018

James B. Craven III, Esq.
Attorney at Law
Liberty Market Building
349 West Main Street
PO Box 1366
Durham, NC 27702

Dear Mr. Craven:

I have completed a psychosexual evaluation of Dr. Charles Friedlander, date of birth May 28, 1930, age 88. This evaluation of Dr. Friedlander began by the review of documents provided by your office. I then conducted a data-based evaluation of Dr. Friedlander at the Federal Correctional Institution (Low Security) in Butner, North Carolina on two occasions: May 22 and October 2, 2018. The purpose of the present assessment is to evaluate Dr. Friedlander's current psychosexual functioning and behavior, and provide for a risk assessment pertaining to sexual behavior.

Please note that in the course of conducting this evaluation of Dr. Friedlander, multiple sources of documentation were reviewed and analyzed, pertaining to Dr. Friedlander's history. These sources of documentation will not be referred to directly in the body of this report unless a specific relevancy is established between a particular source of information in the records to the professional determination of Dr. Friedlander's present risk level. Also note that the empirical and clinical information and professional conclusions detailed in this psychological and psychosexual evaluation report do not necessarily represent in its totality or in any significant part thereof my professional testimony in the event of an ensuing civil or criminal hearing or trial.

## Reason for Referral

Dr. Friedlander was referred for sexual assessment relating to his current psychosexual status in context of his July 21, 2009 conviction for the charge of Child Enticement. It is the primary purpose of this evaluation to address Dr. Friedlander's current risk for sexual recidivism in context of the empirical research in this area; the nature of his sexually offensive conduct; and his current status as an 88-year old man. Dr.

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

Dr. Charles Friedlander
Psychosexual Evaluation Report
November 18, 2018
Page 2

Friedlander voluntarily sought to participate in this assessment to assist in an analysis of his present risk given the factors in this case.

## Behavioral Observations and Mental Status

Dr. Friedlander was attentive, properly oriented, and very cooperative during all phases of the assessment. More specifically, during the clinical interview of Dr. Friedlander, I detected no evidence of a generalized organic basis for cognitive impairment at this time; although he did show repeated evidence of an inability to recall historical events, and his speech was at times circumstantial during the clinical interview. Dr. Friedlander was also pleasant and cooperative during the course of the clinical interview. Dr. Friedlander was an appropriately groomed Caucasian male in correctional detention, and appeared to be his stated age of 88.

## Professional Judgment Concerning Dr. Charles Friedlander's Present Psychosexual Functioning

Dr. Charles Friedlander voluntarily participated in a psychosexual evaluation. The evaluation included a clinical interview, a review of his records, comparative statistical risk analysis, and a review of the most recent scientific literature on sexual recidivism. Inspection and professional analysis of the data gathered and interpreted in this evaluation of Dr. Friedlander do not support the conclusion that in November, 2018 he is at significant or likely or even moderate – but rather very low – risk to re-engage in sexually abusive behavior. In my professional judgment, he should be afforded the opportunity to seek a placement outside of institutional incarceration given his current low sexual risk coupled with his current age and ongoing medical/health issues. In my professional judgment Dr. Friedlander is an appropriate candidate at this time for compassionate release; in 2018 he does not represent a risk to engage in either contact or non-contact sexual offending. As a clinical and forensic psychologist who has provided both evaluation and treatment services to sexual offenders (over 31 years), I find Dr. Friedlander's case to be atypical concerning sexual offender risk. An alternative placement to incarceration should in my professional judgment be identified and Dr. Friedlander allowed to reside in the community going forward in time.

Further, given the data in this case specific to Dr. Friedlander's developmental, sexual and criminal histories, in analyzing historical (static) and present-day (dynamic) risk factors, he does not present as an individual at high risk to recidivate in a sexual manner. The data generated in this evaluation of Dr. Friedlander point to a clinical conclusion that Dr. Friedlander is not driven by underlying sexual deviance. Further, the present evaluation of Dr. Friedlander reaches the professional conclusion that he would not be diagnosed clinically with any sexually-based mental disorder (or paraphilia), as noted below.

Given the data in this case I would also make the following professional observations and conclusions:

1.    Dr. Friedlander has not been a prior sexual offense recidivist, he has no contact-based victims; it is highly likely that years ago he engaged in sexualized fantasizing. His clinical presentation is inconsistent with a paraphilia diagnosis.

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

Dr. Charles Friedlander
Psychosexual Evaluation Report
November 18, 2018
Page 3

2.    Dr. Friedlander is now 88 years old, now within an age cohort associated with the absolute lowest rates of sexual offense recidivism.

3.    Dr. Friedlander does not have in general an antisocial lifestyle orientation, and given that he does not possess a paraphilia diagnosis, there is an insufficient foundation to conclude at this time that Dr. Friedlander would be in a band of sexual offense risk considered high or likely.

4.    Comparatively speaking, Dr. Friedlander's statistical risk analysis places him in a very low risk band in 2018.

5.    There are unique interpersonal issues in Dr. Friedlander's social functioning, including what most accurately from a psychological perspective can be described as social inadequacies that formed a basis for his sexual offense adjudication.

6.    Dr. Friedlander is in an age and risk-range, given his current health and medical issues in which terms of compassionate release is clearly in my professional judgment the best course of action concerning both public safety and the welfare of Dr. Friedlander.

Joseph J. Plaud, Ph.D.        Date: November 18, 2018
Executive Director
Applied Behavioral Consultants, LLC

**Appendix 1: Background Information Concerning Dr. Friedlander**

**Family Background**

Dr. Charles Jackson Friedlander was born on May 28, 1930 in New York, New York, to Madeline and Marcus Friedlander. He is the older of two children born to his parents. His sister Mary Ellen is two years younger than he. Dr. Friedlander was raised in New York. His father was in the banking industry in New York, and his mother was a homemaker whom Dr. Friedlander described as frequently absent from the family. Dr. Friedlander had a series of nannies whom he described as his primary caregivers the first eight years of his life. According to Dr. Friedlander his father did not want any children. Dr. Friedlander described a strained, practically non-existent relationship with his parents growing up. Dr. Friedlander stated during the clinical interview that his mother was diagnosed at one point with paranoid schizophrenia. Dr. Friedlander stated that there was no physical abuse in the family home. Dr. Friedlander described a more positive relationship with his paternal grandparents. Dr. Friedlander stated that he grew up in New York in a large home, but the home was divided and his sister grew up almost completely apart,

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 4**

and he did not have a meaningful relationship with her until she was in her twenties. Dr. Friedlander stated that his sister was generally not a nice person, and at one point also was diagnosed with paranoid schizophrenia. She resided at McLean Hospital in Belmont, Massachusetts for over twenty years. His sister currently resides in Arlington, Massachusetts in an assisted living facility, and Dr. Friedlander maintains contact with his 85-year old sister, primarily by telephone. His father died in 2006 at the age of 102. His mother passed away in 1993 at the age of 85. Dr. Friedlander stated that he became a caregiver for both parents as they aged.

## Educational and Employment History

Dr. Friedlander attended both public and private schools in New York, and stated he preferred to remain in public school, did better socially and academically there, but was never given a choice. He graduated in 1948 from Fieldston in Riverdale, New York. He then attended Bradley University in Peoria, Illinois for two years, and then Washington and Lee University in Lexington, Virginia. He graduated in 1953 and majored in French. He then went to work for Sears, Roebuck and Company for three months, and then became a buyer for Thalhimer's, a department store, in Richmond, Virginia. He then went to work in Los Angeles, California for the I. Magnin store as a buyer. Dr. Friedlander stated that he did not enjoy residing in Los Angeles, and decided to open up his own store in Washington, DC, a men's store he called Charles Jackson, Limited. He operated the store for four years and then described himself as "psychologically drained," as he worked nonstop in order to maintain his clientele base. He then enrolled in a counseling graduate program at George Washington University. He obtained a Master of Science degree in counseling and psychology. He then transferred to the psychology department and in 1977 obtained a Ph.D. in social psychology at George Washington University.

In the 1960s before he received his masters degree, Dr. Friedlander went to work as a counselor in a high school in Loudoun County in Virginia. He also taught French. After four years he transferred to a high school closer to Washington, DC and stated that he led the counseling department, developing his own programming. He remained there for approximately sixteen years, ending there in 1986. He stayed employed while pursuing graduate studies. He became licensed as a psychologist in Virginia, and lived in Georgetown, having purchased a home in 1965. After 1986 Dr. Friedlander went into private practice, focusing on work with divorced parents, family psychology, and adolescent suicide prevention. He also offered psychotherapy services in French. He retired in 2006.

## Substance Abuse History

Dr. Friedlander started using alcohol at age 15, and reported that he drank with some frequency for an approximate three-year history, mostly because of social anxiety. After age 18 he described himself as a very light social drinker.

## Religious History

Dr. Friedlander was not raised religiously. His father was of German Roman Catholic ancestry, and his

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 5**

mother was Jewish. When he was 14 years old Dr. Friedlander was confirmed in the Episcopal church, choosing this Christian denomination because of his social group of friends and peers. Upon occasion he attends both Jewish and Roman Catholic religious services at FCI – Butner.

## Medical and Psychiatric History

Dr. Friedlander suffers from a host of medical issues at the present time, which include the following: Brittle Type II Diabetes, Osteoarthritis, Extreme Fatigue, Back Pain/Shoulder, Renal Failure, third stage, GERD, Hypertension, Prostate Carcinoma/Prostate Hypertrophy, Hearing Loss, Sciatica, Gout, Multi Basal Cell Carcinoma, Vincent Stomatitis in Mouth/Gums, Elevated Cholesterol, Bundle Branch Block, Diabetic Retinopathy, Severe Clinical Depression, Elevated Anxiety Disorder and Degenerative Back Disease. Dr. Friedlander has been bound to a wheelchair since 2012. He presently takes a number of medications to address these multiple medical conditions. Concerning a psychiatric history, Dr. Friedlander had individual psychiatric treatment beginning when he was 12 years old. He continued to receive such clinical services until his involvement with the governing/index federal offense, detailed below. During the second clinical interview in October, 2018 Dr. Friedlander reported that he has been experiencing more significant episodes of anxiety, what he described as being "jittery." Dr. Friedlander also reports experiencing periods of depression. He is prescribed both Effexor, XR 150 mg. and Buspar 10 mg. at this time by a nurse practitioner.

## Sexual Abuse History

Dr. Friedlander denied being the victim of sexual abuse during the clinical interview. Although he did note that on frequent occasions when he was young his mother would expose herself to him, that he did not like the experiences, and to this day does not now how to interpret his mother's intentions, whether they were sexual or not. Later in the clinical interview Dr. Friedlander stated that when he was 17 years old he went to a camp in Connecticut, when another male, a little older than he, sodomized him on at least one occasion, although he recalled several attempts, but has difficulties remembering the details.

## Sexual/Relationship History

Dr. Friedlander indicated that he was approximately 14 years old when he first started masturbating. Dr. Friedlander stated that his sexual orientation is bisexual. Dr. Friedlander stated that he was generally afraid of being around boys and girls his own age growing up. Dr. Friedlander reported approximately fifteen to sixteen sexual partners, three or four females and twelve men. He stated his last physical contact with another person was in 1980, and he began having erectile dysfunction, the onset of which he attributed to medical issues, primarily his diabetes.

Dr. Friedlander denied past contacts with prostitutes, as well as any excessive or obsessive patterns of behavior concerning watching sexually explicit movies or videos. Dr. Friedlander did not indicate that he was now easily ashamed about sexual matters. He stated he thought he had adequate information about human sexuality. Dr. Friedlander states that at the present time he has significant difficulties achieving and

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 6**

maintaining a penile erection. He describes his current masturbatory practices as nonexistent. Dr. Friedlander denied any deviant sexual fantasy behaviors. The longest period of time he has resided with another person in an intimate relationship has been with a male for an approximate three-year period. He describes two significant live-in relationships. Dr. Friedlander has never been married and has no children.

## General Criminal History

There is no indication of either a juvenile or adult general criminal history concerning Dr. Friedlander.

## Instant/Governing Offense

According to records, on June 16, 2008 an undercover agent logged onto an AOL chat room as a 36-year old father who posed as a man wanting to engage in incest and also the physical abuse of children. His profile was written as a person with access to a female partner who also will engage in this activity as well as access to three children. Records continued to show Dr. Friedlander and the undercover agent engaged in an email exchange via the chat room discussing giving physical punishment to the children, including Dr. Friedlander using a 'razor strap' on his son from anywhere from 45 to 75 strikes at a given time. He chatted that he started hitting his son with a belt when he was about 8 years old. Dr. Friedlander also stated he had access to a friends' grandchildren and that they stayed with him from time to time. The next day the two spoke online again and the undercover agent introduced humiliating the children as well and Dr. Friedlander spoke again about access to his friend's grandchildren – boys who were 12 and 14 years old at the time, and he claimed to be "tearing them up daily." When the agent asked Dr. Friedlander where the assaults would take place, he emailed back he would use rooms he had specifically designed to "administer discipline" as well as his basement.

It was noted Dr. Friedlander began showing 'his sadistic and lascivious interest in physically abusing children" by telling the agent the children would totally stripped when he disciplined the children. As the days went on, the agent and Dr. Friedlander continued to talk via online chat about being discreet and watching each other inflict discipline on the children they talked about, and Dr. Friedlander offered to have the agent with his family and friends visit his home. Dr. Friedlander went on to state that most visitors brought their own children to his home. The chat continued to intensify by Dr. Friedlander admitting to being the most aggressive with the children and commenting such ideas as stating he was known to beat his son "daily, hard and long;" and that he would have to put oil and cream on the marks left on his son; and that his son was home schooled so he didn't have to worry about people seeing the marks. After ongoing dialogue online, on or about July 14, 2008 a date for the two of them to meet was set for July 21, 2008. It was noted that Dr. Friedlander began to introduce sexual acts on the children, and that he created another chat room called "family fun" which is used in cases like this to advertise an interest in engaging in incest within these type of chat rooms. On July 16, 2008 the agent had a phone call with Dr. Friedlander where Dr. Friedlander discussed again meeting to administer beatings on the agent's sons, and also engage in sexual acts with them which included oral sex. It was noted the agent continued to go online and monitor Dr. Friedlander chat room engagement for days leading up to July 21, 2008, and found him active in chat

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 7**

rooms like "male for male starting early" and "fathers chatting." The planned meeting happened between the agent and Dr. Friedlander at a preplanned location. It was noted Dr. Friedlander arrived at the meeting and displayed tools he planned on using when disciplining the children which included: two leather razor straps, an English riding crop and a heavy leather "garrison" belt. It was noted that he "had a lascivious interest in the physical abuse of children and has attempted to gain access to a child for the purpose of acting out of his lascivious interests." Dr. Friedlander was arrested after the meeting and charged with Certain Use of a Computer Service Prohibited and Traveling to meet a minor. He was later convicted and received 30 years incarceration on July 21, 2009 for the charge of Child Enticement.

During the clinical interview Dr. Friedlander stated that he did talk to the agent online, but does not remember much of the conversations. He admitted to later driving to meet the individual at a Cracker Barrel Restaurant, but when he pulled into his parking spot he was arrested. Dr. Friedlander stated that the agent had asked him to bring with him the materials later confiscated, materials described above. Dr. Friedlander stated that the entire situation as described comprised a fantasy in its totality, that he never acted out concerning any such behavior, and he articulated that to the best of his memory, he thought he would go to a restaurant, and share a meal with someone who perhaps also shared some of these fantasies; not engage or attempt to engage in actual overt behavior in any of these sexual domains. Dr. Friedlander also noted that over the years he has forgotten elements of what is described in the record, but noted that it was just a fantasy.

## Institutional and Treatment History

Dr. Friedlander is not a behavioral problem at FCI – Butner, and is not involved in mental health counseling, noting that he wishes more mental health services were available to him. He does have contact with a nurse practitioner who has prescribed medications noted above.

## Appendix 2: Comparative and Statistical Risk Estimates Concerning Dr. Friedlander

The *Sexual Violence Risk – 20 (SVR-20)* provides for a research-based structured methodology designed to evaluate 20 factors or areas of functioning in those who have been either convicted or alleged to have committed a sexual offense. While several of the factors contained in the *SVR-20* are not in and of themselves significantly predictive of sexual offense recidivism, as a whole the *SVR-20* systematically addresses issues of potential relevance to sexual offense recidivism, as well as in the future planning of psychological or behavioral interventions to manage or reduce future risk.

Given that static or historic risk factors are unchangeable by definition, emphasis in the present structured risk assessment is given to dynamic or changeable/future issues as it is anticipated that Dr. Friedlander will resolve the case prior to trial. Utilizing the *SVR-20* coding manual, the factors detailed above were systematically examined regarding Dr. Friedlander. Several of the individual *SVR-20* factors have also shown significant relationship to how old the sexual offender is when he is to be released from confinement.

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

Dr. Charles Friedlander
Psychosexual Evaluation Report
November 18, 2018
Page 8

Risk assessments such as is being performed on Dr. Friedlander should not be conducted without an understanding of the significant relationship between how old the sexual offender is when he is to be released back into the community, and what we know about the rates of sexual offense recidivism as a function of this aging process. Barbaree et al. (2003) found the following base rates of sexual offense recidivism for sexual offenders who were released at different ages (21-30, 31-40, 41-50, 51+) as 17%, 11%, 8%, and 4% respectively.

Further, Barbaree et al. (2008) found that the following *SVR-20* risk factors diminished significantly with increased aging: Sexual Deviation, Major Mental Illness, High Density Offenses, Multiple Offense Types, Escalation in Frequency/Severity, Extreme Minimization/Denial of Offenses, and Attitudes that Support or Condone Offenses.

The conclusion that emerges from an analysis of the *SVR-20* factors in the present case is that given the above referenced anchor points, it is my professional judgment that Dr. Friedlander does not evidence any pattern of risk factors either in keeping with static (or historical) factors, or present-day dynamic (or changeable) factors. There is evidence for the potential for one historic risk factor in this case not consistent with significant sexual offense risk.

| Psychosocial Adjustment | Sexual Offenses | Future Plans |
|---|---|---|
| 1. Sexual Deviation: _No_/?/Yes | 12. High Density Offenses: _No_/?/Yes | 19. Lacks Realistic Plans: _No_/?/Yes |
| 2. Victim of Child Abuse: _No_/?/_Yes_ | 13. Multiple Offense Types: _No_/?/Yes | 20. Negative Attitude Toward Intervention: _No_/?/Yes |
| 3. Psychopathy: _No_/?/Yes | 14. Physical Harm to Victim(s): _No_/?/Yes | |
| 4. Major Mental Illness: _No_/?/Yes | | Other Considerations: Data on age at release and sexual offense recidivism are also factored into the present analysis of the *SVR-20* factors. |
| 5. Substance Use Problems: _No_/?/Yes | 15. Uses Weapons or Threats of Death: _No_/?/Yes | |
| 6. Suicidal/Homicidal Ideation: _No_/?/Yes | 16. Escalation in Frequency /Severity _No_/?/Yes | |
| 7. Relationship Problems: _No_/?/Yes | 17. Extreme Minimization /Denial of Offenses: _No_/?/Yes | |
| 8. Employment Problems: _No_/?/Yes | 18. Attitudes that Support Or Condone Offenses: _No_/?/Yes | |
| 9. Past Nonsexual Violent Offenses: _No_/?/Yes | | |
| 10. Past Nonviolent Offenses: _No_/?/Yes | | |
| 11. Past Supervision Failure: _No_/?/Yes | | |

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

Dr. Charles Friedlander
Psychosexual Evaluation Report
November 18, 2018
Page 9

Calculation of comparative statistical risk to re-offend in a sexual manner was also computed utilizing the Static-99R. Dr. Friedlander's score on the Static-99 is as follows:

| Risk Factor | Yes = 1, No = 0 |
|---|---|
| 1. Age at Release? | -3 |
| 2. Ever lived with (no two year relationship)? | 0 |
| 3. Index non-sexual violence, any conviction? | 0 |
| 4. Prior non-sexual violence, any convictions? | 0 |
| 5. Prior sex offenses? (Score range is 0-3) | 0 |
| 6. Prior sentencing dates (excluding index)? | 0 |
| 7. Convictions for non-contact sex offenses? | 1 |
| 8. Any unrelated victims? | 0 |
| 9. Any stranger victims? | 0 |
| 10. Any male victims? | 0 |

Sum of Risk Factors for Dr. Friedlander as calculated above: -2

What does this score mean? First, to classify Dr. Friedlander in a range of categorical risk which ranges on the most updated coding forms from "very low risk" to "well above average" risk based upon this score tells us nothing of value or substance. The significance of Static-99R scores lies in the comparative group-based recidivism estimates associated with particular score-wise values. Unfortunately there has been a level of subjectivity introduced into the translation of score-wise values by the promulgation of several different comparison or reference groups for Static-99R, which have changed since the initial publications of both Static-99 and Static-99R. As such, it is most empirically sound to compare Dr. Friedlander's obtained score on the Static-99R with the Routine Corrections (RC) group, as follows:

**Static-99R Score-Wise Risk Estimates for Dr. Friedlander**
**Based Upon the Routine Corrections (RC) Group**

| | 5-Year Rate % | 95% Confidence Interval |
|---|---|---|
| Score on Static-99R: -2 | 1.3 | 1.0-1.8 |

In my professional opinion, if there is any doubt that the RC group is the most appropriate comparative risk analysis group to utilize in this assessment of Dr. Friedlander, the RC group has an approximate 15 percent greater AUC (Area Under the Curve) compared with the Preselected High Risk Need (PHRN) group (0.743

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 10**

versus 0.647). The AUCs for the RC and PHRN Static-99R groups were obtained from the developers' website itself: http://www.static99.org/pdfdocs/Supplemental_ Recidivism_Tables_Static 99R_Static 2002R.pdf. To calculate the AUC, one enters the score-wise number of recidivists and nonrecidivists into the JROCFIT online statistical program for computing the AUC (htttp://www.rad.jhmi.edu/jeng/javarad/roc/JROCFITi.html).

## Appendix 3: Diagnostic Analysis of Dr. Friedlander Pertaining to Sexual Disorders

From a psychodiagnostic perspective, based upon his sexual offense history in context of his overall sexual history, the diagnosis of a sexually-based mental disorder is not indicated or given in this case. The *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* or *DSM-5* contains a diagnostic section which is entitled Paraphilic Disorders. The paraphilias that are listed in the *DSM-5* include voyeuristic disorder, exhibitionistic disorder, frotteuristic disorder, sexual masochism disorder, sexual sadism disorder, pedophilic disorder, fetishistic disorder, transvestic disorder, and "catch-all" diagnostic categories referred to unspecified and other specified paraphilic disorders. According to the *DSM-5*, "a paraphilic disorder is a paraphilia that is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others. A paraphilia is a necessary but not a sufficient condition for having a paraphilic disorder, and a paraphilia by itself does not necessarily justify or require clinical intervention" (page 686). In the *DSM-5*, "Criterion A specifies the qualitative nature of the paraphilia (e.g., an erotic focus on children or on exposing the genitals to strangers), and Criterion B specifies the negative consequences of the paraphilia (i.e., distress, impairment, or harm to others)" (page 686).

As the *DSM-5* specifically notes: "In keeping with the distinction between paraphilias and paraphilic disorders, the term *diagnosis* should be reserved for individuals who meet both Criteria A and B." In other words, it is clinically possible to have a paraphilia, but not a paraphilic disorder using the diagnostic criteria of the *DSM-5*. The *DSM-5* defines the following criteria for a diagnosis of pedophilic disorder (302.2):

A.    Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).

B.    The individual has acted on these urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

C.    The individual is at least age 16 years and at least 5 years older than the child or children in Criterion A.

Note:    Do not include an individual in late adolescence involved in an ongoing sexual relationship with a 12- or 13-year-old.

Specify if:

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 11**

       Exclusive type (attracted only to children)
       Nonexclusive type

Specify if:

       Sexually attracted to males
       Sexually attracted to females
       Sexually attracted to both

Specify if:

       Limited to incest

Note that the diagnostic criteria specify that Dr. Friedlander would have to demonstrate over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children, after age 16. It is my professional judgment that by his history Dr. Friedlander would not be so diagnosed given the diagnostic criteria and other interpersonal factors, described above, that more probably formed the psychological basis for his sexual offenses in this case.

Dr. Friedlander would also not be diagnosed with antisocial personality disorder or any personality disorder under the *DSM-5* diagnostic criteria. According to the *DSM-5*, the general criteria for personality disorders include "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture. This pattern is manifested in two (or more) of the following areas: 1. Cognition; 2. Affectivity; 3. Interpersonal functioning; 4. Impulse control" (page 646). With regard to antisocial personality disorder, the essential feature is "a pervasive pattern of disregard for, and violation of, the rights of others that begins in childhood or early adolescence and continues into adulthood" (page 659).

The *DSM-5* contains an introductory session titled "Cautionary Statement for Forensic Use of *DSM-5*" which specifies that "the use of *DSM-5* should be informed by an awareness of the risks and limitations of its use in forensic settings...there is a risk that diagnostic information will be misused or misunderstood. These dangers arise because of the imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis...In most situations, the clinical diagnosis of a *DSM-5* mental disorder such as...pedophilic disorder does not imply that an individual with such a condition meets legal criteria for the presence of a mental disorder or a specified legal standard...It is precisely because impairments, abiliteis, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability" (page 25).

## Appendix 4: Information Sources

(1) Clinical interview
(2) Static-99R Actuarial Risk Analysis
(3) *SVR-20 Structured Clinical Guide for Sexual Violence Risk*

*Dedicated to Providing Comprehensive, Technologically Advanced & Empirically Validated Clinical Services*

**Dr. Charles Friedlander**
**Psychosexual Evaluation Report**
**November 18, 2018**
**Page 12**

(4) Research-based factors on risk of sexual offending
(5) Record Review

## Appendix 5: Professional Qualifications of Clinical Psychology Examiner

Since 1988 I have conducted several hundred psychological, psychosexual, and psychophysiological assessments on suspected and convicted sexual offenders in inpatient, outpatient, and incarcerated settings. I am presently Executive Director of Applied Behavioral Consultants, LLC. I have conducted both individual and group-based psychological and behavioral treatment regimens with sexual offenders, and I have designed and administered sexual offender treatment programs, such as STOP (the Specialized Treatment of Offenders Program) at the North Dakota Developmental Center. In addition to my clinical expertise in evaluations and treatment of sexual offenders, I have held several faculty appointments, including Northeastern and Friedlander Universities (the latter as a Visiting Scholar), am a member of numerous professional organizations, including a Fellow of the American Psychological Association, and have also been a Clinical Fellow of the Behavior Therapy and Research Society, and a Board Certified Behavior Analyst. I hold a Ph.D. in clinical psychology from the University of Maine, I completed my clinical internship at the University of Mississippi and Department of Veterans Affairs Medical Centers in Jackson, Mississippi, and I am a licensed psychologist and health service provider in the Commonwealth of Massachusetts and the State of New York. I have over 200 peer-reviewed publications and presentations, many of which focus on sexual behavior and sexual abuse (one of which received a research award), and serve on several journal editorial boards. Besides the Commonwealth of Massachusetts, I have testified as an expert clinical and forensic psychologist in multiple other states, as well as in the federal justice system.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR 11-935-R-6 |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT'S |
| v. | ) ) | MOTION FOR COMPASSIONATE RELEASE |
| WILFRED GARCIA, | ) ) | |
| Defendant. | ) ) ) | |

Before the Court is Defendant Wilfred Garcia's Motion for Compassionate Release, filed on February 6, 2019. (Dkt. 1371). Following the Government's Position filed on March 4, 2019, Defendant filed his Reply to Government Position on March 6, 2019.

Defendant moves this Court pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). Specifically, Defendant seeks an "order reducing his sentence to time served based on his terminal cancer" based on amended provisions of this law under the First Step Act of 2018. The Government does not contest the "terminal nature of defendant's condition," but nevertheless opposes Defendant's Motion on the ground that "the end stage is not as imminent as defendant's motion might suggest." Furthermore, the Government contends that Defendant's capacity to "harm others has not necessarily been diminished by his leukemia and bone marrow transplant," apparently disqualifying him from sentence reduction under the First Step Act. However, this Court remains

1   unpersuaded by the Government's arguments.

2       The relevant provision of the newly enacted First Step Act provides authorization for

3   sentence reductions by order of the district court "upon motion of the defendant after the

4   defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons

5   to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a

6   request by the warden of the defendant's facility, whichever is earlier." *See* First Step Act of

7   2018, Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Here, Defendant contends without

8   objection that all administrative rights to appeal the failure of the Bureau of Prisons to bring a

9   motion on his behalf have "long since been exhausted."[1] Thus, the Court retains authority under

10  18 U.S.C. § 3582(C)(1)(A)(i) to "reduce the term of imprisonment, after consideration of the

11  factors set forth in section 3553(a) to the extent they are applicable," upon a finding of

12  "extraordinary and compelling reasons warrant[ing] such a reduction[.]"

13      The Sentencing Guidelines clarify that "extraordinary and compelling" circumstances

14  potentially warranting sentence reduction include a situation in which "[t]he defendant is suffering

15  from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). *A*

16  *specific prognosis of life expectancy* (i.e., a probability of death within a specific time period) *is*

17  *not required.* Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis

18  (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i)

19  (emphasis added). Moreover, the district court is instructed to contemplate "the defendant's

20  family circumstances . . . and whether the defendant is a danger to the safety of any other person

21  or to the community" in ordering sentence reduction under the Act. *Id.,* cmt. n.4.

22      The relevant factors weigh decidedly in Defendant's favor. Defendant has been diagnosed

23  with terminal Chronic Myelogenous Leukemia (CML), a disease that meets the Sentencing

24  Guidelines' non-exhaustive definition; his condition renders him in such poor health that he poses

25

26  ――――――――――――――

27      [1] *Accord* Decl. of James Craven, Dkt. 1371, Ex. A. Defendant details a long series of unsuccessful attempts, including "15 letters" sent by his counsel, James Craven, to the Bureau of Prisons requesting compassionate release, as well as correspondence to the Bureau of Prisons by Congressman Andy Barr of Kentucky on Defendant's behalf. (Dkt.

28  1371 at 2).

Case 2:11-cr-00935-R   Document 1392   Filed 03/22/19   Page 3 of 3   Page ID #:9197

1   no reasonable nor substantial risk of danger to his family or the community.  Whereas Defendant's

2   condition was "briefly in remission" several years ago, the disease has recently "returned with a

3   vengeance" and his attending physician advises that he has mere months to live.  Defendant's

4   physicians and the warden responsible for his supervision during his term of incarceration support

5   his compassionate release given the return of his terminal illness, which entails "chronic intense

6   pain, little relieved by medication" at this advanced stage.  Furthermore, Defendant has a nine-

7   year-old daughter who suffers from a serious birth defect, and he has already served ninety-nine

8   months in prison (of a total of 180 months) for his felony drug offense.  Defendant, moreover, has

9   secured living arrangements for the period following his release, which have been approved by the

10  USPO in the Eastern District of Kentucky.

11      The Court finds that Defendant's sentence to date, particularly considering his age, illness,

12  and debilitating features of his condition, "is sufficient, but not greater than necessary," to satisfy

13  the requirements of 18 U.S.C § 3553(a) and accomplish federal sentencing objectives.

14  Accordingly, the Motion is GRANTED.

15      **IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release is

16  GRANTED.

17      **IT IS FURTHER ORDERED** that Defendant's term of imprisonment is reduced to the

18  time he has already served.  Defendant shall be released from the custody of the Bureau of Prisons

19  as soon as possible.

20      **IT IS FURTHER ORDERED** that upon his release from the custody of the Federal

21  Bureau of Prisons, Defendant shall begin serving the five-year term of supervised release

22  previously imposed.  During the time of supervision, the determination of Defendant's residence

23  shall be approved by the Probation Office.

24

25  Dated: March 22, 2019

26                                              _____
                                                HON. MANUEL L. REAL
27                                              UNITED STATES DISTRICT JUDGE

28  CC: BOP; USM; USPO

                                    3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:09-CR-115-O |
| | § | |
| STEVEN RAY ADAMS, | § | |
| DEFENDANT. | § | |

## ORDER

Pending before the Court is Defendant's Motion for Compassionate Release (ECF No. 1226). He asserts he has been diagnosed with a progressive form of ALS and has limited time to live. Attached to his motion are a number of medical records supporting both this diagnosis and prognosis. The United States opposes this motion (ECF No. 1232), arguing that it is premature until the Bureau of Prisons ("BOP") completes its review of this request. The parties appeared, through counsel, at a hearing on this matter on May 3, 2019 (ECF No. 1235). During this hearing, the parties presented additional information from recently received medical records indicating that Defendant's condition continues to deteriorate.

Based on the foregoing, Defendant carried his burden under 18 U.S.C. §3582, his Motion for Compassionate Release is **GRANTED**, and his sentence is reduced to time served. This decision does not affect any other term of Defendant's sentence and his supervised release officer shall put in place an appropriate plan of supervision. The BOP is accordingly ordered to release Defendant from custody, but this order is stayed until BOP processes it according to its standard protocol for compassionate releases.

Signed this 3rd day of May, 2019.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                              Case No. 4:12-cr-00306-06 KGB

TERRY WAYNE LEGGITT                                                        DEFENDANT

### ORDER

Before the Court is defendant Terry Wayne Leggitt's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. No. 910).  In the motion, Mr. Leggitt states that he has conferred with the Assistant United States Attorney who prosecuted this case, and she has no objection to his request for compassionate release.  For the following reasons, the Court grants Mr. Leggitt's motion (*Id.*).

Mr. Leggitt pleaded guilty to Conspiracy to Distribute Methamphetamine, a Class B Felony, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846 (Dkt. No. 782, at 1).  The Court sentenced Mr. Leggitt to a term of 56 months of imprisonment in the custody of the United States Bureau of Prisons ("BOP") (*Id.*, at 2).  Mr. Leggitt was also sentenced to four years of supervised release, substance abuse treatment, and a $100.00 special penalty assessment (*Id.*, at 3-5).  Mr. Leggitt has a current release date of August 27, 2019.  *See* BOP Inmate Locator, http://www.bop.gov/inmateloc/ (search by inmate number) (last visited April 29, 2019).  Mr. Leggitt now moves the Court for compassionate release pursuant to Section 603(b)(1) of the First Step Act (Dkt. No. 910).

Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A), and that section now provides that the sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights

to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). The Court may grant such a motion for compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the Court finds that "extraordinary and compelling reasons warrant such a reduction . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). In addition, the reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. 3582(c)(1). The Sentencing Commission's policy statement regarding compassionate release is set forth in U.S. Sentencing Guidelines ("U.S.S.G") § 1B1.13, which recognizes that a medical condition of the defendant may qualify as an "extraordinary and compelling" reason:

> (A)    Medical Condition of the Defendant—
>
> (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory) . . . .
>
> (ii)    The defendant is—
>
> (I)    suffering from a serious physical or medical condition,
>
> (II)    suffering from a serious functional or cognitive impairment, or
>
> (III)    experiencing deteriorating physical or mental heath because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, application note 1.

Here, Mr. Leggitt avers that he has fully exhausted his administrative remedies available within the BOP pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Leggitt also attaches to his motion copies of three letters sent to Kenneth Hyle, the Acting Assistant Director and General Counsel of the BOP, dated June 14, 2018, October 16, 2018, and January 2, 2019 (Dkt. No. 910-1, at 1-3). In

these letters, Mr. Leggitt's counsel argues that Mr. Leggitt is entitled to compassionate release and asks Mr. Hyle to agree to the request for compassionate release (*Id.*). There is no record evidence that Mr. Leggitt received any response from Mr. Hyle or any designee to his request for compassionate release. The United States does not raise an objection contending that Mr. Leggitt has failed to comply with the requirements of 18 U.S.C. § 3582(c)(1)(A) with respect to exhaustion. Further, Mr. Leggitt states that he has fully exhausted his administrative remedies available within the BOP. Based upon the record evidence before the Court, it appears that more than 30 days have passed without response since Mr. Leggitt filed the requests for compassionate release under 18 U.S.C. § 3582(c)(1)(A) that are a part of the record in this case. For these reasons, the Court finds that Mr. Leggitt has complied with the requirements of 18 U.S.C. § 3582(c)(1)(A) with respect to exhaustion.

The Court also finds that Mr. Leggitt has demonstrated the existence of "extraordinary and compelling reasons" to support his motion pursuant to § 3582(c)(1)(A)(i). According to Mr. Leggitt's medical records, which are filed under seal, Mr. Leggitt has a history of laryngeal cancer, and he suffers from a variety of symptoms that arose because of that cancer and his treatment for the same, including malignant neoplasm of larynx (laryngeal cancer), a tracheostomy, sensitivity and pain at the trach site, burning throat pain, bloody secretions, and difficulty swallowing. Mr. Leggitt's medical records further indicate that he has recently suffered from coughing up blood and unexpected weight loss. Mr. Leggitt's medical records also indicate that he takes pain medication to manage the pain associated with his cancer and that he uses an artificial larynx to communicate. The Court agrees with the United States and Mr. Leggitt that this record evidence demonstrates that Mr. Leggitt suffers from a "serious physical or medical condition"—namely, laryngeal cancer and the symptoms associated with that cancer and the treatment of the same—

that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.

Accordingly, after considering the record evidence and the factors set forth in 18 U.S.C. § 3553(a), the Court finds that Mr. Leggitt has demonstrated the existence of "extraordinary and compelling reasons" that render him eligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court therefore grants Mr. Leggitt's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. No. 910). Mr. Leggitt's sentence of imprisonment is hereby modified to one of time served. All other conditions from the original judgment, including but not limited to the term of supervised release imposed to follow Mr. Leggitt's term of imprisonment, remain as initially imposed (Dkt. No. 782).

It is so ordered this 6th day of May 2019.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:02-cr-00018-LJM-CMM |
| | ) | |
| OSCAR B. MCGRAW, JR., | ) | -01 |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Pending before the Court is Oscar McGraw, Jr.'s Renewed Motion for Compassionate

Release, [Filing No. 81], filed pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step

Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239, and the Court's Order dated March

1, 2019, which directed Mr. McGraw to renew his motion upon receipt of an updated medical

report, [Filing No. 79]. Mr. McGraw asks the Court to reduce his currently-imposed life sentence

and order that he be released on conditions to his sister's home in Montana. For the reasons set

forth below, the Court **GRANTS** Mr. McGraw's Motion.

## I.
### BACKGROUND

On August 28, 2003, Mr. McGraw was sentenced to life imprisonment after a jury found

him guilty of conspiracy to possess with intent to distribute methamphetamine. [Filing No. 1 at

8]; *see United States v. Gray*, 410 F.3d 338 (7th Cir. 2005) (describing Mr. McGraw's offense and

affirming his conviction); *United States v. Lenover*, 182 F. App'x 563, 568 (7th Cir. 2006)

(affirming Mr. McGraw's life sentence). In 2017 and 2018, the Court received letters from Mr.

McGraw's sister and counsel requesting a recommendation that the Bureau of Prisons ("BOP")

grant Mr. McGraw's request for compassionate release based upon his deteriorating physical

condition. [Filing No. 56; Filing No. 60.] Judge Larry J. McKinney made such a recommendation

in April 2017, [Filing No. 58], as did the undersigned in July 2018, [Filing No. 61]. On both

occasions, the Court made the recommendations without the benefit of medical records or the input

of the Government; at the time, the sole authority to seek a compassionate-release sentence

modification rested with the BOP.

That changed, however, with the passage of the First Step Act in late 2018, which now

provides an avenue for a defendant to seek compassionate release from the Court after exhausting

administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Pursuant to the newly-amended

provision, Mr. McGraw, by counsel, filed his Motion for Compassionate Release on January 24,

2019. [Filing No. 64.] On February 12, 2019, the Court directed Mr. McGraw to supplement the

record with medical documentation, [Filing No. 72], which Mr. McGraw did on February 14, 2019,

[Filing No. 73].

On March 1, 2019, without objection, the Court directed that it would hold this matter in

abeyance to allow for Mr. McGraw's BOP physician, Dr. Sara Beyer, to prepare a report. [Filing

No. 79.] The Government has now filed Dr. Beyer's report and supporting medical

documentation. [Filing No. 80; Filing No. 80-1; Filing No. 80-2.] The entirety of Dr. Beyer's

report[1] need not be repeated here, though several of her findings, detailed below, are critical to the

issue of compassionate release.

---

[1] Mr. McGraw did not heed the Court's direction to "specifically set[] forth the evidence that
supports [his] contention that he meets the 'extraordinary and compelling' standard" for
compassionate release. [Filing No. 79 at 2; Filing No. 79 at 3 ("The parties may *cite to the medical
records* already on the docket at Filing No. 73 as well as the forthcoming medical report to *support
their assertions*." (emphasis added).] Instead, he generally refers to various conditions without
citation. [*See, e.g.*, Filing No. 81 at 1-2 (describing "serious medical conditions, documented by
his BOP medical records and by records of the Duke University Medical Center"); Filing No. 86
(lacking a single specific citation to the record)]. Mr. McGraw submitted over 600 pages of

Mr. McGraw is 72 years old.  [*See* Filing No. 73-1 at 1.]  He currently requires a wheelchair, although he can walk for short distances.  [Filing No. 80-1 at 3.]  Mr. McGraw also requires a portable oxygen machine.  [Filing No. 80-1 at 3.]  He suffers from a number of conditions, including: "Type II Diabetes, insulin-dependent, with peripheral neuropathy; hyperlipidemia; emphysema; chronic kidney disease stage III; Hepatitis C type 1A (treatment completed and no sign of disease noted); and[] chronic pain."  [Filing No. 80-1 at 3.]  Many of these conditions, such as his diabetes and hypertension are fairly well managed or controlled through the medical treatment Mr. McGraw receives while incarcerated.  [Filing No. 80-1 at 3-4.]

Mr. McGraw has at times suffered from bouts of severe, uncontrollable diarrhea.  [Filing No. 80-1 at 4; Filing No. 80-2 at 13.]  Loperamide treatment has provided some improvement for the condition, though he continues to have issues.  [Filing No. 80-1 at 4; Filing No. 80-2 at 13.] Mr. McGraw suffers from chronic pain, but has refused fentanyl and Lyrica because he does not want to be "doped up on drugs," presumably due to the well-known side effects of such drugs. [Filing No. 80-1 at 5.]  He has also in the past suffered from swelling and ulcers, [Filing No. 80-1 at 5], and complained of bruising and scabs on his hands during a recent medical visit, [Filing No. 80-2 at 1].  Ultimately, Dr. Beyer opines that Mr. McGraw suffers from serious, chronic medical conditions, though he is able to function in the correctional facility with assistance.  [Filing No. 80-1 at 5-6.]  Dr. Beyer does not believe that Mr. McGraw suffers from a "terminal illness."  [Filing No. 80-1 at 6.]

---

medical records, [*see* attachments to Filing No. 73], and it is not the Court's responsibility to sift through them.

3

On March 14, 2019, after the Government filed Dr. Beyer's report, Mr. McGraw renewed his Motion for Compassionate Release as directed. [Filing No. 81.] That Motion is now fully briefed and ripe for decision.

## II.
### DISCUSSION

Mr. McGraw argues that the Court should order that he be released based upon his serious medical conditions, explaining that the U.S. Probation Office in Montana has approved Mr. McGraw's sister's home for placement. [Filing No. 81.] In response, the Government disputes Mr. McGraw's characterization of his medical conditions and argues that, regardless, compassionate release is not appropriate because Mr. McGraw poses a danger to the community and because the 18 U.S.C. § 3553(a) factors do not favor release. [Filing No. 85 at 8-9.]

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3581(c), contained in U.S.S.G. § 1B1.13 and the accompanying Application Notes. While that particular policy

4

statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in section 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. McGraw is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

**A. Extraordinary and Compelling Reasons**

The Government first argues that Mr. McGraw does not meet the medical criteria for compassionate release. The Application Notes to section 1B1.13 provide, in part:

> **1. Extraordinary and Compelling Reasons.**—. . . [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.**—
>> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> **(ii)** The defendant is—
>>> **(I)** suffering from a serious physical or medical condition,

> **(II)** suffering from a serious functional or cognitive impairment, or
>
> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> . . .
>
> **2. Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

Dr. Beyer's report supports a finding that Mr. McGraw "suffer[s] from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 application note (1)(A)(ii)(I). Neither party contests Dr. Beyer's conclusion that Mr. McGraw suffers from "chronic and serious" conditions. [Filing No. 80-1 at 6.] That the conditions are chronic indicates that Mr. McGraw is not expected to recover from his conditions.

The Court does not credit, however, the Government's reliance upon Dr. Beyer's conclusion that Mr. McGraw's "medical condition has not substantially deteriorated to the point that [he] does not have the ability to function in a correctional facility." [Filing No. 80-1 at 6; *see* Filing No. 85 at 5.] For one, Dr. Beyer's statement does not reflect the standard set forth in the Application Notes. Note (1)(A)(ii) does not require that Mr. McGraw be unable to function in a correctional facility. Rather, it requires that he have a substantially diminished ability to provide self-care within the correctional facility environment. Mr. McGraw's severe and chronic pain is

6

unchallenged, apart from the Government's suggestion that Mr. McGraw has refused powerful medication because his pain does not warrant the medication. To the contrary, as explained in Mr. McGraw's reply and reflected in his statement to a medical provider about not wanting to be "doped up," Mr. McGraw has offered credible, valid reasons for his refusal to take the medications, including wanting to avoid their powerful and deleterious side effects. Additionally, though his diarrhea is "stabilized" (to use Dr. Beyer's word) such that Mr. McGraw is usually able to make it to a toilet, [Filing No. 80-1 at 4], treatment notes from December 2018 indicate that the issue remains far from resolved, [Filing No. 80-2 at 13].

Notwithstanding Dr. Beyer's assertion that "Mr. McGraw's current medical needs are being met by the medical providers at FCI Butner II and the other providers," [Filing No. 80-1 at 5], the Court finds it highly pertinent that Mr. McGraw's conditions require frequent monitoring, evaluation, and treatment. The same is true of the conditions Dr. Beyer describes as "controlled," "well-managed," or "stabilized"—these terms all indicate a need for active monitoring and treatment. Furthermore, Mr. McGraw is fully dependent on oxygen and a wheelchair. Taken all together, the Court finds that Mr. McGraw's chronic, serious conditions, including those that are mitigated when properly treated by medical professionals, demonstrate a substantially diminished ability to provide self-care from which he is not expected to recover. Extraordinary and compelling reasons therefore support a reduction in sentence.

**B. Danger to Any Other Person or to the Community**

The Government next argues that Mr. McGraw should not be released because he presents a danger to the community, largely incorporating by reference one of its previous briefs filed on the issue. [Filing No. 85 at 8 (citing Filing No. 69 at 4-5).] In that brief, the Government argued that Mr. McGraw's previous convictions, his leadership of the Diablos Motorcycle Gang, the facts

7

that led to his conviction, and his access to a telephone on release demonstrate that Mr. McGraw

would be a danger if released.  [Filing No. 69 at 4-5.]

The Guideline provides that compassionate release is appropriate only where the

"defendant is not a danger to the safety of any other person or to the community, as provided in

18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).  Section 3142(g) is the provision outlining the factors

the Court must consider in determining whether a defendant should be detained pending trial.  In

turn, § 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether
> there are conditions of release that will reasonably assure the appearance of the
> person as required and the safety of any other person and the community, take into
> account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether
>> the offense is a crime of violence, a violation of section 1591, a Federal
>> crime of terrorism, or involves a minor victim or a controlled substance,
>> firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family
>>> ties, employment, financial resources, length of residence in the
>>> community, community ties, past conduct, history relating to drug
>>> or alcohol abuse, criminal history, and record concerning
>>> appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person
>>> was on probation, on parole, or on other release pending trial,
>>> sentencing, appeal, or completion of sentence for an offense under
>>> Federal, State, or local law; and
>> **(4)** the nature and seriousness of the danger to any person or the community
>> that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. McGraw's frail condition—he is dependent upon oxygen and a wheelchair—

demonstrates that there are conditions the Court could impose to "reasonably assure . . . the safety

of any other person and the community."  The Government expresses concerns about Mr. McGraw

conducting illegal business via telephone.  The Court will order an updated version of the

8

conditions of supervised release to ensure that Mr. McGraw does not have contact with those engaging in criminal activity and extend the term of supervision to life. With probation's oversight, this condition, along with the others imposed, will ensure the protection of the public. The seriousness of Mr. McGraw's offense and criminal history are wholly outweighed by Mr. McGraw's serious, deteriorating conditions and dependence upon oxygen and a wheelchair. The Court finds it significant that the U.S. Probation Office in Montana has approved Mr. McGraw's sister's residence for placement on release, providing a place for oversight on release and further allaying any concerns regarding any danger Mr. McGraw may pose to the community. Pursuant to § 3142(g), the Court finds that Mr. McGraw does not pose a danger to any other person or the community under the conditions of release.

### C. Section 3553(a) Factors

Finally, the Government argues that the § 3553(a) factors do not favor early release, citing primarily the seriousness of Mr. McGraw's offense and of his past conduct and the need for deterrence. [Filing No. 85 at 9.] Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>> **(C)** to protect the public from further crimes of the defendant; and
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> **(3)** the kinds of sentences available;
>> **(4)** the kinds of sentence[s] and the sentencing range established for--

9

> (A) the applicable category of offense committed by the applicable
> category of defendant as set forth in the guidelines [issued by the
> Sentencing Commission . . . ;]
> (5) any pertinent policy statement guidelines [issued by the Sentencing
> Commission . . . ;]
> (6) the need to avoid unwarranted sentence disparities among defendants
> with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Ultimately, the Court agrees with the Government that Mr. McGraw's conduct in this case and in the past was very serious. But Mr. McGraw has been in custody since September 2002—nearly 17 years. That is a significant sanction. And the Court will impose lifetime supervision following release, which will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. McGraw's conduct. But further incarceration is not needed to deter Mr. McGraw from further offenses; nor, for the reasons described above, is it necessary to protect the public from future crimes. Finally, Mr. McGraw has served much of his sentence while seriously ill and in physical discomfort. This means that his sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2). The Court therefore concludes that the applicable § 3553(a) factors support Mr. McGraw's request for compassionate release.

## III.
### CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the court finds that extraordinary and compelling reasons warrant a reduction of Mr. McGraw's sentence, that Mr. McGraw does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy

statements. Therefore, the Court **GRANTS** Mr. McGraw's Renewed Motion for Compassionate

Release [81], **ORDERS** that Mr. McGraw's sentence of imprisonment be reduced to **time served**,

and further **ORDERS** the BOP to release Mr. McGraw for placement at his sister's residence in

Ravalli County, Montana, to be supervised for life.

Mr. McGraw is responsible for arranging his own transportation to Montana, and he shall

report to the U.S. Probation Office within 72 hours of his arrival in Montana.

Finally, Mr. McGraw's conditions of supervised release have been updated pursuant to 7th

Circuit case law, and are imposed as follows:

1) You shall report to the probation office in the judicial district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

2) You shall report to the probation officer in a manner and frequency directed by the court or probation officer. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

3) You shall permit a probation officer to visit you at a reasonable time at home, or another place where the officer may legitimately enter by right or consent, and shall permit confiscation of any contraband observed in plain view of the probation officer. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

4) You shall not knowingly leave the judicial district without the permission of the court or probation officer. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

5) You shall answer truthfully the inquiries by the probation officer, subject to your 5th Amendment privilege. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

6) You shall not meet, communicate, or otherwise interact with a person you know to be engaged, or planning to be engaged, in criminal activity. You shall report any contact with persons you know to be convicted felons to your probation officer within 72 hours of the contact. **Justification:** *The*

11

*Court is imposing this condition to reduce the risk of recidivism and provide for public safety.*

7) You shall reside at a location approved by the probation officer and shall notify the probation officer at least 72 hours prior to any planned change in place or circumstances of residence or employment (including, but not limited to, changes in who lives there, job positions, job responsibilities). When prior notification is not possible, you shall notify the probation officer within 72 hours of the change. **Justification:** *The Court imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

8) You shall not own, possess, or have access to a firearm, ammunition, destructive device or dangerous weapon. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

9) You shall notify the probation officer within 72 hours of being arrested, charged, or questioned by a law enforcement officer. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

10) You shall maintain lawful full time employment, unless excused by the probation officer for schooling, vocational training, or other reasons that prevent lawful employment. **Justification:** *The Court is imposing this condition to ensure the defendant maintains gainful employment and to reduce the risk of recidivism.*

11) You shall make a good faith effort to follow instructions of the probation officer necessary to ensure compliance with the conditions of supervision. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

12) You shall participate in a substance abuse or alcohol treatment program approved by the probation officer and abide by the rules and regulations of that program. The probation officer shall supervise your participation in the program (provider, location, modality, duration, intensity, etc.). The court authorizes the release of the presentence report and available evaluations to the treatment provider, as approved by the probation officer. **Justification:** *The Court is imposing this condition to address the defendant's history of methamphetamine abuse.*

13) You shall not use or possess any controlled substances prohibited by applicable state or federal law, unless authorized to do so by a valid prescription from a licensed medical practitioner. You shall follow the prescription instructions regarding frequency and dosage. **Justification:**

*The Court is imposing this condition to address the defendant's history of methamphetamine abuse.*

14) You shall not use or possess alcohol. **Justification:** *The Court is imposing this condition due to the defendant's history of methamphetamine abuse. It will also reduce the risk of recidivism and assist in his rehabilitation.*

15) You shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, Spice, glue, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption. **Justification:** *The Court is imposing this condition to address the defendant's history of methamphetamine abuse.*

16) You shall submit to substance abuse testing to determine if you have used a prohibited substance or to determine compliance with substance abuse treatment. Testing may include no more than 8 drug tests per month. You shall not attempt to obstruct or tamper with the testing methods. **Justification:** *The Court is imposing this condition to allow the probation officer to monitor the defendant's sobriety.*

17) You shall provide the probation officer access to any requested financial information and shall authorize the release of that information to the U.S. Attorney's Office for use in connection with the collection of any outstanding fines and/or restitution. **Justification:** *The Court is imposing this condition to assist the probation officer in verifying the legitimacy of the defendant's income, and to ensure the defendant is paying the maximum amount possible toward any fine.*

18) You shall submit to the search by the probation officer of your person, vehicle, office/business, residence, and property, including any computer systems and hardware or software systems, electronic devices, telephones, and Internet-enabled devices, including the data contained in any such items, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving you and that the area(s) to be searched may contain evidence of such violation or conduct. Other law enforcement may assist as necessary. You shall submit to the seizure of contraband found by the probation officer. You shall warn other occupants these locations may be subject to searches. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

19) You shall not be a member of any gang or associate with individuals who are members. **Justification:** *The Court is imposing this condition to*

13

*assist the probation officer in monitoring the defendant for protection of the community.*

Date: 5/9/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov

James B. Craven, III
jbc64@mindspring.com

U.S. Probation Office

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

STEVE ALAN BRITTNER,

Defendant.

CR 16–15–M–DLC

ORDER

Defendant Steve Alan Brittner filed a Motion to Reduce Sentence Pursuant
to 18 U.S.C. § 3582(C)(1)(A)(i) based on the "extraordinary and compelling"
reason that he has terminal brain cancer.    (Doc. 79.)    The United States opposes
the Motion.    (Doc. 82.)    For the reasons explained below, the Court grants the
Motion.

## BACKGROUND

On September 13, 2016 the Court sentenced Brittner to 48 months in prison
after he plead guilty to distribution of methamphetamine in violation of 21 U.S.C.
§ 846.    (Doc. 65.)    In January 2018, doctors diagnosed Brittner with a malignant
brain tumor, and he underwent surgery in March 2018.    (Doc. 80 at 4.)    Brittner
subsequently applied for compassionate release from the Bureau of Prisons (BOP)
pursuant to 18 U.S.C. § 3583(c)(1)(A) and was denied.    (Doc. 83 at 1–2.)    In the

-1-

memorandum that accompanied his denial, the Assistant Director of the BOP indicated that his post-surgery cranial imagery did not reveal evidence of "tumor recurrence or progression." (*Id.* at 1.)   The memo also indicated that Brittner had a life expectancy that exceeded his remaining term of incarceration. (*Id.*)

In October 2018, Brittner was evaluated by his oncologist for fatigue and weakness. (*Id.* at 4.)   His prognosis at the time was "poor." (*Id.*)   In November 2018, Brittner was evaluated again for weakness, fatigue, and worsening memory. (*Id.* at 6.)   His prognosis was still "poor" and his oncologist discussed the possibility of hospice care. (*Id.*)

In December, the President signed the First Step Act into law. (Doc. 80 at 2.)   As modified, 18 U.S.C. § 3582(c)(1)(A)(i) allows a sentencing court to modify a sentence when "extraordinary and compelling reasons warrant such a reduction."   The United States Sentencing Guidelines provide that a terminal illness is one such "extraordinary and compelling" reason.   U. S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A) (2018).

## DISCUSSION

This Court's duty is to impose a sentence that is "sufficient but not greater than necessary."   18 U.S.C. § 3553(a).   This Court may reduce a term of imprisonment where "extraordinary and compelling" circumstances render a Court's previous sentence greater than necessary.   *See* 18 U.S.C. § 3582(c)(1)(A).

-2-

In order to do so, an inmate must first exhaust his or her administrative remedies, and further demonstrate that he or she "is not a danger to the safety of any person or to the community," and that a reduced sentence "is consistent with the policy statement." *Id.*

The Sentencing Commission promulgated a policy statement that sets out the criteria for finding an "extraordinary and compelling" reason.   U.S. Sentencing Manual § 1B1.13 (2018).   One such circumstance occurs when the "defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." *Id.* at § 1B1.13 cmt. 1(A) (2018).

As a preliminary matter, the Court finds that jurisdiction is proper because Brittner has exhausted his administrative remedies.   He applied for compassionate release and was denied first in late August 2018, and again at the end of October 2018.   This constitutes a "final administrative decision."   28 C.F.R. § 571.63(d).

Brittner asks this Court to reduce his term of imprisonment because he has served three quarters of his incarceration, he has terminal brain cancer and would like to benefit from end-of-life care near his family, and he is not a danger to the community.   (Doc. 80 at 3, 5–7.)

The Government argues that this Court should not reduce Brittner's sentence

-3-

because "he cannot show that he has a terminal illness, as defined under the

guidelines, nor can he show that his ability of self-care has been substantially

diminished."   (Doc. 81 at 2.)   The Government believes that Brittner does not

have a "terminal illness" within the meaning of the guidelines because his medical

records "do not indicate that the tumor has metastasized."   (*Id.* at 5.)

The Government's argument is premised on a misreading of the statute.

Brittner does not need to show that his tumor has metastasized for his condition to

be "terminal."   The guidelines provide a number of examples of medical

conditions that would meet the standard for a "terminal illness."   A "metastatic

solid-tumor cancer" is merely one.   Others include "amyotrophic lateral sclerosis,

end-stage organ disease, and advanced dementia."   U.S. Guidelines Manual §

1B1.13 cmt. 1(A) (2018).   These examples are by no means an exhaustive list of

medical conditions that could be characterized as "terminal."   *See, e.g., Federal*

*Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term

'including' is not one of all-embracing definition, but connotes simply an

illustrative application of the general principle"); *United States v. Philip Morris*

*USA Inc.*, 566 F.3d 105, 1115 (D.C. Cir. 2009) (explaining that including indicates

a nonexhaustive list).   The question is whether Brittner's condition is similar

enough to the enumerated examples to fall within the guideline's definition.

Brittner was diagnosed with a brain tumor in January 2018, when he

-4-

presented with a new-onset seizure.    Brittner's course of treatment at FMC Butler
included craniotomy and resection of a 7.9 cm. tumor in March 2018 followed by
chemotherapy and radiation.    The post-surgical pathology identified the
Defendant's tumor as a WHO Grade III left temporal anaplastic astrocytoma with
IDH wild type and no 1p/19q co-deletion.    (Doc. 83 at 1.)

    In 1993, the World Health Organization (WHO) adopted a classification
system based on the assumption that each type of brain tumor results from a
specific cell type.    Astrocytomas are graded according to the degree of their
abnormality, with the most common grading system on a scale of I to IV.    WHO
grade III anaplastic astrocytomas are now each divided into IDH-mutant or IDH-
wildtype.    Am. Brain Tumor Ass'n, Glioblastoma and Malignant Astrocytoma 5
(2017).    The Defendant's diagnosis indicates he suffers from an IDH-wildtype
tumor, without mutant IDH.    Grade III astrocytomas without mutant IDH are
considered "pre-glioblastomas", having a poorer prognosis than IDH mutant
tumors.    *Id.*    Furthermore, high-grade astrocytomas can be aggressive tumors,
which, over time, usually recur, and when they do, may recur as a higher grade
tumor.    *Id.* at 17.

    According to the BOP, as of August 22, 2018, Brittner's life expectancy was
"likely to exceed 18 months."    (Doc. 83 at 1.)    Prognosis, which is reported in
terms of median overall survival, can be variable.    According to the American

-5-

Brain Tumor Association, median overall survival for adults with an anaplastic

astrocytoma is about two to three years. Am. Brain Tumor Ass'n, *supra* at 19.

However, the literature indicates that the Defendant's specific tumor carries with it

a much shorter median overall survival of 1.0 to 1.3 years, Louis Burt Nabors M.D.

et al., *NCCN Guidelines Insights: Central Nervous System Cancers*, 15 J. of the

Nat'l Comprehensive Cancer Network 11 (Version 1.2017), or 12 months, Natsuki

Hattori et al., *World Health Organization Grade I–III Astrocytomas Consist of*

*Genetically Distinct Tumor Lineages*, 107 Cancer Sci 8, 1161 (2016).

Of importance, the treatment options available to Brittner have been

exhausted. According to the last treatment note available to the Court, dated

November 15, 2018, Brittner reported to his treating physician with subjective

complaints of fatigue, worsening memory and intermittent weakness. (Doc. 83 at

6.) The plan on that date was to hold, or discontinue further therapy, and it was

recommended to Brittner that he consider comfort measures, specifically hospice,

which his treating oncologist "considered very reasonable due to worsening

performance status." (*Id.*)

It is clear from the nature of his disease and his worsening condition as

documented above, that Brittner's prognosis is grim, his disease is terminal, and

the length of his life can be measured most likely in weeks, as opposed to months.

Second, the Government argues that Brittner cannot show an "extraordinary

-6-

and compelling" circumstance because his medical records do not indicate an

inability to care for himself.    In finding this necessary, the Government reads a

conjunctive requirement into the guideline comment where none occurs.    The

statute provides that "extraordinary and compelling" reasons exist "under *any* of

the circumstances set for below."    U.S. Sentencing Guidelines Manual § 1B1.13

cmt. 1 (2018) (emphasis added).    A "[m]edical [c]ondition" is one example of an

"extraordinary or compelling" circumstance when a defendant satisfies *either*

subsection (i) or subsection (ii), but he or she need not satisfy both.[1]    That Brittner

failed to show under subsection (ii) that he is suffering from some set of symptoms

---

[1] The precise language provides:

(1)  Extraordinary and Compelling Reasons.  Provided the defendant meets the requirements of
subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set
forth below.

    (A)  Medical Condition of the Defendant

        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced
        illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a
        probability of death within a specific time period) is not required. Examples include
        metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ
        disease, and advanced dementia.

        (ii) The defendant is
            (I)  suffering from a serious physical or medical condition,
            (II)  suffering from a serious functional or cognitive impairment, or
            (III)  experiencing deteriorating physical or mental health because of the aging
            process,
        that substantially diminishes the ability of the defendant to provide self-care within the
        environment of a correctional facility and from which he or she is not expected to
        recover.

"that substantially diminished [his] ability" to care for himself is irrelevant, as is each of the other criteria listed in that subsection, so long as he can show that he has a terminal illness in satisfaction of subsection (i).    As already discussed, Brittner's condition is terminal, making him eligible to receive a reduced sentence.

Finally, the Court is convinced that Brittner poses no safety risk to the community.    Brittner is in an advanced stage of cancer and is wheelchair bound. (Doc. 80 at 6.)    He is fatigued, weak, and his memory continues to worsen. (Doc. 80 at 4.)    When released, Brittner will be cared for in the home of his fiancée and attended by his family members and hospice care.    His fiancée's home has already been inspected by the United States Probation Office and determined to be an appropriate environment for his release.    (Doc. 80 at 6.) Finally, Brittner will remain under the supervision of the Probation Office and subject to the terms of his supervised release.    (Id. at 7.)

Having concluded that Brittner's terminal illness constitutes a "extraordinary and compelling" circumstance in accordance with the policy statement, and that he poses no safety risk to his community, the Court concludes that a reduction is proper under 18 U.S.C. § 3553(a).

IT IS ORDERED that Defendant Brittner's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 79) is GRANTED.

IT IS FURTHER ORDERED that Defendant Steve Alan Brittner, United

-8-

States Marshals number 16253-046, is RELEASED from his term of imprisonment

to his term of supervised release.    The United States shall take any appropriate

steps to ensure the Bureau of Prisons executes this Order promptly and in

compliance with 18 U.S.C. § 3624(d).

IT IS FURTHER ORDERED that the Clerk of Court shall provide a copy of

this Order to the United States Marshals Service for the District of Montana, the

United States Probation Office for the District of Montana, and the United States

Bureau of Prisons.

DATED this 1st day of May, 2019.

Dana L. Christensen, Chief Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CR-15-1BO

UNITED STATES OF AMERICA        )
                                )
v.                              )          O R D E R
                                )
DANIEL JACKSON PETERSON         )

This cause is before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [DE 49]. The government opposes release. [DE 56]. A hearing on the matter was held before the undersigned on May 30, 2019, at Raleigh, North Carolina. For the reasons that follow, defendant's motion is granted.

BACKGROUND

Defendant, Peterson, is currently serving a term of 132 months' imprisonment after pleading guilty to possession with intent to distribute a quantity of cocaine base and discharging a firearm in furtherance of a drug trafficking offense in violation of 21 U.S.C. § 841 and 18 U.S.C. § 924(c). [DE 45]. Peterson was sentenced on November 27, 2013, and his current projected release date is May 1, 2022. *See* https://www.bop.gov/inmateloc/ (last visited May 31, 2019). Peterson has served approximately ninety-one months of his sentence, including good time credit. [DE 49].

Peterson is now eighty years old and, the parties agree, has multiple medical conditions, which include dementia, leg amputation below the right knee, chronic pain, glaucoma, gout, coronary artery disease, and aortic aneurysm. *See* [DE 56-1]; [DE 49-1]. Peterson is confined to a wheelchair, and, according to the Bureau of Prisons, he "is considered to be experiencing

deteriorating mental and physical health that substantially diminishes his ability to function in a correctional facility . . .." [DE 56-1].

DISCUSSION

Subject to few exceptions, a sentence that has been imposed may not be modified. 18 U.S.C. § 3582(c). One exception to this general rule applies where a defendant qualifies for a reduction in his sentence due to certain age or health factors, often referred to as compassionate release. 18 U.S.C. § 3582(c)(1)(A). Prior to the passage of the First Step Act on December 21, 2018,[1] the discretion to file a motion for compassionate release under § 3582(c)(1)(A) rested entirely with the Director of the Bureau of Prisons. Section 603 of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to provide that a defendant may request compassionate release from the sentencing court after exhausting his administrative remedies. Peterson's most recent request to the Director of the Bureau of Prisons for compassionate release was denied on May 1, 2019, and there is no dispute that Peterson has exhausted his administrative remedies as required.

Compassionate release may be available to defendants where (1) extraordinary and compelling circumstances warrant a reduction in sentence or (2) a defendant who is serving a life sentenced imposed under 18 U.S.C. § 3559(c) is at least seventy years old and has served at least thirty years in prison. 18 U.S.C. §§ 3582(c)(1)(A)(i)-(ii). A reduction under either section must be consistent with applicable policy statements issued by the United States Sentencing Commission. *Id*. at (c)(1)(A). Because Peterson is not serving a sentence imposed under § 3559(c), he must demonstrate that extraordinary and compelling circumstances support his release.

The commentary to section 1B1.13 of the United States Sentencing Commission's *Guidelines Manuel* provides specific criteria for determining whether extraordinary and

---

[1] Pub. L. 115-391, 132 Stat. 5194.

2

compelling circumstances are present. U.S.S.G. § 1B1.13, comment. n.1. These criteria generally concern the age, medical condition, or family circumstances of the defendant. In addition to considering whether extraordinary and compelling circumstances are present, in order to determine that a reduction in sentence is warranted a court must further consider the 18 U.S.C. § 3553(a) factors to the extent they are applicable and determine whether the defendant is a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13.

In this case, there is no genuine dispute that Peterson's age, medical conditions, and the amount of time he has served would satisfy the criteria for demonstrating extraordinary and compelling circumstances. *See* U.S.S.G. § 1B1.13 comment. n.1(A)(ii)(III) & n.1(B); *see also* Bureau of Prisons Program Statement 5050.50 § 4(b); [DE 49-1; 56; 56-1]. The dispute in this case concerns whether the § 3553(a) and § 3142(g) factors support a reduction in Peterson's sentence. To this end, the government offered the testimony of two Sampson County Sheriff's Deputies at the May 30, 2019, hearing, both of whom testified about the circumstances of Peterson's underlying offense conduct and their opinions that Peterson would be a danger to the community if released. Peterson was also present at the hearing and made a statement to the Court.

The Court has considered the relevant factors, as well as the testimony and statement offered at the hearing, and finds that a reduction in Peterson's sentence is appropriate. At the outset, the Court recognizes that Peterson was seventy-four years old at the time of sentencing, that his underlying offenses include a serious crime of violence, and that several of Peterson's current medical ailments were present at the time of sentencing. *But see* U.S.S.G. § 1B1.13 comment. n. 2.

Peterson's current state, however, presents a slight, if any, threat of dangerousness to any other person or the community. Peterson is now confined to a wheelchair or bed and suffers from

3

worsening dementia in addition to his numerous other health problems, including chronic pain. Having observed him at the hearing, the toll that almost seven years of incarceration has taken on Peterson, now eighty years old, is plain. There is no suggestion that Peterson maintains any ties to the drug community in which he previously operated. Peterson proffered that he will be living with his daughter upon his release from prison and that the United States Probation Office has approved her residence as suitable. Peterson will also serve a term of three years of supervised release; Peterson's supervised release conditions expressly prohibit him from possessing a firearm and he will be closely monitored by a United States Probation Officer during his term of supervision.

In other words, the nature and circumstances of Peterson's offense conduct, though serious, are mitigated by the characteristics of Peterson as he now comes before the Court. Peterson has demonstrated that his sentence served to date is sufficient in light of his age and medical conditions to deter him from further criminal conduct, protect the public, and promote respect for the law. Accordingly, an additional three years of custody is not necessary to satisfy the goals of sentencing.

CONCLUSION

For the foregoing reasons, Peterson's motion for compassionate release [DE 49] is GRANTED. Peterson's sentence is hereby reduced to time served. All other provisions of the judgment entered November 27, 2013, remain in full force and effect.

SO ORDERED, this  4  day of June, 2019.

_Terrence W. Boyle_
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

4

**U. S. Department of Justice**
**Federal Bureau of Prisons**

**Inmate Request to Staff Member - RESPONSE**
**LSCI, Butner, North Carolina**

**TO:**    **Friedlander, Charles**
        Register No: 50328-018
        Unit: Wake A Unit

A review of your request of a Compassionate Release based on elderly condition was reviewed by Unit Team in accordance with Program Statement 5050.50. Per PS 5050.50 inmates requesting RIS based on other elderly will not be considered if they were age 60 or older at the time of sentence if their current conviction is listed in Program Statement 5162.05 Categorization of Offenses. Your age at sentencing was 78 and your current offense is USC 18:2422(B) Child Enticement; which upon review of PS 5162.05 is listed in the Categorization of Offense. Therefore, based on your age at sentencing and your current offense, you do not meet the criteria for a Compassionate Release/RIS.

I trust this addresses your concerns.



**U.S. Department of Justice**
Federal Bureau of Prisons

PROGRAM STATEMENT
OPI:        OGC/LCI
NUMBER:  P5162.05
DATE:      March 16, 2009

# Categorization of Offenses

/s/
*Approved*: Harley G. Lappin
Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

To assist in the implementation of various Federal Bureau of Prisons policies and programs. Section 3 of this Program Statement lists offenses the Bureau categorizes as crimes of violence as that term is used in various statutes. In addition, Section 4 lists offenses that in the Director's discretion shall preclude an inmate's receiving certain Bureau program benefits.

a. **Program Objective**. The expected result of this program is:

An inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons.

b. **Summary of Changes**

*Policy Rescinded*

P5162.04        Categorization of Offenses (10/09/2007)

The March 16, 2009, reissuance of this policy updates the lists of statutory offenses. There are no other content changes.

2. **APPLICATION**

Criminal offenses are defined in many different titles of the United States Code, including Titles 7, 16, 18, 21, 26, 29, 30, and 46. The offenses contained in these titles that may be crimes of violence are listed in Section 3. Section 4 lists offenses that are not categorized as crimes of violence, but would nevertheless preclude an inmate's receiving certain Bureau program benefits at the Director's discretion.

Some Bureau policies or programs require a determination that an inmate committed a crime of violence, for example, the Program Statement on Inmate Discipline and Special Housing Units. Other policies or programs, such as early release pursuant to 18 U.S.C. § 3621(e) and placement in Intensive Confinement Centers, indicate that an inmate may be denied the benefits of such programs if he or she was convicted of an offense listed in either Section 3 or 4. When an inmate may be denied a program benefit under either Section 3 or 4, staff must carefully explain the basis for the denial. For example, if an inmate is convicted of an offense listed in Section 4, the inmate should be denied a program benefit because he or she committed an offense identified at the Director's discretion, rather than a crime of violence.

If a particular Code section in these titles is not listed in Section 3 or Section 4, and case management staff believe the crime might be violent, or might preclude an inmate's receiving certain Bureau program benefits, they shall contact legal staff at the institution or the Regional Counsel. Also, if a Judgment and Commitment Order (J&C) references a United States Code section that is not found in Titles 7, 16, 18, 21, 26, 30, 42, or 49, they should contact legal staff at the institution or the Regional Counsel to determine whether a recommendation should be made to change the policy to incorporate the offense in question.

Some of the Code sections may be listed in more than one section below; such duplication is indicated by an asterisk. In such cases, staff are to check subsequent sections of the Program Statement to determine whether the offense is a crime of violence or an offense that would otherwise preclude an inmate's receiving certain Bureau program benefits.

3. **OFFENSES CATEGORIZED AS CRIMES OF VIOLENCE**

a. **Criminal Offenses That are Crimes of Violence in *All Cases*.** Some Bureau policies or programs require a determination that an inmate committed a crime of violence, for example, the Program Statement on Inmate Discipline and Special Housing Units. Other policies or programs, such as early release pursuant to 18 U.S.C. § 3621(e), indicate that an inmate could be denied the benefits of such programs if he or she was convicted of an offense listed in either Section 3 or 4.

Any conviction for an offense listed below is categorized as a crime of violence.

## (1) **Title 18, United State Code Sections**

| | |
|---|---|
| ♦ **32** | destruction of aircraft |
| ♦ **33** | destruction of motor vehicles or motor vehicle facilities |
| ♦ **34** | penalty when death results |
| ♦ **35(b)** | conveying false information that harms human life |
| ♦ **36** | firing weapons into group of persons (VCCLEA addition) |
| ♦ **37** | violence at international airports (VCCLEA addition) |
| ♦ **43** | force, violence, and threats involving animal enterprises |
| ♦ **81** | arson w/in maritime jurisdiction |
| ♦ **111** | assaulting officers of the United States |
| ♦ **112(a)** | assaulting foreign officials |
| ♦ **113** | assaults w/in maritime jurisdictions |
| ♦ **114** | maiming w/in maritime jurisdiction |
| ♦ **115** | threatening family member of a federal official |
| ♦ **116** | female genital mutilation |
| ♦ **117** | domestic assault by an habitual offender |
| ♦ **175** | biological weapons |
| ♦ **229** | prohibited activities (chemical weapons) |
| ♦ **231** | civil disorders |
| ♦ **245** | federally protected activities |
| ♦ **247** | damage to religious property; obstruction of persons in the free exercise of religious beliefs |
| ♦ **248** | freedom of access to clinic entrances |
| ♦ **351** | assassination of cabinet and congress members |
| ♦ **373** | soliciting to commit a violent act |
| ♦ **521(c)(2)** | criminal street gangs |
| ♦ **753** | rescue of an inmate to prevent execution |
| ♦ **832** | participation in nuclear and weapons of mass destruction threats to the United States |
| ♦ **842** | explosive materials |
| ♦ **844** | penalties |
| ♦ **871** | threats against the President |
| ♦ **875 (a), (b), (c)** | interstate communications |
| ♦ **878** | threats against foreign officials |
| ♦ **879** | threats against former presidents |
| ♦ **922 (a)(2), (a)(3),(a)(4), (a)(5),(a)(7), (a)(8),(a)(9), (b)(2),(b)(3), (b)(4),(b)(5), (c),(d)(1),** | |

**(d)(2),(d)(4),**
**(d)(8),(d)(9),**
**(g),(k),(n),**
**(o),(p),(q)(2),**
**(q)(3),(r),**
**(s)(1),(t)(1),**
**(u),(x)(1)(A),**
**(x)(2)(A), &**
**(z)(1)**                    firearm violations

- ◆ **924(c)**                 firearms used in violent or drug trafficking crimes
- ◆ **929**                    use of restricted ammunition
- ◆ **930(a),(b), & (c)**      possession of firearms and dangerous weapons in Federal facilities
- ◆ **956**                    conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country
- ◆ **970(a)**                 damage of property owned by foreign governments
- ◆ **1091**                   genocide
- ◆ **1111**                   murder
- ◆ **1112**                   manslaughter
- ◆ **1113**                   attempt to commit murder or manslaughter
- ◆ **1114**                   murder of officers
- ◆ **1116**                   murder of foreign officials
- ◆ **1117**                   (conspiracy to murder)
- ◆ **1118**                   murder in correctional institution (VCCLEA addition)
- ◆ **1119**                   foreign murder of US national (VCCLEA addition)
- ◆ **1120**                   murder by escaped prisoner (VCCLEA addition)
- ◆ **1121**                   murder by state or local officer (VCCLEA addition)
- ◆ **1201**                   kidnapping
- ◆ **1203**                   hostage taking
- ◆ **1204**                   international parental kidnapping
- ◆ **1363**                   buildings or property within special maritime and territorial jurisdiction
- ◆ **1364**                   interference by foreign commerce by violence
- ◆ **1365**                   tampering with consumer products *except* **1365(b),(c)**
- ◆ **1366**                   destruction of an energy facility
- ◆ **1368**                   harming animals used in law enforcement
- ◆ **1369**                   destruction of veterans' memorials
- ◆ **1512(a)**                killing witness or victim
- ◆ **1513**                   retaliation against witness or victim
- ◆ **1531**                   partial-birth abortions prohibited
- ◆ **1581**                   peonage
- ◆ **1583**                   enticement into slavery
- ◆ **1584**                   sale into servitude
- ◆ **1585**                   slave trading
- ◆ **1587**                   possession of slaves aboard a vessel

- **1588**   transporting slaves
- **1589(1) & (2)**   forced labor
- **1591**   sex trafficking of children or by force, fraud, or coercion
- **1651**   piracy
- **1652**   citizens as pirates
- **1653**   aliens as pirates
- **1655**   assault on commander as pirates
- **1659**   attack to plunder a vessel
- **1661**   robbery ashore
- **1751**   assassination of president or staff
- **1752(a)(5)**   restricted building or grounds
- **1792**   mutiny or riot
- **1841**   protection of unborn children
- **1855**   timber set afire
- **1859**   surveys interrupted
- **1864**   hazardous devices on federal lands
- **1958**   use of interstate commerce in murder for hire
- **1959**   violent crimes aiding racketeering
- **1991**   entering train to commit crime
- **1992**   wrecking trains
- **2101**   riots
- **2111**   special maritime jurisdiction
- **2113(d),(e)**   bank robbery and incidental crimes
- **2114**   assault of person carrying mail
- **2115**   breaking into post office
- **2116**   railway or steamboat post office
- **2118(a),(b), (c)**   robberies and burglaries involving controlled substances
- **2119**   crimes involving motor vehicles
- **2191**   cruelty to seamen
- **2231(b)**   assault or resistance
- **2232(a)**   destruction of property to prevent seizure
- **2233**   rescue of seized property
- **2241**   aggravated sexual abuse
- **2242**   sexual abuse
- **2243(a)**   sexual abuse of a minor or ward
- **2244(a)&(c)**   abusive sexual contact
- **2245**   sexual abuse resulting in death (VCCLEA addition)
- **2251**   sexual exploitation of children
- **2251A**   selling or buying of children
- **2260(a)**   production of sexually explicit depictions of a minor for importation into the United States
- **2261**   interstate domestic violence (VCCLEA addition)
- **2261A**   stalking

| ♦ 2271 | conspiracy to destroy vessels |
| ♦ 2272 | destruction of vessel by owner |
| ♦ 2273 | destruction of vessel by nonowner |
| ♦ 2275 | firing or tampering with vessels |
| ♦ 2276 | breaking and entering vessels |
| ♦ 2277(a) | explosives or dangerous weapons aboard vessels |
| ♦ 2280 | violence against maritime navigation (VCCLEA addition) |
| ♦ 2281(NOT(A)) | violence against fixed platforms (VCCLEA addition) |
| ♦ 2291(NOT (a)(8)-(9)) | destruction of vessel or maritime facility |
| ♦ 2332 | penalties for homicide |
| ♦ 2332a | use of weapons of mass destruction (VCCLEA addition) |
| ♦ 2340A | torture |
| ♦ 2383 | rebellion or insurrection |
| ♦ 2384 | sedition conspiracy |
| ♦ 2385 | advocating the overthrow of the government |
| ♦ 2389 | recruiting for service against U.S. |
| ♦ 2390 | enlistment to serve against U.S. |
| ♦ 2421 | transportation for illegal sexual activity |
| ✓♦ 2422 | coercion into interstate travel for illegal sexual activity |
| ♦ 2423 | transportation of minors for illegal sexual activity |

(2) **Title 21 United States Code Sections**

| ♦ 841(e) | boobytraps on federal property |
| ♦ 848(e) | death penalty for criminal offenses |
| ♦ 858 | endangering human life while manufacturing controlled substances |

(3) **Title 26 United States Code Sections**

| ♦ 5861(a) thru (l) | firearms |

(4) **Title 42 United States Code Sections**

| ♦ 2000(e)(13) | killing of officer while enforcing Equal Employment Act |
| ♦ 2283(a) | protection of nuclear inspectors |
| ♦ 2284(a) | sabotage of nuclear facilities |
| ♦ 3631 | interference with housing |

(5) **Title 49 United States Code Sections**

| ♦ 46502 | aircraft piracy |
| ♦ 46504 | interference with flight crew members |

◆ **46505**          carrying a weapon or explosive on an aircraft
◆ **46507**          false information and threats

b.  * **Title 18, United States Code Section 2113(a)**.  Title 18, United States Code Section 2113(a) provides in part:

> **"Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . . shall be fined under this title or imprisoned not more than twenty years, or both."**

This statute covers various offenses, including not only bank robbery but also embezzling bank funds, stealing bank property, and bank larceny.

With regard to the specific crime of bank robbery, the offense shall be considered a crime of violence, since the offense involves an explicit or implicit threat of force and thus has as an element the threatened use of physical force against the person or property of another.  For offenses pursuant to § 2113(a) other than bank robbery, see Section 4.e. below.

c.  **Conspiracy, Attempt, and Similar Offenses Which Involve an Underlying Offense**.  The statutes listed in this section cover conspiracy offenses (see, e.g., 18 U.S.C. § 371) when an individual has planned with others to commit a particular crime.  Other listed statutes cover attempted offenses, i.e. when an individual tried but did not succeed in committing the crime.  In reviewing these types of offenses, it is necessary to examine the "underlying offense" (what the defendant was conspiring to do or attempting to do).  If the underlying offense is categorized as violent pursuant to Section 3.a. of this Program Statement, e.g., murder, then the attempt or the conspiracy offense is also violent. The underlying offense will be included in the PSI and may be noted on the J&C.

Other statutes listed in this section do not criminalize behavior but set out penalties that result from violating other statutes.

**Example:**  18 U.S.C. § 924(a)(1)(B) provides that whoever

> **"knowingly violates subsection (a)(4),(f),(k),(r),(v), or (w) of section 922 . . . shall be fined under this title, imprisoned not more than five years, or both."**

The J&C may indicate the sentence was imposed pursuant to the penalty provisions of § 924(a)(1)(B) without indicating the conviction for the underlying offense.  The PSI, however, notes the underlying conviction, "Transporting a Destructive Device in Interstate Commerce" [18 U.S.C. § 922(a)(4)].  In order to determine whether the offender's current offense is violent, staff should assess whether the underlying offense is violent in accordance with Section 3.a. of

this Program Statement; if the underlying offense is violent, then the offender should be deemed violent.

The following offenses **may** be violent depending on the underlying offense.

**Title 18, United States Code Sections**

- ◆ *241          conspiracy to deprive civil rights **(if conspiracy)**
- ◆ *371          conspiracy to commit offense/fraud against U.S.
- ◆ *372          conspiracy to impede or injure officer
- ◆ *924          penalties for firearms violations
- ◆ *1962         racketeering
- ◆ *2118(d)      robberies involving controlled substances

## 4. OFFENSES THAT AT THE DIRECTOR'S DISCRETION SHALL PRECLUDE AN INMATE'S RECEIVING CERTAIN BUREAU PROGRAM BENEFITS

For certain Bureau programs, such as early release pursuant to 18 U.S.C. § 3621(e) and placement in Intensive Confinement Centers, an inmate may be denied program benefits if he or she was convicted of an offense listed in either this section or Section 3. If an inmate is denied the benefit of such a program, staff must carefully describe the basis for the denial. For example, if an inmate is convicted of an offense listed in this section, the inmate shall be denied a program benefit because he or she committed an offense identified at the Director's discretion, rather than a crime of violence.

As an exercise of the discretion vested in the Director, an inmate serving a sentence for an offense that falls under the provisions described below shall be precluded from receiving certain Bureau program benefits.

Inmates whose current offense is a felony that:

- Has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or
- Involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or
- By its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or
- By its nature or conduct involves sexual abuse offenses committed upon children.

Thus, for an inmate to receive Bureau program benefits such as those mentioned above, he or she must not be convicted of an offense listed in this section or in Section 3.

a. **Criminal Offenses with an Enhanced Base Offense Level**. Convictions for an offense listed below may or may not satisfy the standard listed in the introductory portion of Section 4.

At the time of sentencing, the court makes a finding of whether an offense listed below involved the use of force, and this finding is reflected in the PSI section entitled "Offense Computation," subsection entitled "Base Offense Level." This subsection references a particular U.S. Sentencing Guideline provision that distinguishes between violations of the particular criminal code section that are committed with and without force.

**Example**: Title 18 United States Code Section 241, Conspiracy Against Rights provides:

> **"If two or more persons conspire to injure, oppress, threaten or intimidate any person . . . in the free exercise or enjoyment of any right or privilege. . . ."**

This crime may or may not be committed through the use of force or threatened use of force, since one can be oppressed through means other than force. Pursuant to U.S. Sentencing Guideline Section 2H2.1:

- If the crime involved obstructing an election or registration, and the obstruction occurred using force or threat of force against persons or property, the base offense level is 18, or
- If the obstruction occurred without the use or threatened use of force, such as forgery, fraud, theft, deceit, etc., the base offense level is 12.

If an offender was convicted of an offense listed below, case management staff must examine the base offense level to determine whether the offense would preclude the inmate from receiving certain Bureau program benefits. If the PSI does not include an explanation as to the reason for assigning a particular base offense level, case management staff may need to examine the particular Sentencing Guideline referenced.

Some of the offenses listed below may correspond to more than one Sentencing Guideline, only one of which includes a base level adjustment for the use or threatened use of force. Accordingly, it is possible that an examination of the Offense Computation section of the PSI may reveal no mention of the use or threatened use of force. When the PSI fails to explain the reason for assigning a particular base offense level, case management staff must examine the particular Sentencing Guideline referenced to determine whether the court found that the use of force was implicated in the offense.

Case management staff may contact institution legal staff or Regional Counsel if they have questions regarding this section. A list of offenses for which the Sentencing Guidelines base offense level is affected by the use or threatened use of force follows. At the Director's discretion, inmates with such an offense shall be precluded from receiving certain Bureau program benefits.

**Title 18, United States Code Sections**

◆ 241            conspiracy against rights **(for other than conspiracy)**
◆ 242            deprivation of rights under color of law

- **592**     putting troops at polls
- **593**     interference by armed forces
- **1791**     possessing contraband in prison
- **1952**     transporting items in aid of racketeering
- **2231(a)**     assault on persons executing search warrant
- **2381**     treason

b. **Criminal Offenses with a Specific Offense Characteristic Enhancement**. Convictions for an offense listed below, like those listed in Section 4.a., may or may not satisfy the standard listed in the introductory portion of Section 4.

At the time of sentencing, the court makes a finding of whether the offense involved the use or threatened use of force, and this finding is reflected in the PSI section entitled "Offense Computation," subsection entitled "Specific Offense Characteristics." This subsection references a particular U.S. Sentencing Guideline that provides for an increase in the Total Offense Level if the criminal violation was committed with force.

**Example**: Section 841 of Title 21, United States Code makes it a crime to manufacture, distribute, or possess with the intent to distribute drugs. Under the Sentencing Guidelines (§ 2D1.1 and § 2D1.11), the defendant could receive an increase in his or her base offense level because of a "Specific Offense Characteristic" (for example, if a dangerous weapon was possessed during commission of the offense), the court would increase the defendant's base offense level by two levels. This particular "Specific Offense Characteristic" (possession of a dangerous weapon during the commission of a drug offense) poses a serious potential risk that force may be used against persons or property. Specifically, as noted in the U.S. Sentencing Guidelines § 2D1.1., application note 3, the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. Accordingly, an inmate who was convicted of manufacturing drugs, (21 U.S.C. § 841) and received a two-level enhancement for possession of a firearm has been convicted of an offense that will preclude the inmate from receiving certain Bureau program benefits.

In some cases, an inmate may be convicted of an offense listed in this section as well as 18 U.S.C. § 924(c)(1), use of a firearm during a crime of violence or drug trafficking crime. According to the U.S. Sentencing Guidelines, if a defendant receives a § 924(c)(1) conviction, the court may not assess a two-level "Specific Offense Characteristic" enhancement for possession of a firearm; however, in light of the Supreme Court ruling in *Bailey* v. *U.S.*, 116 S.Ct. 501 (1995), a number of § 924(c)(1) convictions have been vacated. In *Bailey*, the Court held that the term "use" connotes an active employment of the firearm. If any of the offenses listed in this section were accompanied by a § 924(c)(1) conviction that was subsequently vacated due to the *Bailey* decision, staff shall presume that the inmate would have received a two-level "Specific Offense Characteristic" enhancement for possession of a firearm unless there is a specific court order to the contrary. Thus, absent a court order specifically denying the application of a two point enhancement for possession of a firearm, the inmate will not receive certain Bureau program benefits.

Some of the offenses listed below may correspond to more than one Sentencing Guideline, only one of which includes a Specific Offense Characteristic for the use of force. Alternatively, the PSI may fail to adequately describe the Specific Offense Characteristic that underlies the increase in offense level. In either case, it is possible that an examination of the Offense Computation section of the PSI reveals no mention of the use of force. If this occurs, case management staff must examine the particular Sentencing Guideline referenced to determine whether the court found that the use of force was implicated in the offense.

**Example**: The PSI in the above scenario may state "SOC (specific offense characteristic) 2F1.1(4) increase 2 levels." If the Report does not further state "since the offense involved the conscious or reckless risk of serious bodily injury, increase by two levels pursuant to 2F1.1(4)," case management staff may have to examine Guideline 2F1.1(4) to determine that the only basis for this particular increase is a finding that the offense included the risk of bodily injury.

Case management staff may contact institution legal staff or Regional Counsel if they have questions regarding this section. Below is a list of offenses for which there could be a Specific Offense Characteristic enhancement for the use of force:

(1) **Title 16, United States Code Sections**

| | |
|---|---|
| ♦ **773e(a)(2), (3),(4),(6)** | violation of Northern Pacific Halibut Act |
| ♦ **773g** | violation of Northern Pacific Halibut Act |
| ♦ **1857(a)(D), (E),(F),(H)** | violation of National Fishery Management Program |
| ♦ **1859** | violation of National Fishery Management Program |
| ♦ **2435(4),(5), (6),(7)** | violation of Antarctic Marine Living Resources Convention |
| ♦ **2438** | violation of Antarctic Marine Living Resources Convention |
| ♦ **3606** | violation of North Atlantic Salmon Fishing |
| ♦ **3637(a)(2),(3) (4),(6),(c)** | violation of Pacific Salmon Fishing |
| ♦ **5009(5),(6), (7),(8)** | violation of North Pacific Anadromous Stock Convention |
| ♦ **5010(b)** | violation of North Pacific Anadromous Stock Convention |

(2) **Title 18, United States Code Sections**

| | |
|---|---|
| ♦ **755** | officer permitting escape |
| ♦ **757** | procures escape for prisoner of war |
| ♦ **874** | kickbacks from public works employees |
| ♦ **894** | extending credit through extortionate means |
| ♦ **1163** | embezzlement/theft from Indian organizations |

- ◆ **1503**       influencing or injuring officer or juror
- ◆ **1505**       obstruction of proceedings before departments or agencies
- ◆ **1511**       obstruction of state or local law enforcement
- ◆ **1516**       obstruction of a federal audit
- ◆ **1517**       obstructing financial examination
- ◆ **1951**       interference with commerce by threats/violence
- ◆ **2112**       robbery of personal property of United States

(3)  **Title 21, United States Code Sections**

- ◆ **841(NOT(e))**    controlled substance violation
- ◆ **\*846**       attempt and conspiracy

(4)  **Title 26, United States Code Sections**

- ◆ **7212**       attempt to interfere with revenue laws
- ◆ **7214**       unlawful acts by employees of the IRS

(5)  **Title 30, United States Code Sections**

- **1461(a)(3), (4),(5),(7)**    resisting officers for violations under Deep Seabed Mineral Resources Act
- ◆ **1463**       violations of Deep Seabed Mineral Resources Act

(6)  **Title 33, United States Code Section**

- ◆ **1232(b)(2)**    ports and waterways safety enforcement provisions

(7)  **Title 40, United States Code Section**

- ◆ **193f(a)**       security of Capitol grounds and buildings

(8)  **Title 42, United States Code Sections**

- ◆ **1973aa**       application of prohibition to other States
- ◆ **1973aa-1**    residence requirements for voting
- ◆ **1973aa-1a**    bilingual election requirements
- ◆ **1973aa-3**    penalty
- ◆ **1973bb**       enforcement of twenty-sixth amendment
- ◆ **1973gg-10**    criminal penalties
- ◆ **2283(b)**       protection of nuclear inspectors
- ◆ **9151(2), (3),(4),(5)**    violation of Ocean Thermal Energy Conversion Act

♦ **9152(d)**          violation of Ocean Thermal Energy Conversion Act

**(9) Title 46, United States Code Section**

♦ **1903**          manufacture, distribution, or possession with intent to manufacture controlled substances

**(10)  Title 49, United States Code Section**

♦ **46505(b)**          carrying a weapon on an aircraft

c.  **Criminal Offenses That *May* Preclude an Inmate's Receiving Certain Bureau Program Benefits**.  In addition to Sections 4.a. and 4.b. above, an inmate may be precluded from receiving certain Bureau program benefits based on an offense listed in this section. For the offenses listed below, the Sentencing Guidelines may provide little insight into the court's findings. Accordingly, rather than simply examining the base offense level or the specific offense characteristics, case managers must carefully examine the entire Offense Computation section of the PSI and, if necessary, the Offense Conduct section to determine if the offense would preclude an inmate's receiving certain Bureau program benefits based on whether the offense satisfies the standard listed in the introductory portion of Section 4.

The following offenses **may** preclude an inmate's receiving certain Bureau program benefits based on a variety of factors.

**(1)  Title 7, United States Code Section**

♦ **473c-1**          offenses in relation to sampling of cotton

**(2)  Title 16, United States Code Sections**

♦ **5106(e)(5),
    (6),(7),(9),
    (f)(2)**          violation of Atlantic Coast Fisheries Cooperative Management

**(3)  Title 18, United States Code Sections**

♦ **700**          desecration of the flag of the United States
♦ **751**          escape from federal prison
♦ **752**          instigating/assisting escape from federal prison
♦ **831**          prohibited acts involving nuclear materials
♦ **876**          mailing threatening communications
♦ **877**          mailing threatening communications from foreign country

| ♦ **922(a)(1)** | engage in business of importing, manufacturing, or dealing in firearms or ammunition |
| ♦ **1153** | offenses within Indian Country |
| ♦ **1512(b)** | tampering with a witness/victim/informant |
| ♦ **1708** | theft or receipt of stolen mail |
| ♦ **1792** | mutiny and riot in prison |
| ♦ **1956** | money laundering |
| ♦ **2117** | breaking into carrier facilities |
| ♦ **2152** | destruction of submarine and torpedo works |
| ♦ **2153** | destruction of war materials |
| ♦ **2154** | production of defective war material |
| ♦ **2155** | destruction of national defense materials |
| ♦ **2156** | production of defective national defense material |
| ♦ **2192** | incitation of seamen to revolt |
| ♦ **2193** | mutiny |
| ♦ **2247** | repeat offenders |
| ♦ **2387** | activities involving armed forces |

**(4) Title 40, United States Code Sections**

| ♦ **193f(a),(b)** | security of Capitol grounds and buildings |

d. **Conspiracy, Attempt, and Other Offenses Which Involve an Underlying Offense**. Some of the statutes listed in this section cover conspiracy offenses (see, e.g., 21 U.S.C. § 846) when an individual has planned with others to commit a particular crime. Other listed statutes cover attempted offenses (see, e.g., 21 U.S.C. §§ 846 and 963) when an individual tried but did not succeed in committing the crime. In reviewing these types of offenses, it is necessary to examine the "underlying offense" (what the defendant was conspiring to do or attempting to do). If the underlying offense would preclude the inmate from receiving certain Bureau program benefits based on any of the other portions of Section 4 of this policy, the conspiracy or the attempt offense shall also preclude the inmate from receiving the same benefits. The underlying offense will be included in the PSI and may be noted on the J&C.

**Example**: The Judgment and Commitment Order may indicate a conviction for "Attempt and Conspiracy" (21 U.S.C. § 846). The accompanying Presentence Investigation Report will reference the underlying crime, in many cases it will be "Possession with Intent to Distribute a Controlled Substance" (21 U.S.C. § 841). Staff should then review the underlying offense (in this case possession of controlled substance) to determine whether it satisfies the standard listed in the introductory portion of Section 4. As noted in the example in section b above, if the PSI indicates that the defendant received a 2-level increase for possessing a dangerous weapon, then the offense should preclude the inmate from receiving certain Bureau program benefits; if no such enhancement was given, the offense should not preclude the inmate from receiving such benefits.

(1) **Title 18, United States Code Sections**

| | | |
|---|---|---|
| ♦ **\*241** | conspiracy to deprive civil rights **(if conspiracy)** |
| ♦ **\*371** | conspiracy to commit offense/fraud against U.S. |
| ♦ **\*372** | conspiracy to impede or injure officer |
| ♦ **\*924** | penalties for firearms violations |
| ♦ **\*1962** | racketeering |
| ♦ **\*2118(d)** | robberies involving controlled substances |

(2) **Title 21, United States Code Sections**

| | | |
|---|---|---|
| ♦ **\*846** | attempt and conspiracy |
| ♦ **848** | controlled substances violations as criminal enterprise |
| ♦ **963** | conspiracy or attempt to violate controlled substance laws |

e. **Special Circumstances**

♦ **Title 18, United States Code § 922(g).** All offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits.

♦ **\*Title 18, United States Code § 2113(a).** Excluding bank robbery (see Section 3.b. above), other offenses covered by 18 U.S.C. § 2113(a), (e.g., bank larceny, etc.), shall be reviewed similarly to offenses in Section 4.b. Defendants may receive a Specific Offense Characteristic enhancement that will result in an increase in the base offense level. Such enhancements provide for an increase in the defendant's base offense level if:

- A firearm was discharged,
- A firearm or other dangerous weapon was brandished, displayed, possessed, or used, or
- An express or implied threat of death was made (U.S.S.G. 2B3.2(b), Application Notes 2 and 6).

If a defendant received such an enhancement (or one of the other enhancements involving the use or threatened use of force), the offense shall preclude the inmate's receiving certain Bureau program benefits.

♦ **Title 18, United States Code § 2243.** A conviction for sexual abuse of a minor or ward shall preclude an inmate from receiving certain Bureau program benefits.

5. **OFFENSES COMMITTED BEFORE NOVEMBER 1, 1987**

The Sentencing Guidelines are generally not applicable for offenses committed before November 1, 1987. Accordingly, for offenses identified in Section 4 or offenses similar to those listed in Section 4 of this Program Statement that were committed before this date, case managers must

make a determination, based on the narrative description of the crime contained in the PSI, whether the offense involved:

- The use, attempted use, or threatened use of force;
- The use, carrying, or possession of a dangerous weapon;
- A serious potential risk that force might be used against the person or property of another; or
- Sexual abuse committed upon children.

Offenses listed in Section 3, Crimes of Violence, or offenses similar to those listed in Section 3, which were committed before November 1, 1987, shall be treated in the same manner as "new law" offenses.

## 6. CRIMES CODIFIED PURSUANT TO THE VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1994

The VCCLEA created a number of new Federal criminal offenses and enhanced penalties for several existing offenses. Some of the new offenses are included in the above lists, but the lists will be revised as needed after the U.S. Sentencing Commission drafts new guidelines. These lists will also be updated periodically to reflect statutory changes or at the Director's discretion.

## REFERENCES

*Program Statements*
P5110.15    Notification of Release to State and Local Law Enforcement Officials (8/30/00)
P5162.02    Definition of Term, Crimes of Violence (7/24/95)
P5322.12    Inmate Classification and Program Review (11/29/06)
P5330.11    Psychology Treatment Programs (3/16/09)
P5331.02    Early Release Procedures Under 18 U.S.C. 3621 (e) (3/16/09)
P5800.12    Receiving and Discharge Manual (12/31/97)
P5800.15    Correctional Systems Manual (1/1/09)
P5880.28    Sentence Computation Manual (CCCA of 1984) (2/21/92)
P5880.30    Sentence Computation Manual ("Old Law" Pre-CCCA 1984) (7/16/93)

*ACA Standards*
None.

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport and BOPDOCS.

**HISTORICAL AND STATUTORY NOTES**

**Prior Provisions**

A prior section 2421, Act June 25, 1948, c. 645, 62 Stat. 812; May 24, 1949, c. 139, § 47, 63 Stat. 96; Pub.L. 99–628, § 5(b)(1), Nov. 7, 1986, 100 Stat. 3511; Pub.L. 105–314, Title I, § 106, Oct. 30, 1998, 112 Stat. 2977, relating to transportation generally, was repealed by Pub.L. 114–22, Title III, § 303, May 29, 2015, 129 Stat. 255.

## § 2421A.  Promotion or facilitation of prostitution and reckless disregard of sex trafficking

**(a) In general.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in [1] section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

**(b) Aggravated violation.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in [1] section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person and—

    (1) promotes or facilitates the prostitution of 5 or more persons; or

    (2) acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a),[2]

shall be fined under this title, imprisoned for not more than 25 years, or both.

**(c) Civil recovery.**—Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court.

**(d) Mandatory restitution.**—Notwithstanding sections 3663 or 3663A [3] and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any violation of subsection (b)(2). The scope and nature of such restitution shall be consistent with section 2327(b).

**(e) Affirmative defense.**—It shall be an affirmative defense to a charge of violating subsection (a), or subsection (b)(1) where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted.

(Added Pub.L. 115–164, § 3(a), Apr. 11, 2018, 132 Stat. 1253.)

  [1] So in original.
  [2] So in original. Probably should be "section 1591(a)".
  [3] So in original. Probably should be "section 3663 or 3663A".

**HISTORICAL AND STATUTORY NOTES**

**Savings Provisions**

For savings provisions of amendments made by Pub.L. 115–164, see Pub.L. 115–164, § 7, set out as a note under 47 U.S.C.A. § 230.

## § 2422.  Coercion and enticement

**(a)** Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

**(b)** Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

(June 25, 1948, c. 645, 62 Stat. 812; Pub.L. 99–628, § 5(b)(1), Nov. 7, 1986, 100 Stat. 3511; Pub.L. 100–690, Title VII, § 7070, Nov. 18, 1988, 102 Stat. 4405; Pub.L. 104–104, Title V, § 508, Feb. 8, 1996, 110 Stat. 137; Pub.L. 105–314, Title I, § 102, Oct. 30, 1998, 112 Stat. 2975; Pub.L. 108–21, Title I, § 103(a)(2)(A), (B), (b)(2)(A), Apr. 30, 2003, 117 Stat. 652, 653; Pub.L. 109–248, Title II, § 203, July 27, 2006, 120 Stat. 613.)

## § 2423.  Transportation of minors

**(a) Transportation with intent to engage in criminal sexual activity.**—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

**(b) Travel with intent to engage in illicit sexual conduct.**—A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

**(c) Engaging in illicit sexual conduct in foreign places.**—Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

**(d) Ancillary offenses.**—Whoever, for the purpose of commercial advantage or private financial gain, arranges, induces, procures, or facilitates the travel of a person knowing that such a person is traveling in interstate commerce or foreign commerce for the purpose of engaging in illicit sexual conduct shall be fined under this title, imprisoned not more than 30 years, or both.

**(e) Attempt and conspiracy.**—Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.

**(f) Definition.**—As used in this section, the term "illicit sexual conduct" means—

    (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter

# TAB 331

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              CASE NO. 8:08-cr-318-T-27

CHARLES JACKSON FRIEDLANDER

**UNITED STATES' MOTION TO DISMISS
AND OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

The United States opposes Friedlander's motion for compassionate release, Doc. 328. Friedlander did not exhaust his administrative remedies, so this Court should dismiss his motion without prejudice to refiling once he satisfies the exhaustion requirement. But even if this Court reaches the merits of his motion, the motion lacks merit, and this Court should deny it. Friedlander fails to meet his burden in showing that his medical conditions, most of which were present when this Court sentenced him and are stable, satisfy the requirements for compassionate release. Nor has he demonstrated, as he must, that his release would not pose a danger to the public.

**Background**

In 2008, Charles Friedlander engaged in a series of online chats with two different undercover officers posing as parents offering up their children for sexual abuse. *See* PSR ¶¶ 8–17. Friedlander chatted with one officer from

February to July 2008, expressing interest in having sex with the officer's mentally handicapped, 11-year-old daughter. *Id.* ¶¶ 16–17. In chats with a second undercover officer in June and July 2008, Friedlander discussed stripping the officers' 10- and 11-year-old sons, hitting them with a belt and razor strap, and sexually abusing them. *Id.* ¶¶ 8–11. Eventually, in July 2008, Friedlander met with the second undercover officer to introduce himself before meeting with the children. *Id.* ¶ 15. During that meeting, Friedlander showed the officer two razor straps, a belt, and a riding crop that Friedlander intended to use on the boys. *Id.* Friedlander was then arrested. *Id.* He was 75 years old at the time. *See id.* ¶ 62.

Charles Friedlander was indicted for attempting to persuade, induce, entice, or coerce a minor into engaging in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). Doc. 8. He was convicted after a trial by jury. Doc. 263. This Court sentenced Friedlander to 360 months' imprisonment. Doc. 292.

This Court, recognizing that Friedlander was 79 years old and had health problems at the time of sentencing, was mindful that its sentence was "likely to result in [Friedlander's] dying in prison." Doc. 304 at 81, 84. (Even before his arrest, Friedlander had been diagnosed with Type II diabetes, hypertension, hyperlipidemia, degenerative disc disease, gout, a cardiac

2

abnormality, colitis, postherpetic neuralgia, an enlarged prostate, anxiety, and depression. *See* PSR ¶¶ 70–74.) Moreover, this Court found that Friedlander posed a danger the public: it rejected the notion that Friedlander's conduct was mere fantasizing as "nonsense" and concluded that his conduct evidenced the threat he posed to "other, real children." Doc. 304 at 78–80, 83.

Friedlander, whose projected release date is in 2035, now seeks compassionate release. *See* Doc. 328; *see also* Exhibit A at 1 (sentencing computation data).

### Argument

A district court, upon a motion filed by either the Director of the Bureau of Prisons ("BOP") or a defendant, may reduce the defendant's sentence when "extraordinary and compelling reasons" warrant such a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Examples of qualifying "extraordinary and compelling reasons" include the defendant's suffering from a terminal illness, the defendant's suffering from a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison, and the death of the caregiver of the defendant's minor children. *See* USSG §1B1.13 comment. (n.1). Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. USSG §1B1.13(2).

3

And the court must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

Previously, only the BOP could file in court a motion for compassionate release, but the First Step Act amended the provision to allow defendants to file such a motion as well. *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1). Before a defendant may file a motion, however, either (a) the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (b) 30 days must have lapsed since the receipt of such a request by the warden of the prison. 18 U.S.C. § 3582(c)(1)(A). The failure to have exhausted administrative remedies within the BOP is fatal to a defendant's motion for compassionate release. *United States v. Estrada Elias*, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Alexander*, 609 F.3d 1250, 1260 (11th Cir. 2010) (holding that a prisoner may seek judicial review of BOP's sentencing calculations only after exhausting administrative remedies).

Here, Friedlander failed to exhaust his administrative remedies within the BOP. Friedlander filed a request for compassionate release on June 11,

2019, *see* Exhibit B, which the prison warden denied on June 21, *see* Exhibit C.
But a request denied by the warden may be appealed through the
administrative remedies program. 28 C.F.R § 571.63(a); *see also* Exhibit C
(explaining Friedlander's right to appeal the denial). BOP records do not
reflect that Friedlander filed such an appeal. And a court may not entertain a
motion for compassionate release absent that appeal (or a 30-day lapse from
such an appeal), *Elgin*, 2019 U.S. Dist. LEXIS 86571, at *3, because only a
denial at the level of either the BOP's director or general counsel constitutes a
"final administrative decision" that may not be further appealed within the
administrative remedies program, 28 C.F.R. § 571.63(b), (d). Friedlander cites
an earlier April 2019 denial of his request for compassionate release (on a
different basis) from his unit team, *see* Doc. 328 at 5, but that denial is also not
at the level of a final administrative decision, *see* 28 C.F.R. § 571.63(d).
Because Friedlander failed to exhaust his administrative remedies, this Court
should dismiss his motion.

But even if this Court entertains Friedlander's motion, it should deny
the motion on the merits. A defendant seeking compassionate release bears the
burden of establishing that release is warranted. *United States v. Heromin*, 2019
WL 2411311, at *2 (M.D. Fla. June 7, 2019); *cf. United States v. Hamilton*, 715
F.3d 328, 337 (11th Cir. 2013) (holding that a movant for a reduction under

section 3582(c)(2) bears the burden to establish a reduction is warranted). Friedlander simply lists various medical conditions, without any supporting documentation or analysis as to how these conditions qualify as extraordinary and compelling reasons for his release. According to BOP's medical staff, Friedlander's medical issues are largely stable or managed with medication, and he is able to walk independently and often does so. *See* Exhibit D. And, given that this Court was aware of Friedlander's health conditions when it sentenced him, *see* Doc. 304 at 81, 84; PSR ¶¶ 70–74, those health conditions are not extraordinary developments that now justify a radically shorter sentence.

Finally, Friedlander has not shown that he no longer poses a danger to children. Friedlander cites a psychologist who concludes that Friedlander is unlikely to reoffend because, in essence, (a) Friedlander's offense consisted only of "fantasizing," and (b) people in their eighties are not likely to commit sex offenses. Doc. 328 at 2–3. But the notion that Friedlander had merely fantasized about abusing children is at odds with the facts in this case. *See* PSR ¶ 15. Indeed, this Court specifically rejected that notion as "nonsense." Doc. 304 at 78; *see also id.* at 79–80. And whatever general correlation there may be between age and likelihood of committing sex offenses, Friedlander was well into his seventies when he attempted to abuse children. *See* PSR ¶ 62. This

6

Court concluded at sentencing, at which point Friedlander was 79 years old,

that Friedlander posed a danger to children. Doc. 304 at 83. No reason exists

now to conclude otherwise, and his motion should be denied.

## Conclusion

For these reasons, the United States requests that this Court dismiss

Friedlander's motion based on his failure to exhaust his administrative

remedies. Should this Court reach the merits of his motion, the United States

requests that this Court find him ineligible for compassionate release and deny

the motion.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:    */s/ Colin P. McDonell*
Colin P. McDonell
Assistant United States Attorney
United States Attorney No.120
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail: colin.mcdonel@usdoj.gov

**U.S. v. Charles Jackson Friedlander**          **Case No. 8:08-cr-318-T-27**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to the following:

Joseph Parrish, Esq.

<span style="margin-left:40%">*/s/ Colin P. McDonell*</span>
<span style="margin-left:40%">Colin P. McDonell</span>
<span style="margin-left:40%">Assistant United States Attorney</span>
<span style="margin-left:40%">United States Attorney No. 183</span>
<span style="margin-left:40%">400 N. Tampa Street, Suite 3200</span>
<span style="margin-left:40%">Tampa, Florida 33602-4798</span>
<span style="margin-left:40%">Telephone:   (813) 274-6000</span>
<span style="margin-left:40%">Facsimile:   (813) 274-6358</span>
<span style="margin-left:40%">E-mail:   colin.mcdonel@usdoj.gov</span>

331-1

# TAB 331-1

```
COAB                      INMATE INFORMATION                  07-02-2019
PAGE 001          *        INMATE DATA          *        10:32:48
                          AS OF 07-02-2019


REGNO..: 50328-018 NAME: FRIEDLANDER, CHARLES JACKSON


                    RESP OF: BUF
                    PHONE..: 919-575-5000     FAX: 919-575-5023
                         .                    RACE/SEX...: WHITE / MALE
                                              AGE:  89
PROJ REL MT: GOOD CONDUCT TIME RELEASE        PAR ELIG DT: N/A
PROJ REL DT: 01-29-2035                       PAR HEAR DT:
```


```
G0002        MORE PAGES TO FOLLOW . . .
```

```
COAB                   PUBLIC INFORMATION                       07-02-2019
PAGE 002            *        INMATE DATA          *             10:32:48
                             AS OF 07-02-2019


REGNO..: 50328-018 NAME: FRIEDLANDER, CHARLES JACKSON


                       RESP OF: BUF
                       PHONE..: 919-575-5000    FAX: 919-575-5023
HOME DETENTION ELIGIBILITY DATE: 07-29-2034


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  01-29-2035 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: FLORIDA, MIDDLE DISTRICT
DOCKET NUMBER...................: 8:08-CR-318-T-27TGW
JUDGE...........................: WHITTEMORE
DATE SENTENCED/PROBATION IMPOSED: 07-21-2009
DATE COMMITTED..................: 09-08-2009
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.:  $100.00        $00.00          $25,000.00  $00.00


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 512
OFF/CHG: 18:2422(B) CHILD ENTICEMENT (CT.1)


 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  360 MONTHS
 TERM OF SUPERVISION............: LIFE
 DATE OF OFFENSE................: 07-21-2008




 G0002        MORE PAGES TO FOLLOW . . .
```

REGNO..: 50328-018 NAME: FRIEDLANDER, CHARLES JACKSON

                    RESP OF: BUF
                    PHONE..: 919-575-5000   FAX: 919-575-5023
------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-25-2012 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 09-22-2009 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 07-21-2009
TOTAL TERM IN EFFECT............: 360 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:  30 YEARS
EARLIEST DATE OF OFFENSE........: 07-21-2008

JAIL CREDIT.....................: FROM DATE    THRU DATE
                                  07-25-2008   08-22-2008
                                  12-16-2008   07-20-2009

TOTAL PRIOR CREDIT TIME.........: 246
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1387
TOTAL GCT EARNED................: 513
STATUTORY RELEASE DATE PROJECTED: 01-29-2035
EXPIRATION FULL TERM DATE.......: 11-16-2038
TIME SERVED.....................: 10 YEARS     7 MONTHS    13 DAYS
PERCENTAGE OF FULL TERM SERVED..: 35.4

PROJECTED SATISFACTION DATE.....: 01-29-2035
PROJECTED SATISFACTION METHOD...: GCT REL

S0055     NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

331-2

# TAB 331-2

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Mr. MECHALSKE, CASE MANAGER | DATE: JUNE 11, 2019 |
|---|---|
| FROM: Charles Friedlander | REGISTER NO.: 50328.018 |
| WORK ASSIGNMENT: N/A | UNIT: Wake A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

An Engles Memo (2/26/2019) instructs me to initiate all requests for compassionate release through your office and to the social worker. My assigned social worker is Ms. Oretede-Branch. I have completed the enclosed request to begin a new application, but cannot reach the social worker because she is not stationed at this institution.

Please scan and email the attached compassionate Release application to Ms. Oretede-Branch. I will advise you of responses received from her and from my physician. Thank you.

(Do not write below this line)

DISPOSITION:



| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



BP-A0148
HSLC 10

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member)<br>Social Worker Oretade-Branch | DATE:<br>June 10, 2019 |
|---|---|
| FROM:<br>Charles Friedlander | REGISTER NO.:<br>50328-018 |
| WORK ASSIGNMENT:<br>N/A | UNIT:<br>Wake A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

I would like to be considered for a Reduction in Sentence (RIS).  I meet the
qualifications listed under:  (circle one) Terminal Medical Condition, Debilitated
Medical Condition, Elderly with Medical Conditions.

1. Identified caregiver, address and phone number

2. Any medical benefits received prior to being incarcerated

3. Name of facility for continuity of care

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate

PDF                    Prescribed by N551/

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FRIEDLANDER, CHARLES 50328018

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER        **SECTION 6**

BP-S621.060  **AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION**  CDFRM
FEB 05
**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

| Inmate Name:<br>CHARLES FRIEDLANDER | Register Number:<br>50328018 | Date:<br>6/10/19 |
|---|---|---|
| | Date of Birth: | Social Security Number: |

I hereby authorize and request the Federal Bureau of Prisons to:

☑ release information to, or          ☑ obtain information from        **PLEASE CONTACT IF
                                                                         PAYMENT IS REQUIRED**
Name/Facility:_ All Agencies and Individuals Relevant to Release Planning_   **PRIOR TO FILLING
                                                                              REQUEST**
Address:_____

City, State, Zip:_____


I understand the information is to be used for (specific reason for release of information):

☑ Continuation of care, or ☑ Other _Discharge Planning_


Information to be Released/Obtained: Copy of and/or information from my medical file pertaining to

my evaluation and treatment received from _BUH Admission_ to ___Present_____ .

This is to include:  ☑ Complete Record     ☑ Discharge Summary    ☑ History & Physical

☑ Operative Reports    ☑ Consultations      ☑ Progress Notes     ☑ X-ray Reports

☑ Laboratory Reports   ☑ Pathology Reports  ☐ Actual Films*#     ☐ Actual Slides*
                                                                  *will be returned
☐ Other:_____   #duplicates accepted


I understand that authorizing the disclosure of this health information is voluntary. I can refuse
to sign this authorization.  I need not sign this form in order to assure treatment. I understand
that information used or disclosed pursuant to this authorization could be subject to redisclosure
by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
I understand that I may revoke this consent at any time by sending a written notice to the Supervisor
of Medical Records.  I understand that any release which has been made prior to my revocation and
which was made in reliance upon this authorization shall not constitute a breach of my rights to
confidentiality. This authorization will automatically expire three months from the date of the
signature.

| Signature of Patient<br><br>**FAX SIGNATURE VALID ORIGINAL** | Date (Month, Day, Year)<br>10 June 2019 | Staff Witness |
|---|---|---|

SPECIFIC AUTHORIZATION FOR RELEASE OF INFORMATION PROTECTED BY STATE OR FEDERAL LAW.
Must sign below, to Release Protected Information.

I specifically authorize the release of data and information relating to:
☑ 1. Substance Abuse      ☑ 2. Mental Health          ☑ 3. HIV
                                                        10 June 2019
_____Signature_____                              _____Date_____


**Deliver Records To:**    (Institution Address & Fax number)
FMC Butner
Attn: Health Information
PO Box 1600
Butner,NC 27509
Phone: (919)-575-3900
Fax: (919)-575-4843

FRIEDLANDER, CHARLES 50328018

(This form may be replicated via WP)                  This form replaces BP-S621Dtd AUG  96

# TAB 331-3



**U.S. Department of Justice**

Federal Bureau of Prisons

---

*Low Security Correctional Institution*             *Butner, North Carolina*

June 21, 2019

REPLY TO
ATTN OF: Donna M. Smith
          Low Security Correctional Institution
          FCC Butner

SUBJECT:  Compassionate Release/Reduction in Sentence

TO:       FRIEDLANDER, CHARLES JACKSON
          Reg. No.: 50328-018
Quarters: W04-056L (WAKE A)

Staff reviewed your request for a Reduction in Sentence (RIS) to
determine whether you meet the RIS guidelines in accordance with
Program Statement 5050.50 for Debilitated. It has been
determined that you **do not** meet the criteria under **Debilitated**
at this time.

You have the right to appeal this decision via the
Administrative Remedy Process. If you choose to appeal, you do
not need to complete the informal review, but you would need to
include a copy of this memorandum with your appeal. Any
decision regarding appeal will be handled in a manner outlined
in policy. Additionally, per policy you have a right to file a
request for a reduction in sentence with your sentencing court
after receiving a BP-11 response or the lapse of 30 days from
the receipt of such a request by the Warden's Office.

We are committed to providing you with the necessary and
appropriate care for your medical needs.

cc: AW
Medical Records
Unit Team

# TAB 331-4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 8:08 CR 318 |
| | ) | |
| CHARLES JACKSON FRIEDLANDER, | ) | |
| | ) | |
| Defendant | ) | |

**DECLARATION OF SARA BEYER**

I, Sara Beyer, do hereby declare as follows:

1.      I am currently employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as the Complex Clinical Director at the Federal Correctional Complex in Butner, North Carolina (FCC Butner). I have worked for the BOP since October 6, 2014 as a Medical officer, and have been clinical director for the last 4 years..

2.      Pursuant to my official duties, I am a Physician, and I serve as the Complex Clinical Director at FCC Butner, and work in the Health Services Division. As the Complex Clinical Director, I supervise the institution's medical staff at the Federal Prison Camp in Butner, North Carolina (FPC Butner), as well as several other institutions comprising FCC Butner. I am responsible for the clinical care provided at the institution, including, but not limited to: reviewing applications and credentials for membership to the medical staff; interviewing prospective physicians and mid-level providers; implementing and monitoring in-house Continuing Professional Education training; maintaining the quality of health records; supervising Medical Officers; and evaluating patient care through an ongoing quality assurance

program that identifies problems and their resolution. I provide clinical oversight and am responsible for all health care delivered.

    3.    As a part of my official duties, I have access to official BOP records pertaining to individuals presently or previously housed at BOP institutions. The above records, which are used in the ordinary course of the BOP operations, include the official BOP medical records pertaining to Charles Friedlander, Register Number 50328-018, who is currently confined at the Low Security Correctional Institution in Butner, North Carolina ("LSCI Butner").

    4.    I am aware that Mr. Friedlander has filed a motion with the Court, in which he seeks a compassionate release based upon his various medical conditions. Below is a list of the medical conditions that Mr. Friedlander lists in his motion, each of which is followed by a brief summary of the status of the condition, as documented in his BOP medical record:

- Type II diabetes mellitus – Diabetes is stable on current management (low dose insulin and low dose oral medications). No recent diabetes-related urgent visits or emergencies. His last HgbA1C was 8.0
- Total erectile dysfunction – Not documented in his medical record.
- Osteoarthritis – Normal age-related progression.
- Extreme fatigue – Not documented in his medical record
- Chronic kidney disease-stage 3 – Documented as "stable" by the nephrologist.
- GERD (Gastroesophageal reflux disease) – Managed on low dose over-the-counter medication.
- Hypertension – Most recent blood pressure was excellent at 112/68.
- Prostate carcinoma/prostate hypertrophy – He refused prostate biopsy time and again AMA so there is no proof that he has prostate cancer. He does have prostate hypertrophy with a hard area concerning for cancer but continuously refuses biopsy.
- Sciatica – Not specifically mentioned in his record, but he has been treated for low back pain.
- Gout – Currently stable.
- Multi basal cell carcinomas – He has a history of this and has been followed by dermatology, last seen by dermatology on 4/11/19 and no worrisome lesions were seen at that time, other than a benign Actinic Keratosis that was frozen at that time..
- Vincent's Stomatitis in mouth/gums (Acute infectious gingivostomatitis) – followed by dental
- Elevated cholesterol – Currently managed with medication. Lipid panel drawn on 5/23/19 was completely within normal limits.

- <u>Right branch bundle block</u> – Currently stable/uncomplicated.
- <u>Diabetic retinopathy</u> – Currently stable.
- <u>Severe clinical depression managed via psych services/medications</u> – Currently stable.
- <u>Elevated anxiety disorder managed via psych services/medications</u> – Currently stable.
- <u>Degenerative back disease</u> – Managed with over-the-counter medications.
- <u>Wheelchair bound since 2012 and wears diapers due to limited control of his bladder</u> – He does receive incontinence supplies he is able to walk independently and does so often.  He has reported very few falls to Medical in the past several months, and has shown no obvious injuries during those encounters.

5.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of July, 2019.

Sara Beyer, M.D.
Complex Clinical Director
Federal Correctional Complex
Butner, North Carolina

3

# TAB 332

USCA11 Case: 19-13347 Document: 28 Date Filed: 02/08/2019 Page: 148 of 246

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNITED STATES OF AMERICA )
                                      )
v.                                    )      Case No. 8:08-CR-318
                                      )
CHARLES JACKSON FRIEDLANDER, )
                                      )
         Defendant           )
                                      )

## RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS AND OPPOSITION TO COMPASSIONATE RELEASE

Defendant, CHARLES JACKSON FRIEDLANDER, through undersigned counsel, hereby files this Response in Opposition and Reply to the Government's Motion to Dismiss and Opposition to Compassionate Release (Doc. 0331) (hereinafter "Motion to Dismiss"), filed on July 8, 2019.

## EXHAUSTION REQUIREMENT

Defendant disagrees with the Government's contention that Defendant's Motion for Compassionate Release (Doc. 0328) filed on June 27, 2019, is premature.

As the Government notes, prior to December 21, 2018, when the President signed the First Step Act, 132 Stat. 5194, only the Bureau of Prisons ("BOP") could file a motion for compassionate release. Now such motions may be filed by the BOP inmate himself, as was done in this instance (see Doc. 0328). Requests for consideration of compassionate release may now, under the Act, be made to the warden of the particular BOP facility, by the inmate, his family, or his counsel.

On January 11, 2019, the Defendant's North Carolina counsel made such a request of Donna Smith, Warden at LSCI Bunter. The January 11th request was followed up and

supplemented by a second letter dated January 25, 2019.  Copies of both letters to the Warden are attached and incorporated herein as **Composite Exhibit A**.  To date, there has been no response at all, let alone any response within the thirty-one (31) days allowed by the Act.  The Defendant has, since at least February 25, 2019, been permitted by the Act to file a motion for compassionate release.

## MEDICAL ISSUES

The Government relies on a document found at Doc. 331-4, the July 8, 2019, Declaration of Dr. Sara Beyer at FCC Butner.  She has never, to our knowledge, examined or met the Defendant.

## DANGEROUSNESS

The crux of our argument for compassionate release is set out in the 12-page report of Dr. Joseph J. Plaud attached to our Motion for Compassionate Release and incorporated herein as **Exhibit B**.  Dr. Plaud is in no sense a "gun for hire."  In more than a hundred cases under 4248 in the District of Massachusetts and the Eastern District of North Carolina, Dr. Plaud has testified as an expert witness, sometimes at the behest of the Government, sometimes at the request of a respondent, and at other times as the Court's own expert witness.  In perhaps 90% of those cases, the District Court has agreed with Dr. Plaud's assessment of the future dangerousness of the respondent.  Dr. Plaud has also been an expert in numerous civil commitment cases under state counterparts to 18 U.S.C. 4248, in Massachusetts and Washington.

Before writing his November 18, 2018 report, he met with the Defendant at some length at LSCI Butner, and reviewed extensive records, including BOP records, as well as, the records of the case in the District Court.  Considering how often Dr. Plaud has served as a Government expert,

the Government's Motion to Dismiss is awfully dismissive of his considered professional opinion in this case.  Attached and incorporated herein is Dr. Plaud's CV as **Exhibit C**.

In United States v. Garcia, No. 2:11 CR 35 (C.D. California), cited in our Motion for Compassionate Release, the Government opposed compassionate release, on two grounds.  The Government contended Wilfred Garcia was not as seriously ill as the motion claimed, and that his release would jeopardize the public safety, i.e. that he remained too dangerous for compassionate release.  Judge Real in Los Angeles ruled against the Government, without a hearing.  His release order of March 22, 2019 is attached to our Motion for Compassionate Release (Doc. 0328) and incorporated therein.

In United States v. Adams, No. 4:09 CR 115 (N.D. Texas), the Government similarly opposed compassionate release for Steven Ray Adams, for the same generic reasons.  After a 20-minute hearing in Fort Worth, Judge O'Connor ruled against the Government.  His release order of May 3, 2019 is attached to our Motion for Compassionate Release and incorporated therein.

The Government could not have opposed compassionate release any harder than in United States v. McGraw, No. 2:02 CR 18 (S.D. Indiana). Relying, as here, on a declaration of Dr. Beyer, the Government contended that Oscar McGraw was healthier than he claimed to be.  The primary Government argument though was that his release would pose a serious danger to the community.  Judge Magnus-Stinson in Indianapolis had no difficulty ruling against the Government on both issues.   The release order is also attached to our Motion for Compassionate Release and incorporated therein.

The Government did not oppose compassionate release in United States v. Leggitt, No. 4:12 CR 306 (E.D. Arkansas), but Judge Baker in Little Rock did discuss the exhaustion of remedies factor in her release order, which is attached to our Motion for Compassionate Release

3

and incorporated therein. She referenced three letters from Leggitt's North Carolina counsel to the BOP, with no response for more than thirty (30) days, just as in the case at hand.

In <u>United States v. Brittner</u>, No. 9:16 CR 15 (D. Montana), Steve Brittner had terminal brain cancer, and Judge Christensen noted his life expectancy was likely measured in weeks, not months. Nonetheless the Government, as here, opposed compassionate release on the grounds that he wasn't all that sick and that his release would put the community in danger. Judge Christensen's release order, in which she gives appropriately short shrift to the Government's argument, is attached to our Motion for Compassionate Release and incorporated therein.

Daniel Peterson, age 80, with serious cardiac issues, dementia, the loss of a leg and in a wheelchair or bed 24/7 was granted compassionate release in <u>United States v. Peterson</u>, No. 7:12 CR 15 (EDNC), over the Government's strong objection of dangerousness to the community. Judge Boyle had no difficulty ruling against the Government, and his release order is attached to our Motion for Compassionate Release and incorporated therein.

The most recent compassionate release case we are aware of under the First Step Act is <u>United States v. Beck</u>, ___ F.Supp.2d ____, Case No. 1:13-CR-186 (MDNC). In that case Judge Eagles on June 28, 2019, ordered compassionate release for Angela Beck over the Government's strong objections both as to medical issues and dangerousness. A copy of the Memorandum Opinion and Order is attached and incorporated herein as **Exhibit D**.

If there is a hearing in this case, Dr. Plaud will be our main witness and expert. We submit that the Court should credit his expert professional opinion as to future dangerousness. Of the First Step Act cases referenced above, there was a hearing only in <u>Adams</u>, <u>Peterson</u>, and <u>Beck</u>. In the other cases the motion was granted after submission on briefs.

**WHEREFORE**, Defendant respectfully requests this Court to grant the Motion for Compassionate Release and order the Defendant, Charles J. Friedlander, who will be 90 years old on his next birthday, compassionately released to his term of supervised release, pursuant to all the reasons set forth above and in the pending Motion for Compassionate Release, and for such other and further release as the Court may deem just and equitable.

Respectfully Submitted,
/s/Joseph E. Parrish
JOSEPH E. PARRISH
Florida Bar. No: 690058
**Parrish & Goodman, PLLC**
915 N. Franklin Street, Unit 2302
Tampa, Florida 33602
(813) 643-4529; (813) 315-6535 (fax)
Primary: jparrish@parrishgoodman.com
Secondary:  admin@parrishgoodman.com
*Counsel for Charles J. Friedlander*
Of Counsel
*/s/ James B. Craven III*
James B. Craven III
NC State Bar 997
P.O. Box 1366
Durham, NC 27702
(919)688-8295
JBC64@mindspring.com  Attorney  for  the
*Counsel for Charles J. Friedlander*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via email through the CM/ECF Portal on the Government counsel on this 15th day of July, 2019:

Maria Chapa Lopez, Esquire
United States Attorney
Colin P. McDonell, Esquire
Assistant United States Attorney
400 North Tampa Street-Suite 3200
Tampa, FL 33602

*/s/ Joseph E. Parrish*
Attorney

332-1

TAB 332-1

JAMES B. CRAVEN III
ATTORNEY AT LAW

JANIE K. LATTA
LEGAL ASSISTANT

LIBERTY MARKET BUILDING
349 WEST MAIN STREET
P. O. BOX 1366
DURHAM, NC 27702
(919) 688-8295
FAX (919) 688-7832
jbc64@mindspring.com

January 11, 2019

Ms. Donna Smith
Warden-LSCI
Box 999 LSCI
Butner, NC 27509

      Re:    Charles Jackson Friedlander
             Reg. No. 0328-018

Dear Ms. Smith:

As you know, I represent Charles Friedlander, who must surely be one of your oldest guests, as he will be 89 on May 28. Please accept this letter, with the enclosures, as his formal request for consideration of compassionate release/RIS pursuant to 18 U.S.C. 3582(c)(1)(A)(i), Section 5B1.13 of the Federal Sentencing Guidelines, P.S. 5050.49, and the First Step Act of 2018.

Enclosed are copies of:

A. Psychosexual Evaluation of Dr. Friedlander of November 28, 2018 by Dr. Joseph J. Plaud, a forensic psychologist in Boston.

B. Letter of February 20, 2018 from Dr. Fred S. Berlin, a forensic psychiatrist at Johns Hopkins in Baltimore.

C. A November 9, 2018 report from Dr. Berlin.

D. A Psychological Evaluation of February 27, 2009 by Dr. Mitchell Krongould, a psychologist in Clearwater, Florida.

E. A March 16, 2018 letter from Dr. Paul Kaufman, a retired Boston University psychiatrist.

Dr. Friedlander's BOP medical records reflect the following ailments, so he is already one of your more expensive guests:

      Brittle Type II Diabetes
      Osteoarthritis
      Extreme Fatigue
      Back pain/shoulder pain
      Renal failure, 3rd Stage
      GERD
      Hypertension

Prostate carcinoma/Prostate Hypertrophy
Hearing loss (hearing aids)
Sciatica
Gout
Multi basal cell carcinomas
Vincent's Stomatis in mouth/gums
Elevated Cholesterol
Bundle Branch Block
Right Branch Bundle Block
Diabetic Retinopathy
Severe Clinical Depression
Elevated Anxiety Disorder
Degenerative Back Disease

He has been wheelchair bound since 2012. And suffice it to say he is way out of warranty.

I don't know what Charles Friedlander's life expectancy is, but I know that no agent in his right mind would sell him a life insurance policy now. The actuarial table in the General Statutes of North Carolina gives him a life expectancy of 6 years, but that does not take into account his remarkable laundry list of health issues.

Dr. Friedlander had a rich, if unsavory, Internet fantasy life. That said, there has never been a hint of any hands-on activity with anyone under age. What we don't have in this sad case is any evidence at all that Charles Friedlander ever harmed a child or anyone else, or ever attempted to do so or wanted to do so. He will be 89 on May 28 and is truly as dangerous as he looks. With his remarkable laundry list of medical issues, he must already be one of the more expensive BOP guests, and that cost will only increase with time. As of January 27 he will have served, with BOP good time just under 137 months, or 38% of his sentence of 360 months. We all know he will not make it to his January 29, 2035 release date at age 105, but the 137 months he will have served as of January 27 is not an insignificant sanction for his victimless offense. Remember too that nothing untoward was found on his computer. In so many ways the poor old man is in prison for his fantasy life.

At some point, whether viewed through the lens of human compassion, cost/benefit analysis, or law and justice, we have to conclude that enough is enough and that we have long reached the point of diminishing returns in keeping this almost 89 year old man locked up. Neither you, nor I, nor my grandchildren are a bit safer because Charles Friedlander is incarcerated.

To sum up Friedlander's sad situation:

1. He will be <u>89</u> in May and is in exceedingly poor health.

2. He has already served 137 months.

3. His sexual fantasy life was rich and sordid, but there was <u>zero</u> hands-on activity.

2

4.  Pedophilia, unless and until acted on, is a disease, not a crime.

Please let us hear from you.

      Many thanks.

                      Very truly yours,

                      James B. Craven III

JBCIII/jkl
Enclosure
Cc:  Dr. Charles J. Friedlander
      William Woodward Webb Jr., Esquire
      Mr. William H. Steinhardt
      Mr. Bill Hayden
      Kenneth P. Hyle, Esquire

JAMES B. CRAVEN III
ATTORNEY AT LAW

JANIE K. LATTA
LEGAL ASSISTANT

LIBERTY MARKET BUILDING
349 WEST MAIN STREET
P. O. BOX 1366
DURHAM, NC 27702
(919) 688-8295
FAX (919) 688-7832
jbc64@mindspring.com

January 25, 2019

Ms. Donna Smith
Warden-LSCI
Box 999 LSCI
Butner, NC 27509

     Re:   Charles Jackson Friedlander
            Reg. No. 0328-018

Dear Ms. Smith:

    To follow up on my January 11 letter, I want to emphasize the importance of Dr. Plaud's detailed psychosexual evaluation assessment of November 18, 2018. It is not only the most thorough and current report we have on Dr. Friedlander, it also concludes that he is at extraordinary low risk. And, Dr. Plaud concludes that:

> Dr. Friedlander is in an age and risk-range, given his current health and medical issues in which terms of compassionate release is clearly in my professional judgment the best course of action concerning both public safety and the welfare of Dr. Friedlander.

    I hope you agree with us that Charles Friedlander, as he approaches his 89th birthday in May, is truly as dangerous as he looks, and I hope you will recommend him for compassionate release/RIS. We look forward to hearing from you.

    Many thanks.

                     Very truly yours,

                     James B. Craven III

JBCIII/jkl
Cc: Dr. Charles J. Friedlander
     William Woodward Webb Jr., Esquire
     Mr. William H. Steinhardt
     Mr. Bill Hayden
     Kenneth P. Hyle, Esquire

332-3

# TAB 332-3

*Joseph Julian Plaud, Ph.D.*

Applied Behavioral Consultants, LLC

166 Boston Street, Unit 3
Boston, MA 02125-1142 U.S.A.

Office Tel: (617) 620-5218
Facsimile: (617) 830-0830

Email: plaud@forensicbehavior.com
Website URL: forensicbehavior.com

## EDUCATION

**Doctor of Philosophy (Ph.D.)**
1993
With Distinction

Clinical Psychology (Full APA Accreditation)
University of Maine
Orono, Maine

**Clinical Internship/Residency**
1992 to 1993
Chief Resident

Clinical Psychology (Full APA Accreditation)
University of Mississippi School of Medicine
and Department of Veterans Affairs Medical Center
Jackson, Mississippi

**Bachelor of Arts (B.A.)**
1987
Summa Cum Laude
Phi Beta Kappa
High Honors in Psychology

Major: Psychology; Minors: History and Philosophy
Clark University
Worcester, Massachusetts

**Graduate Program**
2018
to
Present

Master of Arts (M.A.) in Sacred Theology
Saint Joseph's College
Brunswick, Maine

## FELLOWSHIPS

2002
to
Present

Fellow of the American Psychological Association

Division of the Experimental Analysis of Behavior (Division 25)

2001
to
2013

Board Certified Behavior Analyst – Doctoral
Behavior Analyst Certification Board

1994

Clinical Fellow, Behavior Therapy and Research Society

*Joseph Julian Plaud, Ph.D.*
Page 2

## PROFESSIONAL PSYCHOLOGY LICENSES

| 2008<br>to<br>Present | **Licensed Psychologist:** State of New York Education Department, Office of the Professions (License Number 017766-1), Albany, New York |
|---|---|
| 1998<br>to<br>Present | **Licensed Psychologist:** Commonwealth of Massachusetts Board of Registration of Psychologists (License Number 7394), Boston, Massachusetts |
| 1998<br>to<br>Present | **Licensed Health Service Provider:** Commonwealth of Massachusetts Board of Registration of Psychologists, Boston, Massachusetts |
| 1994<br>to<br>2000 | **Licensed Clinical Psychologist:** North Dakota State Board of Psychologist Examiners (License Number 258), Mandan, North Dakota |

## ELECTED PROFESSIONAL POSITIONS IN PSYCHOLOGY

| 2002<br>to<br>2003 | **President:** New England Society for Behavior Analysis and Therapy, Boston, Massachusetts |
|---|---|
| 2002<br>to<br>2003 | **Council of Representatives:** American Psychological Association, Washington, D.C. |

## HONORS

2018 Albert Nelson Marquis Lifetime Achievement Award
Marquis *Who's Who in the Midwest*
Marquis *Who's Who in Medicine and Healthcare*
Marquis *Who's Who in the World*
Marquis *Who's Who in America*
*Who's Who Among America's Teachers*
Sigma Xi, The Scientific Research Honor Society
Marquis *Who's Who in Science and Engineering*
Sterling's *Who's Who Directory, Executive Edition*
Psi Chi, The National Honor Society in Psychology
University of North Dakota InterFraternity and Panhellenic
Councils Greek Apple Award
Award for the Best Research Article in *Volume 22* of the
*Journal of Behavior Therapy and Experimental Psychiatry*
Alice T. Clark/UND Foundation Mentoring Program Scholar

*Joseph Julian Plaud, Ph.D.*
**Page 3**

Ph.D. Granted from the University of Maine With Distinction
University of Maine Senior Alumni Fellowship
University of Maine Psychology Department Commendation
University of Maine Psychology Department Commendation
Summa Cum Laude, Clark University
High Honors in Psychology, Clark University
Phi Beta Kappa, Clark University, Lambda of Massachusetts

## MEMBERSHIPS IN PROFESSIONAL AND SCIENTIFIC SOCIETIES

American College of Forensic Psychology (ACFP)
American Psychological Association (APA, as a Fellow)
APA Division 12 (Clinical Psychology)
APA Division 24 (Theoretical and Philosophical Psychology)
APA Division 25 (Experimental Analysis of Behavior)
APA Division 41 (American Psychology and Law Society)
Behavior Therapy and Research Society (Clinical Fellow)
Franklin D. Roosevelt Presidential Library and Museum (Former Trustee)
National New Deal Preservation Association (Board of Directors)
International Association for Correctional and Forensic Psychology (IACFP)
Naval Reserve Association (NRA)
Phi Beta Kappa Society (ΦBK)
Reserve Officers Association of the United States (ROA)
Sigma Xi: The Scientific Research Society (Sigma Xi)
Society for a Science of Clinical Psychology (SSCP; APA Div. 12, Sec. 3)
United States Naval Institute (USNI)

## PROFESSIONAL POSITIONS AND APPOINTMENTS

2019
to
Present

Program Coordinator
New England Conference on Forensic Psychology
Boston, Massachusetts

2017
to
Present

Board of Directors
National New Deal Preservation Association
http://www.newdeallegacy.org
Santa Fe, New Mexico

2013
to
2016

Board of Trustees
Franklin D. Roosevelt Presidential Library & Museum
http://www.fdrlibrary.marist.edu/
Hyde Park, New York

2006
to

Board of Directors
National New Deal Preservation Association

*Joseph Julian Plaud, Ph.D.*
**Page 4**

| | |
|---|---|
| 2012 | http://www.newdeallegacy.org |
| | Santa Fe, New Mexico |
| | |
| 2004 | Board of Governors |
| to | Franklin and Eleanor Roosevelt Institute |
| 2013 | http://www.feri.org |
| | Hyde Park, New York |
| | New York, New York |
| | |
| 2002 | Executive Director |
| to | Applied Behavioral Consultants, LLC |
| Present | http://www.appliedbehavioralconsultants.com |
| | Boston, Massachusetts |
| | |
| 2001 | President and Founder |
| to | Franklin D. Roosevelt American Heritage Center and Museum |
| 2007 | http://www.fdrheritage.org |
| | Worcester, Massachusetts |
| | |
| 2000 | Continuing Education Instructor |
| | Fitchburg State College |
| | Fitchburg, Massachusetts |
| | |
| 1999 | Visiting Scholar |
| | Brown University |
| | Center for the Study of Human Development |
| | Providence, Rhode Island |
| | |
| 1999 | Director of Research |
| to | Cambridge Center for Behavioral Studies |
| 2003 | Cambridge, Massachusetts |
| | |
| 1999 | Clinical Associate Professor |
| to | Northeastern University |
| 2001 | Department of Counseling Psychology, Rehabilitation, |
| | and Special Education |
| | Boston Bouve College of Pharmacy and Allied Health Professions |
| | Boston, Massachusetts |
| | |
| 1999 | Associate Clinical Scholar |
| to | May Center for Professional Development |
| Present | Norwood, Massachusetts |
| | |
| 1998 | Adjunct Professor of Psychology |
| to | Worcester State College |

*Joseph Julian Plaud, Ph.D.*
**Page 5**

| | |
|---|---|
| Present | Department of Psychology<br>Worcester, Massachusetts |
| 1998<br>to<br>1999 | Visiting Lecturer<br>Brown University<br>Center for the Study of Human Development<br>Providence, Rhode Island |
| 1998<br>to<br>1999 | Director<br>Behavioral Associates of Massachusetts<br>The Halcyon Center<br>North Attleboro, Massachusetts |
| 1997<br>to<br>1998 | Psychology Program Coordinator<br>University of North Dakota<br>Division of Continuing Education<br>Grand Forks, North Dakota |
| 1993<br>to<br>1997 | Assistant Professor of Psychology<br>University of North Dakota<br>Department of Psychology<br>Grand Forks, North Dakota<br>(Approved for Promotion to Associate Professor, 1997) |
| 1993 | Adjunct Instructor of Psychology<br>Belhaven College<br>Department of Psychology<br>Jackson, Mississippi |
| 1992<br>to<br>1993 | Adjunct Instructor of Psychology<br>Jackson State University<br>Department of Psychology<br>Jackson, Mississippi |
| 1991<br>to<br>1992 | Lecturer I of Psychology<br>University of Maine<br>Department of Psychology<br>Orono, Maine |

## UNITED STATES MILITARY COMMISSION

| | |
|---|---|
| 2002<br>to<br>2005 | Lieutenant Commander, Medical Service Corps<br>United States Naval Reserve<br>Discharged Under Honorable Conditions |

| 1997 | Lieutenant, Medical Service Corps |
| to | United States Naval Reserve |
| 2002 | |

## RESEARCH GRANT ACTIVITIES

A novel experimental technique to assess patterns of human sexual arousal. National Science Foundation (NSF) Experimental Program to Stimulate Competitive Research (EPSCoR; Grant Number 4856-2001-490). Plaud, J. J., Principal Investigator (1997). Direct Costs: $14,000.00.

Cardiophobia and the resumption of sexual activity after myocardial surgery. National Institutes of Health (NIH) IDEA Center. Plaud, J. J., & von Duvillard, S., Principal Investigators (1997). Direct Costs: $4,200.00

North Dakota Psychological Association Science Day. Science Directorate of the American Psychological Association. Plaud, J. J. (1997). Direct Costs: $750.00.

Strong Heart Study. National Heart, Lung, and Blood Institute collaborative agreement (Grant Numbers U01HL41642, U01HL41652, and U01HL41654). Lee, H., & Welty, T. K., Principal Investigators. Plaud, J. J., Psychosocial Consultant (1996-1997). Direct Costs: $20,000,000.00.

Measurement and detection of male and female sexual arousal utilizing a secondary task procedure. National Science Foundation (NSF) Experimental Program to Stimulate Competitive Research (EPSCoR; Grant Number 4856-2001-490). Plaud, J. J., Principal Investigator (1996). Direct Costs: $12,000.00.

North Dakota Psychological Association Science Day. Science Directorate of the American Psychological Association. Vogeltanz, N. D., & Plaud, J. J. (1996). Direct Costs: $750.00.

Effects of misinformation on the Concealed Knowledge Test. Office of Naval Research, Department of the Navy (Grant Number N00014-95-1-1235). Amato-Henderson, S., Principal Investigator. Plaud, J. J., & Honts, C. R., Co-Chairs of dissertation committee (1995). Direct Costs: $14,964.00.

Studies on the conditioning of human sexual arousal and behavior. National Science Foundation (NSF) Experimental Program to Stimulate Competitive Research (EPSCoR; Grant Number 4455-2001-461). Plaud, J. J., Principal Investigator (1995). Direct Costs: $11,500.00.

Habituation and conditioning of human sexual arousal. National Science Foundation (NSF) Experimental Program to Stimulate Competitive Research (EPSCoR; Grant Number 4474-2001-461). Plaud, J. J., Principal Investigator (1994). Direct Costs: $2,050.00.

The effects of Alzheimer's disease on operant conditionability using a signal detection matching law procedure: Distinguishing stimulus discriminability and reinforcement density. University of North Dakota Office of Research and Program Development Research and Travel Grant. Plaud, J. J., Principal Investigator (1993). Direct Costs: $1,955.00.

College of Arts and Sciences, Office of Research and Program Development, and Department of Psychology, University of North Dakota, new faculty start-up award: Equipment, materials and new funds. Plaud, J. J., Principal Investigator (1993). Direct Costs: $24,500.00.

Studies of the effects of Alzheimer's disease on operant conditionability. University of Maine Association of Graduate Students Research Grant. Plaud, J. J., Principal Investigator (1989). Direct Costs: $500.00.

## MAJOR EDITORIAL RESPONSIBILITIES

| | |
|---|---|
| 2005 to 2014 | **Board of Editors:** *International Journal of Offender Therapy and Comparative Criminology* |
| 2005 to 2010 | **Editor-in-Chief:** *Journal of Sexual Offender Civil Commitment: Science and the Law* |
| 1998 | **Contributing Editor:** *Test yourself: Abnormal psychology.* Chicago: NTC Learning Works. |
| 1995 to 2013 | **Board of Editors:** *The Psychological Record (1995 to 2013)* *The Behavior Therapist (1998 to 2000)* |

## OTHER EDITORIAL-RELATED RESPONSIBILITIES

**Editorial Associate:** *Behavioral and Brain Sciences*
**Faculty Advisory Board:** *The Naturalist*
**Managing Editor:** *PsychNews International*
**Referee:** *The Behavior Analyst*
**Referee:** *Behavior Therapy*
**Referee:** *Health Psychology*
**Referee:** *Journal of Behavior Therapy and Experimental Psychiatry*
**Referee:** *Professional Psychology: Research and Practice*
**Referee:** *Psychological Bulletin*

| | |
|---|---|
| 2014 to | **Webmaster:** Roman Catholic Cathedral of Saint Peter and Saint Paul, Providence, Rhode Island. |

*Joseph Julian Plaud, Ph.D.*
**Page 8**

Present

| | |
|---|---|
| 2005 to 2013 | **List Owner:** Psychology and Law Electronic List (PsyLaw-L), the American Psychology-Law Society discussion forum on the interface between psychology and the law. |
| 1995 to 2002 | **Founding List Owner:** Developmental Disabilities (Psych-DD) Electronic List, a world-wide exchange of information for members of AAMR and others interested in developmental disabilities. |
| 1995 to Present | **Founding List Owner:** Clinical-Psychologists Electronic List, a world-wide exchange of information for members of APA Division 12, and a member of the InterPsych Consortium. |
| 1995 to 1997 | **Managing Editor:** (1) *Journal of Behavior Analysis and Therapy* Electronic List (jBATnet), the official network of the Society for Behavior Analysis and Therapy (SBAT); (2) *Journal of Advances in Psychiatry and Abnormal Psychology* Electronic List (JAPAPnet), the editorial board list for the multinational interdisciplinary journal; (3) *PsychNews International* Electronic List (PNI), international list for dissemination of psychology-related information and data. |
| 1994 to 2005 | **Founding List Owner:** Behavior Analysis Electronic List (Behav-An), a world-wide exchange of information for interdisciplinary approaches to behavior analysis and therapy. |
| 1994 to 2005 | **Founding List Owner:** American Psychological Association, Division 12 (Clinical Psychology) Electronic List (Div12), the official network of the Division of Clinical Psychology of APA. |
| 1994 to 1995 | **List Owner:** Clinical Psychology Electronic List, a world-wide exchange of information for members of APA Division 12, and a member of the InterPsych Consortium. |
| 1994 to 1995 | **Founding List Owner:** InterPsych Newsletter Electronic List, the official network for dissemination of the InterPsych Newsletter and related databases. |

## PUBLICATIONS

**2018**

Plaud, J. J. (in press). The use of penile plethysmography in Sexually Violent Predator (SVP) assessment and treatment decision-making. In W. T. O'Donohue & D. Bromberg (Eds.),

*Sexually Violent Predators: A Clinical Science Handbook.* Thousand Oaks, CA: Sage.

Plaud, J. J. (in press). Sexual disorders. In P. Sturmey (Ed.), *Functional Analysis in Clinical Psychology* (second edition). London: Elsevier.

**2016**

Plaud, J. J. (2016). Behavior therapies. In H. L. Miller (Ed.), *The Sage Encyclopedia of Theory in Psychology* (pp. 138-142). Thousand Oaks, CA: Sage.

**2014**

Blackstone, K. E., & Plaud, J. J. (2014). The polygraph. In W. T. O'Donohue & D. Bromberg (Eds.), *Toolkit for Working with Juvenile Sexual Offenders* (pp. 88-119). London: Elsevier.

Plaud, J. J., & Blackstone, K. E. (2014). Penile plethysmography. In W. T. O'Donohue & D. Bromberg (Eds.), *Toolkit for Working with Juvenile Sexual Offenders* (pp. 69-87). London: Elsevier.

**2009**

Plaud, J. J. (2009). Are there "hebephiles" among us? A response to Blanchard et al. *Archives of Sexual Behavior, 38*, 326-327.

**2007**

Plaud, J. J. (2007). Sexual disorders. In P. Sturmey (Ed.), *Functional Analysis in Clinical Psychology* (pp. 357-377). London: Elsevier.

**2005**

Gray, S. R., & Plaud, J. J. (2005). A Comparison of the *Abel Assessment for Sexual Interest* and Penile Plethysmography in an Outpatient Sample of Sexual Offenders. *Journal of Sexual Offender Civil Commitment: Science and the Law, 1*, 1-10.

Plaud, J. J. (2005). Covert sensitization conditioning. In M. Hersen & J. Rosqvist (Eds.) *Encyclopedia of behavior modification and cognitive behavior therapy, Volume I: Adult clinical applications* (pp. 235-241). London: Sage Publications.

**2003**

Plaud, J. J. (2003). Pavlov and the foundation of behavior therapy. *The Spanish Journal of Psychology, 6*, 147-154.

*Joseph Julian Plaud, Ph.D.*
**Page 10**

**2002**

Plaud, J. J. (2002). Assisted Covert Sensitization. In M. Hersen & W. Sledge (Eds.)
*Encyclopedia of Psychotherapy, Volume 1* (pp. 125-130). London: Academic Press.

Plaud, J. J. (2002). It's not too late for behavior therapy. *The Behavior Therapist, 25,* 57-59.

**2001**

Plaud, J. J. (2001).  Clinical science and human behavior. *Journal of Clinical Psychology, 57,*
1089-1102.

Plaud, J. J. (2001). Plaud on Ilardi and Feldman. *Journal of Clinical Psychology, 57,*1109-1111.

Plaud, J. J. (2001). Plaud's rebuttal to Ilardi and Feldman's response. *Journal of Clinical
Psychology, 57,*1119-1120.

**2000**

Chelminski, I., Petros, T. V., Plaud, J. J., & Ferraro, F. R. (2000).   Psychometric properties of
the reduced Horne and Ostberg Questionnaire. *Personality and Individual Differences,
29,* 469-478.

Plaud, J. J. (2000).  Psychology as a behavioral science: Why theories of learning may still be
unnecessary.  *The Current Repertoire, 16,* 4-6.

Plaud, J. J., Gillund, B., & Ferraro, F. R.  (2000).  A signal detection analysis of choice behavior
and aging. *Journal of Clinical Geropsychology,6,* 73-81.

Plaud, J. J., Muench Plaud, D., Kolstoe, P. D., & Orvedal, L. (2000).  Behavioral treatment of
sexually offending behavior.  *Mental Health Aspects of Developmental Disabilities, 3,*
54-61.

**1999**

Chelminski, I., Ferraro, F. R., Plaud, J. J., & Petros, T.  (1999).  An analysis of the
"morningness-eveningness" dimension and the impact of "depressive" symptoms on daily
performance in "depressive" college students. *Journal of Affective Disorders*, *52,* 19-29.

Plaud, J. J., Gaither, G. A., Hegstad, H. J., Rowan, L., & Devitt, M. K.  (1999).  External validity
of psychophysiological sexual arousal research: To whom do our research results apply?
*Journal of Sex Research, 36,* 171-179.

Plaud, J. J., & Martini, J. R.  (1999).  The respondent conditioning of male sexual arousal.
*Behavior Modification, 23,* 254-268.

*Joseph Julian Plaud, Ph.D.*
**Page 11**

Plaud, J. J., Muench Plaud, D., & von Duvillard, S. P. (1999). Human behavioral momentum in an aging sample of adults. *Journal of General Psychology, 126,* 165-175.

von Duvillard, S. P., Smith, T., Staiger, S., Plaud, J. J., Pokan, R., Hofmann, P., & Brinkert, R.H. (1999). The effect of active vs passive recovery resulting from five consecutive Wingate tests on selected respiratory variables and biochemical markers [Abstract]. *Journal of Sports Science, 17*, 593.

**1998**

Eifert, G. H., & Plaud, J. J. (1998). From behavior theory to behavior therapy: An overview. In J. J. Plaud & G. H. Eifert (Eds.), *From behavior theory to behavior therapy* (pp. 1-14). Boston: Allyn & Bacon.

Ferraro, F. R., Orvedal, L. L., & Plaud, J. J. (1998). Institutional review board (IRB) issues related to special populations: Developmentally disabled individuals. *Journal of General Psychology, 125*, 156-164.

Ferraro, F. R., Plaud, J. J., Jones, D., & McManus, G. (1998). The relationship of Maudsley Obsessive-Compulsive Inventory subscales with negative priming and inhibition. *Journal of General Psychology, 124*, 341-349.

Gaither, G. A., & Plaud, J. J. (1998). The effects of secondary stimulus characteristics on male sexual arousal. *Journal of Sex Research, 34*, 231-236.

Gaither, G. A., Rosenkranz, R. R., & Plaud, J. J. (1998). Sexual disorders. In J. J. Plaud & G. H. Eifert (Eds.), *From behavior theory to behavior therapy* (pp. 152-171). Boston: Allyn & Bacon.

Martini, J. R., Plaud, J. J., & von Duvillard, S. P. (1998). Human behavioral momentum in an aging sample of adults [Abstract]. *Convention Proceedings for the 32nd Annual AABT Convention*, 22.

Plaud, J. J., & Bigwood, S. J. (1998). The relationship of male self-report of rape supportive attitudes, sexual fantasy, social desirability and physiological arousal to sexually coercive stimuli. *Journal of Clinical Psychology, 53*, 935-942.

Plaud, J. J., Eifert, G. H., & Wolpe, J. (1998). The role of theory in behavior therapy: Conceptual and practical conclusions. In J. J. Plaud & G. H. Eifert (Eds.), *From behavior theory to behavior therapy* (pp. 320-331). Boston: Allyn & Bacon.

Plaud, J. J., Gaither, G. A., & Caparulo, F. (1998). Sexually coercive stimuli and their relation to rape supportive behavior and physiological arousal. [Abstract]. *The battle without borders: Confronting sexual abuse in today's world. Proceedings of the 1998 Research and Treatment Conference of the Association for the Treatment of Sexual Abusers*, 186.

*Joseph Julian Plaud, Ph.D.*
**Page 12**

Plaud, J. J., Gaither, G. A., & Caparulo, F. (1998). External validity and generalization of behavioral and psychophysiological sexual arousal research. [Abstract]. *The battle without borders: Confronting sexual abuse in today's world. Proceedings of the 1998 Research and Treatment Conference of the Association for the Treatment of Sexual Abusers*, 119.

Plaud, J. J., Gaither, G. A., Franklin, M., Weller, L. A., & Barth, J. (1998). The effects of sexually explicit words on the formation of stimulus equivalence classes. *The Psychological Record, 48*, 63-79.

Plaud, J. J., Gaither, G. A., & Martini, J. R. (1998). Reaction time to a secondary task and male sexual arousal [Abstract]. *Convention Proceedings for the 32nd Annual AABT Convention*, 49.

Plaud, J. J., Gaither, G. A., & von Duvillard, S. P. (1998). Rational Emotive Behavior Therapy and the formation of stimulus equivalence classes [Abstract]. *Convention Proceedings for the 32nd Annual AABT Convention*, 15.

Plaud, J. J., Gaither, G. A., & Weller, L. A. (1998). Gender differences in the sexual rating of words. *Journal of Sex and Marital Therapy, 24*, 15-21.

Plaud, J. J., Gaither, G. A., Weller, L. A., Bigwood, S. J., Barth, J., & von Duvillard, S. P. (1998). Rational-Emotive Behavior Therapy and the formation of stimulus equivalence classes. *Journal of Clinical Psychology, 54*, 597-610.

Plaud, J. J., & Holm, J. E. (1998). Sexual dysfunctions. In J. J. Plaud & G. H. Eifert (Eds.), *From behavior theory to behavior therapy* (pp. 136-151). Boston: Allyn & Bacon.

Plaud, J. J., Moberg, M., & Ferraro, F. R. (1998). A review of Alzheimer's disease and dementia: Applied behavioral assessment and treatment approaches. *Journal of Clinical Geropsychology, 4*, 269-300.

Plaud, J. J., Mosley, T. H., & Moberg, M. (1998). Alzheimer's disease and behavioral gerontology. In J. J. Plaud & G. H. Eifert (Eds.), *From behavior theory to behavior therapy* (pp. 223-245). Boston: Allyn & Bacon.

Plaud, J. J., & Muench Plaud, D. (1998). Clinical behavior therapy and the experimental analysis of behavior. *Journal of Clinical Psychology, 54*, 905-922.

Plaud, J. J., Schweigman, K., & Welty, T. K. (1998). Health-related and cultural gender differences in an aging Northern Plains Indian population. *Journal of Clinical Geropsychology, 4*, 111-118.

Plaud, J. J., & Vavrovsky, K. G. (1998). Specific and social phobias. In J. Wodarski & B. Thyer (Eds.), *Handbook of empirical social work practice* (pp. 327-341). New York:

John Wiley & Sons.

**1997**

Chelminski, I., Ferraro, F. R., Petros, T., & Plaud, J. J. (1997). The *Horne and Ostberg Questionnaire:* A score distribution in a large sample of young adults. *Personality and Individual Differences, 23*, 647-652.

Gaither, G. A., Franklin, M. D., & Plaud, J. J. (1997). Reaction time to a secondary task: Its relationship to physiological and subjective measures of male sexual arousal. [Abstract]. *Convention Proceedings for the 31st Annual AABT Convention*, 37.

Plaud, J. J. (1997). Behavioural analysis of fear-related responding using a modified matching-to-sample procedure. *Scandinavian Journal of Behaviour Therapy, 26*, 157-170.

Plaud, J. J., & Bigwood, S. J. (1997). A multivariate analysis of the sexual fantasy themes of college men. *Journal of Sex and Marital Therapy, 23*, 221-230.

Plaud, J. J., Bigwood, S. J., Martini, J. R., & von Duvillard, S. P. (1997). A multivariate analysis of the sexual fantasy themes of college men: Implications for behavior therapy [Abstract]. *Convention Proceedings for the 31st Annual AABT Convention*, 39.

Plaud, J. J., Britton, L. N., & Ferraro, F. R. (1997). The effect of weight requirements on eating behavior and mood [Abstract]. *Convention Proceedings for the 31st Annual AABT Convention*, 4.

Plaud, J. J., & Gaither, G. A. (1997). A clinical investigation of the possible effects of long-term habituation of sexual arousal in assisted covert sensitization. *Journal of Behavior Therapy and Experimental Psychiatry, 28*, 281-290.

Plaud, J. J., Gaither, G. A., Amato-Henderson, S., & Devitt, M. K. (1997). The long-term habituation of sexual arousal in human males: A crossover design. *The Psychological Record, 47*, 385-398.

Plaud, J. J., Gaither, G. A., Hegstad, H. H., Rowan, L., & Devitt, M. K. (1997). External validity of behavioral and psychophysiological sexual arousal research [Abstract]. *Convention Proceedings for the 31st Annual AABT Convention*, 38.

Plaud, J. J., Gaither, G. A., & Lawrence, J. B. (1997). Operant schedule transformations and human behavioral momentum. *Journal of Behavior Therapy and Experimental Psychiatry, 28*, 169-179.

Plaud, J. J., Schweigman, K., & Welty, T. K. (1997). Health and depression among American Indians: Psychosocial data from the Strong Heart Study Phase II. *International Journal of Rehabilitation and Health, 3*, 51-59.

Plaud, J. J., & Vogeltanz, N. D.  (1997).  Back to the future: The continued relevance of behavior theory to modern behavior therapy.  *Behavior Therapy, 28*, 75-86.

Plaud, J. J., & Vogeltanz, N. D.  (1997).  Behavior therapy and the philosophy of science: Commentary on behavior therapy at century close.  *Behavior Therapy, 28*, 228-232.

Plaud, J. J., von Duvillard, S. P., Bigwood, S. J., & Martini, J. R. (1997).  Sexually coercive stimuli and its relation to rape supportive attitudes, sexual fantasy, social desirability, and physiological arousal [Abstract].  *Convention Proceedings for the 31st Annual AABT Convention*, 40.

Westerfield, C. W., & Plaud, J. J.  (1997).  A behavior therapist's guide to the Internet and the World Wide Web.  *The Behavior Therapist, 20*, 6-8.

Wilsnack, S. C., Plaud, J. J., Wilsnack, R. W., & Klassen, A. (1997).  Sexuality, gender, and alcohol use.  In R. W. Wilsnack & S. C. Wilsnack (Eds.), *Gender and alcohol* (pp. 250-288).  Brunswick, NJ: Rutgers Center of Alcohol Studies.

Wolpe, J., & Plaud, J. J. (1997).  Pavlov's contributions to behavior therapy: The obvious and the not so obvious.  *American Psychologist, 52*, 966-972.

**1996**

Amato-Henderson, S., Honts, C. R., & Plaud, J. J.  (1996).  Effects of misinformation on the Concealed Knowledge Test [Abstract].  *Psychophysiology, 33*, S18.

Bigwood, S. J., Plaud, J. J., & Rosenkranz, R. R.  (1996).  The effects of sexually coercive audio stimuli on male sexual arousal [Abstract].  *Convention Proceedings for the 30th Annual AABT Convention*, 235.

Gaither, G. A., & Plaud, J. J.  (1996).  The relationships between experience with, fantasies of, and sexual arousal to specific sexual behaviors [Abstract].  *Convention Proceedings for the 30th Annual AABT Convention*, 415.

Gaither, G. A., Plaud, J. J., & Franklin, M. D.  (1996).  The effects of behavior and sound on penile plethysmographic assessment results: An argument for standardizing stimuli [Abstract].  *Convention Proceedings for the 30th Annual AABT Convention*, 415.

Gaither, G. A., Rosenkranz, R. R., Amato-Henderson, S., Plaud, J. J., & Bigwood, S. J. (1996).  The effects of condom presence in sexually explicit narratives on male sexual arousal.  *Journal of Sex and Marital Therapy, 22*, 103-109.

Mosley, T. H., Payne, T. J., Plaud, J. J., Johnson, C. A., Wittrock, D. A., Seville, J. L., Penzien, D. B., & Rodriguez, G.  (1996).  Psychometric properties of the Weekly Stress Inventory (WSI): Extension to a patient sample with coronary heart disease.

*Journal of Behavioral Medicine, 19*, 273-287.

Plaud, J. J. (1996). In search of the relevant behavioral variables. *Behavioral and Brain Sciences, 19*, 593-594.

Plaud, J. J. (1996). Resources relevant to the creation of a psychology department home page. *Behavior Research Methods, Instruments, and Computers, 28*, 183-185.

Plaud, J. J. (1996). Internet resources in applied behavior analysis. *Journal of Applied Behavior Analysis, 29*, 585-587.

Plaud, J. J. (1996). World Wide Web homepage construction: Making yours an international department of psychology. *The Behavior Therapist, 19*, 146-148.

Plaud, J. J. (1996). Peer-reviewed journal publication on the World Wide Web: The *Journal of Behavior Analysis and Therapy (jBAT)*. *Journal of Behavior Analysis and Therapy, 1*, i-vi.

Plaud, J. J. (1996). [Review of *Case studies in abnormal psychology*]. *Journal of Behavior Therapy and Experimental Psychiatry, 27*, 72.

Plaud, J. J., Dubbert, P. M., Holm, J. E, Wittrock, D., Smith, P., Edison, J., McAnulty, R., Caddell, J., Summerville, M., & Jones, A., Jr. (1996). A survey of variables related to erectile dysfunction in men with chronic medical illness. *Journal of Behavior Therapy and Experimental Psychiatry, 27*, 11-19.

Plaud, J. J., & Gaither, G. A. (1996). Behavioral momentum: Implications and development from reinforcement theories. *Behavior Modification, 20*, 183-201.

Plaud, J. J., & Gaither, G. A. (1996). Human behavioral momentum: Implications for behavior analysis and therapy. *Journal of Behavior Therapy and Experimental Psychiatry, 27*, 139-148.

Plaud, J. J., Gillund, B., & Ferraro, F. R. (1996). A signal detection analysis of choice behavior and aging: Implications for behavior therapy [Abstract]. *Convention Proceedings for the 30th Annual AABT Convention*, 485.

Plaud, J. J., Lawrence, J., & Gaither, G. A. (1996). Eysenckian personality factors and human behavioral momentum [Abstract]. *Convention Proceedings for the 30th Annual AABT Convention*, 373.

Plaud, J. J. & Martini, J. R. (1996). An empirical analysis of the respondent conditioning of male sexual arousal: Implications for behavior analysis and therapy [Abstract]. *Convention Proceedings for the 30th Annual AABT Convention*, 416.

Plaud, J. J., & Newberry, D. E. (1996). Rule-governed behavior and pedophilia. *Sexual Abuse: A Journal of Research and Treatment, 8*, 143-159.

Plaud, J. J., Schweigman, K., & Welty, T. K. (1996). Health-related and cultural gender differences in an aging Northern Plains Indian population [Abstract]. *Convention Proceedings for the 30th Annual AABT Convention*, 301.

Plaud, J. J., Schweigman, K., & Welty, T. K. (1996). Health and mood among a Northern Plains American Indian tribe: Psychosocial data from the Strong Heart Study Phase II [Abstract]. *Convention Proceedings for the 30th Annual AABT Convention*, 302.

Plaud, J. J., Vogeltanz, N. D., & Martini. J. R. (1996). Cutting edge behavior analysis: The very best of behavior therapy [Abstract]. *Convention Proceedings for the 30th Annual AABT Convention*, 78.

**1995**

Alford, G., Plaud, J. J., & McNair, T. L. (1995). Conditioning perspectives on sexual behavior and orientation. In L. Diamant & R. McAnulty (Eds.), *The psychology of sexual orientation, behavior and identity: A handbook* (pp. 121-135). Westport, CT: Greenwood Publishing.

Gaither, G. A., Rosenkranz, R. R., Amato-Henderson, S., Plaud, J. J., & Bigwood, S. (1995). Condom presence or absence in sexually explicit narratives: Effects on male sexual arousal [Abstract]. *Convention Proceedings for the 29th Annual AABT Convention* (p. 331).

Plaud, J. J. (1995). The formation of stimulus equivalences: Fear-relevant versus fear-irrelevant stimulus classes. *The Psychological Record, 45*, 207-222.

Plaud, J. J. (1995). The generalized expectancy bias: An explanatory enigma. *Behavioral and Brain Sciences, 18,* 311-312.

Plaud, J. J. (1995). The behavior of self-control. *Behavioral and Brain Sciences, 18*, 139-140.

Plaud, J. J. (1995). Analysis of complex human behavior. *The Behavior Analyst, 18*, 167-169.

Plaud, J. J. (1995). [Review of *Clinician's guide to neuropsychological assessment*]. *The Psychological Record, 45,* 157.

Plaud, J. J., & Gaither, G. A. (1995). Human behavioral momentum and behavior therapy [Abstract]. *Convention Proceedings for the 29th Annual AABT Convention* (p. 137).

Rosenkranz, R. R., Gaither, G. A., & Plaud, J. J. (1995). A critical analysis of paradigmatic behaviorism versus radical behaviorism. *The Naturalist, 2*, 22-28.

**1994**

Ferraro, F. R., & Plaud, J. J. (1994).  [Review of *Alzheimer's disease: Advances in clinical and basic research*].  *Neuropsychiatry, Neuropsychology, and Behavioral Neurology, 7,* 320-321.

O'Donohue, W., & Plaud, J. J. (1994).  The conditioning of human sexual arousal.  *Archives of Sexual Behavior, 23,* 321-344.

Plaud, J. J. (1994).  Where have all the paradigmatic behaviorists gone?  *The Behavior Therapist, 17,* 20-21.

Plaud, J. J.  (1994).  Welcome to Div12: The official net of the Division 12 of the APA.  *The Clinical Psychologist, 47,* 23-24.

Plaud, J. J. (1994).  [Review of *Understanding challenging behavior: A step-by-step behavior analysis guide*].  *Journal of Behavior Therapy and Experimental Psychiatry, 25,* 261.

Plaud, J. J. (1994).  The shaping of a behaviorist, revisited.  [Review of *B. F. Skinner: A life*].  *Journal of Behavior Therapy and Experimental Psychiatry, 25,* 174-175.

Plaud, J. J. (1994).  Behavior analysis and the challenge of a scientific psychology.  [Review of *Behavior modification in the human services, third edition*].  *Journal of Behavior Therapy and Experimental Psychiatry, 24*, 270-271.

Plaud, J. J., & Ferraro, F. R. (1994).  [Review of *Clinician's guide to neuropsychological assessment*].  *Journal of Behavior Therapy and Experimental Psychiatry, 25,* 338-339.

Plaud, J. J., & Vogeltanz, N. (1994).  Psychology and the naturalistic ethics of social policy.  *American Psychologist, 49*, 967-968.

Plaud, J. J., & Vogeltanz, N. (1994).  The operant chamber ain't what it used to be: Recent advances in behavior analysis and their relevance to behavior therapy [Abstract].  *Convention Proceedings for the 28th Annual AABT Convention* (p. 9).

**1993**

Eifert, G. H., & Plaud, J. J. (1993).  From behavior theory to behavior therapy: The contributions of behavioral theories and research to the advancement of behavior therapy.  *Journal of Behavior Therapy and Experimental Psychiatry, 24,* 101-105.

Mosley, T. H., McCracken, L. M., Gross, R. T., Penzien, D. B., & Plaud, J. J.  (1993).  Age, pain, and impairment: Results from two clinical samples [Abstract].  *Proceedings of the 7th World Congress on Pain* (p. 99).

*Joseph Julian Plaud, Ph.D.*
**Page 18**

Mosley, T. H., Payne, T. J., Plaud, J. J., Johnson, C. A., Wittrock, D. A., Seville, J. L., Penzien, D. B., Brantley, P. J., & Jones, G. N. (1993). Psychometric properties of the weekly stress inventory in a cardiac population [Abstract]. *Annals of Behavioral Medicine, 15, 1993 Supplement* (p. 119).

Plaud, J. J. (1993). Paradigmatic behaviorism, pragmatic philosophy and unified science. *The Behavior Therapist, 16*, 101-103.

Plaud, J. J. (1993). Behaviorism, applied behavior analysis and the humanist ideal. [Review of *The reluctant alliance: Behaviorism and humanism*]. *Journal of Behavior Therapy and Experimental Psychiatry,* 88-89.

Plaud, J. J., & Dubbert, P. M. (1993). Exercise: A healthy choice. *The Weight Control Digest, 3,* 274-276.

Plaud, J. J., & Montgomery, R. W. (1993). On the influence of Walter S. Hunter in the shaping of modern behaviorism. *The Psychological Record, 43*, 361-374.

Plaud, J. J., & Vogeltanz, N. D. (1993). Behavior therapy and the experimental analysis of behavior: Contributions of the science of human behavior and radical behavioral philosophy. *Journal of Behavior Therapy and Experimental Psychiatry, 24*, 119-127.

Plaud, J. J., Vogeltanz, N., & Ackley, F. R. (1993). An analysis of the nature and justification of treatment decisions in inpatient settings. *Professional Psychology: Research and Practice, 24*, 418-425.

Vogeltanz, N. D., & Plaud, J. J. (1993). On the goodness of Skinner's system of naturalistic ethics in solving basic value conflicts [Abstract]. *Proceedings: Association for Behavior Analysis: International: 19th Annual Convention* (p. 444).

Vogeltanz, N. D., Plaud, J. J., & Ackley, F. R. (1993). The advancement of behavior therapy in inpatient settings. *The Behavior Therapist, 16*, 123-126.

**1992**

O'Donohue, W. T., Plaud, J. J., & Hecker, J. E. (1992). The possible function of positive reinforcement in home-bound agoraphobia: A case study. *Journal of Behavior Therapy and Experimental Psychiatry, 23*, 303-312.

Plaud, J. J. (1992). The prediction and control of behavior revisited: A review of the matching law. *Journal of Behavior Therapy and Experimental Psychiatry*, 23, 25-31.

Plaud, J. J. (1992). Should we take the "radical" out of the "behaviorism"?: Some

comments about behavior therapy and philosophy. *The Behavior Therapist, 15,* 121-122, 128.

Plaud, J. J. (1992). The influence of Walter S. Hunter to the operant behaviorism of B.F. Skinner [Abstract]. *Proceedings: Association for Behavior Analysis: International: 18th Annual Convention* (p. 180).

Plaud, J. J. (1992). The formation of stimulus equivalences using a modified matching-to-sample procedure: Fear-relevant vs. fear-irrelevant stimulus categories [Abstract]. *Proceedings: Association for Behavior Analysis: International: 18th Annual Convention* (p. 30).

Plaud, J. J. (1992). Oil on the troubled waves: John Broadus Watson and the ways of behaviorism: A review of *Mechanical Man: John Broadus Watson and the Beginnings of Behaviorism* by Kerry W. Buckley. *Current Psychology: Research and Reviews, 10,* 305-310.

Vogeltanz, N. D., & Plaud, J. J. (1992). On the goodness of Skinner's system of naturalistic ethics in solving basic value conflicts. *The Psychological Record, 42,* 457-468.

**1991**

O'Donohue, W. T., & Plaud, J. J. (1991). The long-term habituation of sexual arousal in the human male. *Journal of Behavior Therapy and Experimental Psychiatry, 22*, 87-96.

Plaud, J. J., & Kulberg, G. (1991). The formation of verbal stimulus equivalence in analog simple phobics: Fear-relevant versus neutral stimulus classes [Abstract]. *Proceedings: Association for Behavior Analysis: International: 17th Annual Convention* (p. 245).

Plaud, J. J., & O'Donohue, W. T. (1991). Mathematical statements in the experimental analysis of behavior. *The Psychological Record, 41*, 385-400.

Plaud, J. J., & Vogeltanz, N. (1991). Behavior therapy: Lost ties to animal research? *The Behavior Therapist, 14,* 89-93, 115.

Plaud, J. J., & Vogeltanz, N. (1991). Behavior therapy: Lost ties to animal research? [Abstract]. *Proceedings: Association for Behavior Analysis: International: 17th Annual Convention* (p. 73).

**1990**

O'Donohue, W. T., Fisher, J. E., Plaud, J. J., & Curtis, S. D. (1990). Treatment decisions: Their nature and their justification. *Psychotherapy: Theory and Practice, 27*, 421-427.

Plaud, J. J., Baker, R. W., & Groccia, J. E. (1990). Freshman decidedness regarding academic major and anticipated and actual adjustment to an engineering college. *National Academic Advising Association Journal, 10*, 20-26.

**1989**

O'Donohue, W. T., Fisher, J. E., Plaud, J. J., & Link, W. (1989). What is a good treatment decision?: The client's perspective. *Professional Psychology: Research and Practice, 20*, 404-407.

O'Donohue, W. T., Plaud, J. J., Mowatt, A., & Fearon, J. (1989). The current status of curricula of doctoral training programs in clinical psychology. *Professional Psychology: Research and Practice, 20*, 196-197.

## BOOKS

Plaud, J. J., & Eifert, G. H. (Eds.) (1998). *From behavior theory to behavior therapy.* Boston: Allyn and Bacon.

## PROFESSIONAL PRESENTATIONS

**2019**

Plaud, J. J. (2019, July). Sexual offense recidivism and Sexually Violent Predator civil commitment laws. Presentation at the meeting of the Congress of the International Academy of Law and Mental Health, Rome, Italy.

Plaud, J. J. (2019, March). Sexually Dangerous no longer? Massachusetts sexual recidivism data on sex offenders released from civil commitment. Presentation at the meeting of the American College of Forensic Psychology, San Diego, CA.

Plaud, J. J. (2019, March). *Forensic skills workshop: The role of the psychologist in civil and criminal litigation.* Symposium conducted at the meeting of the American College of Forensic Psychology, San Diego, CA.

**2018**

Plaud, J. J. (2018, October). Sexual offender risk assessment and recidivism: Protocols and pitfalls. Presentation at the meeting of the Commonwealth of Massachusetts Judicial Conference, Worcester, MA.

**2017**

Plaud, J. J. (2017, April). When forensic psychologists are on trial in the court of public opinion. Presentation at the meeting of the American College of Forensic Psychology, San Diego, CA.

**2016**

Plaud, J. J. (2016, February). Behavior analysis, "volitional control," and indefinite sexual offender civil commitment. Invited address at the meeting of the California Association of Behavior Analysis, Santa Clara, CA.

**2015**

Plaud, J. J. (2015, November). Penile plethysmography (PPG), risk assessment, and volitional control of sexual arousal. Presentation at the meeting of the Third Annual Boston Symposium on Psychology and the Law, Boston, MA.

**2014**

Plaud, J. J. (2014, December). Use of penile plethysmography (PPG) in SDP/SVP evaluations. Presentation at the meeting of the Second Annual Boston Symposium on Psychology and the Law, Boston, MA.

Plaud, J. J. (2014, March). Perverting perversity: Statistical sadism and sexual offender civil commitment evaluations. Presentation at the meeting of the American College of Forensic Psychology, San Diego, CA.

**2013**

Plaud, J. J. (2013, July). Will they do it again? Assessing sexual offender recidivism risk. Presentation at the meeting of the Congress of the International Academy of Law and Mental Health, Amsterdam, The Netherlands.

**2011**

Plaud, J. J. (2011, October). Psychological assessment of sexual offenders: Where we've been and where we're going. Presentation at the meeting of the New York State Psychological Association's Forensic Division Conference, New York, NY.

Plaud, J. J. (2011, April). Do recidivism data and prediction strategies support sexual offender civil commitments? Presentation at the meeting of the American College of Forensic Psychology, San Diego, CA.

**2010**

Plaud, J. J. (2010, April) The psychometric properties of penile plethysmography (PPG): Implications for forensic practice. Presentation at the meeting of the American College of Forensic Psychology, San Francisco, CA.

**2008**

Plaud, J. J. (2008, October). Assessments of mental disorders and risk in SVP commitment cases. Presentation at the meeting of SOCDA, Atlanta, Georgia.

**2005**

Plaud, J. J. (2005, July). Psychometric properties of the penile plethysmograph and *Abel Assessment for Sexual* Interest. In L. B. Rosell (chair), *Civil commitment of sexual violent predators in the United States.* Symposium conducted at the 9th European Congress of Psychology, Granada, Spain.

Plaud, J. J. (2005, April). *The founding of the Franklin D. Roosevelt American Heritage Center and Museum.* Invited presentation to the Briarwood Community, Worcester, Massachusetts.

Plaud, J. J. (2005, April). *Franklin Delano Roosevelt and the New Deal.* Invited presentation to the History Department, Worcester Academy, Worcester, Massachusetts.

**2004**

Plaud, J. J. (2004, May). *Assessment, treatment, and commitment of sexual abusers.* Grand Rounds presentation to the Department of Psychiatry, Tewksbury Hospital, Tewksbury, Massachusetts.

Plaud, J. J. (2004, February). *Behavior therapy and intervention for sexual offending.* Invited presentation at the May Institute Continuing Education Program, Norwood, Massachusetts.

**2003**

Plaud, J. J. (2003, April). *Ivan P. Pavlov and the foundation of behavior therapy.* Invited presentation at the Century of Pavlovian Theory Celebration at the Universidad Complutense de Madrid, Madrid, Spain.

**2002**

Plaud, J. J. (2002, November). *Behavioral and psychophysiological assessment of sexual abusers: Scientific and forensic formulations.* Presentation at the meeting of the New England Society for Behavior Analysis and Therapy, Waltham, Massachusetts.

Gray, S. R., & Plaud, J. J. (2002, October). *A comparison of the Abel Assessment for Sexual Interest and Penile Plethysmography.* Presentation at the meeting of the Association for the Treatment of Sexual Abusers, Montreal, Quebec, Canada.

Plaud, J. J. (2002, October). *Why isn't Applied Behavior Analysis more widely accepted and used?* Presentation at the meeting of the Berkshire Association for Behavior Analysis,

University of Massachusetts, Amherst, Massachusetts.

Plaud, J. J. (2002, May). *The Cambridge Center discussion: Taking small steps towards a better world - What have we learned?* Presentation at the meeting of the Association for Behavior Analysis, Toronto, Ontario, Canada.

Plaud, J. J. (2002, May). *Online preparation in the learning sciences: The New School.* Presentation at the meeting of the Association for Behavior Analysis, Toronto, Ontario, Canada.

Plaud, J. J. (2002, May). *Sexually Dangerous Person statistics.* Presentation at the meeting of the Massachusetts Committee for Public Counsel Services, Worcester, Massachusetts.

Plaud, J. J. (2002, April). *Empirically validated assessment of sexual dangerousness.* Presentation at the meeting of the Massachusetts Adolescent Sexual Offender Coalition and the Massachusetts Association for the Treatment of Sexual Abusers, Marlborough, Massachusetts.

**2001**

Plaud, J. J., & Constantine, B. J. (2001, November). *Promoting international behavior analysis: The Cambridge Center for Behavioral Studies' Behavioral Virtual Community and the World Wide Web.* Presentation at the meeting of the international conference of the Association for Behavior Analysis, Venice, Italy.

Plaud, J. J. (2001, November). Chairperson. *Working with children and families.* Symposium at the meeting of the international conference of the Association for Behavior Analysis, Venice, Italy.

Plaud, J. J. (2001, June). *On putting "behavior" back into behavior therapy.* Presentation at the meeting of the New England Society for Behavior Analysis and Therapy, Waltham, Massachusetts.

Bernicky, G. R., & Plaud, J. J. (2001, May). *ABA International Affiliate chapters supporting and growing together.* Presentation at the meeting of the Association for Behavior Analysis, New Orleans, Louisiana.

Plaud, J. J. (2001, May). *The respondent conditioning and habituation of sexual arousal.* Presentation at the meeting of the Association for Behavior Analysis, New Orleans, Louisiana.

Plaud, J. J., & Plaud, D. M. (2001, May). *Stimulus control in children with developmental disabilities.* Presentation to the Center for the Study of Human Development, Brown University, Providence, Rhode Island.

*Joseph Julian Plaud, Ph.D.*
**Page 24**

Plaud, J. J. (2001, January). *How to assess and treat sexual offenders.* Grand Rounds
presentation to the Department of Psychiatry, Department of Veterans Affairs Medical
Center, Northampton, Massachusetts.

**2000**

Plaud, J. J. (2000, November). Panelist. In D. Feldman (Moderator), *Radical behaviorism and
cognitive neuroscience: A friendly debate of rival theoretical frameworks for the science
and practice of clinical psychology.* Panel Discussion conducted at the meeting of the
Association for Advancement of Behavior Therapy, New Orleans, Louisiana.

Plaud, J. J., Constantine, B. J., & Haggas, A. M. (2000, October). *Behavior.Org: Advancing
behavior analysis around the world.* Presentation at the meeting of the Berkshire
Association for Behavior Analysis and Therapy, University of Massachusetts, Amherst,
Massachusetts.

Plaud, J. J. (2000, October). *Teaching language to children with developmental disabilities.*
Presentation at the meeting of the Berkshire Association for Behavior Analysis and
Therapy, University of Massachusetts, Amherst, Massachusetts.

Plaud, J. J., Gillund, B. & Plaud, D. M. (2000, May). *Human aging and choice behavior: A
signal detection analysis.* Presentation at the meeting of the Association for Behavior
Analysis, Washington, D.C.

Plaud, J. J., & Plaud, D. M. (2000, May). *Stimulus equivalence factors in behavior therapy.*
Presentation at the meeting of the Association for Behavior Analysis, Washington, D.C.

Plaud, J. J. (2000, May). The evolution of the behavior analysis discussion group: Behav-An
from listserv to the Behavioral Virtual Community. In B. J. Constantine (chair), *Mission
accomplishing: The Cambridge Center for Behavioral Studies in cyberspace.*
Symposium conducted at the meeting of the Association for Behavior Analysis,
Washington, D.C.

**1999**

Plaud, D. M., & Plaud, J. J. (1999, November). *Generalized language use and stimulus control
in children with developmental disabilities.* Presentation at the Autism99
CyberConference on the World Wide Web, Shirley Foundation and National Autistic
Society, London, England.

Plaud, D. M., & Plaud, J. J. (1999, November). *Incidental teaching, generalization, and
language use in children with developmental disabilities.* Presentation at the meeting of
the Association for Advancement of Behavior Therapy, Toronto, Canada.

Plaud, D. M., & Plaud, J. J. (1999, November). *Stimulus control and language deficits in*

*children with developmental disabilities.* Presentation at the meeting of the Association for Advancement of Behavior Therapy, Toronto, Canada.

Plaud, D. M., & Plaud, J. J. (1999, November). *Stimulus overselectivity in children with developmental disabilities.* Presentation at the meeting of the Association for Advancement of Behavior Therapy, Toronto, Canada.

Plaud, J. J., Gaither, G. A., Plaud, D. M., & Martini, J. R. (1999, November). *How valid is our database? Basic behavioral research and its implications for behavior therapy of sexual disorders.* Presentation at the meeting of the Association for Advancement of Behavior Therapy, Toronto, Canada.

Plaud, J. J., Gaither, G. A., Plaud, D. M., & Martini, J. R. (1999, November). *Clinical differences in how males and females rate sexually relevant and sexually ambiguous words.* Presentation at the meeting of the Association for Advancement of Behavior Therapy, Toronto, Canada.

Plaud, J. J. (1999, October). *Behavioral treatment of sexual offenders with developmental disabilities.* Presentation at the meeting of the Berkshire Association for Behavior Analysis and Therapy, University of Massachusetts, Amherst, Massachusetts.

Kolstoe, P. D., Plaud, J. J., & Baxter. R. W. (1999, August). *Deinstitutionalization effects on medication use for persons with mental retardation.* Presentation at the meeting of the American Psychological Association, Boston, Massachusetts.

Plaud, J. J., & Muench Plaud, D. (1999, February). *Assessment and treatment of self-injurious behavior in children with developmental disabilities.* Presentation to the North Dakota Developmental Center, Grand Forks, North Dakota.

Plaud, J. J. (1999, February). *Lifespan developmental psychology: A signal detection analysis of choice responding in an aging sample.* Presentation to the Center for the Study of Human Development, Brown University, Providence, Rhode Island.

**1998**

Plaud, J. J. (1998, June). *Psychological and psychophysiological testing and techniques in the comprehensive sex offender evaluation.* Presentation at the International Learning Disability Forensic Conference, Royal Hospital, Calow, Chesterfield, England.

Plaud, J. J. (1998, June). *Behavioral programs for the mentally impaired sex offender.* Presentation at the International Learning Disability Forensic Conference, Royal Hospital, Calow, Chesterfield, England.

Smith, T., Poolman, M., Brinkert, R., Plaud, J. J., & von Duvillard, S. P. (1998, June). *Measurement and relationship of selected physiological tests in collegiate ice hockey*

*players*. Presentation at the meeting of the American College of Sports Medicine, Orlando, FL.

von Duvillard, S. P., Pokan, R., Hofmann, P., Plaud, J. J., Smith, T.,& Brinkert, R. (1998, June). *The effects of equal load and different pedal rates on respiratory gas exchange measures and lactate concentration in healthy young males*. Presentation at the meeting of the American College of Sports Medicine, Orlando, FL.

Chelminski, I., Petros, T. V., Ferraro, F. R., & Plaud, J. J. (1998, May). *A reduced Horne and Ostberg questionnaire*. Presentation at the meeting of the Midwestern Psychological Association, Chicago, IL.

Plaud, J. J. (1998, May). Panel Discussant. In S. Letso (Chair), *Being there: Current issues in distance education.* Symposium conducted at the meeting of the Association for Behavior Analysis, Orlando, FL.

**1997**

Plaud, J. J., Orvedal, L., & Kopp, J. T. (1997, November). *An overview of risk assessment* and *Movement in and out of structured treatment settings*. Symposia conducted at the Sexuality, relationships, and acts of perpetration among people who have developmental disabilities conference, Fargo, ND.

Gaither, G. A., Franklin, M. D., Hegstad, H. J., & Plaud, J. J. (1997, August). *The Sexual Sensation Seeking Scale: Relationships to other sexuality measures*. Paper presented at the meeting of the American Psychological Association, Chicago, IL.

Chelminski, I., Ferraro, F. R., Petros, T., & Plaud, J. J. (1997, May). *An analysis of the "morningness-eveningness" dimension in "depressive" college students*. Paper presented at the meeting of the Midwestern Psychological Association, Chicago, IL.

Kolstoe, P. D., & Plaud, J. J. (1997, May). *Deinstitutionalization: Where are they now in North Dakota?* Paper presented at the meeting of the American Association on Mental Retardation, New York, NY.

Kolstoe, P. D., & Plaud, J. J. (1997, May). The Internet and developmental disabilities. In R. Realon (Chair), *An introduction to computers and having fun.* Symposium conducted at the meeting of the American Association on Mental Retardation, New York, NY.

Plaud, J. J. (1997, May). Discussant. In S. K. Collins & J. P. Forsyth (Chairs), *Moving clinical behavior analysis from the laboratory to the real world and back.* Symposium conducted at the meeting of the Association for Behavior Analysis, Chicago, IL.

Plaud, J. J., Orvedal, L. L., Kolstoe, P. D., Gaither, G. A., & Davis, P. A. (1997, April). *Development of a Specialized Treatment of Offenders Program (STOP)*. Paper presented at the meeting of the Nebraska Developmental Disabilities System Sharing Our Best

Conference, Beatrice, NE.

Plaud, J. J. (1997, April). *Subject bias in psychophysiological research.* Invited colloquium presentation to the Department of Counseling, University of North Dakota, Grand Forks, ND.

Plaud, J. J. (1997, March). *Sexually-explicit words and the formation of stimulus equivalence classes.* Invited colloquium to the Department of Psychology, University of North Dakota, Grand Forks, ND.

Plaud, J. J. (1997, January). *The conditioning of human sexual arousal and its relation to sexual dysfunctions and sexual disorders.* Grand Rounds presentation to the University of North Dakota School of Medicine, Department of Neuroscience, Fargo, ND.

**1996**

Gaither, G. A., & Plaud, J. J. (1996, October). *Attitudes toward the treatment of sexual offenders: A survey of defense attorneys and mental health professionals.* Paper presented at the meeting of the North Dakota Psychological Association, Grand Forks, ND.

Plaud, J. J., & Orvedal, L. (1996, October). *The Specialized Treatment of Offenders Program (STOP) at the North Dakota Developmental Center.* Paper presented at the meeting of the American Association on Mental Retardation, Region VIII, Fargo, ND.

Plaud, J. J. (1996, September). *How to make sense of "cognitive processing": A behavioral view.* Invited colloquium presentation to the Department of Psychology, North Dakota State University, Fargo, ND.

Plaud, J. J., & Ferraro, F. R. (1996, September). *Health and depression in American Indians: Implications for rural mental health practices.* Paper presented at the meeting of the National Institute of Mental Health First National Conference on Rural Mental Health Research, Grand Forks, ND.

Franklin, M. D., Gaither, G. A., & Plaud, J. J. (1996, July). *The effects of repeated exposure of sexual stimuli on male sexual arousal.* Paper presented at the meeting of the North Dakota EPSCoR Conference, Grand Forks, ND.

Plaud, J. J., Amato-Henderson, S., Devitt, M. K., & Gaither. G. A. (1996, May). *The long-term habituation and spontaneous recovery of sexual arousal in human males: A cross-over design.* Paper presented at the meeting of the Association for Behavior Analysis, San Francisco, CA.

Plaud, J. J. (1996, May). Behind the scenes: Editorship of the *Journal of Behavior Analysis and Therapy.* In J. J. Plaud (Chair), *The Journal of Behavior Analysis and Therapy (jBAT):*

*Discussion of the first Internet/World Wide Web peer-reviewed journal of basic and applied behavior analysis.* Panel Discussion conducted at the meeting of the Association for Behavior Analysis, San Francisco, CA.

Plaud, J. J. (1996, May). Disseminating behavior analysis in cyberspace. In S. R. Flora (Chair), *Tactics for creating accurate representations of behavior analysis.* Symposium conducted at the meeting of the Association for Behavior Analysis, San Francisco, CA.

Bigwood, S. J., & Plaud, J. J. (1996, April). *Male sexual arousal and fantasy behavior towards sexually coercive audio stimuli.* Paper presented at the North Dakota Psychological Association, Science Day, Fargo, ND.

Gaither, G. A., Rosenkranz, R. R., Plaud, J. J., & Bigwood, S. J. (1996, April). *Male sexual arousal in the presence of stimuli depicting condom use.* Paper presented at the North Dakota Psychological Association, Science Day, Fargo, ND.

Gaither, G. A., Weller, L. A., & Plaud, J. J. (1996, April). *Gender differences in personality and the sexual rating of words.* Paper presented at the North Dakota Psychological Association, Science Day, Fargo, ND.

Gaither, G. A., Weller, L. A., & Plaud, J. J. (1996, April). *The measurement of female sexual arousal with the vaginal photoplethysmograph.* Presentation to the North Dakota Psychological Association, Science Day, Fargo, ND.

Plaud, J. J., & Gaither, G. A. (1996, April). *Human behavioral momentum: Implications for behavior analysis and therapy.* Paper presented at the North Dakota Psychological Association, Science Day, Fargo, ND.

Rosenkranz, R. R., Gaither, G. A., Plaud, J. J., Franklin, M. D., & Bigwood, S. J. (1996, April). *Eroticizing condoms in an attempt to increase positive behaviors toward condoms in males.* Paper presented at the North Dakota Psychological Association, Science Day, Fargo, ND.

Plaud, J. J., & Gaither, G. A. (1996, April). *The habituation and dishabituation of male sexual arousal.* Paper presented at the meeting of the Midwest Association for Behavior Analysis and Therapy, Mankato, MN.

Rosenkranz, R. R., Plaud, J. J., Franklin, M., Bigwood, S. J., Gaither, G. A., & Levinson, P. (1996, April). *The effect of viewing safer-sex videos on sexual arousal and attitudes toward condoms.* Paper presented at the meeting of the Midwest Association for Behavior Analysis and Therapy, Mankato, MN.

Gaither, G. A., Weller, L. A., & Plaud, J. J. (1996, April). *Differences in sexual rating of words by gender and other factors.* Paper presented at the meeting of the Red River Valley Psychology Conference, Fargo, ND.

*Joseph Julian Plaud, Ph.D.*
**Page 29**

**1995**

Barth, J. E., Gaither, G. A., Franklin, M. D., Weller, L. A., & Plaud, J. J. (1995, November). *Gender differences in religiosity, sexual guilt, and sexuality.* Paper presented at the meeting of the Ronald E. McNair Postbaccalaureate Achievement Program, Delivan, WI.

Plaud, J. J. (1995, November). *Psychology in cyberspace: Research and professional opportunities on the World Wide Web.* Invited colloquium presentation to the Department of Psychology, University of North Dakota, Grand Forks, ND.

Plaud, J. J. (1995, November). Basics of World Wide Web homepage construction: Making yours an international department of psychology. In J. Krantz (Chair), *The department home page: An avenue to promote your department and its work.* Symposium conducted at the meeting of the Society for Computers in Psychology, Los Angeles, CA.

Plaud, J. J. (1995, November). Creating a peer-reviewed journal on the World Wide Web: *Journal of Behavior Analysis and Therapy (jBAT).* In C. Wolfe (Chair), *Psychology and the World Wide Web.* Symposium conducted at the meeting of the Society for Computers in Psychology, Los Angeles, CA.

Bigwood, S. J., & Plaud, J. J. (1995, November). *The effects of sexually coercive audio stimuli on male sexual arousal: Preliminary data.* Paper presented at the meeting of the North Dakota Psychological Association, Fargo, ND.

Gaither, G. A., Weller, L. A., Plaud, J. J., Franklin, M. D., Bigwood, S. J., & Barth, J. (1995, November). *Volunteer bias in a psychophysiological study of human sexual arousal.* Paper presented at the meeting of the North Dakota Psychological Association, Fargo, ND.

Plaud, J. J. (1995, June). *Understanding challenging behaviors: The role of positive reinforcement.* Invited presentation to the meeting of the Advocacy Resource Center, Grand Forks, ND.

Plaud, J. J. (1995, May). Departmental subject pool policies: A hindrance to analogue research? In E. Landrum (Chair), *Undergraduates as experimental subjects: Trends, issues, and concerns.* Symposium conducted at the meeting of the Midwestern Psychological Association, Chicago, IL.

Plaud, J. J. (1995, April). *The reliability and validity of the penile plethysmograph.* Invited presentation to the meeting of the Midwest Association for Behavior Analysis and Therapy, Mankato, MN.

**1994**

Plaud, J. J. (1994, October). *Resistance to change parameters in the analysis of human behavioral momentum: Preliminary data.* Paper presented at the meeting of the North

Dakota Psychological Association, Grand Forks, ND.

Plaud, J. J. (1994, October). *Environmental and psychological factors affecting utilization of health care services by families and individuals.* Invited guest lecture to the Medicine and Human Behavior class, University of North Dakota School of Medicine, Grand Forks, ND.

Plaud, J. J. (1994, October). *The role of human sexuality and orientation in peace studies.* Invited panel discussion to the Fall Peace Congress of the North Dakota Peace Coalition, Grand Forks, ND.

Plaud, J. J. (1994, September). *Basic and multivariate analyses of human sexual arousal and dysfunction.* Invited colloquium presentation to the Center for Psychological Studies, Nova Southeastern University, Fort Lauderdale, FL.

Plaud, J. J. (1994, May). *Forensic assessments using penile plethysmography.* Presentation to multi disciplinary state and federal human services and legal agencies operating in North Dakota, Bismarck, ND.

Plaud, J. J. (1994, April). *Psychometric properties of the penile plethysmograph: Assessment and treatment.* Presentation to the North Dakota Psychological Association, Science Day, Fargo, ND.

Plaud, J. J. (1994, February). *An evaluation of the penile plethysmograph.* Presentation to the North Dakota Multidisciplinary Committee on Child Sexual Abuse, University of North Dakota, Grand Forks, ND.

## 1993

Mosley, T. H., Plaud, J. J., McCracken, L. M., Grothues, C. A., & Penzien, D. B. (1993, November). *Coping and headache: A comparison of headache-coping and stress-coping strategies.* Paper presented at the meeting of the Association for Advancement of Behavior Therapy, Atlanta, GA.

Plaud, J. J., Dubbert, P. M., & Holm. J. E. (1993, November). *A multivariate analysis of male sexual dysfunction.* Paper presented at the meeting of the Association for Advancement of Behavior Therapy, Atlanta, GA.

Mosley, T. H., McCracken, L. M., Gross, R. T., Penzien, D. B., & Plaud, J. J. (1993, October). *The relationship of age and pain.* Paper presented at the meeting of the American Pain Society, Orlando, FL.

Plaud, J. J. (1993, September). *The habituation of sexual arousal.* Invited colloquium presentation to the Department of Psychology, North Dakota State University, Fargo, ND.

*Joseph Julian Plaud, Ph.D.*
**Page 31**

Plaud, J. J. (1993, May).  Introductory remarks on behavior analysis and behavioral medicine.  In J. J. Plaud (Chair), *Interventions in behavioral medicine.*  Symposium conducted at the meeting of the Association for Behavior Analysis, Chicago, IL.

Plaud, J. J.  (1993, May).  Discussant.  In G. H. Eifert (Chair), *A paradigmatic behavioral bridge from infrahuman to human behavior: Theory, clinical applications, and philosophical underpinnings.*  Symposium conducted at the meeting of the Association for Behavior Analysis, Chicago, IL.

McCracken, L. M., Gross, R. T., Mosley, T. H., & Plaud, J. J. (1993, March).  *Relations between age and pain: Implications for the evaluation of chronic pain in the elderly.*  Paper presented at the meeting of the Society of Behavioral Medicine, San Francisco, CA.

**1992**

Plaud, J. J.  (1992, November).  *Can behavior therapists predict and control behavior?*  Paper presented at the meeting of the Association for Advancement of Behavior Therapy, Boston, MA.

Plaud, J. J.  (1992, November).  *How behavior therapists and cognitive-behavior therapists can shape, maintain and generalize clients' behavior: A meta-analysis and derivation of behavioral momentum and its implications for clinical behavior therapy.*  Paper presented at the meeting of the Association for Advancement of Behavior Therapy, Boston, MA.

Plaud, J. J., & Vogeltanz, N.  (1992, November).  Behavior therapy and the experimental analysis of behavior: Contributions of the science of human behavior and radical behavioral philosophy.  In G. H. Eifert & J. J. Plaud (Chairs), *The contributions of the behaviorisms to the development and advancement of behavior therapy.*  Symposium conducted at the meeting of the Association for Advancement of Behavior Therapy, Boston, MA.

Plaud, J. J.  (1992, November). *The formation of stimulus equivalence classes and clinically relevant behavior.*  Research Rounds presentation to the Department of Psychiatry and Human Behavior,  University of Mississippi School of Medicine, Jackson, MS.

Plaud, J. J.  (1992, October).  *Sexual dysfunction.*  Seminar presentation to the Residents in Clinical Psychology, University of Mississippi School of Medicine and Department of Veterans Affairs Medical Center, Jackson, MS.

Plaud, J. J.  (1992, October).  *The long-term habituation of sexual arousal.*  Grand Rounds presentation to the Department of Psychiatry and Human Behavior, University of Mississippi School of Medicine, Jackson, MS.

Plaud, J. J. (1992, August). *Sexual response and dysfunction: Assessment and treatment.* Invited guest lecture to the Department of Psychiatry and Human Behavior, University of Mississippi School of Medicine, Jackson, MS.

Plaud, J. J. (1992, May). *The formation of stimulus equivalences using a modified matching-to-sample procedure: Fear relevant vs. neutral stimulus categories.* Paper presented at the meeting of the Association for Behavior Analysis, San Francisco, CA.

**1991**

Plaud, J. J., & Vogeltanz, N. D. (1991, November). *The nature and justification of treatment decisions in inpatient settings.* Paper presented at the meeting of the Association for Advancement of Behavior Therapy, New York, NY.

Plaud, J. J. (1991, November). *The assessment and treatment of sexual abuse of children and adolescents: Research and application.* Half-day workshop presented to the Children's Residential and Diagnostic Services of Community Health and Counseling Services, Bangor, ME.

Plaud, J. J. (1991, October). *The aftereffects of sexual abuse on child and adolescent development.* Half-day workshop presented to the Children's Residential and Diagnostic Services of Community Health and Counseling Services, Bangor, ME.

Plaud, J. J., & Kulberg, G. (1991, May). *The formation of verbal stimulus equivalences in analog simple phobics: Fear relevant versus neutral stimuli classes.* Paper presented at the meeting of the Association for Behavior Analysis, Atlanta, GA.

Plaud, J. J., & Vogeltanz, N. (1991, May). *Behavior therapy: Lost ties to animal research?* Address to the meeting of the Association for Behavior Analysis, Atlanta, GA.

**1990**

Fisher, J. E., Carstensen, L. L., & Plaud, J. J. (1990, November). *Normative social behavior among nursing home residents.* Paper presented at the meeting of the Gerontological Society of America, San Francisco, CA.

Plaud, J. J., & O'Donohue, W. (1990, November). The role of positive reinforcement in the maintenance of agoraphobia: Clinical application of modern reinforcement theories. In W. O'Donohue (Chair), *Clinical applications of contemporary reinforcement analyses.* Symposium conducted at the meeting of the Association for Advancement of Behavior Therapy, San Francisco, CA.

Plaud J. J., & O'Donohue, W. (1990, August). *The long term habituation of male sexual arousal.* Paper presented at the meeting of the American Psychological Association,

Boston, MA.

Plaud, J. J., O'Donohue, W. T., & Hecker, J. E.  (1990, May).  *The assessment and treatment of a homebound agoraphobic: The role of positive reinforcement.*  Address to the meeting of the Association for Behavior Analysis, Nashville, TN.

Plaud, J. J.  (1990, January).  *The joy of quantitative description in the experimental analysis of behavior: Point predictions and humans at the choice point.*  Paper presented at a meeting of the Behaviorism, Experimental Analysis of Behavior, and Behavior Therapy Special Interest Group of the Department of Psychology, University of Maine, Orono, ME.

**1989**

Fisher, J. E., & Plaud, J. J.  (1989, November).  *The influence of social competence, control, and anxiety on the social behavior of nursing home residents.*  Paper presented at the meeting of the Association for Advancement of Behavior Therapy, Washington, D.C.

Plaud, J. J. & O'Donohue, W. T.  (1989, May).  *Sex and the single subject design: Behavioral approaches to the study of human sexuality.*  Address to the meeting of the Association for Behavior Analysis, Milwaukee, WI.

Plaud, J. J., O'Donohue, W. T., Fisher, J. E., & Curtis, S. D.  (1989, April).  *Treatment decisions: Their nature and their justification.*  Paper presented at the Scientific Sessions of the Spring Meetings of the Maine Psychological Association, Orono, ME.

Plaud, J. J.  (1989, January).  *Stress: Models and management.*  Full-day workshop presented to the employees of Champion International Corporation, Bucksport, ME.

## ACADEMIC COMMITTEE ACTIVITIES

### Brown University

| | |
|---|---|
| 1998-Present | Core Group, Center for the Study of Human Development |

### University of North Dakota Department of Psychology

| | |
|---|---|
| 1996-1997 | Colloquium Committee, Library Acquisitions Liaison |
| 1995-1996 | Admissions Committee, Evaluation Committee, Library Acquisitions Liaison, By-Laws Revisions Committee, Subject-Pool Committee, Joint Counseling Psychology Training Committee |
| 1994-1995 | Admissions Committee, Subject-Pool Committee |

1993-1994                    Curriculum Committee, Colloquium Committee

**University of North Dakota and Community Appointments and Committee Memberships:**

1996                    Member (Chairperson, 1996)
to                      Research Services Board
1997                    North Dakota Department of Human Services
                        Developmental Center
                        Grafton, North Dakota

1995                    Member (Chairperson, 1995-1996)
to                      Behavior Intervention Review Committee (BIRC)
1997                    Advocacy Resource Center (ARC)
                        State of North Dakota, Grand Forks Area
                        Grand Forks, North Dakota

1994                    Full Member
to                      Graduate Faculty
1997                    University of North Dakota
                        Grand Forks, North Dakota

1994                    Chairperson
to                      Scientific Affairs Committee
1997                    North Dakota Psychological Association
                        Bismarck, North Dakota

1994                    Faculty Advisor
to                      Pi Kappa Alpha Fraternity
1997                    University of North Dakota
                        Grand Forks, North Dakota

1993                    Phi Beta Kappa Society (Alpha of North Dakota)
to                      University of North Dakota
1997                    Grand Forks, North Dakota

1993                    Alice T. Clark/University of North Dakota
to                      Foundation Scholars Mentoring Program
1994                    University of North Dakota
                        Grand Forks, North Dakota

**Other Professional Appointments and Committee Memberships:**

2001                    Program Committee
to                      Berkshire Association for Behavior Analysis and Therapy
Present                 Amherst, Massachusetts

*Joseph Julian Plaud, Ph.D.*
**Page 35**

| | |
|---|---|
| 2001 | Program Committee |
| | Association for Advancement of Behavior Therapy |
| | Washington, D.C. |
| | |
| 2000 | Board of Directors |
| to | New England Society for Behavior Analysis and Therapy |
| Present | Boston, Massachusetts |
| | |
| 2000 | Historical Commission |
| to | Town of Northbridge |
| Present | Northbridge, Massachusetts |
| | |
| 2000 | Program Committee, Division of Clinical Psychology |
| | American Psychological Association |
| | Washington, D.C. |
| | |
| 1998 | Program Committee |
| | Association for Advancement of Behavior Therapy |
| | Washington, D.C. |
| | |
| 1998 | Officer of Integration of Basic and Applied Research |
| to | Behavior Analysis Special Interest Group (Pending) |
| Present | Association for Advancement of Behavior Therapy |
| | New York, New York |
| | |
| 1996 | Board of Directors |
| to | InterPsych Consortium |
| 1998 | New York, New York |
| | |
| 1996 | Board of Directors |
| to | Mental Health Net |
| 1998 | Dublin, Ohio |
| | |
| 1993 | Psychology Subcommittee |
| | American Pain Society |
| | Skokie, Illinois |
| | |
| 1992 | Chief Clinical Psychology Resident |
| to | University of Mississippi School of Medicine |
| 1993 | and Department of Veterans Affairs Medical Center |
| | Jackson, Mississippi |
| | |
| 1989 | Clinical Psychology Student Representative |
| to | University of Maine |
| 1990 | Department of Psychology |

*Joseph Julian Plaud, Ph.D.*
**Page 36**

Orono, Maine

| | |
|---|---|
| 1990 to 1991 | Psychosocial Rehabilitation Unit Committee Augusta Mental Health Institute Augusta, Maine |

## INSTRUCTION

| | |
|---|---|
| 2000 | **Instructor of Record:** graduate Systematic Inquiry in Behavior Analysis, Northeastern University, Boston, Massachusetts. |
| 2000 | **Instructor of Record:** graduate Advanced Principles of Ethics in Behavior Analysis, Northeastern University, Boston, Massachusetts. |
| 1999 | **Instructor of Record:** graduate Advanced Principles of Learning and Behavior Analysis, Northeastern University, Boston, Massachusetts. |
| 1999 | **Instructor of Record:** undergraduate General Psychology I (PS 110), undergraduate Child Growth and Development (PS 210), Worcester State College, Worcester, Massachusetts. |
| 1994 | **Instructor of Record:** undergraduate Abnormal Psychology course (PSY 370), undergraduate Psychology of Personality course (PSY 360), and undergraduate Behavior Modification course (PSY 331), Division of Continuing Education, University of North Dakota, Grand Forks, North Dakota. |
| 1994 | **Facilitator:** graduate Medicine and Human Behavior course (HB 602; medical students), University of North Dakota School of Medicine, Department of Neuroscience, Grand Forks, North Dakota. |
| 1994 | **Instructor of Record:** undergraduate Psychology of Personality course (PSY 360), University of North Dakota Continuing Education, Grand Forks Air Force Base, Grand Forks, North Dakota. |
| 1993 to 1997 | **Clinical Faculty**: supervision of and consultation to graduate students in the Clinical Psychology Ph.D. Training Program (Full APA Accreditation), University of North Dakota, Grand Forks, North Dakota. |

| 1993<br>to<br>1997 | **Instructor of Record (Assistant Professor of Psychology)** for the following undergraduate and graduate courses, University of North Dakota, Grand Forks, North Dakota: |
|---|---|
| | Introduction to Psychology (PSY 101), Behavior Modification and Therapy (PSY 331), Introduction to Personality (PSY 360), Abnormal Psychology (PSY 370), History and Systems of Psychology (PSY 405), Psychology of Learning and Behavior Analysis (PSY 433), Introduction to Clinical Psychology (PSY 470), Individual Projects in Psychology (PSY 491), Undergraduate Readings in Psychology (PSY 493), Human Sexuality (PSY 494), Undergraduate Honors (PSY 499), Individual Intelligence Testing (PSY 523), Advanced Theories of Learning (PSY 533), Clinical Assessment I (PSY 570), Clinical Assessment II (PSY 571), Graduate Readings in Psychology (PSY 593). |
| 1993 | **Instructor of Record:** undergraduate Physiological Psychology course (PSY 361), Belhaven College, Jackson, Mississippi. |
| 1992<br>to<br>1993 | **Instructor of Record:** undergraduate Introductory Psychology courses (PSY 201 and PSY 112), Jackson State University, Jackson, Mississippi. |
| 1991 | **Instructor of Record:** undergraduate Child and Developmental to Psychology course (PSY 201-A), University of Maine, Orono, 1992 Maine. |
| 1989<br>to<br>1990 | **Instructor of Record:** undergraduate Introduction to Psychology course (PSY 100), University of Maine, Orono, Maine. |
| 1989 | **Laboratory Assistant:** graduate Multivariate Analysis of Variance course (PSY 546).  Also held weekly tutoring sessions for the Advanced Graduate Statistics course (PSY 540), University of Maine, Orono, Maine. |
| 1989 | **Teaching Assistant:** graduate Advanced Methods of Clinical Assessment course (PSY 626), University of Maine, Orono, Maine. |
| 1988 | **Teaching Assistant:** graduate Basic Methods of Clinical Assessment course (PSY 625), University of Maine, Orono, Maine. |

## ACADEMIC AND NON-ACADEMIC CLINICAL EXPERIENCE

*Joseph Julian Plaud, Ph.D.*
**Page 38**

| | |
|---|---|
| 2000<br>to<br>Present | **Executive Director:** Applied Behavioral Consultants, LLC. Whitinsville, Massachusetts |
| 2002<br>to<br>2006 | **Consulting Clinical Psychologist:** Alternatives, Inc., Northbridge, Massachusetts |
| 2002<br>to<br>2005 | **Consulting Clinical Psychologist:** Children's Paraclete, Inc., Johnstown, Pennsylvania |
| 2000<br>to<br>2001 | **Consulting Clinical Psychologist:** State of New Hampshire, Division of Developmental Services, Concord, New Hampshire. |
| 1998<br>to<br>2000 | **Consulting Clinical Psychologist:** North Dakota Developmental Center, Grafton, North Dakota. |
| 1998<br>to<br>1999 | **Program Director and Director of Research:** Behavioral Associates of Massachusetts, North Attleboro, Massachusetts |
| 1998<br>to<br>1999 | **Consulting Clinical Psychologist:** Franklin School System, Oak Street and Jefferson Elementary Schools, Franklin, Massachusetts. |
| 1997<br>to<br>2005 | **Clinical Psychologist:** United States Naval Reserve, Medical Service Corps. Discharged Under Honorable Conditions. |
| 1996<br>to<br>1997 | **Director of Clinical Services:** Relationship and Human Sexuality Clinic, Psychological Services Center (PSC), incorporating graduate Clinical Practice (PSY 580), University of North Dakota, Grand Forks, North Dakota. |
| 1995<br>to<br>1997 | **Director of Clinical Services:** Specialized Treatment of Offenders Program (STOP), North Dakota Department of Human Services, Developmental Center, Grafton, North Dakota. |
| 1995<br>to<br>1997 | **Clinical Psychologist:** Forensic evaluations, specializing in sexual behavior evaluations, Northeast Central Judicial District, State of North Dakota. |

*Joseph Julian Plaud, Ph.D.*
**Page 39**

| | |
|---|---|
| 1994<br>to<br>Present | **Clinical Psychologist Hospital Privileges:** United Hospital, Grand Forks, North Dakota. |
| 1994<br>to<br>Present | **Clinical Psychologist and Supervisor:** Psychology Services and Specialized Treatment of Offenders Program (STOP), North Dakota Department of Human Services, Developmental Center, Grafton, North Dakota. |
| 1994<br>to<br>1995 | **Clinical Psychologist:** Family Institute, Grand Forks, North Dakota. |
| 1993<br>to<br>1996 | **Clinical Faculty Supervisor:** Psychological Services Center (PSC), graduate Clinical Practice (PSY 594), University of North Dakota, Grand Forks, North Dakota. |

## CLINICAL TRAINING EXPERIENCE

| | |
|---|---|
| 1992<br>to<br>1993 | **Clinical Associate:** Outpatient Psychological Clinic, Department of Psychiatry and Human Behavior, Division of Psychology, University of Mississippi Medical Center, Jackson, Mississippi. |
| 1992<br>to<br>1993 | **Intern/Resident:** University of Mississippi School of Medicine and Department of Veterans Affairs Medical Center, Jackson, Mississippi. Clinical rotations and research included behavioral medicine (sexual dysfunction, weight and lifestyle health behavior management, behavioral cardiology, pain behavior management, smoking cessation), behavioral gerontology, and general inpatient and outpatient consultation with specific emphases on behavioral assessment and treatment. Served in the capacity as Chief Clinical Psychology Resident. |
| 1991<br>to<br>1992 | **Mental Health Clinician and Community Integration Specialist:** Community Health and Counseling Services, Bangor, Maine. Assessment and treatment planning in the Adult and Adolescent Sexual Offenders Program: Individual and group intervention. Provided assessment, community integration, behavioral support, and behavior modification services for specialized and therapeutic foster-care children and adolescents, including persons with developmental disabilities. |
| 1990<br>to | **Clinical Psychology Extern:** Augusta Mental Health Institute (AMHI), Augusta, Maine. Behavioral assessment and treatment |

*Joseph Julian Plaud, Ph.D.*
**Page 40**

| | |
|---|---|
| 1991 | planning of adults and adolescents (including persons with developmental disabilities and forensic assessments).  Also served for four months on the Psychosocial Rehabilitation Unit committee with administrators of AMHI. |
| 1988 to 1990 | **Clinical Psychology Trainee:** performed psychophysiological penile plethysmographic clinical assessments at the University of Maine. |
| 1987 to 1991 | **Clinical Psychology Trainee:** Associate (Psychologist in Training) at the Psychological Services Center of the University of Maine.  Training included Practicum at the Penobscot Job Corps, Bangor, Maine; Head Start Centers of Central Maine; The Maine School Administrative District #22; and the Penobscot County Jail, Bangor, Maine. |

*A list of Professional References will be provided upon request*

# TAB 332-4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:13-CR-186-6 |
| | ) |
| ANGELA MICHELLE BECK, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Angela M. Beck is a federal prisoner serving a sentence for drug and firearms

offenses. She has cancer in her left breast and the Bureau of Prisons has not provided

appropriate medical care for her disease, with repeated delays that have prevented her

from timely obtaining urgent tests and treatment. In the meantime, her cancer spread to

her lymph nodes and possibly to her right breast. Ms. Beck has filed a motion under the

First Step Act of 2018 seeking immediate compassionate release. Because Ms. Beck's

invasive cancer and BoP's history of indifference to her treatment constitute

extraordinary and compelling reasons, and because the § 3553(a) factors support a

sentence reduction to time served, the motion for compassionate release will be granted.

## I.    **Facts and Procedural History**

The Court has considered the record evidence in this criminal case, where Ms.

Beck submitted her motion for compassionate release. The Court has also considered the

documentary evidence submitted in Ms. Beck's civil case against BoP officials for

inadequate medical care in violation of her constitutional rights.  *See Beck v. Hurwitz*, No. 1:19–cv–00488 (M.D.N.C. May 10, 2019).  Unless otherwise specified, docket citations are to the criminal case.[1]

Beginning sometime in 2012, Angela Beck and her husband began operating a methamphetamine lab in their home in Surry County, North Carolina.  *See* Doc. 192 at 12–13.  They participated in a conspiracy to distribute methamphetamine that included many other participants, *see* Doc. 73 (identifying 20 defendants), and other labs.  *See* Doc. 192 at 1–20.  During a search of the Beck home on January 4, 2013, law enforcement located items consistent with the manufacture of methamphetamine, 12 firearms, and drug paraphernalia.  *Id.* at 12–13.  Several persons on the premises possessed methamphetamine, including Ms. Beck.  *Id.* at 13.  In the preceding months, Ms. Beck had purchased over 42 grams of pseudoephedrine, one of the precursor chemicals that can be used to manufacture methamphetamine.  *Id.* at 14.

After Ms. Beck was arrested on state charges and released on bond, *see* Doc. 429-1 at 1, she and her husband continued to manufacture and sell meth out of their home. Doc. 192 at 16.  During a search on February 18, 2013, law enforcement located items consistent with the manufacture of methamphetamine, a revolver and ammunition, drug paraphernalia, and numerous cell phones.  *Id.*

---

[1] Citations to documents filed on the docket of Ms. Beck's civil case will be cited as "Civil Doc. #," and citations to medical records contained in exhibits filed in her civil case and incorporated in filings in this criminal case will be to the date of the appointment and provider name, with the bates pagination in brackets.

2

Several months after her second arrest, Ms. Beck pleaded guilty in this Court to conspiracy to distribute 500 grams or more of methamphetamine (Count 1, object 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 12). Doc. 201 at ¶¶ 1–2; Minute Entry 09/06/2013. The Court granted the Government's motion under U.S.S.G. § 5K1.1 to depart from the guidelines, Doc. 249; Minute Entry 12/12/2013, and sentenced her to 129 months of imprisonment as to Count 1 and, as required by law, to a consecutive term of 60 months as to Count 12, for a total sentence of 189 months. Doc. 277 at 2. The Fourth Circuit dismissed her appeal. Doc. 363. The Court later reduced her sentence on Count 1 to 105 months based on a retroactive sentencing guideline amendment, making her total sentence 165 months. Doc. 442.

Ms. Beck is in the custody of the United States Bureau of Prisons and is assigned to the Federal Correctional Institution in Aliceville, Alabama. Civil Doc. 3-3 at ¶ 1; Civil Doc. 12 at ¶ 3. She has served approximately 76 months of her 165-month sentence. *See* Doc. 429-1 at 1. There is nothing in the record to indicate that she has incurred any disciplinary violations or infractions while in BoP's custody.

Ms. Beck is 47-years old, Doc. 429-1 at 3, and has a family history of breast cancer. Civil Doc. 3-3 at ¶ 3. In the fall of 2017, she discovered lumps in her left breast and promptly sought medical attention. *Id.* at ¶¶ 2, 4–5. When she first saw the prison doctor to report the masses, *see id.* at ¶ 6, he recommended imaging and consultation with a surgeon, 10/16/2017—Griffin [BoP 22], but almost two months passed before BoP took

3

Ms. Beck to see a surgeon. Civil Doc. 3-1 at ¶ 19.[2]  Imaging results obtained two weeks

later were "highly suggestive" of cancer, *id.* at ¶ 19; 12/22/2017—DeVenny [BoP 36],

and in the ensuing days, weeks, and months, Ms. Beck's doctors repeatedly said she

needed a biopsy to test for cancer. *See, e.g.*, 12/22/2017—DeVenny [BoP 36];

12/29/2017—Griffin [BoP 39]; 01/08/2018—Griffin [BoP 65]; 05/11/2018—Griffin

[BoP 96]; 08/07/2018—Bilton [BoP 110].  A biopsy should be performed no more than

two months after the detection of an abnormality, Civil Doc. 3-1 at ¶ 11, but BoP waited

eight months after imaging before taking her for a biopsy. *Id.* at ¶ 20.

　　When the biopsy was finally performed, the surgeon observed "extensive breast

disease that extended laterally." 08/28/2018—Bilton [BoP 115].  The biopsy confirmed

invasive cancer in her left breast and the surgeon recommended additional surgery, but

another two months passed before BoP took her for surgery.  Civil Doc. 3-1 at ¶¶ 20–21.

In November 2018, over a year after Ms. Beck first noticed the lumps, the surgeon

removed her entire left breast and part of her pectoral muscle and confirmed a diagnosis

of metastatic breast cancer.  11/01/2018—Bilton [BoP 252]; 11/02/2018—Bilton [Page

18, Doc. #10] ("Post op diagnosis:  Left breast cancer."); *see also* Civil Doc. 3-1 at ¶ 21

(declaration of Dr. Winkfield, reviewing records and noting a "diagnosis of stage IIB

(T2N1) breast cancer").  During surgery, doctors discovered the cancer had spread to Ms.

---

[2] For simplicity here and elsewhere, the Court cites the declaration of Dr. Karen Winkfield, who reviewed Ms. Beck's medical records, for many facts relevant to Ms. Beck's treatment history, but the Court confirmed her history by reviewing the underlying medical records.

Beck's lymph nodes, 11/06/18—Bilton [Page 34, Doc. #12] (noting "metastatic carcinoma" in two nodes), and removed several nodes. Civil Doc. 3-1 at ¶ 21.

Despite the fact that she had a drain and despite her surgeon's direction that she needed to see him about a week or less after surgery, 11/03/2018—Bilton [Page 10, Doc. #6], BoP did not return her for a post-operative visit until six weeks had passed. Civil Doc. 3-1 at ¶ 22. When she finally saw the surgeon again, he told her that she needed an oncology appointment for potential chemotherapy, *id.*, but five months elapsed after her surgery and over three months passed after her surgeon advised her to see an oncologist before BoP took Ms. Beck to a medical oncologist to determine appropriate treatment and therapy. *Id.* at ¶¶ 22–23.

In total, some seventeen months passed between the time medical care providers at the prison learned about the lumps in Ms. Beck's left breast, *see id.* at ¶ 18; Civil Doc. 3-3 at ¶¶ 5–6, and the time BoP allowed her to consult with a medical oncologist. Civil Doc. 3-1 at ¶ 23; *see also id.* at ¶ 15 (noting chemotherapy is sometimes implemented before surgery to help shrink "invasive" and "extensive" tumors). When BoP finally took her to see a medical oncologist on April 3, 2019, the oncologist determined that it was too late to begin chemotherapy, which must be instituted soon after surgery to be effective. *See* 04/03/2019—Evans [BoP 311]; *see also* Civil Doc. 3-1 at ¶ 23. When BoP took her to a radiation oncologist in May 2019, he similarly determined that it was too late to begin radiation therapy. 05/03/2019—Crew [BoP 318].

Dr. Karen Winkfield, an experienced oncologist at Wake Forest Baptist Comprehensive Cancer Center who reviewed Ms. Beck's medical records, has testified

5

that "with respect to timing of systemic therapy following definitive surgery, delays beyond 12 weeks (3 months) compromise both recurrence free survival and overall survival." Civil Doc. 3-1 at ¶ 26. BoP waited well over three months before taking Ms. Beck to see physicians who could order such treatment. *Id.* at ¶ 23.

In January 2019, Ms. Beck reported new lumps in her right breast to prison medical officials, who confirmed the lumps. Civil Doc. 3-3 at ¶ 15; 01/30/2019—Nikki [BoP 259] (noting "firm nodule approximately golf ball size[d]" in her right breast); 02/12/2019—Hunter-Buskey [BoP 276] (noting "multiple lumps [in her] right breast; . . . the first is walnut size[d] and the second is a small peach size"). Nearly six weeks later, BoP took Ms. Beck for a PET scan, which suggested the new lumps may be benign. 03/11/2019—Guarisco [BoP 287]. About two weeks after that, BoP took her to see a surgeon, who noted a "solid mass" and cyst in her right breast, observed that the new masses "appear benign," and ordered a puncture aspiration and ultrasound guidance. 03/27/2019—Bilton [USA Bilton 3–4]. BoP did not schedule a further consultation with the surgeon until mid-June, nearly three months after the initial surgical evaluation.[3] Civil Doc. 29 at ¶ 8; Civil Doc. 44 at ¶ 9. It appears Ms. Beck has received the tests and procedures the surgeon ordered in March, Civil Doc. 45 at 4; Civil Doc. 44 at ¶ 9, but there are still "multiple nodularities" in her right breast and the surgeon has ordered

---

[3] BoP refers to the June appointment as an "initial visit" with a surgeon to examine the new right breast masses and to schedule an appointment for a biopsy at a later date. Civil Doc. 29 at ¶ 8. BoP states that the surgeon "will not conduct a biopsy during an initial visit," *id.*, but Ms. Beck saw the surgeon about her right breast masses in March, 03/27/2019—Bilton [USA Bilton 3–4], so the June visit was a "follow-up." Civil Doc. 13 at ¶ 5; *see also* 05/11/2019—Ortiz [BOP 323] (recommendation of BoP official to "refer back to surgery").

6

another ultrasound, noting the potential need for a biopsy. Civil Doc. 45 at 5. Pursuant to a court order to schedule recommended treatments, *see infra*, BoP has scheduled the ultrasound and other appointments. Civil Doc. 47 at ¶¶ 1–4.

As noted *supra*, Dr. Winkfield, an experienced oncologist, reviewed Ms. Beck's medical records. While she was unable to determine from BoP's records "whether the above delays in care . . . have resulted in progression of [Ms. Beck's] cancer," Civil Doc. 3-1 at ¶ 27, Dr. Winkfield testified without dispute that "[p]rompt evaluation is particularly important in patients who have a family history of breast cancer" and that the "delays in time to surgery and subsequent delays in adjuvant therapy clearly raise a significant risk of relapse and irreparable harm to Ms. Beck." *Id.* at ¶¶ 11, 27.

In early December 2018, Ms. Beck through counsel asked the Warden of FCI Aliceville to file a compassionate release motion to reduce her sentence based on her medical condition and the poor medical care she was receiving. Doc. 522-1 at 6. On December 17, the Warden acknowledged receipt of the request and explained BoP's general criteria for evaluating such requests. *Id.* at 5. After over a month of no action on the request, Ms. Beck submitted a second request to BoP to file a compassionate release motion on her behalf. Doc. 521-1 at ¶ 3. A week later, with no BoP action on either request, Ms. Beck filed her motion for compassionate release with this Court on January 24, 2019. Doc. 494.

Nearly two months later, on the day the Government's response was due, *see* Text Order 02/27/19, the Government sought a stay so that BoP could finish its administrative review of Ms. Beck's request. Doc. 510. Ms. Beck did not object, *id*, and the Court

7

granted the stay. Doc. 511. Another six weeks passed with no action by BoP on the request, and on May 10, 2019, Ms. Beck initiated a civil suit against several BoP officials and a private contractor, alleging violations of her Eighth Amendment rights against cruel and unusual punishment. Civil Doc. 1. She sought a temporary restraining order and preliminary injunction. Civil Doc. 3. BoP denied her request for a compassionate release motion almost immediately thereafter. Doc. 521-1 at 8. The same day, the Court lifted the stay and directed the Government to file a response to her compassionate release motion. *See* Text Order 05/13/2019; Doc. 521 (Government's response in opposition).

The Court held a hearing on Ms. Beck's motion for a TRO in her civil case on May 17, 2019. Civil Minute Entry 05/17/2019. On May 20, the Court entered a TRO compelling three BoP officials in their official capacities to take specific steps to provide urgent medical treatment to Ms. Beck for her cancer. Civil Doc. 15; *see also* Civil Doc. 16 (Amended TRO). The Court found that Ms. Beck had shown a likelihood of success on the merits of her claim that BoP officials' indifference to her life-threatening medical condition and treatment violated her Eighth Amendment rights. Civil Doc. 16. After another hearing, *see* Minute Entry 06/05/2019, the Court extended the Amended TRO while considering this motion and a motion for preliminary injunction. Civil Doc. 40.

The Court will address additional facts as needed in the context of the issues presented.

## II.    Compassionate Release

Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very

8

limited circumstances. Before passage of the First Step Act of 2018, district courts could grant compassionate release sentence reductions only upon a motion by the BoP Director.[4] *See* Pub. L. No. 98–473, ch. II(D) § 3582(c)(1)(A), 98 Stat. 1837 (1984); *see also Green v. Apker*, No. 5:13–HC–2159–FL, 2014 WL 3487247, at *2 (E.D.N.C. July 11, 2014) (collecting cases and noting that "BOP's decision regarding whether or not to file a motion for compassionate release is judicially unreviewable"). Then as now, a defendant must satisfy one of two statutory conditions before a court can grant a BoP compassionate release motion: (*i*) the defendant has to be at least 70 years old, have served at least 30 years in prison, and the BoP Director must have determined the defendant was not a danger to the public; or (*ii*) "extraordinary and compelling reasons" warrant the reduction. 18 U.S.C. § 3582(c)(1)(A). When BoP files such motions, reviewing courts also must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and can only grant reductions to defendants who met the statutory requirements if the reduction was "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

To assist courts, the Sentencing Commission adopted U.S.S.G. § 1B1.13 as the applicable policy statement for motions filed by the BoP Director under § 3582(c)(1)(A). The guideline essentially repeats the statutory prerequisites and adds only a requirement

---

[4] For a discussion of the history of compassionate release in the federal system before the First Step Act, see William W. Berry III, *Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 Md. L. Rev. 850, 859–70 (2009).

9

that the defendant must not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

The application notes to § 1B1.13 are more specific. The notes list three specific categories and examples of "extraordinary and compelling reasons," along with a fourth catch-all provision.

Specifically, the notes discuss when a defendant's medical condition (subdivision A), health and age together (subdivision B), or family circumstances (subdivision C) will qualify. U.S.S.G. § 1B1.13, application note 1. Subdivision A provides that a "medical condition of the defendant" may qualify as an "extraordinary and compelling reason" justifying a sentence reduction in several different circumstances, such as when, *inter alia*, the defendant has a "terminal illness." *Id.* at note 1(A)(i). Subdivision D acknowledges that there may be other situations which constitute extraordinary and compelling reasons and provides a non-specific blanket authorization for early release, labeled "Other Reasons." *Id.* at note 1(D). That provision allows compassionate release if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*

In 2018, Congress passed the First Step Act. Pub. L. 115-391, 132 Stat. 5194. Among other things, it amended § 3582(c)(1)(A) to add a provision allowing courts to consider motions by defendants for compassionate release without a motion by the BoP Director so long as the defendant has asked the Director to bring such a motion and the

10

Director fails or refuses.[5] The First Step Act applies the same statutory requirements to a defendant's motion for compassionate release as previously applied, and still apply, to motions by the Director: "extraordinary and compelling reasons" must warrant the reduction,[6] the court must consider the § 3553(a) factors, and the reduction must be "consistent" with any "applicable" policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i).

There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BoP Director and makes no mention of motions filed by defendants. U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons . . . the court may reduce a term of imprisonment . . . ."); *id.* at application note 4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons."). The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, *see, e.g.*, *United States v. Gross*, No. 2:04–CR–32–RMP, 2019 WL 2437463, at *2 (E.D.

---

[5] Specifically, courts may now consider motions for compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also* First Step Act of 2018, Pub. L. 115-391, Title VI § 603, 132 Stat. 5194 (Dec. 21, 2018).

[6] The other statutory possibility concerns age and sentence length requirements that Ms. Beck clearly does not meet. *See* § 3582(c)(1)(A)(ii). The Court will not discuss them further.

Wash. June 11, 2019), nor has it adopted a new policy statement applicable to motions filed by defendants.[7]

While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i). An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role. *See United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute, 28 U.S.C. § 994(a)(2)(C), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority . . . ." (emphasis in original)). It is also inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BoP finds they are not appropriate. Pub. L. 115-391, Title VI § 603(b), 132 Stat. 5194 (Dec. 21, 2018) (captioned "Increasing the use and transparency of compassionate release"); *see also Cantu*, 2019 WL 2498923, at *4 ("[T]he policy-statement provision that was previously

---

[7] As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to motions brought by defendants in the near future. The Commission consists of seven voting members and requires four for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). As of the second quarter of fiscal year 2019, the Commission has only two voting members. U.S. Sentencing Comm'n, *Annual Report* 2–3, 2018, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/2018-Annual-Report.pdf.

applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not

comply with the congressional mandate that the policy statement must provide guidance

on the *appropriate use* of sentence-modification provisions under § 3582 (emphasis in

original)).[8]  Thus, courts may, on motions by defendants, consider whether a sentence

reduction is warranted for extraordinary and compelling reasons other than those

specifically identified in the application notes to the old policy statement.

## III.    Findings and Analysis

Ms. Beck's motion for a sentence reduction is properly before the Court.  She first

requested compassionate release through a letter from her lawyer to Warden Patricia V.

Bradley, whose office received the letter on December 10, 2018.  Doc. 522-1 at 6.  The

Warden acknowledged receipt of her request on December 17, *id.* at 5, but did not act on

her request until issuing a denial letter in May 2019.  Doc. 521-1 at ¶ 4, p. 8.  Ms. Beck

filed her motion in this Court on January 24, 2019, Doc. 494, after "the lapse of 30 days

from the receipt of [her] request by the warden."  18 U.S.C. § 3582(c)(1)(A).

---

[8] District courts have taken varying approaches to the old policy statement in evaluating compassionate release motions filed by defendants under the First Step Act. Many courts have, without discussion, applied the old policy statement. *See, e.g.*, *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *1–2 (M.D. Fla. June 7, 2019); *United States v. Willis*, No. 15-cr-3764 WJ, 2019 WL 2403192, at *2 (D.N.M. June 7, 2019); *Gross*, 2019 WL 2437463, at *2–3. At least one court has held that courts cannot "disregard" the old policy statement and order compassionate release without finding extraordinary and compelling circumstances. *See United States v. Overcash*, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019). Another court has suggested that the old policy statement still applies and that courts cannot grant compassionate release for reasons other than those listed in subdivisions A through C of the application note. *See United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Yet another court disagrees with *Shields* and has ordered release for extraordinary and compelling reasons other than those enumerated in the application note. *See Cantu*, 2019 WL 2498923, at *5.

As discussed *supra*, compassionate release motions require consideration of any relevant § 3553(a) factors and whether there are "extraordinary and compelling reasons" that warrant a sentence reduction. Any reduction must also be consistent with "applicable" policy statements issued by the Sentencing Commission.

Although there is no policy statement applicable to a defendant's motion for compassionate release, the old policy statement does provide some assistance. Unsurprisingly, it overlaps to some extent with statutory considerations such as the § 3553(a) factors. For example, the old policy statement requires courts to consider the defendant's dangerousness, U.S.S.G. § 1B1.13(2), and that is also a part of the § 3553(a) requirement that courts consider the need to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(C). Similarly, the old policy statement says that a defendant's medical condition can be an appropriate reason for a sentence reduction, U.S.S.G. § 1B1.13, application note 1(A), (B), and one of the § 3533(a) factors is a defendant's need for medical treatment. *See* 18 U.S.C. § 3553(a)(2)(D).

The Court first considers whether extraordinary and compelling reasons exist under § 3582(c)(1)(A)(i). Because it still provides helpful guidance, the Court then evaluates the motion in light of the old policy statement and its application notes, as well as other indicators of Sentencing Commission policy. Finally, the Court will evaluate a sentence reduction under the § 3553(a) factors.

### a. Extraordinary and Compelling Reasons under 18 U.S.C § 3582(c)(1)(A)(i)

Ms. Beck has invasive breast cancer and has received grossly inadequate treatment for her condition while serving her sentence in BoP custody. During the lengthy delays,

14

her cancer spread to her lymph nodes. Absent judicial oversight, she is unlikely to receive better treatment at FCI Aliceville going forward. She is in urgent need of appropriate treatment to prevent the further spread of her disease and the potential loss of her life. These are "extraordinary and compelling reasons" to reduce her sentence under § 3582(c)(1)(A)(i).

After Ms. Beck reported lumps in her left breast to prison officials and imaging suggested it was cancer, BoP waited eight months to take her for a biopsy. Civil Doc. 3-1 at ¶ 20. The biopsy confirmed invasive cancer in her left breast, *id.*, and two months later, when BoP finally took her to surgery, the disease had metastasized to her lymph nodes and required a radical mastectomy. 11/01/2018—Bilton [BoP 252]; 11/06/2018—Bilton [Page 34, Doc. #12]; Civil Doc. 3-1 at ¶ 21. After surgery, BoP disregarded her surgeon's order of a follow-up visit after one week and did not return her to the surgeon for six weeks. 11/03/2018—Bilton [Page 10, Doc. #6]; Civil Doc. 3-1 at ¶ 22. BoP delayed scheduling an oncology appointment for five months, and as a result, she was unable to obtain the benefits of chemo or radiation therapy. 04/03/2019—Evans [BoP 311]; 05/03/2019—Crew [BoP 318]. Ms. Beck has new lumps in her right breast, *see, e.g.*, Civil Doc. 3-3 at ¶ 15, and BoP continues to countenance delays in treatment by blaming logistical issues, *see supra* note 3, and it has provided erroneous information about her recent appointments to the Court. *See* Civil Doc. 18-1 at ¶¶ 1–2; Civil Doc. 23 at 2. Although BoP has timely scheduled certain appointments of late, *see* Civil Docs. 29, 47, that was pursuant to a temporary injunction directing BoP officials to ensure that

appointments recommended by treating physicians were scheduled as quickly as possible. Civil Docs. 16, 40 at ¶ 3.  As its name indicates, this order was temporary.

As these facts establish, the quality of treatment BoP has provided Ms. Beck for her cancer has been abysmal.  *See, e.g.*, Civil Doc. 16 at pp. 3–6, ¶¶ 2–8; Civil Doc. 3-1 at ¶ 24 ("[T]he . . . course of action by the prison system in responding to Ms. Beck's known breast cancer, punctuated by repeated delays in care, was grossly inadequate . . . [and] there is no medical justification").  BoP has not acknowledged deficiencies in Ms. Beck's medical care, *see, e.g.*, Civil Doc. 12 at ¶ 9 (declaration of a BOP physician's assistant, stating that "the Bureau is currently providing inmate Beck with appropriate medical care for her breast cancer"), which indicates BoP is unlikely to meet its constitutional obligations in the future.[9]  As long as she stays in BoP custody, she faces a substantial likelihood of substandard medical care for her life-threatening disease.

Dr. Winkfield's testimony, which BoP has not disputed, establishes that the delays in treatment have increased the risk that Ms. Beck's cancer has spread or will recur and has compromised her prospects for survival.  Civil Doc. 3-1 at ¶¶ 24, 26–27.  Though the statute "does not define—or place any limits on—what 'extraordinary and compelling reasons' might warrant" a sentence reduction, *Cantu*, 2019 WL 2498923, at *5 (citations and quotations omitted), one certainly hopes that BoP's gross mismanagement of medical

---

[9] As the Government often argues in criminal cases, "past behavior best predicts future behavior." *United States v. Paulino*, 335 F. Supp. 3d 600, 614 (S.D.N.Y. 2018) (citations and quotations omitted); *see also* William Faulkner, Requiem for a Nun 73 (1s Vintage Int'l ed. 2011) ("The past is never dead.  It's not even past."); William Shakespeare, The Tempest, act II, scene I (1611) ("What's past is prologue.").

16

care for an inmate's deadly disease is extraordinary.  *See* Black's Law Dictionary, *Extraordinary* (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").  Breast cancer can kill without appropriate medical care, and Ms. Beck's need to obtain adequate treatment for her disease when BoP appears unable to provide it without court oversight is a compelling reason for a sentence reduction.  Black's Law Dictionary, *Compelling Need* (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

Ms. Beck has shown that extraordinary and compelling reasons warrant a reduction in her sentence under § 3582(c)(1)(A)(i).  *See Cantu*, 2019 WL 2498923, at *3–6 (on motion by a defendant, construing § 3582 to determine whether extraordinary or compelling reasons existed on a basis other than those listed in the old policy statement).

**b.  The Reduction is Consistent with the Sentencing Commission's Guidance**

In evaluating compassionate release motions filed by defendants, the old policy statement does not bind the Court's interpretation of § 3582(c)(1)(A)(i), *see* discussion *supra*, but it does provide useful guidance.  Read as a whole, the application notes suggest a flexible approach which considers all relevant circumstances.  They indicate that medical conditions, alone or in conjunction with other factors, can constitute extraordinary and compelling reasons, and they recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances.  U.S.S.G. § 1B1.13, application note 1(A)–(B), (D).

Subdivision A takes a non-exclusive approach to terminal illness, providing a few examples and noting that "[a] specific prognosis of life expectancy (i.e., a probability of

17

death within a specific time period) is not required." U.S.S.G. § 1B1.13, application note

1(A)(i); *see also* U.S. Sentencing Comm'n, *Amendments to the Sentencing Guidelines* 1–

2, Apr. 28, 2016 (noting that one purpose of 2016 Amendments to the application note

was to broaden the "terminal illness" category because of difficulties in estimating

prognosis and to provide a "non-exhaustive list of . . . terminal illness[es]" for "added

clarity"). It specifically lists "metastatic solid-tumor cancer" as an example of a terminal

illness warranting a sentence reduction, U.S.S.G. § 1B1.13, application note 1(A)(i), and

that is what Ms. Beck has.[10]

 It is undisputed that breast cancer can be a terminal disease and that Ms. Beck's

family history of breast cancer, the delay-induced lack of chemotherapy and radiation

therapy, and the delays in other procedures, including biopsies and surgery, place her at

an abnormally high risk of recurrence. Civil Doc. 3-1 at ¶¶ 24–27 (noting she stands at a

"significant risk of relapse and irreparable harm"). It is also undisputed that the

trajectory her cancer will take is heavily dependent on the quality of treatment she

receives going forward. *See, e.g., id.* at ¶¶ 16–17, 25–26 ("Studies have shown that with

---

[10] It appears undisputed that Ms. Beck's doctors have diagnosed her with this form of cancer. *See, e.g.*, 11/02/2018—Bilton [Page 18, Doc. #10] ("Post op diagnosis: Left breast cancer"); 11/01/2018—Bilton [BOP 252] (noting "metastatic cancer" in the left breast); 11/06/2018—Bilton [Page 34, Doc. #12] (noting "metastatic carcinoma" in two nodes); 02/12/2019—Hunter-Buskey [BOP 276] ("postop stage 2B – invasive lobular carcinoma left breast"); 04/03/2019—Evans [BOP 310] ("Primary diagnosis: T2N1aM0 left breast cancer"). While the record is not explicit as to whether her condition still meets this definition post-operatively, *compare* 02/12/2019—Hunter-Buskey [BOP 276] ("postop stage 2B – invasive lobular carcinoma left breast"), *with* 03/11/2019—Griffin [BOP 290] (post-op imaging suggests there is "[n]o evidence of recurrent or metastatic disease."), BoP points to no evidence of a physician finding that she is cancer-free and its own doctor appears to acknowledge that she still has cancer. Doc. 521-1 at 5. She is at high risk for recurrence and may have new tumors in her right breast, and the poor medical care is contributing to the severity of her medical condition.

respect to timing of systemic therapy following definitive surgery, delays beyond 12 weeks (3 months) compromise both recurrence free survival and overall survival."). Even BoP's doctor characterizes her prognosis as "undetermined." Doc. 521-1 at 5. While a standard case of properly-treated breast cancer may not qualify as a "terminal illness" under Subdivision A, Ms. Beck has not received proper treatment, and it is questionable that BoP will provide appropriate medical care for this life-threatening disease going forward, at least not without court oversight. *See infra* Section III(d). A sentence reduction is consistent with Subdivision A.

Before the First Step Act, the Sentencing Commission recognized that the specific examples provided in Subdivisions A through C were likely to exclude cases where compassionate release was nonetheless appropriate. Thus, it gave the BoP Director—the only party at the time who could make such a motion—discretion to move for a sentence reduction if there existed "in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, application note 1(D). Though Subdivision D is reserved to the BoP Director, the Commission nonetheless affirmed, even before the First Step Act, that courts are in a "unique" position to determine whether such circumstances are present.[11] Read in light of the First Step Act, it is consistent with the old policy statement and with

---

[11] Specifically, in 2016, the Commission noted that "[w]hile only the Director of the Bureau of Prisons has the statutory authority to file a motion for compassionate release, the Commission finds that the court is in a unique position to assess whether the circumstances exist." U.S. Sentencing Comm'n, *Amendments to the Sentencing Guidelines* 3, Apr. 28, 2016 (internal quotations omitted); *see also* U.S.S.G. § 1B1.13, application note 4.

the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BoP Director in evaluating motions by defendants for compassionate release. *See* discussion *supra*; *cf. Cantu*, 2019 WL 2498923, at *5 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

As previously discussed, breast cancer is a life-threatening illness even after tumors are removed, and particularly so with a family history of breast cancer, delayed biopsies and surgeries, and a lack of chemotherapy or radiation therapy. *See, e.g.*, Civil Doc. 3-1 at ¶¶ 25–26. BoP's indifference to Ms. Beck's cancer treatment has likely reached the level of a constitutional violation, *see* Civil Doc. 16, creating a significant risk that her cancer will spread, if it has not already, and compromising her chance of survival. Civil Doc. 3-1 at ¶¶ 24–27. Her continued detention in BoP custody poses an unacceptable risk to her health and life and constitutes an extraordinary and compelling circumstance under Subdivision D of the application note. *Cf. Sester v. United States*, 566 U.S. 231, 242–43 (2012) (noting that the pre-First Step Act compassionate release provision in § 3582(c)(1)(A) also provides a mechanism for a district court to grant relief when its "failure to anticipate developments that take place after . . . sentencing . . . produce unfairness to the defendant." (internal citations and quotations omitted)). A sentence reduction is consistent with the substance of Subdivision D.

The old policy statement also requires that the defendant not pose a "danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). This inquiry heavily depends on the nature and circumstances of the offense and the history and characteristics of the defendant, § 3142(g)(1), (3), both of which are core considerations in the § 3553(a) analysis. As such, the Court will consider dangerousness together with the other applicable § 3553(a) factors in the next section.

### c.  The § 3553(a) Factors and Dangerousness

Considering the nature and circumstances of the offense, Ms. Beck's criminal conduct in 2012 was undoubtedly serious. She and her husband manufactured and distributed large amounts of methamphetamine from their home and possessed firearms in furtherance of that offense. *See* Doc. 192. After she was arrested on state charges and released on bond, she continued to engage in the methamphetamine business out of her home. *See id.* at 16. Her seventeen-year-old daughter lived in the home and her parents allowed her to participate in producing methamphetamine. Doc. 429-1 at ¶¶ 52–53, 58. As this case sadly shows, methamphetamine is a dangerous, addictive drug that destroys individuals and families, and the need to deter and punish persons who place these drugs into the community is recognized by the significant sentences suggested by the guidelines when methamphetamine is involved. *See generally* U.S.S.G. § 2D1.1.

As to her history and characteristics, Ms. Beck had a minor criminal history consisting only of misdemeanors before committing the 2012 crimes. *See* Doc. 429-1 at ¶¶ 80–87. Most were worthless check convictions, *id.* at ¶¶ 81–84, and except for a probationary sentence in 2009 for contributing to the delinquency of a minor, *id.* at ¶ 86,

21

the punishment was limited to restitution and court costs. For the 2009 sentence, she received 12 months of probation, *id.* at ¶ 86, which it appears she successfully completed. In her 42 years, she had never been to prison before the arrests leading to the convictions in this case and she had no previous involvement in the drug trade. None of her prior criminal conduct was violent. While she and her husband kept firearms in their home in connection with their drug business, an undoubtedly dangerous crime, there was no evidence or indication that she ever used or pointed a gun at anyone or that she threatened anyone with a firearm.

Ms. Beck had a long history of legitimate employment, working steadily in the family business of servicing septic tanks for twenty years. *Id.* ¶ 103. She has longstanding ties to Ararat, North Carolina, where she plans to reside upon release, Doc. 494 at 3 ¶ 1, and she lived in her home there for over twenty-five years before she committed the crimes that led to her incarceration. Doc. 429-1 at ¶ 97.

As a teenager, Ms. Beck was molested by her grandfather, Doc. 429-1 at ¶ 99, and shortly before she committed the drug and firearms crimes in 2012, her daughter was molested by a family friend. *Id.* at ¶ 100. Soon after, Ms. Beck began using methamphetamine and became addicted. *See id.* at ¶¶ 100–01. While Ms. Beck was substantially involved in the criminal conspiracy and was not a minor participant, the record shows that her husband played a larger role in distributing the methamphetamine. *See* Doc. 192.

After her second arrest related to methamphetamine, Ms. Beck took steps to mitigate the harm caused by her criminal conduct. Even before her federal indictment,

she cooperated with law enforcement, *see* Doc. 249 at ¶¶ 1–2, and upon indictment she quickly pled guilty.  Doc. 429-1 at ¶¶ 76–77.  She continued her cooperation after being indicted and rendered substantial assistance to authorities.  Doc. 249 at ¶ 3; Minute Entry 12/12/2013.

Ms. Beck's invasive breast cancer, her recent radical mastectomy, the new masses in her right breast, her dependence on cancer treatment and therapy, her age (47), the absence of any indication of violence in her past, and her work history make recidivism unlikely.[12]  Sentencing Commission studies suggest that retroactive sentence reductions do not increase recidivism rates[13] and that recidivism is extremely rare among inmates who qualify for BoP's compassionate release program.[14]  While the BoP Director did not make a compassionate release motion for Ms. Beck, someone with her health issues is more comparable to those offenders than to the general population of federal prisoners.

---

[12] Federal offenders with Ms. Beck's acceptance of responsibility, age (47 now, 42 at sentencing), and final offense level (34), *see* Doc. 429-1 at 3, 18, have a relatively low rate of recidivism.  *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 20–21, 23, Mar. 2016, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf; U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*, Dec. 2017, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.  While offenders with her criminal history score (2) and category (II), Doc. 429-1 at 20, recidivate at a somewhat higher rate, the rate is still relatively low compared to offenders with a more extensive criminal history. *See Id.* at 18–19.

[13] U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders Receiving Retroactive Sentence Reductions: The 2011 Fair Sentencing Act Guideline Amendment*, Mar. 2018, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180328_Recidivism_FSA-Retroactivity.pdf.

[14] U.S. Dep't of Justice, *The Federal Bureau of Prisons' Compassionate Release Program* iv, Apr. 2013, *available at* https://oig.justice.gov/reports/2013/e1306.pdf.

Though recidivism is always a risk, there are conditions the Court can impose to "reasonably assure . . . the safety of any other person and the community," 18 U.S.C. § 3142(g), despite the serious nature of her crimes. She will be on supervised release for five years, and the standard and special conditions previously imposed will result in substantial oversight by the Probation Office. *See* Doc. 277 at 3–4 (noting, among other conditions, that she is subject to warrantless searches on reasonable terms and may not leave the district without permission from the Court or her probation officer). As a precaution, the Court will add two additional requirements: one, Ms. Beck may only live at a place and with persons approved in advance by the probation officer to ensure that she is not living with persons who may still be involved with illegal drugs, and two, she may not associate with any co-defendant, excepting her husband, or any person on pre-trial release or post release supervision. With appropriate supervision, the Court concludes that Ms. Beck "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

The 3553(a) factors, taken as a whole, favor release. Though her offense was serious, Ms. Beck has been in custody for over six years; that is a significant punishment, especially for someone who had never been incarcerated before. *Cf., e.g.*, *United States v. Lenagh*, No. 8:07CR346, 2009 WL 296999, at *6 (D. Neb. Feb. 6, 2009) ("A sentence of 24 months is a significant sentence, especially to an offender who has never been incarcerated at all."). It is longer than the five-year mandatory minimum sentence required by Congress for her firearms offense. Given Ms. Beck's minor criminal record before she committed these crimes, that the crimes were precipitated by a traumatic life

24

event and connected to her addiction, and that she timely accepted responsibility and assisted the authorities, her six-plus years of imprisonment and additional supervised release are sufficient to punish her for her crimes and deter her from committing future offenses. *See* 18 U.S.C. § 3553(a)(2)(A)–(B). She has served nearly two years of her term with invasive breast cancer, and BoP has repeatedly mismanaged her care, including delaying medical appointments for so long that neither chemo nor radiation therapy would be effective. *See supra* Section I. "This means that [her] sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in [her] condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2)," *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019), and supports a reduction in her sentence "to provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). And, for the reasons noted *supra*, further incarceration is not needed to protect the public. 18 U.S.C. § 3553(a)(2)(C).

A reduction in Ms. Beck's sentence to time served—approximately 76 months—is sufficient to serve the purposes of punishment under § 3553(a)(2). And, given her breast cancer and the poor treatment she has received at BoP, a longer sentence would be greater than necessary to serve those purposes. As such, the applicable § 3553(a) factors support Ms. Beck's request for compassionate release.

### d.    The Government's Opposition to Release

The Government opposes Ms. Beck's request for compassionate release on several grounds. First, the Government suggested at oral argument that Ms. Beck will receive

better medical care going forward because her case now has BoP's attention and certain appointments have now been (belatedly) scheduled, apparently in response to Ms. Beck's civil suit. Even assuming Ms. Beck's treatment has improved of late,[15] there is nothing to suggest—much less to guarantee—that this recent deviation from the past trend of inadequate care will continue. The fact that it has recently promptly scheduled appointments as required by a court order does not prove it will continue to provide appropriate care without court oversight. *See* Civil Doc. 40; Civil Doc. 47. Moreover, as noted in *supra* Section III(a), BoP continues to justify delays by blaming non-BOP officials, such as her oncologist, and logistical issues, and it has provided erroneous information about her recent appointments to the Court. The quality of Ms. Beck's cancer treatment at BoP in the past remains the best predictor of what it will be in the future. *See supra* note 9.

Second, the Government relies on the fact that BoP doctors have reviewed Ms. Beck's administrative request for compassionate release and determined that she does not qualify. Doc. 521 at 6–7. But BoP's conclusion that Ms. Beck's condition is not severe enough to warrant release is entitled to little, if any, deference. For one, BoP's internal criteria for assessing when compassionate release is appropriate are stricter than U.S.S.G.

---

[15] *See* Civil Doc. 23 at 2 (describing an error in the declaration of a BoP physician assistant who stated Ms. Beck had a surgery consultation scheduled before the end of May, which the Court relied on in crafting a TRO, but which turned out not to be true),

USCA11 Case: 19-13347    Document: 28    Date Filed: 12/18/2019    Page: 226 of 246

§ 1B1.13 and the application note.[16]  *See McGraw*, 2019 WL 2059488, at *3–4 (noting

the BoP doctor's conclusion "does not reflect the standard set forth in the Application

Notes" and conducting a *de novo* analysis of whether the defendant's medical condition

qualified as extraordinary and compelling).  The BoP physician who reviewed Ms.

Beck's request for a compassionate release motion did not consider whether, as suggested

in her records, she has metastatic solid-form cancer, which is specifically listed as an

example of a terminal illness in the old application note.  U.S.S.G. § 1B1.13, application

note 1(A)(i).[17]

Moreover, the terms of the First Step Act give courts independent authority to

grant motions for compassionate release and says nothing about deference to BoP, thus

establishing that Congress wants courts to take a *de novo* look at compassionate release

motions.  As noted *supra*, before 2018, courts could only grant compassionate release

upon motion of BoP, and BoP's decision not to file such motions was unreviewable.

That changed with The First Step Act, which removed sole responsibility from BoP and

_____

[16] *Compare, e.g.*, Doc. 522-1 at 5 (letter from the Warden, noting the BoP will only move for compassionate release "in *particularly* extraordinary or compelling circumstances" (emphasis added)), *and* Doc. 521-1 at 5 (BoP's reduction in sentence form, asking, *inter alia*, whether the inmate has a "life expectancy [of] eighteen (18) months or less"), *with* 18 U.S.C. § 3582(c)(1)(A) (simply requiring "extraordinary and compelling reasons"), *and* U.S.S.G. § 1B1.13, application note 1(A)(i) (noting that a "specific prognosis of life expectancy . . . is not required").

[17] BOP's other criteria are tailored to separate provisions of the old policy statement addressing debilitating, rather than terminal, medical conditions.  *See* U.S.S.G. § 1B1.13, application note 1(A)(ii); Dep't of Justice, Program Statement 5050.50(3)(b), Jan. 17, 2019, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (listing these criteria under the "Debilitated Medical Condition" section of BOP's compassionate release criteria).  Because those provisions have no arguable applicability, the Court need not address them.

27

authorized courts to consider motions of inmates who had tried and failed to convince BOP to move on their behalf.

Finally, the Government contends that Ms. Beck may present a danger to the community given the seriousness of her offenses and the fact that she would be released into Surry County, where the drug conspiracy took place. Doc. 521 at 5 n.1. But of the co-conspirators with whom she most closely associated, the more culpable, including her husband, are still incarcerated and will remain in prison for several more years.[18] Ms. Beck's substantial assistance is public knowledge, which also diminishes the risk others will attempt to involve her in new criminal activity. And, as noted *supra*, the conditions of supervised release will limit her ability to engage in criminal conduct without swift detection.

## IV.   Conclusion

Ms. Beck committed serious drug and firearms offenses with her husband in 2012 and 2013 that warrant substantial punishment. She has served over six years of her sentence, nearly two of them with breast cancer treated so untimely as to significantly reduce her chances of survival. Ms. Beck's invasive cancer and the abysmal health care BoP has provided qualify as "extraordinary and compelling reasons" warranting a reduction in her sentence to time served. *See* 18 U.S.C. 3582(c)(1)(A)(i). While the old

---

[18] In 2013, Mr. Beck received a sentence of 195 months imprisonment, Doc. 276 at 2, which was later reduced to 171 months based on a retroactive guideline amendment. Doc. 440. Johnny Ray Bowman received a sentence of 135 months and is still in prison. Doc. 273. The other co-defendants with whom she was primarily associated, *see* Doc. 192, were mostly addicts without firearm charges who received shorter sentences. *See* Docs. 244, 245, 246, 266, 281 (reduced at 419), 304, 305 (revoked at 519), 306.

policy statement is not directly applicable to motions filed by defendants, a reduction is consistent with its general guidance and the Sentencing Commission's intent. With appropriate supervision, Ms. Beck poses little risk of recidivism or danger to the community. She has already served an arduous sentence, and the § 3553 factors support a sentence reduction. As such, Ms. Beck is entitled to compassionate release.

It is **ORDERED** that the defendant's motion for a sentence reduction based on compassionate release, Doc. 494, is **GRANTED.** Her sentence will be reduced to time served, with supervised release for 5 years to follow on terms previously imposed and as supplemented with additional terms as stated in this order. This sentence will be stayed for twenty-one days to give BoP time to implement it and to give the Probation Office time to evaluate Ms. Beck's proposed residence. Judgment will be entered separately. The Clerk shall provide a copy of this Order to the Probation Office

This the 28th day of June, 2019.

UNITED STATES DISTRICT JUDGE

# TAB 337

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                CASE NO. 8:08-cr-318-T-27

CHARLES JACKSON FRIEDLANDER

## UNITED STATES' SUPPLEMENTAL RESPONSE
## TO DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

In accordance with this Court's orders, the United States files this

response to Friedlander's argument that, because the warden failed to act on

his January 2019 letters requesting compassionate release, he is permitted to

file his compassionate-release motion in district court. *See* Docs. 332, 333, 336.

After consultation with the BOP about those January letters, it does not

appear that the warden rendered a decision on compassionate release within

30 days of those requests. A defendant may file a motion in district court if the

defendant has "fully exhausted all administrative rights to appeal a failure of

the Bureau of Prisons to bring a motion on the defendant's behalf," *or* if 30

days have lapsed since the receipt of such a request by the warden of the

prison. 18 U.S.C. § 3582(c)(1)(A). Because the latter appears to have occurred,

the United States withdraws its request that this Court dismiss Friedlander's

motion.

The United States continues, however, to oppose Friedlander's motion on the merits. As detailed in our initial response, Friedlander has failed to demonstrate that his medical conditions satisfy the threshold requirements for compassionate release and that his release would not pose a danger to children. *See* Doc. 331.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:        */s/ Colin P. McDonell*
           Colin P. McDonell
           Assistant United States Attorney
           United States Attorney No.120
           400 N. Tampa Street, Suite 3200
           Tampa, Florida 33602-4798
           Telephone:   (813) 274-6000
           Facsimile:   (813) 274-6358
           E-mail: colin.mcdonel@usdoj.gov

**U.S. v. Charles Jackson Friedlander**          **Case No. 8:08-cr-318-T-27**

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2019, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which

will send a notice of electronic filing to the following:

Joseph Parrish, Esq.


/s/ Colin P. McDonell
Colin P. McDonell
Assistant United States Attorney
United States Attorney No. 183
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: colin.mcdonel@usdoj.gov

# TAB 339

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                    **Case No. 8:08-CR-318-T-27TGW**

**CHARLES JACKSON FRIEDLANDER**
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion for Compassionate Release, the United States' opposition, and Defendant's Response (Dkts. 328, 331, 332). Upon consideration, Defendant's motion (Dkt. 328) is DENIED.

### The First Step Act of 2018

The First Step Act amended 18 U.S.C. § 3582 by providing that the court may modify a sentence upon finding that "extraordinary and compelling reasons" warrant the reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, the First Step Act provides that the court, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is

1

currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons

that the defendant is not a danger to the safety of any other person or the community, as provided

under section 3142(g); and that such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission; . . ."[1]

The policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13 identifies

five categories of extraordinary and compelling reasons. The first requires a terminal illness,[2] the

second a serious physical or medical condition, functional or cognitive impairment, or deteriorating

physical or mental health resulting from the aging process, which "substantially diminishes the

ability of the defendant to provide self-care within the prison facility and from which he is not

expected to recover," the third that defendant be at least 65 years old, experiencing a serious physical

or mental health deterioration resulting from the aging process, and having served at least 10 years

of his term of imprisonment, the fourth the death or incapacity of one in a specified relationship to

the defendant, and the fifth a determination by the BOP that some other extraordinary and

compelling reason exists. U.S.S.G. § 1B1.13, cmt. n1 (A)-(D). Significantly, the policy statement

conditions compassionate release to a defendant who "is not a danger to the safety of any other

person or to the community . . ." U.S.S.G. 1B1.13 (2).

### Discussion

Defendant stands convicted of violating 18 U.S.C. § 2422(b) (attempting to persuade, induce,

---

[1] Under the First Step Act, Defendant must exhaust available remedies in the Bureau of Prisons by requesting compassionate release from the warden. On January 11 and 25, 2019, Defendant's attorney wrote to the warden requesting compassionate release. The United States acknowledges that the warden did not render a decision on compassionate release within 30 days, and has withdrawn its motion to dismiss (Dkt. 337). Accordingly, Defendant has exhausted administrative remedies and his motion is ripe for consideration on the merits.

[2] The First Step Act defines a terminal illness as "a disease or condition with end-of-life trajectory." 18 U.S.C. § 3582(d)(1).

entice and coerce a minor to engage in sexual activity). As the Eleventh Circuit noted in affirming

his conviction and 360 month sentence, he was convicted of "using interstate commerce in an

attempt to coerce two children into sadomasochistic sexual acts." More specifically, the evidence

established that he chatted with an undercover officer, expressing interest in engaging in sexual

activity with the officer's 10 and 11 year old sons, hitting them with a belt and razor strap, and

sexually abusing them. He traveled to Pinellas County and met with the officer before meeting the

boys. He showed the officer two razor straps, a belt, and riding crop he intended to use on the boys,

after which he was arrested.

Although 75 years old when arrested and 79 years old when sentenced, this court found that

he posed a danger to the public and rejected as "nonsense" his contention that his conduct was mere

fantasizing. Notwithstanding the opinions of Dr. Plaud, by virtue of his offense of conviction, he

remains a danger to the public. And his overt actions in meeting with the undercover agent and

displaying the razor straps, belt and riding crop in anticipation of meeting with the boys belie his

contention that he was merely fantasizing.

Defendant does not contend that he has been diagnosed with a terminal illness, or that he is

suffering from a serious and advanced illness with an end of life trajectory. Nor has he demonstrated

that he suffers from a physical or medical condition, functional or cognitive impairment, or

deteriorating physical or mental health resulting from the aging process that diminishes his ability

to provide self care in a prison setting. He does not identify any person with whom he shares a close

relationship who has died or become incapacitated. And he does not contend that the BOP has made

a determination that some other extraordinary and compelling reasons exists.

While 89 years of age and suffering from a number of medical conditions consistent with his

age, the affidavit of Dr. Sara Beyer confirms that his medical conditions are stable or managed with

3

medication. And contrary to his contention that he has been wheelchair bound since 2012, Dr. Beyer confirms that he is able to walk independently and often does so. Finally, his medical conditions are essentially the same as those he suffered when sentenced.

### Conclusion

After considering the factors in section 3553(a), to the extent applicable, the court finds no extraordinary and compelling reasons warranting a reduction in sentence. Moreover, a reduction in sentence would be inconsistent with the policy statement of the Sentencing Commission in U.S.S.G. 1B1.13. Defendant's Motion for Compassionate Release is accordingly DENIED.

**DONE AND ORDERED** this 14th day of August, 2019.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record, United States Bureau of Prisons

4

340

# TAB 340

# IN THE UNITED DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA     )
             )
VS.                      )
             )     No. 8:08 CR 318
             )
CHARLES JACKSON FRIEDLANDER,   )     NOTICE OF APPEAL
             )
    Defendant        )

## NOTICE OF APPEAL

The Defendant, Charles Jackson Friedlander, by and through undersigned counsel, hereby appeals to the Eleventh District Court of Appeals, the final Order entered on August 14, 2019, and attached hereto in accordance with FRAP 4(b). The nature of the order is a final order.

Respectfully submitted,

*/s/ Joseph E. Parrish*
JOSEPH E. PARRISH
Florida Bar. No: 690058
**Parrish & Goodman, PLLC**
915 N. Franklin Street, Unit 2302
Tampa, Florida 33602
(813) 643-4529; (813) 315-6535 (fax)
Primary: jparrish@parrishgoodman.com
Secondary: admin@parrishgoodman.com
*Attorney for Charles Jackson Friedlander*

Of Counsel
James B. Craven III
NC State Bar 997
P.O. Box 1366
Durham, NC 27702
(919)688-8295
JBC64@mindspring.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via email through the CM/ECF Portal on Counsel for the U.S. Government on this 27th day of August, 2019:

Maria Chapa Lopez, Esquire
United States Attorney
Colin P. McDonell, Esquire
Assistant United States Attorney
400 North Tampa Street-Suite 3200
Tampa, FL 33602

/s/ Joseph E. Parrish
Attorney

2

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                    **Case No. 8:08-CR-318-T-27TGW**

**CHARLES JACKSON FRIEDLANDER**
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion for Compassionate Release, the United

States' opposition, and Defendant's Response (Dkts. 328, 331, 332). Upon consideration,

Defendant's motion (Dkt. 328) is DENIED.

### The First Step Act of 2018

The First Step Act amended 18 U.S.C. § 3582 by providing that the court may modify a

sentence upon finding that "extraordinary and compelling reasons" warrant the reduction of sentence.

18 U.S.C. § 3582(c)(1)(A)(i). Specifically, the First Step Act provides that the court, "upon motion

of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may

impose a term of probation or supervised release with or without conditions that does not exceed the

unserved portion of the original term of imprisonment), after considering the factors set forth in

section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant

to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is

1

currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons

that the defendant is not a danger to the safety of any other person or the community, as provided

under section 3142(g); and that such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission; . . ."[1]

The policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13 identifies

five categories of extraordinary and compelling reasons. The first requires a terminal illness,[2] the

second a serious physical or medical condition, functional or cognitive impairment, or deteriorating

physical or mental health resulting from the aging process, which "substantially diminishes the

ability of the defendant to provide self-care within the prison facility and from which he is not

expected to recover," the third that defendant be at least 65 years old, experiencing a serious physical

or mental health deterioration resulting from the aging process, and having served at least 10 years

of his term of imprisonment, the fourth the death or incapacity of one in a specified relationship to

the defendant, and the fifth a determination by the BOP that some other extraordinary and

compelling reason exists. U.S.S.G. § 1B1.13, cmt. n1 (A)-(D). Significantly, the policy statement

conditions compassionate release to a defendant who "is not a danger to the safety of any other

person or to the community . . ." U.S.S.G. 1B1.13 (2).

**Discussion**

Defendant stands convicted of violating 18 U.S.C. § 2422(b) (attempting to persuade, induce,

---

[1] Under the First Step Act, Defendant must exhaust available remedies in the Bureau of Prisons by requesting compassionate release from the warden. On January 11 and 25, 2019, Defendant's attorney wrote to the warden requesting compassionate release. The United States acknowledges that the warden did not render a decision on compassionate release within 30 days, and has withdrawn its motion to dismiss (Dkt. 337). Accordingly, Defendant has exhausted administrative remedies and his motion is ripe for consideration on the merits.

[2] The First Step Act defines a terminal illness as "a disease or condition with end-of-life trajectory." 18 U.S.C. § 3582(d)(1).

entice and coerce a minor to engage in sexual activity). As the Eleventh Circuit noted in affirming his conviction and 360 month sentence, he was convicted of "using interstate commerce in an attempt to coerce two children into sadomasochistic sexual acts." More specifically, the evidence established that he chatted with an undercover officer, expressing interest in engaging in sexual activity with the officer's 10 and 11 year old sons, hitting them with a belt and razor strap, and sexually abusing them. He traveled to Pinellas County and met with the officer before meeting the boys. He showed the officer two razor straps, a belt, and riding crop he intended to use on the boys, after which he was arrested.

Although 75 years old when arrested and 79 years old when sentenced, this court found that he posed a danger to the public and rejected as "nonsense" his contention that his conduct was mere fantasizing. Notwithstanding the opinions of Dr. Plaud, by virtue of his offense of conviction, he remains a danger to the public. And his overt actions in meeting with the undercover agent and displaying the razor straps, belt and riding crop in anticipation of meeting with the boys belie his contention that he was merely fantasizing.

Defendant does not contend that he has been diagnosed with a terminal illness, or that he is suffering from a serious and advanced illness with an end of life trajectory. Nor has he demonstrated that he suffers from a physical or medical condition, functional or cognitive impairment, or deteriorating physical or mental health resulting from the aging process that diminishes his ability to provide self care in a prison setting. He does not identify any person with whom he shares a close relationship who has died or become incapacitated. And he does not contend that the BOP has made a determination that some other extraordinary and compelling reasons exists.

While 89 years of age and suffering from a number of medical conditions consistent with his age, the affidavit of Dr. Sara Beyer confirms that his medical conditions are stable or managed with

3

medication. And contrary to his contention that he has been wheelchair bound since 2012, Dr. Beyer

confirms that he is able to walk independently and often does so. Finally, his medical conditions are

essentially the same as those he suffered when sentenced.

### Conclusion

After considering the factors in section 3553(a), to the extent applicable, the court finds no

extraordinary and compelling reasons warranting a reduction in sentence. Moreover, a reduction in

sentence would be inconsistent with the policy statement of the Sentencing Commission in U.S.S.G.

1B1.13. Defendant's Motion for Compassionate Release is accordingly DENIED.

**DONE AND ORDERED** this 14th day of August, 2019.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record, United States Bureau of Prisons

4

C.O.S.

## APPENDIX CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2019, I electronically filed the foregoing APPENDIX with the Clerk of Court using the CM/ECF system which will send notification of such filing to the counsel of record in this matter.

I further certify that on December 18, 2019, I caused physical copies of the foregoing APPENDX to be filed with the Clerk of Court and served upon the following counsel by USPS First Class Mail:

Todd B. Grandy Esquire
Assistant U.S. Attorney
400 North Tampa Street-Suite 3200
Tampa, FL 33602

Additionally, I certify that I filed the clerk of court a physical copy of the Presentence Investigation Report under seal.

/s/ James B. Craven III
James B. Craven III
Attorney for the Appellant
NCSB 997
(919) 688-8295
P.O. Box 1366
Durham, NC 27702
JBC64@MINDSPRING.COM