No. 19-13347-AA

# In the
# United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHARLES JACKSON FRIEDLANDER,

*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 8:08-CR-318-T-27TGW-1

## SUPPLEMENTAL APPENDIX

MARIA CHAPA LOPEZ
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

TODD B. GRANDY
Assistant United States Attorney
Appellate Division
Florida Bar No. 992674
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6132
todd.grandy@usdoj.gov

January 29, 2020

# Index of Appendix

District Court Docket Sheet..................................................................Docket

Sentencing Transcript (proceedings held 07/21/09) ..........................Doc. 304

Certificate of Service

# District Court Docket Sheet

# US District Court Criminal Docket

## U.S. District - Florida Middle
### (Tampa)

## 8:08cr318

## USA v. Friedlander

This case was retrieved from the court on Tuesday, January 28, 2020

Date Filed: 07/30/2008

Other Magistrate judge case number:
Docket: 8:08mj01353
Other court case number: 8:08mj1353

Class Code: CLOSED
Closed: yes

## Defendants

| Name | Attorneys |
|------|-----------|
| Charles Jackson Friedlander(1)<br>aka: Charles Friedlander<br>[Term: 07/22/2009]<br>Appeals court case numbers: '09-13811-A', 19-13347-A<br>11th Circuit 50328-018 BUTNER LOW FEDERAL CORRECTIONAL INSTITUTION Inmate Mail/Parcels P.O. BOX 999 BUTNER, NC 27509 | George E. Tragos<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Tragos & Sartes, PL<br>Suite 800 601 Cleveland St<br>Clearwater, FL 33755<br>USA<br>727/441-9030<br>Fax: 727/441-9254<br>Designation: Retained<br>Email: george@greeklaw.com<br><br>Joseph E. Parrish<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Parrish & Goodman PLLC<br>915 N. Franklin Street, Unit 2302<br>Tampa, FL 33602<br>USA<br>813-643-4529<br>Fax: 813-315-6535<br>Designation: Retained<br>Email: jparrish@parrishgoodman.com<br><br>Victor Daniel Martinez<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Victor D. Martinez, PA<br>1408 N Westshore Blvd Ste 705<br>Tampa, FL 33607<br>USA<br>813-289-0600<br>Fax: 813-287-2833<br>Email: vmartinez@tampabay.rr.com<br><br>Peter Anthony Sartes<br>ATTORNEY TO BE NOTICED<br>The Law Offices of Tragos & Sartes, PL<br>Suite 800 601 Cleveland St<br>Clearwater, FL 33755<br>USA<br>727-441-9030<br>Fax: 727-441-9254<br>Designation: Retained<br>Email: peter@greeklaw.com |

| Charges | Disposition |
|---------|-------------|

Complaints: 18:2422b Use computer to entice minors for sex

Pending: COERCION OR ENTICEMENT OF FEMALE(1)  
Offense Level (Opening): Felony

360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; $100 Special Assessment

Terminated: none

Case Assigned to: Judge James D. Whittemore  
Case Referred to: Magistrate Judge Thomas G. Wilson

---

| Name | Attorneys |
|------|-----------|

Charles Jackson Friedlander  
Surety

|  U. S. Attorneys  |
|---|

Amanda C. Kaiser  
LEAD ATTORNEY;ATTORNEY TO BE NOTICED  
[Term: 07/08/2019]  
US Attorney's Office - FLM  
Suite 3200 400 N Tampa St  
Tampa, FL 33602-4798  
USA  
813/274-6000  
Fax: 813/274-6103  
Email: TPADOCKET.Mailbox@usdoj.gov

Colin P. McDonell  
LEAD ATTORNEY;ATTORNEY TO BE NOTICED  
US Attorney's Office - FLM  
Suite 3200 400 N Tampa St  
Tampa, FL 33602-4798  
USA  
813-274-6000  
Fax: 813-274-6102  
Email: colin.mcdonell@usdoj.gov

Adelaide G. Few  
ATTORNEY TO BE NOTICED  
[Term: 07/08/2019]  
US Attorney's Office - FLM  
Suite 3200 400 N Tampa St  
Tampa, FL 33602-4798  
USA  
813/274-6325  
Fax: 813/274-6220  
Email: TPADocket.Mailbox@usdoj.gov

Craig Robert Gestring  
ATTORNEY TO BE NOTICED  
US Attorney's Office - FLM  
Suite 3200 400 N Tampa St  
Tampa, FL 33602-4798  
USA  
813-274-6000  
Designation: Retained  
Email: Craig.gestring@usdoj.gov

| Date | # | Proceeding Text |
|------|---|-----------------|
| 07/24/2008 | 1 | COMPLAINT as to Charles Friedlander (1). (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 3 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Charles Friedlander. Signed by Magistrate Judge Thomas G. Wilson on 7/25/2008. (Wilson, Thomas) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | | Arrest of Charles Friedlander on 7/25/08 (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 4 | Remark - Order Appointing Federal Public Defender should be terminated; appointment was made |

| | | |
|---|---|---|
| | | in error. (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 5 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: INITIAL appearance as to Charles Friedlander held on 7/25/2008. Defendant retained own attorney; Government requested detention, defendant requested continuance of detention hearing and preliminary exam hearing. Detention and preliminary exam hearings set 8/1/08 at 10 AM. (3:57-4:04) (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/25/2008 | 6 | NOTICE OF HEARING as to Charles Friedlander. Detention Hearing set for 8/1/2008 at 10:00 AM in Courtroom 12 A before Magistrate Judge Thomas G. Wilson. Preliminary Examination set for 8/1/2008 at 10:00 AM in Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (CAW) [8:08-mj-01353-TGW] (Entered: 07/25/2008) |
| 07/28/2008 | 7 | ARREST WARRANT returned executed on 7/25/08 as to Charles Friedlander. (CAW) [8:08-mj-01353-TGW] (Entered: 07/29/2008) |
| 07/30/2008 | 8 | INDICTMENT returned in open Court as to Charles Jackson Friedlander (1) count(s) 1. Modified on 8/1/2008 (LYB). (Entered: 07/31/2008) |
| 08/01/2008 | 9 | NOTICE of attorney appearance Adelaide G. Few appearing for USA. (Few, Adelaide) (Entered: 08/01/2008) |
| 08/01/2008 | 10 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: ARRAIGNMENT as to Charles Friedlander (1) Count 1 held on 8/1/2008. Defendant(s) pled not guilty. Trial set 9/2/08 and status set 8/8/08 at 9:30 AM before Judge James Whittemore. (10:16-10:18) (CAW) (Entered: 08/01/2008) |
| 08/01/2008 | 11 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: Detention Hearing as to Charles Friedlander held on 8/1/2008. Government requested detention; defendant requested bond and presented testimony of Dr. Paul Kaufman, William Hayden, Dr. Mitchell Kroungold & Attorney Howard Hujsa; Court to consider setting $1,000,000 secured bond (Forfeiture Agreements) with other special conditions. Defense counsel to notify court when arrangements completed with for law enforcement officers and another hearing will be held to set conditions of release. (10:18-11:30) (CAW) (VLD) (Entered: 08/01/2008) |
| 08/01/2008 | 12 | PRETRIAL discovery order and notice as to Charles Friedlander Jury Trial set for 9/2/2008 at 09:30 AM in Courtroom 13 B before Judge James D. Whittemore. Status Conference set for 8/8/2008 at 09:30 AM in Courtroom 13 B before Judge James D. Whittemore. Please see order for discovery motions deadlines. Signed by Magistrate Judge Thomas G. Wilson on 8/1/2008. (CAW) (Entered: 08/01/2008) |
| 08/07/2008 | 13 | NOTICE of attorney appearance: George E. Tragos appearing for Charles Jackson Friedlander (Tragos, George) (Entered: 08/07/2008) |
| 08/08/2008 | 14 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 8/8/2008. Court Reporter: Linda Starr (AO) (Entered: 08/13/2008) |
| 08/08/2008 | 15 | ORAL MOTION to continue trial by Charles Jackson Friedlander. (AO) (Entered: 08/13/2008) |
| 08/08/2008 | 16 | ORAL ORDER ruling deferred 15 Motion to continue trial as to Charles Jackson Friedlander (1). Upon the filing of a written motion to continue and signed speedy trial waiver to date certain, the case will be continued to the November, 2008 trial term. Status Conference set for 9/5/2008 at 09:30 AM in Courtroom 13 B before Judge James D. Whittemore. By Judge James D. Whittemore on 8/8/2008. (AO) (Entered: 08/13/2008) |
| 08/13/2008 | 17 | NOTICE OF HEARING as to Charles Jackson Friedlander. Bond Hearing set for 8/19/2008 at 10:30 AM in Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (CAW) (Entered: 08/13/2008) |
| 08/15/2008 | 18 | NOTICE of Attempted Compliance by Charles Jackson Friedlander re 11 Detention Hearing (Attachments: # 1 Exhibit Exhibit A - Minutes, # 2 Exhibit Exhibit B - Resumes)(Tragos, George) (Entered: 08/15/2008) |
| 08/15/2008 | 19 | SUPPLEMENT re 18 Notice (other) Of Attempted Compliance (Attachments: # 1 Exhibit Resume) (Tragos, George) (Entered: 08/15/2008) |
| 08/18/2008 | 20 | NOTICE canceling bail review hearing scheduled for 8/19/08 at 10:30 AM as to Charles Jackson Friedlander pursuant to parties' request. Hearing RESET at 2:30 PM on 8/21/08 before Magistrate Judge Thomas G. Wilson in Courtroom 12A. (CAW) (Entered: 08/18/2008) |
| 08/20/2008 | 21 | TRANSCRIPT of Excerpt from Detention Hearing (Testimony of Dr. Mitchell Kroungold) as to Charles Jackson Friedlander held on 8/1/08 before Judge Thomas G. Wilson. Court Reporter/Transcriber Dennis Miracle, Telephone number 352/622-7212. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/10/2008, Redacted Transcript Deadline set for 9/22/2008, Release of Transcript Restriction set for 11/18/2008. (DM) (Entered: 08/20/2008) |
| 08/20/2008 | 22 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction |

purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Dennis Miracle (DM) (Entered:

| | | |
|---|---|---|
| 08/21/2008 | 23 | Minute Entry for proceedings held before Magistrate Judge Thomas G. Wilson: BOND Hearing as to Charles Jackson Friedlander held on 8/21/2008. Bail set at $1,000,000 with other conditions. To be released at noon on 8/22/08 (2:41-3:24) (CAW) (Entered: 08/22/2008) |
| 08/22/2008 | 24 | WAIVER of speedy trial through December 1, 2008 by Charles Jackson Friedlander (Tragos, George) (Entered: 08/22/2008) |
| 08/22/2008 | 25 | MOTION to continue trial by Charles Jackson Friedlander. (Tragos, George) (Entered: 08/22/2008) |
| 08/22/2008 | 26 | NOTICE OF HEARING as to Charles Jackson Friedlander. Status Conference RESET for 9/25/2008 at 01:30 PM in Courtroom 13 B before Judge James D. Whittemore. Case is set on the October 6, 2008 Trial Term.(AO) (Entered: 08/22/2008) |
| 08/22/2008 | 27 | SURETY BOND secured by agreements to forfeit property entered as to Charles Jackson Friedlander in amount of $ $1,000,000. Signed by Magistrate Judge Thomas G. Wilson. (MRH) (Entered: 08/22/2008) |
| 08/22/2008 | 28 | AGREEMENT to forfeit property located in Ft. Myers by Charles Jackson Friedlander as to Charles Jackson Friedlander. (MRH) (Entered: 08/22/2008) |
| 08/22/2008 | 29 | AGREEMENT to forfeit property located in Washington, D.C. by Charles Jackson Friedlander as to Charles Jackson Friedlander. (MRH) (Entered: 08/22/2008) |
| 08/22/2008 | 30 | ORDER Setting Conditions of Release as to Charles Jackson Friedlander (1) Personal Surety bond secured by agreements to forfeit property in the amount of $1,000.00. Signed by Magistrate Judge Thomas G. Wilson on 8/21/2008. (MRH) (Entered: 08/22/2008) |
| 08/26/2008 | 31 | ORDER granting 15 and 25 Motions to continue trial as to Charles Jackson Friedlander. Jury Trial set for November 2008 trial term which commences 11/3/2008 at 8:45 AM; Status Conference set for 10/3/2008 at 9:30 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 8/25/2008. (KE) (Entered: 08/26/2008) |
| 08/27/2008 | 32 | NOTICE of Filing by Charles Jackson Friedlander (Attachments: # 1 Exhibit Resumes)(Tragos, George) (Entered: 08/27/2008) |
| 09/05/2008 | 33 | Joint MOTION Date Certain and Protection of Dates by Charles Jackson Friedlander. (Tragos, George) Modified on 9/8/2008 (MRH). NOTE: TERMINATED. TWO MOTION RELIEFS NEEDED. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 09/05/2008) |
| 09/08/2008 | 34 | Joint MOTION for a Date Certain, Joint MOTION for protection of Dates by Charles Jackson Friedlander. (Tragos, George) (Entered: 09/08/2008) |
| 09/08/2008 | 35 | ORDER denying 34 Joint Motion for a Date Certain and Protection of Dates. Signed by Judge James D. Whittemore on 9/8/2008. (KE) (Entered: 09/08/2008) |
| 09/11/2008 | 36 | MOTION to amend/correct Conditions of Bond by Charles Jackson Friedlander. (Tragos, George) (Entered: 09/11/2008) |
| 09/23/2008 | 37 | Amended MOTION to amend/correct Conditions of Bond by Charles Jackson Friedlander. (Tragos, George) Modified on 9/24/2008 (MRH). NOTE: INCORRECT CODE. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 09/23/2008) |
| 09/24/2008 | 38 | ENDORSED ORDER referring 37 Defendant's Amended MOTION to Amend Conditions of Bond to Magistrate Judge Thomas G. Wilson for disposition. Signed by Judge James D. Whittemore on 9/24/2008. (KE) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 09/24/2008) |
| 09/24/2008 | 39 | Amended MOTION to modify conditions of release by Charles Jackson Friedlander. (Tragos, George) (Entered: 09/24/2008) |
| 10/01/2008 | 40 | Unopposed MOTION to continue trial to December 2008 docket by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/01/2008) |
| 10/03/2008 | 41 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 10/3/2008. Court Reporter: Linda Starr (AO) (Entered: 10/06/2008) |
| 10/03/2008 | 42 | RENEWED ORAL MOTION for Trial Date Certain by Charles Jackson Friedlander. (AO) (Entered: 10/06/2008) |
| 10/03/2008 | 43 | ORAL ORDER granting 42 renewed motion for trial date certain. Case is set for trial date certain 11/17/08.. By Judge James D. Whittemore on 10/3/2008. (AO) (Entered: 10/06/2008) |
| 10/16/2008 | 44 | ORDER denying as moot 36 Motion to amend/correct as to Charles Jackson Friedlander (1); granting in part and denying in part 39 Motion to Modify Conditions of Release as to Charles Jackson Friedlander (1) (please view order to see modification of conditions). Signed by Magistrate Judge Thomas G. Wilson on 10/15/2008. (CAW) (Entered: 10/16/2008) |
| 10/16/2008 | 45 | TRIAL CALENDAR for trial term beginning November 3, 2008 as to Charles Jackson Friedlander. Jury Trial set for 11/17/2008 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 10/16/2008. (AO) (Entered: 10/16/2008) |

| 10/17/2008 | 46 | MOTION for disclosure of Government Exhibits and Incorp. Memo of Law by Charles Jackson Friedlander. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Tragos, George) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 10/17/2008) |
| 10/17/2008 | 47 | MOTION in limine (Photographs) and Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/17/2008) |
| 10/17/2008 | 48 | MOTION in limine (E-Mails/IM's) by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/17/2008) |
| 10/17/2008 | 49 | Unopposed MOTION to Allow Laptop and Cellular Phones in Federal Courthouse by Charles Jackson Friedlander. (Tragos, George) Modified on 10/20/2008 (MRH). NOTE: TERMINATED. INCORRECT CODE. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 10/17/2008) |
| 10/20/2008 | 50 | MOTION to allow electronic equipment, specifically cell phone and laptop computer by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/20/2008) |
| 10/21/2008 | 51 | ORDER granting in part and denying in part 50 motion to allow electronic equipment as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 10/20/2008. (KE) (Entered: 10/21/2008) |
| 10/21/2008 | 52 | ORDER denying as moot 40 Motion to continue trial as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 10/21/2008. (KE) (Entered: 10/21/2008) |
| 10/22/2008 | 53 | BILL of particulars as to Charles Jackson Friedlander. (Few, Adelaide) (Entered: 10/22/2008) |
| 10/22/2008 | 54 | MOTION to allow electronic equipment, specifically Laptop Computer by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 10/22/2008) |
| 10/23/2008 | 55 | ORDER granting 54 Government's motion to allow electronic equipment into courthouse. Signed by Judge James D. Whittemore on 10/23/2008. (KE) (Entered: 10/23/2008) |
| 10/30/2008 | 56 | MOTION to extend time to to reply to motions Dkt No. 46, Dkt No. 47, and Dkt No. 48 by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 10/30/2008) |
| 10/30/2008 | 57 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 10/30/2008) |
| 10/30/2008 | 58 | TRIAL BRIEF by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 10/30/2008) |
| 10/30/2008 | 59 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 10/30/2008) |
| 10/31/2008 | 60 | ORDER granting 56 Government's motion for extension of time to respond to Defendant's motions. Signed by Judge James D. Whittemore on 10/30/2008. (KE) (Entered: 10/31/2008) |
| 11/04/2008 | 61 | PROPOSED VOIR DIRE questions by Charles Jackson Friedlander (Tragos, George) (Entered: 11/04/2008) |
| 11/04/2008 | 62 | PROPOSED JURY INSTRUCTIONS by Charles Jackson Friedlander (Tragos, George) (Entered: 11/04/2008) |
| 11/04/2008 | 63 | PROPOSED verdict form filed by Charles Jackson Friedlander (Tragos, George) (Entered: 11/04/2008) |
| 11/05/2008 | 64 | NOTICE of reciprocal discovery (Rule 16) by Charles Jackson Friedlander (Tragos, George) (Entered: 11/05/2008) |
| 11/05/2008 | 65 | MOTION Preclude Gov't from Admitting 404(B) Evidence by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/05/2008) |
| 11/05/2008 | 66 | NOTICE of Filing by Charles Jackson Friedlander (Attachments: # 1 Exhibit Expert Summary, # 2 Exhibit Kroungold CV, # 3 Exhibit Berlin CV, # 4 Exhibit DiMarco CV)(Tragos, George) (Entered: 11/05/2008) |
| 11/06/2008 | 67 | Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence by Charles Jackson Friedlander. (Attachments: # 1 Exhibit A)(Tragos, George) (Entered: 11/06/2008) |
| 11/07/2008 | 68 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 47 MOTION in limine (Photographs) and Incorp. Memo of Law (Kaiser, Amanda) (Entered: 11/07/2008) |
| 11/07/2008 | 69 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 48 MOTION in limine (E-Mails/IM's) (Attachments: # 1 Exhibit Government Exhibits 1 and 2)(Kaiser, Amanda) (Entered: 11/07/2008) |
| 11/07/2008 | 70 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 46 MOTION for disclosure of Government Exhibits and Incorp. Memo of Law (Kaiser, Amanda) (Entered: 11/07/2008) |
| 11/07/2008 | 71 | MOTION in limine to preclude the government from referencing any prior case or investigations against the Defendant and Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/07/2008) |
| 11/10/2008 | 72 | ORDER granting 46] Motion for disclosure as to Charles Jackson Friedlander (1) to the extent that the Government shall IDENTIFY, by 11/13/08, the exhibits which it intends to use at trial.. Signed by Magistrate Judge Thomas G. Wilson on 11/10/2008. (CAW) (Entered: 11/10/2008) |
| 11/10/2008 | 73 | MOTION in limine to Exclude Expert Witnesses and Request for Daubert Hearing by USA as to |

| | | |
|---|---|---|
| | | Charles Jackson Friedlander. (Kaiser, Amanda) Modified on 11/10/2008 (MRH). NOTE: ATTORNEY NOTIFIED. MOTION FOR HEARING TO BE FILED AS SEPARATE MOTION. (Entered: 11/10/2008) |
| 11/10/2008 | 74 | MOTION for hearing Daubert Hearing by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 11/10/2008) |
| 11/10/2008 | 75 | MOTION to continue trial by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 11/10/2008) |
| 11/10/2008 | 76 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 67 Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence (Attachments: # 1 Exhibit Exhibits 1 through 9) (Kaiser, Amanda) (Entered: 11/10/2008) |
| 11/10/2008 | 77 | NOTICE of Filing by Charles Jackson Friedlander (Attachments: # 1 Exhibit 1- Caputi Resume, # 2 Errata 2- Prast resume) (Tragos, George) (Entered: 11/10/2008) |
| 11/10/2008 | 78 | MOTION in limine to Preclude the Government from Presenting Corp. Romanowski's Expert Medical Opinion in the Presence of the Jury and Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/10/2008) |
| 11/10/2008 | 79 | MOTION in limine to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable FL Laws and Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/10/2008) |
| 11/11/2008 | 80 | RESPONSE 73 MOTION in limine to Exclude Expert Witnesses and Request for Daubert Hearing, 74 MOTION for hearing Daubert Hearing by Charles Jackson Friedlander and Incorporated Memorandum of Law (Tragos, George) (Entered: 11/11/2008) |
| 11/12/2008 | 81 | NOTICE OF HEARING on all pending motions: 78 MOTION in Limine to Preclude the Government from Presenting Corp. Romanowski's Expert Medical Opinion in the Presence of the Jury; 79 MOTION in Limine to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable FL Laws; 47 MOTION in Limine (Photographs); 71 MOTION in Limine to Preclude the Govt from Referencing any Prior Case or Investigations Against the Defendant; 48 MOTION in Limine (E-Mails/IM's); 74 MOTION for Daubert Hearing; 65 MOTION Preclude Govt from Admitting 404(B) Evidence; 73 MOTION in Limine to Exclude Expert Witnesses; 67 Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence; and 75 Government's MOTION to Continue Trial. Motion Hearing set for 11/14/2008 at 9:30 AM in Courtroom 13B before Judge James D. Whittemore. (KE) (Entered: 11/12/2008) |
| 11/12/2008 | 82 | MOTION to allow electronic equipment, specifically laptop and cell phone by Charles Jackson Friedlander. (Tragos, George) (Entered: 11/12/2008) |
| 11/13/2008 | 83 | MEMORANDUM in support by Charles Jackson Friedlander re 80 Response Regarding Expert Testimony (Tragos, George) (Entered: 11/13/2008) |
| 11/13/2008 | 84 | ORDER granting in part and denying in part 82 Defendant's Motion to allow electronic equipment into courthouse. Signed by Judge James D. Whittemore on 11/13/2008. (KE) (Entered: 11/13/2008) |
| 11/13/2008 | 85 | MOTION to allow electronic equipment, specifically Laptop Computer on November 14, 2008 at 9:30 a.m., Motions Hearing by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 11/13/2008) |
| 11/14/2008 | 86 | MOTION to amend/correct 74 MOTION for hearing Daubert Hearing filed by USA by USA as to Charles Jackson Friedlander. (Attachments: # 1 Exhibit) (Kaiser, Amanda) (Entered: 11/14/2008) |
| 11/14/2008 | 89 | Minute Entry for proceedings held before Judge James D. Whittemore: MOTION hearing as to Charles Jackson Friedlander re 79 MOTION in limine to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable FL Laws filed by Charles Jackson Friedlander, 71 MOTION in limine to preclude the government from referencing any prior case or investigations filed by Charles Jackson Friedlander, 78 MOTION in limine to Preclude the Government from Presenting Corp. Romanowski's Expert Medical Opinion filed by Charles Jackson Friedlander, 85 MOTION to allow electronic equipment, specifically Laptop Computer on November 14, 2008 at 9:30 a.m., Motions Hearing filed by USA, 86 MOTION to amend/correct 74 MOTION for hearing Daubert Hearing filed by USA USA, 67 Amended MOTION to Preclude Gov't from Admitting 404(B) Evidence filed by Charles Jackson Friedlander, 47 MOTION in limine (Photographs) and Incorp. Memo of Law filed by Charles Jackson Friedlander, 65 MOTION Preclude Gov't from Admitting 404(B) Evidence filed by Charles Jackson Friedlander, 73 MOTION in limine to Exclude Expert Witnesses and Request for Daubert Hearing filed by USA, 48 MOTION in limine (E-Mails/IM's) filed by Charles Jackson Friedlander, 75 MOTION to continue trial filed by USA, 74 MOTION for hearing Daubert Hearing filed by USA held on 11/14/2008. Court Reporter: Linda Starr (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 90 | ORAL ORDER denying 47 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 91 | ORAL ORDER granting in part and denying in part 48 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 93 | ORAL ORDER granting in part and denying in part 67 Amended Motion to Preclude Government from Admitting 404(b) Evidence as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |

| | | |
|---|---|---|
| 11/14/2008 | 94 | ORAL ORDER granting in part and denying in part 71 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 95 | ORAL ORDER deferred ruling and granting in part 73 Motion in Limine and Request for Daubert Hearing as to Charles Jackson Friedlander (1). Daubert Hearing is scheduled for Monday 11/17/08 at 1:15 P.M. By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 96 | ORAL ORDER granting 74 Motion for Daubert Hearing as to Charles Jackson Friedlander (1). Daubert Hearing is scheduled for 11/17/08 at 1:15 P.M. By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 97 | ORAL ORDER provisionally denying 75 Motion to continue trial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 98 | ORAL ORDER denying 78 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 99 | ORAL ORDER denying 79 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 100 | ORAL ORDER denying as moot 85 motion to allow electronic equipment for 11/14/08 hearing as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/14/2008 | 101 | ORAL ORDER granting 86 Motion to amend/correct Dkt. 74 Motion for Daubert Hearings as to Charles Jackson Friedlander (1). Daubert Hearing is scheduled 11/17/08 at 1:15 P.M. By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/17/2008 | 87 | MEMORANDUM in opposition by Charles Jackson Friedlander re 74 Motion for hearing Daubert Hearing (Tragos, George) (Entered: 11/17/2008) |
| 11/17/2008 | 88 | NOTICE of Filing by Charles Jackson Friedlander (Attachments: # 1 Exhibit Summary Chart) (Tragos, George) Modified on 11/17/2008 (MRH). NOTE: TERMINATED. INCORRECT EXHIBIT ATTACHMENT. ATTORNEY NOTIFIED. ATTORNEY TO REFILE. (Entered: 11/17/2008) |
| 11/17/2008 | 92 | ORAL ORDER denying as moot 65 Motion to Preclude Government from Admitting 404(b) Evidence as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 11/14/2008. (AO) (Entered: 11/17/2008) |
| 11/17/2008 | 102 | Minute Entry for proceedings held before Judge James D. Whittemore: DAUBERT hearing held on 11/17/2008 as to Charles Jackson Friedlander. Court Reporter: Linda Starr (AO) (Entered: 11/17/2008) |
| 11/17/2008 | 103 | ORAL SCHEDULING ORDER as to Charles Jackson Friedlander Status Conference set for 11/24/2008 at 04:00 PM ; Jury Trial set for 12/8/2008 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. By Judge James D. Whittemore on 11/17/2008. (AO) (Entered: 11/17/2008) |
| 11/20/2008 | 104 | TRIAL CALENDAR for trial term beginning December 1, 2008 as to Charles Jackson Friedlander. Jury Trial set for 12/8/2008 at 08:45 AM; Status Conference set for 11/24/2008 at 04:00 PM in Courtroom 13 B before Judge James D. Whittemore Signed by Judge James D. Whittemore on 11/20/2008. (AO) (Entered: 11/20/2008) |
| 11/24/2008 | 106 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 11/24/2008. Court Reporter: Linda Starr (AO) (Entered: 11/25/2008) |
| 11/25/2008 | 105 | NOTICE of intent to use evidence by Charles Jackson Friedlander (Tragos, George) (Entered: 11/25/2008) |
| 11/25/2008 | 107 | NOTICE OF HEARING as to Charles Jackson Friedlander. Jury Trial set for 12/8/2008 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 11/25/2008) |
| 12/02/2008 | 108 | Unopposed MOTION to travel by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/02/2008) |
| 12/02/2008 | 109 | MOTION to allow electronic equipment, specifically Cell phone and Laptop by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/02/2008) |
| 12/02/2008 | 110 | MOTION in limine to Exclude Expert Testimony and/or in the Alternative Request for Daubert Hearing by USA as to Charles Jackson Friedlander. (Attachments: # 1 Exhibit Exhibit 1)(Kaiser, Amanda) (Entered: 12/02/2008) |
| 12/02/2008 | 111 | ORDER granting 108 Motion to Travel as to Charles Jackson Friedlander (1). Signed by Magistrate Judge Thomas G. Wilson on 12/2/2008. (Wilson, Thomas) (Entered: 12/02/2008) |
| 12/03/2008 | 112 | MOTION to allow electronic equipment, specifically Laptop Computer on December 4, 2008 by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 12/03/2008) |
| 12/03/2008 | 113 | MOTION to allow electronic equipment, specifically Laptop Computer beginning December 8, 2008 through the duration of Trial by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 12/03/2008) |
| 12/04/2008 | 114 | ORDER granting in part and denying in part 109 motion to allow electronic equipment as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 12/2/2008. (KE) (Entered: 12/04/2008) |

| Date | No. | Description |
|---|---|---|
| 12/04/2008 | 115 | WITNESS LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 116 | ENDORSED ORDER granting 113 Government's Motion to bring laptop computer into Courthouse. Amanda Kaiser, AUSA is permitted to bring a laptop computer into the Courthouse on 12/4/08, subject to inspection and approval by Court Security. Signed by Judge James D. Whittemore on 12/4/2008. (KE) (Entered: 12/04/2008) |
| 12/04/2008 | 117 | MOTION for miscellaneous relief, specifically Allow Witness to Remain in the Courtroom and be Excluded from Fed. Rule of Evidence 615 and Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 118 | EXHIBIT LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 119 | MOTION for miscellaneous relief, specifically for Additional Jurors by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 120 | RESPONSE in opposition by Charles Jackson Friedlander re 110 Motion in limine Exclude Expert Testimony and Incorp. Memo of Law (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Tragos, George) (Entered: 12/04/2008) |
| 12/04/2008 | 121 | NOTICE of attorney appearance: Peter Anthony Sartes appearing for Charles Jackson Friedlander (Sartes, Peter) (Entered: 12/04/2008) |
| 12/04/2008 | 122 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/04/2008) |
| 12/04/2008 | 123 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/04/2008) |
| 12/04/2008 | 124 | ENDORSED ORDER denying 119 Defendant's Motion for Additional Jurors. Signed by Judge James D. Whittemore on 12/4/2008. (KE) (Entered: 12/04/2008) |
| 12/04/2008 | 125 | ORDER granting 113 Government's motion to allow laptop computer into courthouse for trial. Signed by Judge James D. Whittemore on 12/4/2008. (KE) (Entered: 12/04/2008) |
| 12/05/2008 | 126 | WITNESS LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 127 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 128 | PROPOSED VOIR DIRE questions by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 129 | WITNESS LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/05/2008 | 130 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 12/05/2008) |
| 12/07/2008 | 131 | MOTION for miscellaneous relief, specifically Permit evidence under Fed. R. 106 and Incorporated memorandum of law by Charles Jackson Friedlander. (Tragos, George) (Entered: 12/07/2008) |
| 12/08/2008 | 132 | Minute Entry for proceedings held before Judge James D. Whittemore: Voir Dire and Trial held on 12/8/2008 - DAY 1, as to Charles Jackson Friedlander. Court Reporter: Linda Starr (AO) (Entered: 12/09/2008) |
| 12/08/2008 | 133 | ORAL ORDER granting 117 Motion Relief as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/8/2008. (AO) (Entered: 12/09/2008) |
| 12/08/2008 | 134 | ORAL MOTION to modify conditions of release by Charles Jackson Friedlander. (AO) (Entered: 12/09/2008) |
| 12/08/2008 | 135 | ORAL ORDER granting in part and denying in part 134 Motion to Modify Conditions of Release as to Charles Jackson Friedlander (1). Court will permit the defendant to switch to a GPS monitoring system supervised by Pretrial Services. By Judge James D. Whittemore on 12/8/2008. (AO) (Entered: 12/09/2008) |
| 12/09/2008 | 136 | ORDER MODIFYING PRETRIAL RELEASE MONITORING DEVICE as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 12/9/2008. (AO) (Entered: 12/09/2008) |
| 12/09/2008 | 137 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 2 as to Charles Jackson Friedlander held on 12/9/2008. Court Reporter: Linda Starr (AO) (Entered: 12/09/2008) |
| 12/10/2008 | 138 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 3 as to Charles Jackson Friedlander held on 12/10/2008. Court Reporter: Linda Starr (AO) (Entered: 12/11/2008) |
| 12/10/2008 | 139 | ORAL ORDER granting in part and denying in part 110 Motion in Limine as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/10/2008. (AO) (Entered: 12/11/2008) |
| 12/11/2008 | 140 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL- DAY 4 as to Charles Jackson Friedlander held on 12/11/2008. Court Reporter: Linda Starr (AO) (Entered: 12/12/2008) |
| 12/11/2008 | 141 | ORAL MOTION for Judgment of Acquittal by Charles Jackson Friedlander. (AO) (Entered: 12/12/2008) |
| 12/11/2008 | 142 | ORAL ORDER denying 141 Motion for acquittal as to Charles Jackson Friedlander (1). By Judge |

| | | |
|---|---|---|
| | | James D. Whittemore on 12/11/2008. (AO) (Entered: 12/12/2008) |
| 12/12/2008 | 143 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 5 as to Charles Jackson Friedlander held on 12/12/2008. Court Reporter: Linda Starr (AO) (Entered: 12/15/2008) |
| 12/15/2008 | 144 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 6 as to Charles Jackson Friedlander held on 12/15/2008. Court Reporter: Linda Starr (AO) (Entered: 12/16/2008) |
| 12/15/2008 | 145 | ORAL MOTION for miscellaneous relief, specifically Renews all previous motions by Charles Jackson Friedlander. (AO) (Entered: 12/16/2008) |
| 12/15/2008 | 147 | ORAL MOTION for miscellaneous relief, specifically for Mistrial by Charles Jackson Friedlander. (AO) (Entered: 12/16/2008) |
| 12/15/2008 | 148 | ORAL ORDER granting in part and denying in part 145 Oral Motion to renew all previous motions; denying 146 Oral Motion for Judgment of Acquittal; denying 147Oral Motion for Mistrial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/15/2008. (AO) (Entered: 12/16/2008) |
| 12/16/2008 | 146 | ORAL MOTION for judgment of acquittal by Charles Jackson Friedlander. (AO) (Entered: 12/16/2008) |
| 12/16/2008 | 149 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 7 as to Charles Jackson Friedlander held on 12/16/2008. Court Reporter: Linda Starr (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 150 | ORAL MOTION for miscellaneous relief, specifically Mistrial by Charles Jackson Friedlander. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 151 | ORAL ORDER denying 150 Motion for Mistrial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 12/16/2008. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 152 | ORAL MOTION to extend time to file post-trial motions by Charles Jackson Friedlander. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 153 | ORAL ORDER granting 152 Motion to extend time to file post-trial motions as to Charles Jackson Friedlander (1). Defendant is granted an extension of time to 30 days; Government's response is due 15 days thereafter.. By Judge James D. Whittemore on 12/16/2008. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 154 | TRIAL EXHIBIT LIST by USA as to Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 155 | TRIAL EXHIBIT LIST by Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 156 | COURT'S TRIAL EXHIBIT LIST as to Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 157 | COURT'S JURY INSTRUCTIONS as to Charles Jackson Friedlander (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 159 | WAIVER OF FORFEITURE HEARING BEFORE A JURY as to Charles Jackson Friedlander. (AO) (Entered: 12/17/2008) |
| 12/16/2008 | 160 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing set for 3/16/2009 at 01:30PM in Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 12/17/2008) |
| 12/17/2008 | 158 | JURY VERDICT as to Charles Jackson Friedlander (1) Guilty on Count 1. (AO) (Entered: 12/17/2008) |
| 12/18/2008 | 161 | NOTICE of exhibits placed in the exhibit room (jury trial - 1 box) as to Charles Jackson Friedlander (JLH) (Entered: 12/19/2008) |
| 01/06/2009 | 162 | NOTICE of Mutual Mistake of Fact at Trial by USA as to Charles Jackson Friedlander (Attachments: # 1 Attachment)(Kaiser, Amanda) (Entered: 01/06/2009) |
| 01/09/2009 | 163 | MOTION for new trial & Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (JNB). (Entered: 01/09/2009) |
| 01/12/2009 | 164 | MOTION for acquittal (Renewed) by Charles Jackson Friedlander. (Tragos, George) (Entered: 01/12/2009) |
| 01/23/2009 | 165 | **INCORRECT EVENT CODES USED; COUNSEL NOTIFIED TO REFILE**REPLY to response to motion by USA as to Charles Jackson Friedlander re 164 MOTION for acquittal (Renewed) (Kaiser, Amanda) Modified on 1/26/2009 (JLH). (Entered: 01/23/2009) |
| 01/23/2009 | 166 | **INCORRECT EVENT CODES USED; COUNSEL NOTIFIED TO RE-FILE**REPLY to response to motion by USA as to Charles Jackson Friedlander re 163 MOTION for new trial & Inc. Memo of Law (Kaiser, Amanda) Modified on 1/26/2009 (JLH). (Entered: 01/23/2009) |
| 01/23/2009 | 167 | NOTICE OF HEARING on motions: 164 (Renewed) MOTION for Acquittal; 163 MOTION for New Trial. Motion Hearing set for 2/5/2009 at 1:30 PM in Courtroom 13B before Judge James D. Whittemore. NOTE TO MARSHAL: DEFENDANT MUST BE PRESENT AT SAID HEARING.(KE) (Entered: 01/23/2009) |
| 01/26/2009 | 168 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 163 MOTION for new trial & Inc. Memo of Law (Kaiser, Amanda) (Entered: 01/26/2009) |
| 01/26/2009 | 169 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 164 MOTION for acquittal (Renewed) (Kaiser, Amanda) (Entered: 01/26/2009) |

| | | |
|---|---|---|
| 02/05/2009 | 170 | Minute Entry for proceedings held before Judge James D. Whittemore: MOTION hearing as to Charles Jackson Friedlander held on 2/5/2009, granting 163 Motion for new trial as to Charles Jackson Friedlander (1), denying as moot 164 Motion for acquittal as to Charles Jackson Friedlander (1). Court Reporter: Linda Starr (VLD) (Entered: 02/06/2009) |
| 02/06/2009 | 171 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 2/6/2009. Court Reporter: Linda Starr (AO) (Entered: 02/06/2009) |
| 02/06/2009 | 172 | ORAL SCHEDULING ORDER as to Charles Jackson Friedlander. Jury Trial set for 3/23/2009 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. By Judge James D. Whittemore on 2/6/2009. (AO) (Entered: 02/06/2009) |
| 02/06/2009 | 173 | MOTION for bond (reinstate) or to Set Bond & Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/06/2009) |
| 02/06/2009 | 174 | ORDER granting 163 Motion for new trial as to Charles Jackson Friedlander (1). Signed by Judge James D. Whittemore on 2/6/2009. (JNB) (Entered: 02/09/2009) |
| 02/09/2009 | 175 | EXHIBIT LIST by Charles Jackson Friedlander, (Motion Hearing) (KIT) (Entered: 02/09/2009) |
| 02/09/2009 | 176 | NOTICE of exhibits placed in the exhibit room (1 envelope - motion hearing) as to Charles Jackson Friedlander (JLH) (Entered: 02/10/2009) |
| 02/10/2009 | 177 | TRIAL CALENDAR for trial term March 2, 2009 as to Charles Jackson Friedlander. Jury Trial set for date certain on 3/23/2009 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 2/10/2009. (AO) (Entered: 02/10/2009) |
| 02/17/2009 | 178 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 173 MOTION for bond (reinstate) or to Set Bond & Incorp. Memo of Law (Kaiser, Amanda) (Entered: 02/17/2009) |
| 02/19/2009 | 179 | TRANSCRIPT of Detention Hearing (Excluding Testimony of Dr. Mitchell Kroungold) as to Charles Jackson Friedlander held on 8/1/08 before Judge Thomas G. Wilson. Court Reporter/Transcriber Dennis Miracle, Telephone number 352/622-7212. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/12/2009, Redacted Transcript Deadline set for 3/23/2009, Release of Transcript Restriction set for 5/20/2009. (DM) (Entered: 02/19/2009) |
| 02/19/2009 | 180 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Dennis Miracle (DM) (Entered: 02/19/2009) |
| 02/24/2009 | 181 | NOTICE OF HEARING on Defendant's 173 MOTION to Reinstate Bond or to Set Bond.Motion Hearing set for 2/26/2009 at 4:00 PM in Courtroom 13B before Judge James D. Whittemore. NOTE TO USM: Defendant shall be present at said hearing.(KE) (Entered: 02/24/2009) |
| 02/24/2009 | 182 | MOTION for miscellaneous relief, specifically Preclude the Gov't from Admitting 404(B) evidence (Renewed) by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 183 | MOTION for miscellaneous relief, specifically Preclude Gov't from Cross Examining Dr. Berlin regarding Testimony in first Trial that surround incorrect version of the DSM & Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 184 | MOTION in limine Preclude Gov't from Presenting Nude or Explicit Photos of Adults & Incorp. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 185 | MOTION in limine Preclude Gov't from Presenting e-Mails or Instant Messages of Explicit Correspondence with Adults & Incorp. Memo of Law (Renewed) by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 186 | Unopposed MOTION to allow electronic equipment, specifically Laptops and Cell Phones (Renewed) by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 187 | PROPOSED verdict form filed by Charles Jackson Friedlander (Tragos, George) (Entered: 02/24/2009) |
| 02/24/2009 | 188 | PROPOSED JURY INSTRUCTIONS by Charles Jackson Friedlander (Tragos, George) (Entered: 02/24/2009) |
| 02/25/2009 | 189 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 183 MOTION for miscellaneous relief, specifically Preclude Gov't from Cross Examining Dr. Berlin regarding Testimony in first Trial that surround incorrect version of the DSM & Incorp. Memo of Law (Kaiser, Amanda) (Entered: 02/25/2009) |
| 02/25/2009 | 190 | MOTION in limine to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable fL Law in the Presence of the Jury and Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/25/2009) |

| | | |
|---|---|---|
| 02/25/2009 | 191 | MOTION in limine to Preclude the gov't from Presenting Corp. Romanowski's Expert Medical Opinion in the presence of the Jury and Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/25/2009) |
| 02/25/2009 | 192 | MOTION in limine to Preclude the gov't from Referencing any Prior Case or Investigations against the Defendant and Incorp Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/25/2009) |
| 02/26/2009 | 193 | Minute Entry for proceedings held before Judge James D. Whittemore: denying 173 Motion for bond as to Charles Jackson Friedlander (1); MOTION hearing re 173 MOTION for bond (reinstate) or to Set Bond filed by Charles Jackson Friedlander held on 2/26/2009. Court Reporter: Linda Starr (AO) (Entered: 02/27/2009) |
| 02/27/2009 | 194 | MOTION to dismiss Based on Double Jeopardy and Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 02/27/2009) |
| 03/04/2009 | 195 | MOTION for miscellaneous relief, specifically to Obtain Exhibits from Trial by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/04/2009) |
| 03/05/2009 | 196 | MOTION to allow electronic equipment, specifically Laptop Computer by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/05/2009) |
| 03/05/2009 | 197 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 182 MOTION for miscellaneous relief, specifically Preclude the Gov't from Admitting 404(B) evidence (Renewed) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Kaiser, Amanda) (Entered: 03/05/2009) |
| 03/05/2009 | 198 | ENDORSED ORDER granting 195 Government's Motion to Obtain Exhibits from Trial. Signed by Judge James D. Whittemore on 3/5/2009. (KE) (Entered: 03/05/2009) |
| 03/06/2009 | 199 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 184 MOTION in limine Preclude Gov't from Presenting Nude or Explicit Photos of Adults & Incorp. Memo. of Law (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/06/2009 | 200 | MOTION for miscellaneous relief, specifically Obtain Exhibits from Trial by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/06/2009) |
| 03/06/2009 | 201 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 185 MOTION in limine Preclude Gov't from Presenting e-Mails or Instant Messages of Explicit Correspondence with Adults & Incorp. Memo of Law (Renewed) (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/06/2009 | 202 | TRIAL BRIEF by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 03/06/2009) |
| 03/06/2009 | 203 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 03/06/2009) |
| 03/06/2009 | 204 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 03/06/2009) |
| 03/06/2009 | 205 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 190 MOTION in limine to Preclude the Gov't from Presenting Corp. Romanowski's Recitation of Applicable fL Law in the Presence of the Jury and Memo of Law (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/06/2009 | 206 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 191 MOTION in limine to Preclude the gov't from Presenting Corp. Romanowski's Expert Medical Opinion in the presence of the Jury and Memo of Law (Kaiser, Amanda) (Entered: 03/06/2009) |
| 03/10/2009 | 207 | ENDORSED ORDER granting 200 Defendant's MOTION to Obtain Exhibits from Trial. Signed by Judge James D. Whittemore on 3/10/2009. (KE) (Entered: 03/10/2009) |
| 03/10/2009 | 208 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 192 MOTION in limine to Preclude the gov't from Referencing any Prior Case or Investigations against the Defendant and Incorp Memo of Law (Kaiser, Amanda) (Entered: 03/10/2009) |
| 03/10/2009 | 209 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 194 MOTION to dismiss Based on Double Jeopardy and Inc. Memo of Law (Kaiser, Amanda) (Entered: 03/10/2009) |
| 03/10/2009 | 210 | ORDER granting 196 Government's motion to allow electronic equipment for trial. Signed by Judge James D. Whittemore on 3/10/2009. (KE) (Entered: 03/10/2009) |
| 03/11/2009 | 211 | ORDER granting in part and denying in part 186 Defendant's Renewed motion to allow electronic equipment. Signed by Judge James D. Whittemore on 3/11/2009. (KE) (Entered: 03/11/2009) |
| 03/11/2009 | 212 | TRIAL CALENDAR for trial term beginning March 18, 2009 as to Charles Jackson Friedlander. Jury Trial set for 3/23/2009 at 08:45 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 3/11/2009. (AO) (Entered: 03/11/2009) |
| 03/11/2009 | 214 | RECEIPT for return of GOVERNMENT exhibits and/or exhibit substitutes for re-trial as to Charles Jackson Friedlander. (JLH) (Entered: 03/12/2009) |
| 03/12/2009 | 213 | MOTION in limine to Preclude Corp. Romanwoski from Stating Legal Conclusion in the Presence of the Jury and Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/12/2009) |
| 03/12/2009 | 215 | MOTION for miscellaneous relief, specifically for Jury Instruction regarding mandatory Sentence & |

| | | |
|---|---|---|
| | | Inc. memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/12/2009) |
| 03/12/2009 | 216 | MOTION for miscellaneous relief, specifically to allow Defendant to have access to Medication and Food During Trial by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/12/2009) |
| 03/13/2009 | 217 | RECEIPT for return of DEFENDANT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (Returned for re-trial) (JLH) (Entered: 03/13/2009) |
| 03/13/2009 | 218 | MOTION in limine to Exclude Expert Witnesses and Request for Daubert Hearing by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/13/2009 | 219 | MOTION in limine to Preclude Defense Counsel from Making Improper Arguments in His Opening Statements by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/13/2009 | 220 | ORDER denying 216 Motion to Allow Defendant to Have Access as to Charles Jackson Friedlander. Copy to USM. Signed by Judge James D. Whittemore on 3/13/2009. (KE) (Entered: 03/13/2009) |
| 03/13/2009 | 221 | MOTION for reconsideration of Admissibility of Government's 404(B) Evidence Regarding Port St. Lucie Investigation by USA as to Charles Jackson Friedlander. (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/13/2009 | 222 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 215 MOTION for miscellaneous relief, specifically for Jury Instruction regarding mandatory Sentence & Inc. memo of Law (Kaiser, Amanda) (Entered: 03/13/2009) |
| 03/16/2009 | 223 | ORDER denying 213 Defendant's Motion in Limine to Preclude Corporal Romanowski's [sic] From Stating a Legal Conclusion in the Presence of the Jury. Signed by Judge James D. Whittemore on 3/13/2009. (KE) (Entered: 03/16/2009) |
| 03/16/2009 | 224 | ORDER denying 215 Defendant's Motion for Jury Instruction Regarding Mandatory Sentence. Signed by Judge James D. Whittemore on 3/13/2009. (KE) (Entered: 03/16/2009) |
| 03/16/2009 | 225 | PROPOSED JURY INSTRUCTIONS by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/16/2009) |
| 03/16/2009 | 226 | PROPOSED verdict form filed by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/16/2009) |
| 03/16/2009 | 227 | PROPOSED VOIR DIRE questions by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/16/2009) |
| 03/16/2009 | 228 | ORDER granting in part 182 Motion; granting 183 Motion (1); denying 184 Motion in Limine; granting in part and denying in part 185 Motion in Limine; denying 190 Motion in Limine; denying 191 Motion in Limine; granting in part and denying in part 192 Motion in Limine; granting 218 Motion in Limine; granting 219 Motion in Limine; denying 221 Motion for Reconsideration. A hearing is scheduled for 3/20/09 at 9:30 A.M. Lead counsel and Defendant to be present. Signed by Judge James D. Whittemore on 3/16/2009. (KE). (Entered: 03/16/2009) |
| 03/17/2009 | 229 | RESPONSE to motion by Charles Jackson Friedlander re 218 MOTION in limine to Exclude Expert Witnesses and Request for Daubert Hearing (Tragos, George) (Entered: 03/17/2009) |
| 03/17/2009 | 230 | WITNESS LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 03/17/2009) |
| 03/18/2009 | 231 | ORDER denying 194 Defendant's Motion to Dismiss Based on Double Jeopardy. Signed by Judge James D. Whittemore on 3/17/2009. (KE) (Entered: 03/18/2009) |
| 03/18/2009 | 232 | NOTICE OF APPEAL (Interlocutory) by Charles Jackson Friedlander re 231 Order on motion to dismiss. Filing fee $ 455. (Tragos, George) Modified on 3/19/2009 (DG). NOTE: THIS ITEM WAS FILED INCORRECTLY DUE TO LACK OF COUNSEL'S ELECTRONIC SIGNATURE AND TRANSCRIPT ORDER FORM NEEDS TO BE FILED AS SEPARATE DOCUMENT. COUNSEL'S OFFICE NOTIFIED ON 3/19/09. (Entered: 03/18/2009) |
| 03/18/2009 | 233 | Emergency MOTION to stay Trial scheduled for March 23, 2009 & Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/18/2009) |
| 03/19/2009 | 234 | NOTICE OF APPEAL (Interlocutory) by Charles Jackson Friedlander re 231 Order on motion to dismiss. Filing fee $ 455. (Tragos, George) (Entered: 03/19/2009) |
| 03/19/2009 | | TRANSMITTAL of initial appeal package as to Charles Jackson Friedlander to USCA consisting of certified copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 234 Notice of appeal - interlocutory. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. Certified copy of paid appellate fee receipt attached. (DG) Modified on 3/19/2009 (DG). (Entered: 03/19/2009) |
| 03/19/2009 | 235 | ORDER denying 233 Defendant's Emergency Motion for Stay and Motion to Continue Trial as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 3/19/2009. (KE) (Entered: 03/19/2009) |
| 03/19/2009 | | USCA appeal fees received $ 455, receipt number T049662 as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory. (DG) (Entered: 03/19/2009) |
| 03/19/2009 | 236 | TRANSCRIPT information form filed by Charles Jackson Friedlander re 234 Notice of appeal - interlocutory. All necessary transcripts on file. (DG) (Entered: 03/19/2009) |

| 03/19/2009 | 237 | WITNESS LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/19/2009) |
|---|---|---|
| 03/19/2009 | 238 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 03/19/2009) |
| 03/20/2009 | 239 | TRANSCRIPT of Jury Trial Proceedings for dates of 8 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 240 | Minute Entry for proceedings held before Judge James D. Whittemore: STATUS conference as to Charles Jackson Friedlander held on 3/20/2009. Court Reporter: Linda Starr (AO) (Entered: 03/20/2009) |
| 03/20/2009 | 241 | TRANSCRIPT of Jury Trial Proceedings for dates of 9 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 242 | TRANSCRIPT of Jury Trial Proceedings for dates of 10 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 243 | TRANSCRIPT of Jury Trial Proceedings for dates of 11 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 244 | TRANSCRIPT of Jury Trial Proceedings for dates of 12 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 245 | TRANSCRIPT of Jury Trial Proceedings for dates of 15 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 246 | TRANSCRIPT of Jury Trial Proceedings for dates of 16 December 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 247 | TRANSCRIPT of Motions Hearing for dates of 14 November 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: |

| | | 03/20/2009) |
|---|---|---|
| 03/20/2009 | 248 | TRANSCRIPT of Daubert Hearing for dates of 17 November 2008 held before Judge James D. Whittemore, re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2009, Redacted Transcript Deadline set for 4/20/2009, Release of Transcript Restriction set for 6/18/2009. (LS) (Entered: 03/20/2009) |
| 03/20/2009 | 249 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPTS. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of these transcripts. If no such Notice is filed, the transcripts may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcripts to review for redaction purposes may purchase a copy from the court reporter or view the documents at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) Modified on 3/23/2009 (DG). (Entered: 03/20/2009) |
| 03/23/2009 | 250 | Minute Entry for proceedings held before Judge James D. Whittemore: Voir Dire held on 3/23/2009. DAY 1 OF TRIAL as to Charles Jackson Friedlander. Court Reporter: Linda Starr (AO) (Entered: 03/23/2009) |
| 03/23/2009 | 251 | WITNESS LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 03/23/2009) |
| 03/24/2009 | 253 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 2 as to Charles Jackson Friedlander held on 3/24/2009. Court Reporter: Linda Starr (AO) (Entered: 03/24/2009) |
| 03/25/2009 | 252 | USCA ORDER (certified copy) as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory, that appellant's emergency motion to stay his upcoming trial pending disposition of this appeal is denied. The District Court correctly concluded that the trial should proceed despite the pendency of this appeal. EOD: 3/20/09 USCA number: 09-11354-A (DG) Modified on 3/25/2009 (DG). (Entered: 03/24/2009) |
| 03/25/2009 | 254 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 3 as to Charles Jackson Friedlander held on 3/25/2009. Court Reporter: Linda Starr (AO) (Entered: 03/25/2009) |
| 03/26/2009 | 255 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 4 as to Charles Jackson Friedlander held on 3/26/2009. Court Reporter: Linda Starr (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 256 | ORAL MOTION for directed verdict/acquittal by Charles Jackson Friedlander. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 257 | ORAL MOTION for Constitutionality Challenge by Charles Jackson Friedlander. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 258 | ORAL MOTION for Mistrial by Charles Jackson Friedlander. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 259 | ORAL ORDER denying 256 Oral Motion for directed verdict; ruling deferred 257 Oral Motion for Constitutionality Challenge; denying 258 Oral Motion for Mistrial as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 3/26/2009. (AO) (Entered: 03/26/2009) |
| 03/26/2009 | 260 | MOTION for miscellaneous relief, specifically declare 18U.S.C. 2422 Unconstitutionally Overbroad & violative of the first Amendment & Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 03/26/2009) |
| 03/27/2009 | 261 | Minute Entry for proceedings held before Judge James D. Whittemore: JURY TRIAL - DAY 5 as to Charles Jackson Friedlander held on 3/27/2009. Verdict rendered. Court Reporter: Linda Starr (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 262 | COURT'S JURY INSTRUCTIONS as to Charles Jackson (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 263 | JURY VERDICT as to Charles Jackson Friedlander (1) Guilty on Count 1. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 264 | TRIAL EXHIBIT LIST by USA as to Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 265 | TRIAL EXHIBIT LIST by Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 266 | COURT'S TRIAL EXHIBIT LIST as to Charles Jackson Friedlander (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 267 | WAIVER OF FORFEITURE HEARING BEFORE A JURY as to Charles Jackson Friedlander. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 268 | ORAL MOTION to extend time to file Post-trial motions by Charles Jackson Friedlander. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 269 | ORAL ORDER granting 268 Motion to extend time to file post-trial motions as to Charles Jackson Friedlander (1). By Judge James D. Whittemore on 3/27/2009. (AO) (Entered: 03/27/2009) |
| 03/27/2009 | 270 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing set for 6/29/2009 at 03:00PM in Tampa Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 03/27/2009) |

| | | |
|---|---|---|
| 03/30/2009 | 271 | TRANSCRIPT information form filed by Charles Jackson Friedlander for proceedings held on 12/8/08; 12/9/08; 12/10/08; 12/11/08; 12/12/08; 12/15/08; and 12/16/08 before Judge Whittemore re 234 Notice of appeal - interlocutory; Court Reporter: Linda Starr (Tragos, George) Modified on 3/31/2009 (DG). (Entered: 03/30/2009) |
| 04/02/2009 | 272 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 260 MOTION for miscellaneous relief, specifically declare 18U.S.C. 2422 Unconstitutionally Overbroad & violative of the first Amendment & Inc. Memo of Law (Kaiser, Amanda) (Entered: 04/02/2009) |
| 04/08/2009 | 273 | MOTION for new trial & Inc. Memo of Law by Charles Jackson Friedlander. (Tragos, George) (Entered: 04/08/2009) |
| 04/15/2009 | 274 | RESPONSE to motion by USA as to Charles Jackson Friedlander re 273 MOTION for new trial & Inc. Memo of Law (Kaiser, Amanda) (Entered: 04/15/2009) |
| 04/15/2009 | 275 | ORDER denying 260 Defendant's Motion to Declare 18 U.S.C. § 2422 Unconstitutionally Overbroad and Violative of the First Amendment. Signed by Judge James D. Whittemore on 4/14/2009. (KE) (Entered: 04/15/2009) |
| 04/20/2009 | 276 | ORDER denying 273 Motion for new trial as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 4/20/2009. (KE) (Entered: 04/20/2009) |
| 04/24/2009 | 277 | MOTION for miscellaneous relief, specifically Judgment of Acquittal (Renewed) by Charles Jackson Friedlander. (Tragos, George) (Entered: 04/24/2009) |
| 04/29/2009 | 278 | ORDER denying 277 Renewed Motion for Judgment of Acquittal as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 4/28/2009. (KE) (Entered: 04/29/2009) |
| 04/29/2009 | 279 | NOTICE of exhibits place din the exhibit room (jury trial - 3 folders) as to Charles Jackson Friedlander (JLH) (Entered: 04/30/2009) |
| 05/06/2009 | 280 | NOTIFICATION that transcripts has been filed by Linda Starr re: 234 Notice of appeal - interlocutory as to Charles Jackson Friedlander, with District Court on 3/20/09. (DG) (Entered: 05/07/2009) |
| 05/14/2009 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving the initial appeal package on 3/23/09 re 234 Notice of appeal - interlocutory. (DG) (Entered: 05/14/2009) |
| 06/01/2009 | 281 | USCA ORDER (certified copy) as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory, that the appellant's motion to stay appeal pending filing of a Notice of Appeal to the District Court's rendition of the Judgment and Sentence, is granted. EOD: 5/28/09 USCA number: 09-11354-A (DG) (Entered: 06/01/2009) |
| 06/23/2009 | 282 | NOTICE to the Court Regarding Forfeiture by USA as to Charles Jackson Friedlander (Few, Adelaide) (Entered: 06/23/2009) |
| 06/26/2009 | 283 | SENTENCING MEMORANDUM by Charles Jackson Friedlander (Tragos, George) (Entered: 06/26/2009) |
| 06/29/2009 | 284 | EXHIBIT LIST by USA as to Charles Jackson Friedlander (Kaiser, Amanda) (Entered: 06/29/2009) |
| 06/29/2009 | 285 | Minute Entry for proceedings held before Judge James D. Whittemore: MINUTE ENTRY held on 6/29/2009 as to Charles Jackson Friedlander. Court Reporter: Sherrill L. Jackson (AO) (Entered: 06/29/2009) |
| 06/29/2009 | 286 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing reset for 7/28/2009 at 01:00PM in Tampa Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 06/29/2009) |
| 07/07/2009 | 287 | NOTICE OF HEARING as to Charles Jackson Friedlander. Sentencing set for 7/21/2009 at 10:00AM in Tampa Courtroom 13 B before Judge James D. Whittemore. (AO) (Entered: 07/07/2009) |
| 07/20/2009 | 288 | EXHIBIT LIST by Charles Jackson Friedlander (Tragos, George) (Entered: 07/20/2009) |
| 07/21/2009 | 289 | Minute Entry for proceedings held before Judge James D. Whittemore: SENTENCING held on 7/21/2009 for Charles Jackson Friedlander (1), Count(s) 1, 360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; $100 Special Assessment. Court Reporter: Linda Starr (AO) (Entered: 07/22/2009) |
| 07/21/2009 | 290 | SENTENCING HEARING EXHIBIT LIST by USA as to Charles Jackson Friedlander. (AO) (Entered: 07/22/2009) |
| 07/21/2009 | 291 | SENTENCING HEARING EXHIBIT LIST by Charles Jackson Friedlander. (AO) (Entered: 07/22/2009) |
| 07/22/2009 | 292 | JUDGMENT as to Charles Jackson Friedlander (1), Count(s) 1, 360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; $100 Special Assessment. Signed by Judge James D. Whittemore on 7/22/2009. (AO) (Entered: 07/22/2009) |
| 07/24/2009 | 293 | NOTICE OF APPEAL by Charles Jackson Friedlander re 292 Judgment Filing fee not paid. (Tragos, George) (Entered: 07/24/2009) |
| 07/24/2009 | 294 | TRANSCRIPT information form filed by Charles Jackson Friedlander for proceedings held on 2/5/09, 3-23/27-09, 7/21/09 before Judge Whittemore re 293 Notice of appeal (Tragos, George) (Entered: 07/24/2009) |
| 07/27/2009 | | TRANSMITTAL of initial appeal package as to Charles Jackson Friedlander to USCA consisting of |

|  |  |  |
|---|---|---|
|  |  | certified copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 293 Notice of appeal. Eleventh Circuit Transcript information form forwarded to USCA and Appellant's counsel re 293 Notice of appeal to Records and Publications/General. (SAH) (Entered: 07/27/2009) |
| 07/27/2009 |  | USCA appeal fees received $455, receipt number T051184 as to Charles Jackson Friedlander re 293 Notice of appeal : (EJC) (Entered: 07/28/2009) |
| 07/27/2009 | 295 | NOTICE of exhibits placed in the exhibit room (sentencing - 1 folder) as to Charles Jackson Friedlander (JLH) (Entered: 07/29/2009) |
| 07/28/2009 |  | TRANSMITTAL to forwarding USCA appeal fees received $455, receipt number T051184 re 293 Notice of appeal as to Charles Jackson Friedlander (EJC) (Entered: 07/28/2009) |
| 08/07/2009 |  | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving certified copies of paid appellate fee receipt and updated docket sheet on 7/30/09 re 293 Notice of appeal. (DG) (Entered: 08/07/2009) |
| 08/07/2009 | 296 | COURT REPORTER ACKNOWLEDGEMENT by Linda Starr re 293 Notice of appeal as to Charles Jackson Friedlander Estimated transcript filing date: 9/4/09. USCA number: 09-13811-A. (EJC) (Entered: 08/10/2009) |
| 08/19/2009 | 297 | SATISFACTION of Judgment as to Charles Jackson Friedlander. (Willing-FLU, Patricia) (Entered: 08/19/2009) |
| 09/25/2009 | 298 | MOTION for miscellaneous relief, specifically unseal record for appellate transcription by Charles Jackson Friedlander. (Sartes, Peter) (Entered: 09/25/2009) |
| 10/05/2009 | 299 | TRANSCRIPT of Jury Trial Proceedings for date of 23 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) NOTE: COURT REPORTER NOTIFIED BY EMAIL ON 10/6/09 THAT THIS ITEM NEEDS TO BE RE-DOCKETED AS THE TRANSCRIPT FILED WAS TRIAL PROCEEDINGS OF 3/26/09. Modified on 10/6/2009 (DG). Modified on 10/7/2009 (DG). Modified on 10/7/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 300 | TRANSCRIPT of Jury Trial Proceedings for date of 24 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 301 | TRANSCRIPT of Jury Trial Proceedings for date of 25 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 302 | TRANSCRIPT of Jury Trial Proceedings for date of 26 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 303 | TRANSCRIPT of Jury Trial Proceedings for date of 27 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 304 | TRANSCRIPT of Sentencing Proceedings for date of 21 July 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or |

purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009)

| | | |
|---|---|---|
| 10/05/2009 | 305 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPTS. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 306 | TRANSCRIPT of Motion Hearing for date of 5 February 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 813-301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/26/2009, Redacted Transcript Deadline set for 11/5/2009, Release of Transcript Restriction set for 1/4/2010. (LS) Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/05/2009 | 307 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) Modified on 10/6/2009 (DG). Modified on 10/6/2009 (DG). (Entered: 10/05/2009) |
| 10/07/2009 | 308 | TRANSCRIPT of Jury Trial for date of 23 March 2009 held before Judge James D. Whittemore, re: 293 Notice of appeal as to Charles Jackson Friedlander. Court Reporter/Transcriber Linda Starr, Telephone number 8133015252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/28/2009, Redacted Transcript Deadline set for 11/9/2009, Release of Transcript Restriction set for 1/5/2010. (LS) Modified on 10/13/2009 (DG). (Entered: 10/07/2009) |
| 10/07/2009 | 309 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Charles Jackson Friedlander. Court Reporter: Linda Starr (LS) (Entered: 10/07/2009) |
| 10/13/2009 | 310 | ENDORSED ORDER granting 298 Motion to Unseal Record for Appellate Transcription as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 10/13/2009. (KE) (Entered: 10/13/2009) |
| 11/17/2009 | 311 | RETURN of judgment executed as to Charles Jackson Friedlander on 9/8/09. Institution: FCC Butner, Medium II, Butner, NC. (MRH) (Entered: 11/17/2009) |
| 12/09/2009 | 312 | Corrected JUDGMENT as to Charles Jackson Friedlander (1), Count 1, 360 MONTHS Federal Bureau of Prisons; LIFE term of Supervised Release; $25,000 Fine; $100 Special Assessment. Signed by Judge James D. Whittemore on 12/8/2009. Amended to correct USM number.(AO) (Entered: 12/09/2009) |
| 01/19/2010 | 313 | RETURN of judgment executed as to Charles Jackson Friedlander on 9/8/09. Institution: FCI Butner, Medium II, Butner, NC. (MRH) (Entered: 01/19/2010) |
| 01/28/2010 | 314 | CERTIFICATE of readiness sent to USCA as to Charles Jackson Friedlander re: 234 Notice of appeal - interlocutory, 293 Notice of appeal. ROA consists of: PSI; volume of pleadings: 2; volume of transcripts: 18; Exhibits: 6 [4 folders; 2 envelopes]. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 01/28/2010) |
| 01/28/2010 | | RECORD on appeal sent to USCA as to Charles Jackson Friedlander re 234 Notice of appeal - interlocutory, 293 Notice of appeal. Transmittal includes certified copy of docket sheet, PSI, volume of pleadings: 2, volume of transcripts: 18, volume of exhibits: 6 [4 folders; 2 envelopes]. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 01/28/2010) |
| 02/03/2010 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving the record on appeal on 2/1/10 re 234 Notice of appeal - interlocutory, 293 Notice of appeal. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 02/03/2010) |
| 02/03/2010 | | ACKNOWLEDGMENT by USCA as to Charles Jackson Friedlander of receiving the certificate of readiness on 2/1/10 re 234 Notice of appeal - interlocutory, 293 Notice of appeal. USCA number: 09-11354-AA and 09-13811-AA (DG) (Entered: 02/03/2010) |
| 11/12/2010 | 315 | MANDATE of USCA AFFIRMED (certified copy) as to Charles Jackson Friedlander re 293 Notice of |

| | | appeal, 234 Notice of appeal - interlocutory. EOD: 9/3/10. Issued as Mandate: 11/9/10; USCA number: 09-11354-AA / 09-13811-AA. ROA returned and consists of: volume of pleadings: 2, volume of transcripts, volume of exhibits, folder, envelope. (SJ) (Entered: 11/12/2010) |
|---|---|---|
| 04/08/2011 | 316 | Notification from the U.S. Court of Appeals, 11th Circuit, that WRIT OF CERTIORARI is denied by the U.S. Supreme Court as to Charles Jackson Friedlander The court's mandate having previously issued, no further action will be taken by this court. USCA number: 09-11354-FF (DG) (Entered: 04/08/2011) |
| 06/24/2011 | 317 | GOVERNMENT AND DEFENDANT EXHIBITS: The records in this case indicate that this case was disposed of more than thirty (30) days ago. The records also indicate that the Clerk's Office is in possession of various exhibits used during the proceedings.Pursuant to Local Rule 5.04, you are notified that you have thirty (30) days for the removal of the exhibits from the custody of the Clerk's Office, or the exhibits will be disposed of, or destroyed, as permitted by Local Rule 5.04. (JLH) (Entered: 06/24/2011) |
| 06/28/2011 | 318 | RECEIPT for return of GOVERNMENT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (JLH) (Entered: 07/06/2011) |
| 08/05/2011 | 319 | CLERK'S certificate of destruction of DEFENDANT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (JLH) (Entered: 08/05/2011) |
| 08/12/2011 | 320 | CLERK'S certificate of destruction of COURT exhibits and/or exhibit substitutes as to Charles Jackson Friedlander. (JLH) (Entered: 08/12/2011) |
| 10/19/2011 | 321 | MOTION for miscellaneous relief, specifically Disclose Presentence Report by Charles Jackson Friedlander. (Tragos, George) (Entered: 10/19/2011) |
| 10/24/2011 | 322 | ORDER granting 321 Defendant's Motion to Disclose Presentence Report to new counsel. Signed by Judge James D. Whittemore on 10/24/2011. (KE) (Entered: 10/24/2011) |
| 04/03/2012 | 323 | MOTION to vacate under 28 U.S.C. 2255 by Charles Jackson Friedlander. (Martinez, Victor) (Entered: 04/03/2012) |
| 04/03/2012 | | All Further pleadings related to the 2255 motion as to Charles Jackson Friedlander to be filed in civil case 8:12-CV-723-T-TGW (ARC) Modified on 4/6/2012 (AG). (Entered: 04/05/2012) |
| 04/06/2012 | 324 | ORDER terminating 323 Motion to vacate (2255) as to Charles Jackson Friedlander. Petitioner's motion remains under consideration in the corresponding civil file. See Case No. 8:12-CV-723-T-27TGW. Signed by Judge James D. Whittemore on 4/6/2012. (KE) (Entered: 04/06/2012) |
| 12/03/2012 | 325 | Remark: COPY OF CIVIL JUDGMENT IN CIVIL CASE NUMBER: 8:12-CV-723-T-27TGW. (BSN) (Entered: 12/03/2012) |
| 06/08/2015 | 326 | NOTICE of Inquiry by Charles Jackson Friedlander. Courtesy copy of docket sheet mailed to Jackson Friedlander. (RFK) (Entered: 06/08/2015) |
| 06/27/2019 | 327 | NOTICE OF ATTORNEY APPEARANCE: Joseph E. Parrish appearing for Charles Jackson Friedlander (Parrish, Joseph) (Entered: 06/27/2019) |
| 06/27/2019 | 328 | MOTION for Release from Custody Compassionate Release by Charles Jackson Friedlander. (Parrish, Joseph) (Entered: 06/27/2019) |
| 06/27/2019 | 329 | ENDORSED ORDER directing the United States Attorney's Office to respond to Defendant's Motion for Compassionate Release (Dkt. 328) within 10 days as to Charles Jackson Friedlander. Signed by Judge James D. Whittemore on 6/27/2019. (CAB) (Entered: 06/27/2019) |
| 07/08/2019 | 330 | Notice of substitution of AUSA. Colin P. McDonell substituting for Amanda C. Kaiser and Adelaide Few. (McDonell, Colin) (Entered: 07/08/2019) |
| 07/08/2019 | 331 | MOTION to Dismiss AND OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE by USA as to Charles Jackson Friedlander. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(McDonell, Colin) (Entered: 07/08/2019) |
| 07/15/2019 | 332 | RESPONSE in Opposition by Charles Jackson Friedlander re 331 MOTION to Dismiss AND OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Parrish, Joseph) (Entered: 07/15/2019) |
| 07/30/2019 | 333 | ORDER directing United States to respond within three (3) days. Signed by Judge James D. Whittemore on 7/30/2019. (AKA) (Entered: 07/30/2019) |
| 08/02/2019 | 334 | NOTICE OF ATTORNEY APPEARANCE Craig Robert Gestring appearing for USA. (Gestring, Craig) (Entered: 08/02/2019) |
| 08/02/2019 | 335 | MOTION to extend time to file response to motion by USA as to Charles Jackson Friedlander. (Gestring, Craig) (Entered: 08/02/2019) |
| 08/05/2019 | 336 | ENDORSED ORDER granting 335 Government's Request for Additional Time to Respond. The Government's response is now due on or before August 12, 2019. Signed by Judge James D. Whittemore on 8/5/2019. (AKA) (Entered: 08/05/2019) |
| 08/12/2019 | 337 | RESPONSE to Motion re 328 MOTION for Release from Custody Compassionate Release by USA as to Charles Jackson Friedlander (McDonell, Colin) (Entered: 08/12/2019) |

| 08/14/2019 | 338 | ENDORSED ORDER denying as moot 331 Motion to Dismiss as to Charles Jackson Friedlander (1). The United States requested that its motion to dismiss be withdrawn. see Dkt. 337 Signed by Judge James D. Whittemore on 8/14/2019. (AKA) (Entered: 08/14/2019) |
| 08/14/2019 | 339 | ORDER denying 328 Defendant's Motion for Compassionate Release. Signed by Judge James D. Whittemore on 8/14/2019. (AKA) (Entered: 08/14/2019) |
| 08/27/2019 | 340 | NOTICE OF APPEAL by Charles Jackson Friedlander re 339 Order on Motion for Release from Custody Filing fee not paid. (Parrish, Joseph) (Entered: 08/27/2019) |
| 08/28/2019 | 341 | TRANSMITTAL of initial appeal package as to Charles Jackson Friedlander to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 340 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (LSS) (Entered: 08/28/2019) |
| 09/03/2019 | 342 | USCA Appeal Fees received $ 505, receipt number TPA057948 as to Charles Jackson Friedlander re 340 Notice of Appeal (ARC) (Entered: 09/03/2019) |
| 09/03/2019 | | USCA Case Number as to Charles Jackson Friedlander. USCA Number: 19-13347-A for 340 Notice of Appeal filed by Charles Jackson Friedlander. (JNB) (Entered: 09/03/2019) |
| 12/19/2019 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Florida certifies that the record is complete for purposes of this appeal re: 340 Notice of Appeal as to Charles Jackson Friedlander. All documents are imaged and available for the USCA to retrieve electronically. USCA number: 19-13347-AA. (BSN) (Entered: 12/19/2019) |

Order documents from our nationwide document retrieval service.
- OR - Call 1.866.540.8818.

Copyright © 2020 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# Doc. 304

```
 1                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
 2                     TAMPA DIVISION

 3      UNITED STATES OF AMERICA

 4                             CASE NO. 8:08-CR-318-T-27TGW
                               21 JULY 2009
 5           vs.               TAMPA, FLORIDA
                               PAGES 1 - 91
 6                             VOLUME VI

 7      CHARLES JACKSON FRIEDLANDER

 8      _____/

 9           TRANSCRIPT OF SENTENCING PROCEEDINGS
             BEFORE THE HONORABLE JAMES D. WHITTEMORE
10                  UNITED STATES DISTRICT JUDGE

11      APPEARANCES:

12      For the Petitioner:  Amanda C. Kaiser
                             United States Attorney's Office
13                           Suite 3200
                             400 N. Tampa Street
14                           Tampa, Florida 33602

15      For the Defendant:   George E. Tragos
                             Tragos & Sartes, PL
16                           Suite 800
                             601 Cleveland Street
17                           Clearwater, Florida 33755

18                           Peter Anthony Sartes
                             Tragos & Sartes, PL
19                           Suite 800
                             601 Cleveland Street
20                           Clearwater, Florida 33755

21      Court Reporter:      Linda Starr, RPR
                             Official Court Reporter
22                           801 N. Florida Avenue
                             Suite 13B
23                           Tampa, Florida 33602

24       Proceedings recorded and transcribed by
        computer-aided stenography.
25
```

```
 1              (Call to order at 9:58 AM.)

 2              COURTROOM SECURITY OFFICER:  All rise.  This

 3     Honorable Court is in session, The Honorable James

 4     D. Whittemore presiding.

 5              Be seated, please.

 6              THE COURT:  Good morning.  We are here for

 7     sentencing in the matter of United States versus

 8     Charles Friedlander.  Let's get the appearances.

 9     For the government?

10              MS. KAISER:  Amanda Kaiser.  Good morning,

11     Your Honor.

12              THE COURT:  Good morning.  And for the

13     defendant?

14              MR. TRAGOS:  George Tragos and Peter Sartes.

15     Good morning, Your Honor.

16              THE COURT:  Good morning.  I have received and

17     reviewed a presentence investigation report prepared

18     by the United States Probation Office.

19              Mr. Friedlander was charged in a one-count

20     indictment with child enticement in violation of

21     Section 2422(b) of Title 18.  A jury found him

22     guilty of that offense.  He was adjudicated guilty

23     after the verdict was announced.  We are now here to

24     determine sentence.

25              The Court has received and reviewed a brief
```

1    memo from pretrial services, which simply summarized

2    the history of the defendant's pretrial release, his

3    detainment after the first trial, the defendant's

4    sentencing memorandum, which is Docket 283, an

5    earlier pretrial services memo dated June 26 of '09,

6    again, summarizing the conditions of release and

7    compliance until he was detained.

8         The government's notice of -- regarding

9    forfeiture, which is Docket 282, indicating that it

10    would not seek forfeiture of certain specified

11    computer-related matters, camera, looks like a

12    Gateway tower, a Dell computer, some memory -- a

13    memory card, some compact discs, etcetera.

14         I have also received an exhaustive number of

15    letters written on behalf of Mr. Friedlander.  I

16    have read each of them.  Accordingly, Mr. Tragos, I

17    do not expect to hear from these people again,

18    unless they have something new to say.  So please

19    use your judgment in terms of presenting any matters

20    in mitigation; your witnesses, that is.

21         This defendant faces a minimum mandatory ten

22    years in a United States prison.  Some of those

23    letters have talked about sentences that would be in

24    violation of that statute.  I want to make that

25    comment on the record, up front, so that we don't

1    imply -- I know counsel would not, but lay people do

2    not always appreciate the mandatory nature of the

3    statutes.  I don't want to imply indirectly that the

4    Court's considering anything other than, at the

5    minimum, a mandatory minimum sentence, in accordance

6    with the statute.

7         In the addendum, it appears that the

8    government has no unresolved objections to the

9    presentence report or the application of the

10   advisory guidelines.  Is that correct, Ms. Kaiser?

11        MS. KAISER:  Yes, Your Honor.  That's correct.

12        THE COURT:  All right.  There are several

13   objections Mr. Tragos directed to the presentence

14   report's description of the offense conduct, and

15   I'll take them one at a time.  If they do not impact

16   on the sentencing guidelines, please acknowledge

17   that so that we can focus on those that may.  The

18   first is as to paragraph seven.

19        MR. TRAGOS:  Your Honor, we don't believe

20   paragraph seven impacts, and -- and there's no

21   necessity to deal any further with paragraph seven.

22        THE COURT:  All right.  Thank you.  The next

23   objection is directed to paragraph 16.  That's the

24   Port St. Lucie investigation?

25        MR. TRAGOS:  Right, Your Honor.  This is

1    related to other paragraphs, as well, with regards

2    to whether or not the Port St. Lucie investigation

3    should be included in the presentence report as well

4    as within the scoring and, perhaps, that we should

5    deal with that as a broader issue.

6         So if we could move on from there and just

7    leave it in abeyance, Your Honor, until we get to

8    those paragraphs.

9         THE COURT:  All right.  The next objection is

10   directed to paragraph 20.

11        MR. TRAGOS:  Yes, Your Honor.  Paragraph 20

12   deals with a statement within the sentencing

13   guideline, victim impact statement, which says that

14   the defendant's conduct perpetuated a cycle of

15   victimization of children.

16        I believe that there is no evidence, and we

17   would have to ask that that be stricken from the

18   presentence report because in this particular case,

19   Your Honor, we have a situation where there was no

20   child pornography found, where there was no

21   implements of child pornography, where there were no

22   children found that he had victimized, and where the

23   law enforcement officer himself did not believe that

24   the defendant was victimizing children pursuant to

25   the chats.

1          So without any basis for saying that this

2     perpetuated a cycle of victimization of children, I

3     believe that that is improper to include that in the

4     presentence report.

5          THE COURT:  All right.  Ms. Kaiser, your

6     response?

7          MS. KAISER:  Yes, Your Honor.  I believe,

8     given the number of victims that the defendant

9     actually did chat with wanting to abuse in this

10     case, and for the length of time that he engaged in

11     such conduct, I think the way the paragraph is

12     written is accurate.

13          Probation correctly pointed out that, while it

14     was an undercover operation for at least three

15     children that we know about, the defendant did chat

16     with two separate law enforcement officers pretty

17     much at the same time, one of which he believed had

18     two little boys that he was going to abuse, another

19     law enforcement officer that he thought had a little

20     girl that he was going to abuse.

21          And if the court recalls, Corporal Romanosky's

22     testimony was that he had actually spoken to the

23     defendant prior to the investigation that we went to

24     trial on.  He had talked to him a year or so

25     earlier, as well.

1          So given the time and the repeated references

2      that this defendant wanted to sexually abuse

3      children, and his continuing chats trying to arrange

4      that on multiple occasions, I think the way it's

5      described in the presentence report is accurate.

6          THE COURT:  Mr. Tragos, your reply.

7          MR. TRAGOS:  Yes, Your Honor.  The last

8      sentence of the probation officer's addendum says

9      that this -- they are -- that this is a factual

10     determination, that there's a factual determination

11     that he -- that his conduct perpetuates the cycle of

12     victimization of children, and I just don't see

13     where there's any evidence of that.

14         His conversations with the law enforcement

15     officers and, first of all, no children, and the

16     court ruled that there does not have to be an actual

17     child or he doesn't even have to intend to sexually

18     abuse a child to be guilty of this crime.  And,

19     therefore, I don't believe that it's accurate to say

20     that a cycle of victimization of children was

21     present.

22         THE COURT:  This does not impact the

23     guidelines; correct?

24         MR. TRAGOS:  Excuse me?

25         THE COURT:  This does not impact the

1    guidelines?

2        MR. TRAGOS:  No, Your Honor.  But it could

3    impact him in the Bureau of Prisons.

4        THE COURT:  Well, the conviction itself may.

5    But in some respects, the statement is somewhat

6    opinionated.  And I'm not being critical; I'm simply

7    recognizing that it's a statement drawn by the

8    probation officer from the conduct.

9        I see very little difference, however, between

10    the possession of child pornography in a pictorial

11    form or video form as it relates to the

12    victimization of children and perpetuation of that

13    cycle and one who utilizes the internet to approach

14    or access children in the care of those who would be

15    willing to allow them to be abused.

16        So the medium used, whether it be pictorial or

17    video graphic or, in this case, internet chats,

18    e-mails or instant messaging, although different,

19    are all intended and do perpetuate the cycle of

20    child victimization regarding physical and sexual

21    abuse of children.  That cannot be overlooked.

22        So while the statement may be somewhat of an

23    opinion in terms of being drawn from the

24    circumstances, I think it is an accurate opinion and

25    I would draw the same opinion, and do so.  And that

1     is why this offense carries with it a minimum

2     mandatory ten years, notwithstanding that there was

3     not an actual child victim waiting, if you will, to

4     be abused.

5          And counsel's comment -- and I understand it,

6     but for this record and for those who are not

7     lawyers -- that the Court ruled in a certain way,

8     what the Court did was follow Eleventh Circuit law

9     precedent, which I am sworn to do, in making the

10    determination that it was not necessary that an

11    actual child be involved.

12         I will overrule the objection, finding that

13    the paragraph is an appropriate statement because

14    the defendant's conduct did, indeed, perpetuate the

15    cycle of victimization of children.

16         We will now turn to paragraph 24.  There is

17    apparently an objection to the offense level

18    computation.  Mr. Tragos?

19         MR. TRAGOS:  Yes, Your Honor.  If we could, if

20    the court will allow us to deal with those

21    paragraphs that -- where the Court initially said

22    had little or no impact on the guidelines

23    calculations in order to dispose of them quickly and

24    then get to the ones that take more time, or is --

25         THE COURT:  I don't know how much time we're

1    going to take on them, but go right ahead.  It

2    doesn't matter to me in what order.

3          MR. TRAGOS:  Well, I was going to say, Your

4    Honor, that we don't need to deal with six at all.

5          THE COURT:  All right.  That's the objection

6    posed to paragraph 66?

7          MR. TRAGOS:  Yes.

8          THE COURT:  Concerning a description of his

9    residences, that kind of thing?

10         MR. TRAGOS:  Yes, Your Honor.

11         THE COURT:  All right.  Can I mark that as

12   withdrawn, then?

13         MR. TRAGOS:  Yes, Your Honor.

14         THE COURT:  All right.  And then paragraph 73,

15   your objection --

16         MR. TRAGOS:  Yes, Your Honor.  I believe that

17   73, the -- which is paragraph -- right, paragraph

18   73-7 of the addendum is misleading, Your Honor,

19   because I believe that there was more to that

20   paragraph than what was said by the probation

21   officer.  I would like to present to the court

22   Exhibit Number 3.

23         THE COURT:  Which is?

24         MR. TRAGOS:  Which is a letter, Your Honor,

25   the letter that was quoted by the probation officer

```
 1      from Dr. Zeichner, Z-e-i-c-h-n-e-r.

 2            THE COURT:  Any objection, Ms. Kaiser?

 3            MS. KAISER:  No, Your Honor.

 4            THE COURT:  All right.  Let me read it for a

 5      moment.

 6            (Brief pause.)

 7            THE COURT:  All right.

 8            MR. TRAGOS:  If the Court will note in

 9      paragraph two, the third sentence, "He declined my

10      suggestion of antidepressant medication, but did

11      receive 25 milligrams of alprazolam PRN from his

12      internist who treated his diabetes."  That -- when

13      it's quoted in the presentence report, the rest of

14      that sentence is not in there, that he did receive

15      medication from another doctor, even though he

16      declined the medication given to him by this doctor.

17      I just want the Court to note that.  It does not

18      affect the sentencing guidelines.

19            THE COURT:  Would you like this particular

20      exhibit appended to the presentence report?

21            MR. TRAGOS:  Your Honor, I believe -- and I

22      can ask the probation officer, but this is going to

23      be in a packet of his medical records given to the

24      Bureau of Prisons.  Is that correct?

25            THE COURT:  Well, that's a question you
```

1      probably should pose to me.  Let me ask her.

2                MR. TRAGOS:  Oh, okay.

3                THE COURT:  But I assume that any medical

4      records relevant to the defendant should be

5      forwarded.  Typically they are attached to the

6      presentence report.  Probation just doesn't do that

7      on its own.

8                MR. TRAGOS:  Okay.  We have provided --

9                THE COURT:  Do you have any objection to this,

10     is the question.

11               MR. TRAGOS:  No, absolutely not.  But I'm

12     concerned now, because we've provided quite a bit of

13     medical information to the probation officer.  I'm

14     hoping it's attached.

15               THE COURT:  I'll ask probation.  What has been

16     attached or not, Ms. Stafford?

17               PROBATION OFFICER:  At this point there's

18     nothing attached to the presentence report.  The

19     medical records that I received are summarized in

20     the presentence report.  But we'd be happy to attach

21     the full reports to the presentence report before

22     it's forwarded to the Bureau of Prisons.

23               THE COURT:  Is that what you want, Mr. Tragos?

24               MR. TRAGOS:  Yes, Your Honor.

25               THE COURT:  Ms. Kaiser, do you have any

1       objection?

2              MS. KAISER:  No objection, Your Honor.

3              THE COURT:  All right.  Well, that will be

4       fine.  But that's not done unilaterally by counsel.

5       You know that, Mr. Tragos.  Probation doesn't just

6       append to the presentence report whatever the

7       lawyers send them.

8              This report is important because of doctor --

9       I hope I'm pronouncing it correctly -- Zeichner,

10      Z-e-i-c-h-n-e-r, because it does address certain

11      mental health issues which I have been concerned

12      about, and it very well may be relevant to his

13      designation as well as his evaluation.

14             Now, the drug referred to by the doctor,

15      alprazolam, a-l-p-r-a-z-o-l-a-m, I'm not familiar

16      with, although I typically know the A-M endings of

17      these drugs.  I don't want to speculate.  Do we know

18      what it is?

19             MR. TRAGOS:  Xanax.

20             THE COURT:  So it's in the family, then?

21             MR. TRAGOS:  Right.

22             THE COURT:  All right.  So the statement in

23      Paragraph 73 is actually accurate.  But it will be

24      supplemented, then, by Dr. Zeichner's

25      correspondence of February the 7th, 2009, which I

1    will direct be appended to the report.

2         COURTROOM DEPUTY CLERK:  Your Honor, what

3    number was that exhibit, please?

4         THE COURT:  Exhibit 3.

5         COURTROOM DEPUTY CLERK:  Thank you.

6         THE COURT:  All right.  Let's turn back, then,

7    to those aspects of the report which you believe may

8    impact on the guidelines.

9         MR. TRAGOS:  Yes, Your Honor.  Your Honor,

10   these deal with the broad issue of whether or not

11   the law enforcement officers, representing

12   themselves to be an adult, whether that can count

13   as -- in two ways; one, that he was going to entice

14   a child that was under 12 and, two, whether or not

15   we can have multiple counts come out of that because

16   we have two different scenarios.

17        The one with Detective Romanosky, he said he

18   had two children, and the probation officer is

19   counting that as two separate counts because there

20   are two children.  And the third one is the

21   Port St. Lucie case with Detective Spector, and the

22   probation officer is counting that as a third count.

23        First, we would like to present to the Court,

24   if the Court will -- the sentencing guidelines under

25   2G1.3, which is the sentencing guideline we're here

1    on today, when it speaks of a minor, it speaks about

2    an undercover law enforcement officer who

3    represented to a participant that the officer had

4    not attained the age of 18 years.

5         In this case, we do not have an undercover law

6    enforcement officer who represented to

7    Dr. Friedlander that the officer, which would be

8    Detective Romanosky, had not attained the age of 18

9    years.  The sentencing guidelines go specifically to

10   one, singular, the law enforcement officer as the

11   victim.

12        If we don't read it that way, then someone

13   could -- law enforcement could say, I run a school

14   for boys with 50 boys, all under 12, and there would

15   be 50 counts.  And since this is a case that does

16   not require that you --

17        THE COURT:  Are you talking about the specific

18   offense characteristic?

19        MR. TRAGOS:  No, Your Honor.  I'm talking

20   about the broad -- I'm grouping them -- I'm grouping

21   this -- if you look at paragraph four in the

22   addendum, the defendant objects to each victim as

23   representing a separate count because there were no

24   child victims in the case.

25        THE COURT:  Well, I'm going to ask you to look

1       at the presentence report itself and go directly to

2       the applicable guidelines so that I understand

3       exactly what your objection is.

4               MR. TRAGOS:  Okay.

5               THE COURT:  You're proceeding under amendments

6       which are not yet in place.  That's not appropriate.

7               MR. TRAGOS:  No, Your Honor.  Well, it would

8       be appropriate as a variance.  But what I'm saying

9       to the Court is in this particular case, first,

10      we're raising the objection, although I know that I

11      believe the *Murrell* case answered this, but we're

12      raising the objection about an adult law enforcement

13      officer raising the issue of being as an adult

14      saying that they're the parent of the children,

15      whether or not you can commit this crime through an

16      adult.

17              Now, I know *Murrell* has answered that.  But I

18      also raise the issue of whether or not you can do

19      multiple counts because he says he has two children,

20      because you're only dealing with one person.  And

21      the sentencing guideline in the case, 2G1.3, when it

22      says you can use the law enforcement officer as a

23      victim only applies when that law enforcement

24      officer represents themselves to be under the age of

25      18.  That's -- that's in the guideline.  That's the

1        commentary to the guideline.

2              THE COURT:  Well, all right.

3              MR. TRAGOS:  Okay.

4              THE COURT:  Then focus, then, help me out --

5              MR. TRAGOS:  Okay.

6              THE COURT:  Point to what commentary you are

7        referencing.  I'm not questioning it.  I just want

8        to follow you.

9              MR. TRAGOS:  It is -- it is the commentary

10       under 2G1.3, definitions, which is paragraph one of

11       the application notes, under minor, the last

12       sentence, parens C, "an undercover law enforcement

13       officer who represented to a participant that the

14       officer had not attained the age of 18."

15             THE COURT:  Well, you're skipping subparagraph

16       capital B.  Does that not have some play in this?

17             MR. TRAGOS:  Right.  But what I'm talking

18       about is we're not talking about multiple -- the --

19       the probation officer scored this as multiples

20       because he said he had two children.

21             THE COURT:  Correct.

22             MR. TRAGOS:  What I'm saying is that the

23       guidelines were written singularly.  The information

24       does not charge multiple victims, is not multiple

25       counts, and the jury did not find that there were

1    multiple victims or multiple counts in this case

2    because the issue is the inducement and that

3    inducement was through an individual.

4         And if you look at V, it says, "an individual,

5    whether fictitious or not, who a law enforcement

6    officer represented to a participant had attained

7    the age of 18 and could provide for the purpose

8    engaging in sexual" -- it's "an individual."

9         This crime does not -- unless they charge

10   separate counts and the jury found separate counts,

11   you cannot find that because the officer said there

12   were two kids, five kids or six kids that we have

13   six different charges.

14        THE COURT:  So your argument is because the

15   undercover officer represented he had two young boys

16   who he was going to make available to the defendant

17   for whipping and oral sex, that probation -- and

18   under the guidelines, you can't consider those two

19   as two victims?

20        MR. TRAGOS:  Correct.

21        THE COURT:  What's your authority?

22        MR. TRAGOS:  My authority, Your Honor, is that

23   if there were two victims in this case, the jury

24   would have had to find there were two victims,

25   that's number one, under *Booker* and *Fan Fan* and

1      *Apprendi*.

2          Number two, if there were two victims in this

3      case, they had to be charged to put the defendant on

4      notice that there were two victims in this case.

5          THE COURT:  What's your authority for that

6      proposition?

7          MR. TRAGOS:  *Apprendi*, Booker and *Fan Fan*, and

8      that the sentencing guidelines only talk about an

9      individual and the officer as the victim.  If the

10     officer can be the victim, if he, as an undercover

11     officer, can be the victim, there's only one

12     officer.  You can't manipulate the guidelines by

13     saying there are 50 children, 100 children, because

14     there's -- they're only dealing with one officer.

15         And whether it was -- and the fact that this

16     man -- that Dr. Friedlander may have believed there

17     were three, four or five officers, or five children,

18     they would have to prove that.  But there weren't

19     five children, there weren't two children, there was

20     one officer, and this is an individual.

21         And because this crime doesn't require that

22     there are children or -- it doesn't even require

23     that he has -- wants to have sex with children, so

24     it doesn't matter how many children there were.

25         THE COURT:  I understand your argument.  I

```
 1        want to know what your authority is.

 2             MR. TRAGOS:  And I've stated to the Court my

 3        authority.  Also, Your Honor, we would --

 4             THE COURT:  Do you have any case law that

 5        interprets the guidelines in this scenario?

 6             MR. TRAGOS:  No, Your Honor.  But I don't have

 7        it the other way, either.

 8             THE COURT:  All right.

 9             MR. TRAGOS:  And, Your Honor, we also would

10        like to renew our objection, although, again, I know

11        what the ruling is going to be, but to make sure the

12        record is clear that you cannot commit this crime

13        while speaking to an adult and through the adult to

14        the children.

15             THE COURT:  That was the subject of motions

16        and post-trial motions.

17             MR. TRAGOS:  Yes.

18             THE COURT:  This is a sentencing hearing,

19        Mr. Tragos.  We're not going to relitigate this

20        matter.

21             MR. TRAGOS:  Oh, I'm not going to relitigate

22        it, Your Honor.  But I think it's appropriate to

23        renew it, because it's in the sentencing guidelines.

24             THE COURT:  Ms. Kaiser, your response?

25             MS. KAISER:  Yes, Your Honor.  The United
```

1    States interprets and understands Mr. Tragos's

2    argument is really one of sentencing manipulations

3    by the United States regarding the number of

4    victims.  Certainly, the sentencing guidelines

5    themselves do not have to say "minor also includes

6    plural if there's more than one child victim," which

7    is, you know, certainly the case that we have before

8    the Court.

9         There's no question that the jury heard proof

10    that the defendant traveled to have sex with both

11    children that were represented.  So essentially,

12    Mr. Tragos's argument really stems and focuses on

13    sentencing manipulation.

14         I've got a number of cases that I've

15    researched for the Court and for counsel, which will

16    help determine whether or not that argument holds

17    any water, and I assert that it doesn't.

18         Essentially, the first case is *United States*

19    *versus John Andrew Docampo, Jr.*, which is an

20    Eleventh Circuit case from June 15th of this year,

21    of 2009.  And in that case, the Eleventh Circuit

22    stated, "Sentencing factor manipulation occurs when

23    the government's manipulation of a sting operation,

24    even if insufficient to support a due process claim,

25    requires that the manipulation be folded out of the

1        sentencing calculus."

2            And it says, "Sentencing factor manipulation

3        focuses on the government's conduct.  The defendant

4        must establish that the government's conduct is

5        sufficiently reprehensible, and this standard is

6        high.  To bring sting operations within the ambit of

7        sentencing factor manipulation, the government must

8        engage in extraordinary misconduct."

9            And it says, "We have not yet recognized a

10       defense of sentencing factor manipulation or

11       permitted its application to a defendant's sentence,

12       and we do not do so in this appeal."

13           And that's the first case.  So, first, the

14       Eleventh Circuit has never recognized sentencing

15       manipulation.  And, certainly, there's no evidence

16       or suggestion in this case that law enforcement did

17       anything inappropriate.  I've got a copy of that

18       case for the court as well as counsel.

19           The next case, which is even more on point, is

20       *United States of America versus Bohannon*,

21       B-o-h-a-n-n-o-n, 476 F.3d 1246.  That was actually a

22       2422 case in which the defendant simply used the

23       internet to entice a minor for sex.  The defendant

24       in that case argued that it was unfair because the

25       undercover officer had represented the child's age

1    as being 15 years old.  And the defendant in that

2    case argued that somehow that was sentencing

3    manipulation and he shouldn't be held accountable

4    because the government has picked the age of the

5    child in the undercover operation.

6         In that case, the Eleventh Circuit said,

7    "We're likewise unpersuaded by *Bohannon's* argument

8    that the district court erred by enhancing his

9    offense level pursuant to USSG Section 2G2.1(b)(1),

10   because the undercover officer represented Dana's

11   age as 15 years old."

12        It says, "More specifically, Bohannon," the

13   defendant, "asserts that the undercover officer

14   selected the victim's age in the context of a sting

15   operation.  The enhancement, based on the age of the

16   victim, constituted impermissible sentencing

17   manipulation."

18        The Eleventh Circuit, quoting *United States*

19   *versus Williams* at 456 F.3d 1353, Eleventh Circuit

20   2006 stated, "A sentencing factor manipulation claim

21   requires us to consider whether the manipulation

22   inherent in a sting operation, even if

23   insufficiently oppressive to support an entrapment

24   defense or due process claim must sometimes be

25   folded out of the sentencing calculus.  A sentencing

1    factor manipulation claim alleges that a defendant,

2    although predisposed to commit a minor or lesser

3    offense, is entrapped into committing a greater

4    offense subject to a greater punishment."

5         And the court quoted United States versus

6    Sanchez, or referenced it and said, "rejecting such

7    a claim where the government arranged a reverse

8    sting operation in which the defendants agreed to

9    participate in the theft of a large amount of drugs

10   from a home.  In observing that, the fact that the

11   government's fictitious reverse sting operation

12   involved a large quantity of drugs does not amount

13   to the type of manipulative government conduct

14   warranting a downward departure in sentencing."

15        And the court goes on and says, "Pursuant to

16   U.S. Sentencing Guidelines 2G2.1(b)(1), there's a

17   two-level increase to the base offense level if the

18   offense involved a minor who was at least 12 but not

19   yet 16 years old."  The court said, "In this case,

20   the victim was an undercover agent posing as a

21   15-year-old girl in an online chat room.  The

22   commentary to 2G1.3 expressly defines the term

23   'minor,' as including an undercover law enforcement

24   officer who represented to a participant that the

25   officer had not attained the age of 18 years.  The

1    evidence shows that *Bohannon* believed he was

2    interacting with a 15-year-old girl and knew the

3    consequences of engaging in sexual activity with a

4    minor of this age, as he stated numerous times that

5    he would have to be careful not to get caught, given

6    the stiff penalties he faced due to 'Dana's age.'

7    Moreover, the computer also revealed numerous

8    seductive pictures of others."

9        But the court goes on to say, "Simply put,

10   under these circumstances, the government's conduct

11   in choosing an age for Dana was no more manipulative

12   than in any other sting operation, and the district

13   court correctly applied the two-level increase for

14   the fictitious victim's age."  So --

15       THE COURT:  What's the year of that decision?

16       MS. KAISER:  That is 2007.  It's 476 F.3d

17   1246.  And I have a copy for the Court.

18       THE COURT:  Is there any discussion of

19   *Apprendi* in there?

20       MS. KAISER:  No, Your Honor.  Mr. Tragos just

21   references *Apprendi*, but the jury is not required to

22   find every specific sentencing enhancement.  What

23   the jury is required to find is the elements for the

24   offense.  And so *Apprendi* doesn't apply in this

25   case.  This is just a specific offense

1    characteristic.  This is not something that

2    increases the minimum mandatory.

3         There's also the case of *United States versus*

4    *Ciszkowski*, in which the Eleventh Circuit stated

5    that it didn't even recognize any sort of defense of

6    sentencing entrapment.  But if Mr. Tragos's

7    argument, first, is that you can't score for more

8    than one minor because the sentencing guidelines

9    were written in the singular, well, first, the

10   government thinks that that's just not accurate.

11        They don't specifically say you only -- you

12   only count -- you only ever count one minor.  If

13   there's five, that wouldn't make any sense.  It's

14   obviously just written in the singular.  But the

15   court correctly pointed out earlier that Mr. Tragos

16   didn't read subsection (b), which says, "minor means

17   either, A, an individual who had not attained the

18   age of 18 years or, B, an individual, whether

19   fictitious or not, who a law enforcement officer

20   represented to a participant had not attained the

21   age of 18 years, and could be provided for the

22   purposes of engaging in sexually explicit conduct."

23        So certainly in this case, the defendant

24   discussed in detail wanting to engage in sexual

25   activities with both children with Corporal

 1    Romanosky, and discussed tying the children, each of

 2    the children up, mentioned having sex -- oral sex

 3    with both boys.

 4         So it makes no sense not to score him for the

 5    number of victims that he claimed that he wanted to

 6    physically and sexually abuse.  If the Court needs

 7    any -- or further case law about the sentencing

 8    issue, which I think is Mr. Tragos's real argument,

 9    I have additional cases, as well.

10         THE COURT:  Well, on -- for what proposition?

11         MS. KAISER:  For the proposition that there is

12    no break to the defendant because law enforcement

13    came up with a sting operation that involved two

14    children rather than one.

15         THE COURT:  You mean along the lines of

16    *Bohannon* and *Docampo*?

17         MS. KAISER:  Yes, Your Honor.

18         THE COURT:  All right.  I don't need any

19    additional cases.  What year was *Docampo*?

20         MS. KAISER:  2009.  It was June 15th, 2009,

21    Your Honor.

22         THE COURT:  All right.  Let me see copies of

23    *Docampo* and *Bohannon*, please.

24         PROBATION OFFICER:  Your Honor, may I point

25    out something?

```
1              THE COURT:  Not right now.

2              MS. KAISER:  Additionally, Your Honor,

3      under --

4              THE COURT:  Just a moment.  Let me take a look

5      at these cases.

6              MS. KAISER:  Yes, Your Honor.

7              (Brief pause.)

8              THE COURT:  Looks like you gave me two copies

9      of Bohannon.  Maybe that was your copy.  I'm looking

10     at Docampo.  It's stapled together out of order, so

11     what page?  It's a 40-something-page opinion.  Can

12     you point me to the discussion pertinent to the --

13             MS. KAISER:  Page 14, Your Honor.  Starting

14     on -- Page 13 starts the sentencing factor.

15             THE COURT:  All right.  Thank you.  Give me a

16     second.

17             (Brief pause.)

18             THE COURT:  Ms. Kaiser, go ahead.

19             MS. KAISER:  I was also just going to point

20     out, Your Honor, under 2G2.1, if you look above

21     where we had just been reading under the commentary

22     for minors, it says, the special instruction, if the

23     offense involved multiple -- "involved exploitation

24     of more than one minor, Chapter Three, Part D,

25     multiple counts shall be applied as if the
```

1    exploitation of each minor had been contained in the

2    separate count of conviction."  So the guidelines

3    clearly encompass scoring the actual number of

4    victims in a case, and not just limiting it to one.

5         THE COURT:  All right.  Thank you.

6    Mr. Tragos, your response?

7         MS. KAISER:  Your Honor, I think it was 2G --

8    to correct the record, I misspoke.  I think it's

9    2G1.3(d)(1), where it says, "If the offense involved

10   more than one minor, Chapter Three, Part D, multiple

11   counts shall be applied as if the persuasion,

12   enticement, coercion, travel or transportation to

13   engage in a commercial sex act or prohibited sexual

14   conduct of each victim had been contained in the

15   separate count of conviction."

16        I was reading from the wrong guideline, but

17   it's the same -- essentially the same result.  But

18   it directs that if there's more than one minor

19   involved, to use the Chapter Three, Part D multiple

20   count exercise.  And that's a reference to

21   2G1.3(d)(1), which is listed as a special

22   instruction on Page 203 of the guidelines.

23        THE COURT:  All right.  Thank you.

24   Mr. Tragos, your response.

25        MR. TRAGOS:  Yes, Your Honor.  First -- and if

1    the court wanted to hear a response from the

2    government, we still have not dealt with the Port

3    St. Lucie issue, which is a different issue.

4         But with regards to just Romanosky, the only

5    person that was spoken to -- he was not dealing or

6    talking to two minors that he thought were under the

7    age of 18.  He was not talking to minors.  He talked

8    to one person, Detective Romanosky, and that's the

9    only individual.

10        And if you look -- and the reason that we

11   cited the -- the guideline amendment, that, I

12   realize, is an amendment to another guideline, is to

13   show that the -- when a law enforcement officer is

14   involved, that you don't score it directly as a

15   minor; otherwise, you would have law enforcement

16   officers having the -- the wording, I believe in

17   the -- the amendment I don't have, but otherwise it

18   would just be impractical or just impossible to

19   score this when a law enforcement officer is

20   representing themselves to be an adult but you're

21   using them as a minor.

22        You score them as a victim because the

23   guidelines say you do, but not -- the law

24   enforcement officer cannot be a multiple victim.

25        THE COURT:  Well, those are not the facts in

1    this case, as you know.  This undercover agent

2    represented that he had two sons.  He didn't

3    represent himself to be a child.

4           MR. TRAGOS:  But that's exactly why this --

5    this instruction or the court has ruled that it

6    doesn't matter if he's intending to have sex with

7    the children.  It's just the matter of the

8    conversation, his intent to induce.  And that can be

9    done through an individual, this court has ruled,

10   even over our objection, with regards to a law

11   enforcement officer being an adult or being a

12   parent.  So that's why this can only be one.

13          Can I move on to Port St. Lucie, Your Honor?

14          THE COURT:  No.  Let's get this resolved

15   first.

16          MR. TRAGOS:  Okay.

17          THE COURT:  All right.  You are not an

18   advocate, Ms. Stafford, but you can assist the court

19   and the parties by your evaluation of the sentencing

20   guidelines.  What did you want to add?

21          PROBATION OFFICER:  Well, what is -- actually

22   Ms. Kaiser brought up --

23          THE COURT:  The grouping?

24          PROBATION OFFICER:  Yes.  I just wanted to

25   point out that it also says -- part of the special

1    instruction was that, but if the relevant conduct of

2    an offense of conviction includes travel or

3    transportation to engage in a commercial sex act, or

4    prohibited sexual conduct with respect to more than

5    one minor, whether specifically cited --

6         COURT REPORTER:  Please slow down,

7    Ms. Stafford.

8         PROBATION OFFICER:  Oh, I'm sorry.  "If the

9    relevant conduct of an offense of conviction

10   includes travel or transportation to engage in a

11   commercial sex act or prohibited sexual conduct with

12   respect to more than one minor, whether specifically

13   cited in a count of conviction, each such minor

14   shall be treated as if it's a separate count of

15   conviction."

16        So the probation office didn't manipulate the

17   guidelines.  The guidelines specifically instruct us

18   to count each minor as a separate count of

19   conviction, and that they also instruct those counts

20   are not to be grouped -- a grouping exercise for

21   those counts.

22        THE COURT:  All right.  Thank you.

23        PROBATION OFFICER:  It also brings up that if

24   the offense involved more than 10 minors, an upward

25   departure would be warranted when that was --

1    Mr. Tragos pointed out if somebody said they were

2    the headmaster of a school of boys.

3        THE COURT:  The relevant conduct for which

4    this defendant was convicted includes the undercover

5    officer's representation that he had two

6    preadolescent sons who he would make available for

7    the defendant to abuse and engage in inappropriate

8    and prohibited sexual conduct.

9        Under Section 2G1.3(d), if the offense

10   involved more than one minor, which it does in this

11   case, the court is referred to Chapter Three, which

12   shall be applied as if the relevant conduct, that

13   is, the persuasion, enticement, coercion, travel or

14   transportation to engage in prohibited sexual

15   conduct of each victim had been contained in a

16   separate count of conviction.

17       So the guidelines expressly contemplate,

18   contrary to the defendant's argument, multiple

19   victims, even though they're not separate counts for

20   each victim.

21       The two boys in this particular case fall

22   within the definition of minor under application

23   note one, Section 2G1.3.  A minor is defined under

24   that application note, subsection capital B, as "an

25   individual, whether fictitious or not, who a law

1   enforcement officer represented to a participant had

2   not attained the age of 18 and could be provided for

3   the purposes of engaging in sexually explicit

4   conduct."

5       The plain language of this guideline special

6   instruction and the application note, including the

7   definition of minor, results in a consideration of

8   each of these two young boys as a victim.  Probation

9   has correctly applied the guidelines in this regard.

10  And, therefore, with respect to the two boys, the

11  defendant's objection to considering them as two

12  victims is overruled.

13      There is no *Apprendi* issue.  This does not

14  involve an element of the charged offense.  It

15  involves a sentencing enhancement under a

16  discretionary guidelines system, so the objection

17  under *Apprendi* is overruled.

18      This is clearly not a case of sentencing

19  manipulation.  There's no extraordinary misconduct

20  on the part of the undercover detective in this

21  case, as *United States versus Docampo* discusses at

22  Page 14, that is a June 15th, 2009 decision,

23  Eleventh Circuit Number 08-10698.  By analogy, the

24  *Bohannon* decision at 476 F.3d 1246, specifically at

25  Page 1252, confirms that the defendant's objection

1        should be rejected.

2             Where the undercover agent simply presents the

3        alleged child victim to the defendant, whether it be

4        age 15 or whether there were two boys, these are

5        simply representations made to the willing defendant

6        in this case who believed he would be interacting

7        with two preadolescent boys.

8             And as that court noted, the government's

9        conduct in choosing the age of the victim is no

10       different than representing, in this case, that

11       there were two boys as opposed to one.  And it's no

12       more manipulative than any other sting operation.

13       Therefore, the manner in which the guidelines have

14       been applied by probation with respect to these two

15       boys was proper.

16            I think that takes care of the objection to

17       paragraph 24.  You have an objection with respect to

18       the third victim, which begins at page 39.  This is

19       the Port St. Lucie chat with the undercover officer.

20            MR. TRAGOS:  I think the Court may have

21       already said this, but just to make sure the record

22       is clear, the Court has overruled our objection to

23       having the -- the fact that the defendant dealt with

24       an adult as opposed to a child directly in this, the

25       Court already overruled that, I believe; correct?

 1          THE COURT:  Well, I'm not in the custom of

 2   answering counsel's questions.  I said what I said.

 3          MR. TRAGOS:  Well, I'm raising that objection,

 4   as well, Your Honor.

 5          THE COURT:  Under what authority?

 6          MR. TRAGOS:  Your Honor, I have no authority.

 7   The *Murrell* case --

 8          THE COURT:  You're raising an objection that

 9   *Murrell* has explicitly addressed and rejected; are

10   you not?

11          MR. TRAGOS:  Yes, Your Honor.

12          THE COURT:  The objection is overruled.

13          MR. TRAGOS:  All right.  Then, Your Honor,

14   with regards to Port St. Lucie, Detective Spector,

15   there are two issues here.  Number one, an issue of

16   whether or not that was a crime and was relevant

17   conduct to be a crime as scored as a separate count.

18          With regards to the Port St. Lucie, it is

19   required that the prosecutor must present evidence

20   of objective overt acts that would allow a

21   reasonable jury to find that the defendant had taken

22   a substantial step toward persuading, inducing,

23   enticing or coercing a minor to engage in illegal

24   sexual conduct.

25          A substantial step must be something more than

 1    mere preparation.  It must be a necessary

 2    consummation of the crime, be of a nature that a

 3    reasonable observer, viewing it in the context, can

 4    conclude beyond a reasonable doubt that it was

 5    undertaken in accordance with the design to violate

 6    the statute.

 7          In this case, all we have is conversation.

 8    And the mere fact of having conversation has been

 9    raised as to whether or not that is or is not a

10    crime in --

11          THE COURT:  Isn't your argument --

12          MR. TRAGOS:  Yes.

13          THE COURT:  -- really that this was not part

14    of the charged offense?

15          MR. TRAGOS:  Well, it's not part of the

16    charged offense and, secondly, it is not an offense.

17    What happened in Port St. Lucie is not an offense.

18    There was no substantial step.  There was no overt

19    act.  It was merely conversation.  And the courts

20    have questioned whether mere conversation can be a

21    violation of this statute.

22          THE COURT:  You then alternatively or in

23    addition contend that it's not part of the relevant

24    conduct under 1B1.3?

25          MR. TRAGOS:  Yes, Your Honor.

```
 1            THE COURT:  Any cases you'd like me to

 2    consider before I give Ms. Kaiser a chance

 3    to respond?

 4            MR. TRAGOS:  Your Honor, I believe they're

 5    detailed in the memorandum that was supplied to the

 6    Court.  Give me one second.  United States versus

 7    Owen, 228 F.3d 637.

 8            THE COURT:  What page are you on in your

 9    memorandum?

10            MR. TRAGOS:  I thought that was in the

11    memorandum, Your Honor, either that or one of the

12    motions.  Hold on one second, please, Your Honor,

13    give me a moment.

14            (Brief pause.)

15            MR. TRAGOS:  Your Honor, that was not in the

16    memorandum.  That was in the -- may I approach, Your

17    Honor?

18            THE COURT:  Approach for what?

19            MR. TRAGOS:  To provide you with a copy of the

20    case.

21            THE COURT:  All right.  It's not cited,

22    though?

23            MR. TRAGOS:  No, it is not cited.

24            THE COURT:  All right.  Does Ms. Kaiser have a

25    copy?
```

1          MR. TRAGOS:  That's the only copy that I have.

2          THE COURT:  This has to do with a substantial

3    step discussion?

4          MR. TRAGOS:  Yes, sir.

5          THE COURT:  And it's a Sixth Circuit case.

6    Hand that to Ms. Kaiser.  Let her take a look at

7    that, please.  Thank you.

8          COURTROOM SECURITY OFFICER:  Yes, sir.

9          THE COURT:  So just to distill this down to

10   what we have is conduct on the part of the defendant

11   that was not charged or presented to the jury, which

12   probation has recommended to be considered as part

13   of the relevant conduct; correct?

14         MR. TRAGOS:  Yes.

15         THE COURT:  And you object to that on the

16   basis that, number one, it wasn't a crime; number

17   two, it's not part of the relevant conduct --

18         MR. TRAGOS:  Right.

19         THE COURT:  -- for the charged offense?

20         MR. TRAGOS:  Right.  That exact language, Your

21   Honor, is in the *Murrell* case, as well, from the

22   Eleventh Circuit, that there must be a substantial

23   step toward the commission of the offense.

24         THE COURT:  All right.  Ms. Kaiser, your

25   response?

1           MS. KAISER:  Your Honor, in this case, the

2    defendant actually did take a substantial step.  The

3    Court may recall the testimony of Neil Spector at

4    the first trial of this defendant.  But the

5    defendant in this case actually had sent his picture

6    which he specifically asked Detective Spector,

7    believing he was the father of this 11-year-old

8    little girl, asked him to show the child the

9    defendant's picture.

10          So the defendant sent his picture.  I've got a

11   copy of that picture that the defendant had sent to

12   Detective Spector, believing he was the father, on

13   Wednesday, February 20th of 2008.  It's marked as

14   Government's Exhibit 3 to the sentencing, and I've

15   got a copy for counsel, as well.

16          So the defendant in this case went beyond

17   merely chatting, and took affirmative steps to try

18   to convince Detective Spector, who, as we know, was

19   posing as the father of the little girl, to allow

20   him to have a -- allow the defendant to have sexual

21   relations with his young daughter.

22          So he repeatedly in his chats with

23   Detective Spector asked him, did you show the child

24   my picture?  Also, the defendant engaged in phone

25   conversations with Detective Spector in which he

1    also discussed wanting to engage in sex with the

2    child, and they were very explicit conversations

3    about sexual intercourse with the little girl,

4    whether or not the child could accommodate the

5    defendant's large sexual appendage and

6    what-have-you.

7        So the defendant did much more than just

8    communicating online -- than just communicating with

9    the detective online.  He actually took a number of

10   substantial steps to try to make that meeting take

11   place.

12       In terms of the timing, certainly it is

13   relevant conduct under 1B1.3.  The defendant

14   initially spoke to Corporal Romanosky, as we know,

15   back in July and August of 2005.  And then Corporal

16   Romanosky began speaking to the defendant online

17   again between June -- beginning on or about June

18   16th of 2008 up until July 21st, 2008, when the

19   defendant was arrested.

20       Detective Spector was talking to the defendant

21   at the same exact time.  Detective Spector was

22   chatting online with the defendant from

23   approximately February 12th of 2008 to June 25th,

24   2008.  And I believe the testimony was that Corporal

25   Romanosky and Detective Spector talked to each other

1    at a training session and realized they were both

2    working the same undercover operation involving the

3    same defendant -- working separate investigations,

4    excuse me, separate investigations involving the

5    same defendant.  And Detective Spector ceased in his

6    investigation because Corporal Romanosky was already

7    engaged in his investigation.

8        So, certainly, the timing of this defendant's

9    conduct is relevant and should be scored and is

10   appropriately scored by probation under 1B1.3.

11   Thank you.

12       THE COURT:  Under what subsection are you

13   relying?

14       MS. KAISER:  1B1.3(a)(2), all acts and

15   omissions committed, aided, abetted, counseled,

16   commanded, induced, procured or wilfully caused by

17   the defendant.  So the government's position would

18   be that that as well as all harms that resulted in

19   the acts and omissions specified in subsections

20   (a)(1) and (a)(2), and all harm that was the object

21   of such acts and omissions under 1B1.3(a)(3) and

22   (a)(4), as well.

23       And, actually, (a)(2) applies.  The only

24   subsection that apparently doesn't apply is the ones

25   that were talking -- address joint undertaken

1     criminal activity.  But it appears that 1B1.3

2     applies and addresses all harms caused by this

3     defendant.  And, certainly, taking a number of

4     substantial steps to have sex with a little girl

5     would qualify under any of these subsections, with

6     the exception of (a)(1)(B), which addresses

7     conspiracies.

8          The guidelines address the -- under relevant

9     conduct, all the harm that resulted from his acts

10    and omissions and all the harm that was the object

11    of it should be counted.  Certainly, if he had

12    succeeded in meeting with Neil Spector, he would

13    have had a similar case, he would have been arrested

14    for that, as well.

15         I'd also like to address the defendant's

16    opinion when you're finished reading it, if I may.

17         THE COURT:  All right.  Give me a moment,

18    please.

19         (Brief pause.)

20         THE COURT:  What is your best authority,

21    Ms. Kaiser, for including the uncharged conduct,

22    assuming that it constituted a violation of 2422 in

23    the calculation of the guidelines?  And I know

24    there's case law historically that has approved of

25    considering conduct for which a defendant is

1    acquitted.  We're now dealing with conduct for which

2    he's never been charged.

3         MS. KAISER:  The language of 1B1.3 does not

4    address conduct for which a defendant's been

5    convicted.  It just says conduct.  And in this

6    case --

7         THE COURT:  Well, it says conduct that

8    occurred during the commission of the offense of

9    conviction.

10         MS. KAISER:  Correct.  And that's why the

11    dates are important as to when this defendant

12    was chatting --

13         THE COURT:  So if a defendant robs two banks

14    and the government finds out he robbed a third in

15    between the other two, that can be considered as

16    relevant conduct?

17         MS. KAISER:  Yes.  Yes, it can, and it has.

18    And I've had that situation come up.  I've had

19    defendants who've only entered a plea to one or two

20    bank robberies but are scored for all the bank

21    robberies.

22         So the guidelines direct that all the criminal

23    conduct be taken into consideration and scored.

24    I've had that situation come up.

25         THE COURT:  Well, looking specifically, excuse

1    me, at 1B1.3(a)(2), that provision references solely

2    with respect to offenses of a character for which

3    3D1.2(d) would require grouping.  We don't have that

4    situation here; do we?  We have a grouping under

5    3D1.4, and perhaps there's not a distinction between

6    the two.  3D1.2 references groups of closely related

7    counts.  Clearly, the plain language of that

8    provision contemplates a count in an information or

9    indictment.

10    MS. KAISER:  Correct.  But subsection three

11    does not speak with respect to the counts.  It just

12    talks about all harm.

13    THE COURT:  Well -- and that's my point.  I'm

14    trying to narrow this down to those provisions which

15    may be applicable.  It seems to me that a plain

16    reading of subsection (a)(2) does not apply, since

17    this is not a grouping under 3D1.2(d).

18    MS. KAISER:  Yes.

19    THE COURT:  So you're relying on a more

20    generalized description of harm or conduct by this

21    defendant, although it was not charged in a separate

22    count?

23    MS. KAISER:  Correct.

24    THE COURT:  No particular cases on point, that

25    you're aware of?

```
 1              MS. KAISER:  No, Your Honor.

 2              THE COURT:  Mr. Tragos, your response.

 3              MR. TRAGOS:  Your Honor, I would like to read

 4      a portion of the Murrell case which cites the Bailey

 5      case from the Sixth Circuit.  And what it says is,

 6      of course, we need a substantial step strongly

 7      corroborating the defendant's intent.  But the key

 8      phrase is, we need not reach the question whether

 9      communication via a means of interstate commerce

10      without more is sufficient to sustain a conviction

11      for attempt under 22 -- excuse me -- under 2422.

12      There is a question.  You can just --

13              THE COURT:  Well, finish, because Murrell

14      engaged in objective --

15              MR. TRAGOS:  Right.

16              THE COURT:  -- acts in addition to his

17      communications with Detective Spector.

18              MR. TRAGOS:  Right.  And in this case, we

19      don't have that with regards to Spector.

20              THE COURT:  You don't think the sending of the

21      photograph --

22              MR. TRAGOS:  No.

23              THE COURT:  -- is an objective act in addition

24      to his chats, telephone conversations?

25              MR. TRAGOS:  If you look at -- if you look at
```

1    *Bailey* and *Murrell* and what they interpret to be

2    substantial acts, you know, sending a picture over

3    interstate -- over a means of communication,

4    interstate means of communication, sending a mere

5    picture, a clothed picture, nothing lewd or anything

6    wrong with the picture, that is not something that

7    is a substantial step toward completing the crime.

8         THE COURT:  I don't know.  If the defendant

9    sends a picture of himself to an undercover

10   detective, a picture which would clearly enable the

11   undercover detective to identify him, including a

12   partial tag and perhaps even the make and model of

13   the vehicle, you don't think that's a substantial

14   step?

15        MR. TRAGOS:  The officer asked for that

16   information.

17        THE COURT:  What difference does that make?

18        MR. TRAGOS:  Well, certainly, because he

19   didn't send it voluntarily on his own in order to

20   pursue the crime.  The officer says -- the officer

21   asked for him to send him a picture.

22        No.  I don't think it's a substantial step

23   because there was never a meeting, there was never

24   even a -- they didn't arrange for a meeting.

25   They -- every time they tried to arrange for a

1    meeting, the defendant -- it, you know, always fell

2    through because there was no meeting.  There was no

3    step.  They didn't actually do anything.  It wasn't

4    like the crime that we have charged here today that

5    he was convicted of where we have this substantial

6    step.

7         Plus, looking back in -- on Spector, it was a

8    girl, not a boy.  There was no whipping or violence

9    in Spector's case whatsoever.  There were no belts,

10   there was no pain, there was no punishment, as

11   alleged in this case.

12        THE COURT:  There was improper sexual conduct

13   discussed, however; was there not?

14        MR. TRAGOS:  Yes.

15        THE COURT:  Well, this particular victim, if

16   you will, as described by probation was, number one,

17   not charged in the indictment.  Therefore, this is

18   not a separate count that we're talking about, but

19   uncharged conduct that was not presented to the jury

20   the second -- during the second trial.

21        During the first trial, there was some

22   evidence.  Detective Spector testified, as I recall,

23   described the incident.  I disallowed any reference

24   to the mental condition of the child, but, clearly,

25   there was evidence presented in rebuttal to the

1    defendant's testimony confirming that he engaged in

2    the conduct that is described in the presentence

3    report with respect to this Port St. Lucie

4    undercover detective.

5         I have to acknowledge that I have some

6    concerns about including relevant conduct behavior

7    on the part of a defendant which has not been proven

8    beyond a reasonable doubt, particularly if it

9    involves a separate, uncharged offense.  There very

10   well could be substantial due process issues in that

11   regard; although, historically, the use of acquitted

12   conduct has been approved by the courts.

13        The cases that have been cited to me this

14   morning do not address specifically whether

15   uncharged conduct can be included in the

16   determination of the appropriate guidelines.

17   *Murrell* says what it says.  It didn't reach that

18   question, if, in fact, the defendant in the

19   Port St. Lucie matter did not engage in an objective

20   act or took a substantial step.

21        I'm going to go ahead and make some findings

22   and determinations.  It would be easier, Ms. Kaiser,

23   just to sustain the objection.  I don't think as a

24   practical matter it's going to make any difference.

25   It does impact the guidelines, but overall under

1    3553(a), I certainly can consider it.

2        So we are talking strictly about the proper

3    application of the United States Sentencing

4    Guidelines.  And the question is whether this

5    uncharged conduct with respect to the undercover

6    detective in Port St. Lucie should be considered and

7    grouped as relevant conduct with the two young boys.

8        That takes us, then, to the basic definition

9    of what constitutes relevant conduct under 1B1.3.

10   Relevant conduct is determined on the basis of, in

11   this particular instance, under (a)(1)(A), "all acts

12   and omissions committed by the defendant that

13   occurred during the commission of the offense of

14   conviction in preparation for that offense or in the

15   course of attempting to avoid detection or

16   responsibility for that offense."

17       An argument could be made that, because this

18   particular conduct did not relate to the offense of

19   conviction, it should not be considered.  But this

20   conduct with respect to Port St. Lucie occurred

21   during the commission of the offense of conviction.

22   The time frames described by Ms. Kaiser essentially

23   overlap the defendant's discussion with

24   Detective Spector, occurred between February and

25   June of -- the end of June of 2008, and his

1    discussions with Detective Romanosky occurred in

2    that May, June, July timeframe of the same year.

3         Therefore, it does fall within the description

4    of conduct that occurred during the commission of

5    the offense of conviction.  Likewise, it is

6    considered within subsection (a)(3) to be, quote,

7    "all harm that results from the act and omissions

8    specified in subsection (a)(1) and all harm that was

9    the object of such acts and omissions."

10        It is, therefore, relevant conduct, properly

11   considered and properly grouped under 3D1.4.  This

12   determination has significance to the application of

13   the guidelines because if this conduct was not

14   considered, there would only be a two-level

15   adjustment under 3D1.4.  But because this would be a

16   third unit, there is a three-level adjustment under

17   3D1.4.  That is the relevant impact of considering

18   this conduct with respect to the guidelines.

19        I do find, based on the testimony that was

20   presented to the jury in the first trial over which

21   I presided, that the defendant did take a

22   substantial step and commit an objective act in

23   addition to his internet and telephone

24   communications with Detective Spector.  The sending

25   of that photograph, which plainly depicts the

1    defendant, a partial automobile tag and a vehicle,

2    in my mind, constitutes a substantial step because

3    he could, thereby, be identified, and it certainly

4    is and was intended to allow the undercover

5    detective to familiarize the defendant with his

6    young daughter.  And as I recall, there was specific

7    discussion about putting the daughter at ease so

8    that she would be familiar with the defendant.  Am I

9    correct, Ms. Kaiser?  By looking at a picture of

10   him, in other words?

11        MS. KAISER:  I believe so.  I believe you're

12   correct, Your Honor.

13        THE COURT:  I'm certainly paraphrasing, but

14   that is my recollection.  So the objections are

15   overruled.  If I am in error in considering this

16   third victim, then, the difference in the guidelines

17   would be that one level enhancement under 3D1.4.

18        I don't know if it would do any good,

19   Ms. Stafford, but if you'll make a note and

20   calculate the guidelines without that additional

21   level, and that way I can have the record very

22   clear.

23        PROBATION OFFICER:  I have that.

24        THE COURT:  All right.  When I get to that

25   point, we'll recite them as an alternative.

```
 1              Mr. Tragos, does that address all of the

 2     objections that could implicate the guidelines?

 3              MR. TRAGOS:  Yes, Your Honor.  Just to be

 4     specific, the Court is then --

 5              THE COURT:  I've done what I've done.

 6              MR. TRAGOS:  Well --

 7              THE COURT:  I want to move on.  Now, what

 8     other objections do you have?

 9              MR. TRAGOS:  That was paragraph five, Your

10     Honor.  And I just wanted to make it clear that five

11     was the one that we were considering.  The -- I have

12     no other objections.

13              THE COURT:  You mean paragraph five in the

14     addendum?

15              MR. TRAGOS:  Yes, Your Honor.

16              THE COURT:  Yes, sir.

17              MR. TRAGOS:  I just want to make sure the

18     record will reflect that.

19              THE COURT:  I think that addressed all of the

20     enumerated objections in the addendum, one through

21     seven; correct?

22              MR. TRAGOS:  Your Honor, since the Court

23     considered the testimony of Detective Spector in

24     that decision, would the Court order that that

25     testimony be made part of the record?
```

1          THE COURT:  No.  You can transcribe it and

2     make it a part of the record, if you choose.

3          MR. TRAGOS:  Okay.

4          THE COURT:  As far as I'm concerned, it's part

5     of the record.  There was a transcription -- I don't

6     know if it's transcribed, but it was testimony

7     before the Court, it can be transcribed.

8          Are there any other objections to the

9     application of the advisory guidelines?

10         MR. TRAGOS:  No, Your Honor.

11         THE COURT:  Let me, then, based on the jury's

12    verdict, the undisputed facts and those facts that I

13    have resolved here today, determine the advisory

14    guidelines as follows:  We have an offense level of

15    41, criminal history category Roman Numeral I, that

16    results in an advisory range of 324 months to 405

17    months in prison, supervised release of five years

18    to life, a fine range of $25,000 to $250,000 and a

19    100-dollar special assessment.

20         I would also, alternatively, make a finding

21    that, if the Port St. Lucie conduct is not

22    considered to be relevant conduct, we would then

23    have a total offense level of 40?

24         PROBATION OFFICER:  Yes, Your Honor.

25         THE COURT:  Criminal history category Roman

1    Numeral I, which would result in a guideline range

2    of 292 to 365 months; supervised release would

3    remain the same, five years to life?

4            PROBATION OFFICER:  Yes, Your Honor.

5            THE COURT:  Does the fine range change?

6            PROBATION OFFICER:  No.  It stays the same.

7            THE COURT:  Twenty-five thousand to 250,000,

8    and then a one-hundred dollar special assessment.

9    So the record is very clear that the alternative

10   application of the advisory guidelines is simply a

11   recitation of offense level 40 as opposed to 41.

12           All right.  Under Section 3553 (a),

13   Mr. Tragos, the Court can consider, in addition to

14   the advisory guidelines, the enumerated sentencing

15   factors.  Now would be the appropriate time to

16   address those as well as any matters in mitigation.

17           MR. TRAGOS:  Okay.  Your Honor, if the Court

18   please, I would make a request -- has the Court

19   ruled on the motion for new trial?

20           THE COURT:  I'm certain that I did.

21   Ms. Kaiser?

22           MS. KAISER:  I thought the Court did.

23           THE COURT:  April 20th, order denying motion

24   for new trial.  April 29th, order denying renewed

25   motion for judgment of acquittal.  Those are Dockets

1       276 and 278.

2               MR. TRAGOS:  Okay.

3               THE COURT:  Yes, sir.

4               MR. TRAGOS:  Okay.  Your Honor, we would at

5       this time present certain matters in mitigation to

6       the Court.

7               THE COURT:  Specifically, what do you intend

8       to present?

9               MR. TRAGOS:  Your Honor, we have Exhibit 2.

10              THE COURT:  All right.  Letter from

11      Dr. Berlin?

12              MR. TRAGOS:  Yes, sir.

13              THE COURT:  Any objection, Ms. Kaiser?

14              MS. KAISER:  No, Your Honor.

15              THE COURT:  All right.

16              MR. TRAGOS:  The Court has seen this.

17              THE COURT:  Yes, sir.  Let me just review it

18      to refresh my memory.

19              MR. TRAGOS:  Okay.

20              THE COURT:  It's been awhile since I read

21      this.  This is the November 9th, 2008 correspondence

22      to Mr. Tragos by Dr. Berlin.

23              (Brief pause.)

24              MR. TRAGOS:  I apologize for interrupting the

25      Court.  Could the defendant use the facilities while

1       the Court is reading that?

2           THE COURT:  All right.  I'll ask the deputy to

3       assist the defendant.

4           (Brief pause.)

5           THE COURT:  All right.  Let the record reflect

6       Dr. Friedlander is back in the courtroom.  All

7       right.  Go ahead, Mr. Tragos.

8           MR. TRAGOS:  Your Honor, we would like to make

9       some presentations to the Court in addition to

10      Dr. Berlin's letter.  I would like to have

11      Mr. Singer speak to the Court.

12          THE COURT:  All right.  I'm going to ask you,

13      how many witnesses do you expect to present?

14          MR. TRAGOS:  Five altogether.  And I've

15      told --

16          THE COURT:  Pick your best three.  I've read

17      over 40 letters.  So I want you to zero in on the

18      important matters in my sentencing determination.

19      And if they have previously corresponded with the

20      Court, I expect you to let me know that so that I

21      can turn to their letter.

22          MR. TRAGOS:  Mr. Singer has, Your Honor.

23          COURTROOM DEPUTY CLERK:  Please state your

24      name and spell your last name for the record.

25          DR. SINGER:  Your Honor, I am pleased to

1      appear before the Court.

2           THE COURT:  State your name, please, and spell

3      your last name for the record.

4           DR. SINGER:  My name is Ira Singer,

5      S-i-n-g-e-r.

6           THE COURT:  All right.  Thank you, sir.  Go

7      right ahead.

8           DR. SINGER:  And I've known Charles Jackson

9      Friedlander since 1959, when we first met in

10     Washington, DC.  He -- I was on the Georgetown

11     Faculty of Medicine and he was the owner and

12     operator of a small men's shop.  At the time --

13          THE COURT:  I'm sorry.  Meaning a clothing

14     store?

15          DR. SINGER:  A clothing store.

16          THE COURT:  Okay.  Thank you.

17          DR. SINGER:  At the time we met, I found him

18     to be very bright, to be amusing, and to be highly

19     intelligent and to have an insatiable curiosity

20     about people and events.  Our friendship consisted

21     of meeting occasionally for dinner or so forth.  And

22     it was an escape for me -- for me from the academic

23     atmosphere.

24          And I believe I served as a sounding board for

25     the many interesting stories that he had to tell

1    about his adventures in finding lost lost --

2    long-lost relatives all over the world that had

3    become a very objective thing with him.

4          I left Washington in 1965.  And I continued to

5    return annually to lecture to some of my old medical

6    students and to new medical students at Georgetown

7    University.  From that time on we kept in contact,

8    mostly by telephone and by occasional visits, either

9    Dr. Friedlander to Chicago or I to Washington.

10          Subsequently, it became more and more

11    difficult to -- to keep our contacts up because I

12    was involved in efforts in Vietnam and with a

13    project that we had at the American Medical

14    Association on smoking and health.  In any event, we

15    managed to keep in contact usually by telephone and

16    sending birthday cards to each other on our mutual

17    birthday.

18          I have always found Charles Friedlander to be

19    a compassionate, very kindly human being.  And I

20    guess the one example that I can give of this is

21    that in 2007, he was in Chicago to visit friends or

22    relatives, and he stopped in at lunchtime to see me.

23          At that point, I had been trying to help out a

24    young man who -- not so young, 38, who had worked

25    for an accountant in an accounting firm, and perhaps

1       foolishly became very loyal to his employer.  His

2       employer had -- had started out by trying to enter

3       the priesthood.  He had given that up and gone into

4       accounting.  He claimed to be a CPA; but as it

5       turned out, he was not.

6              In any event, it turned out that he was

7       addicted to gambling and practically lost everything

8       that anybody he came in contact with and who

9       believed him -- I was one -- did and so he

10      bankrupted everything.  This young man that I spoke

11      about who had worked with him and for him tried to

12      help him out to keep him out of jail, and wound up

13      being indigent because of that.

14             Dr. Friedlander heard about this and

15      volunteered, because of his knowledge of the social

16      system, to try to help the young man.  He -- he

17      spent a lot of time speaking with people in DuPage

18      County of the Chicago area, it's one of the Western

19      suburbs, and calling them and trying to help this

20      man out.

21             Unfortunately, after this fellow had gone

22      through seizures and spent about four -- this is a

23      sad story -- about four or five weeks in the

24      hospital, he refused to believe that he was disabled

25      in any way; although, he had been treated very

1    substantially.  And so all of Dr. Friedlander's

2    efforts came to naught.  And his -- his efforts were

3    singular and very extensive.

4         And I know he spends a lot of time on the

5    telephone talking to officials in DuPage County, but

6    nothing has come of it, and the person involved is

7    still indigent, still refuses to believe that he is

8    incapacitated, and so matters stand that way now.

9         MR. TRAGOS:  Mr. Singer, can I ask you a

10   question?

11        DR. SINGER:  Yes.

12        MR. TRAGOS:  Have you ever seen

13   Dr. Friedlander doing anything inappropriate with

14   children?

15        DR. SINGER:  I've never seen him in contact

16   with children.

17        MR. TRAGOS:  Okay.  And have you ever seen him

18   have any tendencies towards violence?

19        DR. SINGER:  No.  Absolutely not.

20        MR. TRAGOS:  Okay.  That's all we have for

21   Dr. Singer, Your Honor.

22        THE COURT:  Thank you, Dr. Singer.  I did get

23   your letter.  I read it very carefully and I

24   appreciate it.  I'm sure Mr. Friedlander does, as

25   well.

1          DR. SINGER:  Thank you, Your Honor.

2          MR. TRAGOS:  Linda Kaufman.

3          COURTROOM DEPUTY CLERK:  Please state your

4     name and spell your last name for the record.

5          MS. KAUFMAN:  Linda Kaufman, K-a-u-f-m-a-n.

6     Your Honor, my name is Linda Kaufman.  I stand

7     before you today as an Episcopal priest and a

8     director of a nonprofit mental health program in

9     Washington, DC.  I'm here to ask that you use your

10    discretion to exercise leniency with Charles

11    Friedlander in his sentencing.

12         I met Dr. Friedlander when I was a freshman in

13    high school in 1965.  He was a spectacular French

14    teacher who has stayed a friend for 45 years.  In

15    the years since I graduated from high school in

16    1969, Dr. Friedlander has played many roles in my

17    life.

18         When I was a sophomore in college, I took an

19    overdose of pills.  My parents could not talk with

20    me about what happened.  When I came home, I went to

21    Chuck Friedlander to talk about things.  He helped

22    me put my life back together.  I would honestly say

23    that he saved my life.

24         Many times in my life I have relied on him

25    when I really didn't know where else to turn.  He

1   was always there for me when I asked for advice or

2   wisdom or gossip.  I could tell him anything.

3        I am here today as a character reference for

4   Charles Jackson Friedlander.  I have depended on him

5   as a friend, and many times over the years have gone

6   to him for counsel in raising my son.  My son is

7   adopted and has many challenges.  I profited greatly

8   from Dr. Friedlander's counsel.  He's always been

9   gracious, helpful and professional.  I have never

10   experienced even the slightest hint of impropriety

11   in my relationship with him.

12        Now Dr. Friedlander is an old man.  I don't

13   know what was going on with him when he responded to

14   an e-mail invitation, but I do know this.  He has

15   helped me and many others over the years.  I'm

16   hopeful you will grant him leniency in your

17   sentencing today.  Please give him the minimum

18   sentence and give him a chance to do a little more

19   good in the world.  Thank you for taking time to

20   listen to me.

21        THE COURT:  Thank you.  And I also received

22   your letter and read it attentively.

23        MR. TRAGOS:  Mr. Hughes.

24        COURTROOM DEPUTY CLERK:  Please state your

25   name and spell your last name for the record.

1          MR. HUGHES:  William Hughes, H-u-g-h-e-s.

2     Your Honor, my name is William Hughes.  I live in

3     Wilton, Connecticut.  I'm the executive director at

4     UBS Investment Bank where I'm responsible for the

5     governance of the firm's strategic investments.

6          Charles has been a family friend since the

7     seventies.  My childhood friend's father was his

8     roommate in college.  I've had a personal

9     relationship with Charles since, I guess, for the

10    last 25 years.  A couple of anecdotes highlight, I

11    think, the impact he's had on my life.

12         Charles offered a lot of relationship advice

13    to me as I was dating, and has met both of my -- I

14    guess the women I dated most seriously.  The first

15    one, he actually had very strong opinions about her

16    and had no issues talking to my -- talking to me and

17    to my family directly about that, suggesting that I

18    break up with her.  I actually did that.

19         The second one he adored, as did I, and I

20    actually married her in 2000, and I now have three

21    children.  Charles participated in our wedding.  He

22    is my son's godfather, and he's basically like an

23    uncle to me.  Whereas, my parents have been very

24    stoic, he's always been someone I could turn to and

25    speak to on any occasion, and he was always a phone

1    call away.

2         While most of our contact has been over the

3    telephone over the last couple of years, we tend to

4    see him usually in his visits north since we live in

5    Connecticut, or when I bring the family to DC or

6    Florida.  Our visits these days are short because he

7    really -- I'm not sure he's had a lot of interest in

8    the kids, so we tend to keep those visits short or

9    we get a baby-sitter.

10        My sister was in a near fatal car accident

11   about six, seven years ago in DC over the New Year's

12   holiday.  My family had been out of town, and I

13   don't live in the DC area, so she was airlifted to a

14   trauma center, almost lost her life.  And when I

15   heard the news, I made a phone call to Charles since

16   he was the only one we knew in the area.

17        Charles immediately contacted a number of

18   colleagues in various professions to make sure that

19   she had the best possible care.  And he stuck on and

20   checked in on her for a number of years after that.

21        I'm a better parent, friend and husband

22   because of what Charles has done for me in my life.

23   So I ask for whatever leniency you can offer in the

24   matter of this case.  Thank you very much.

25        MR. TRAGOS:  Have you ever seen him do

1    anything inappropriate with children?

2              MR. HUGHES:  Absolutely not.

3              MR. TRAGOS:  Do you trust your children with

4    him?

5              MR. HUGHES:  Absolutely.

6              MR. TRAGOS:  Have you ever seen him to have

7    any kind of violent tendency?

8              MR. HUGHES:  None whatsoever.

9              MR. TRAGOS:  That's all I have, Your Honor.

10             THE COURT:  All right.  Thank you, Mr. Hughes.

11   I also received your letter and read it very

12   carefully.

13             If you'd like to identify those who are here,

14   Mr. Tragos, I think that might be appropriate.  And

15   if they've written a letter, I would like you just

16   to confirm that.

17             MR. KAUFMAN:  I'm David Kaufman, Charles's

18   nephew.

19             THE COURT:  I remember your letter.  Thank

20   you, sir.

21             MR. PAUL KAUFMAN:  I'm Paul Kaufman, Charles's

22   brother-in-law.

23             THE COURT:  Your letter, as well.  Thank you,

24   sir.

25             MR. STEINMART:  Your Honor, I'm William

1      Steinmart.  I'm Charles's cousin.

2           THE COURT:  Did you write?

3           MR. STEINMART:  Yeah, I did.

4           THE COURT:  I thought you did and I didn't

5      want to misspeak.  Thank you, sir.

6           MR. HAYDEN:  William Hayden, a friend of

7      Charles.

8           THE COURT:  I remember, Mr. Hayden, you

9      testified, did you not, in the first trial?

10          MR. HAYDEN:  Yes, sir, I did.

11          THE COURT:  Yes, sir.  Thank you.

12          MR. STEPHEN KAUFMAN:  I'm Stephen Kaufman.

13     I'm Charles's nephew, as well.

14          THE COURT:  I remember your letter.  Thank

15     you.

16          MR. TRAGOS:  Your Honor, that's all we --

17     that's all the presentation that we have.

18          THE COURT:  All right.  Mr. Friedlander,

19     anything you'd like to say?

20          THE DEFENDANT:  No.  Thank you, sir.

21          THE COURT:  All right.  Mr. Tragos?

22          MR. TRAGOS:  All right.  Your Honor, does the

23     Court wish me to make my final summation before the

24     prosecutor?

25          THE COURT:  Yes, sir.

1          MR. TRAGOS:  Okay.  Your Honor, the -- I know

2     that the Court is not bound by the sentencing

3     guidelines, and I know the Eleventh Circuit, as well

4     as the Supreme Court, has spoken to that.

5          We have a 78 -- maybe 79 --

6          THE DEFENDANT:  Seventy-nine.

7          MR. TRAGOS:  A 79-year-old man now before the

8     Court.  The Court is familiar with his health

9     issues.  They are detailed somewhat in the

10    presentence report.  The Court has seen his frailty

11    personally.

12         The defendant was a high school counselor;

13    never an inappropriate allegation, never a problem.

14    There were never any allegations about him doing

15    anything inappropriate with any of the children at

16    the school and up to his 78th year.

17         In that year, Your Honor, he was lonely, I

18    guess is the only way to put it, and he found an

19    outlet with America Online, and he started talking

20    to anybody and everybody.  And he talked

21    inappropriately to two individuals.

22         The interesting thing about this, and the

23    Court will remember, is that there was no other

24    inappropriate conversation found.  The government

25    had a list of all of the individuals that he had

1    spoken with, all of the e-mails, and nothing turned

2    up from their investigation.

3         If the Court will remember, there was an

4    argument during the second trial about an exhibit

5    that was introduced during the first trial.  And

6    that was an e-mail that, allegedly, where he told

7    somebody, yes, I had spoken to your son and he was

8    doing bad things, or something like that, to show

9    that he had talked to underage children.  That's the

10   only e-mail out of thousands that they found.

11        Well, when they investigated it, the reason

12   that the Court questioned them putting it in is

13   because they actually found out that there was no

14   son and it was just role-playing that was being

15   conducted between the two of them.

16        And so there were no children.  No children

17   e-mails, no children pictures, no children activity,

18   nothing.  Detective Romanosky didn't believe even

19   when he said that he was abusing children.

20        And so, Your Honor, we've got a -- I guess

21   a -- I know these are always very difficult for the

22   Court, these sentencings.  But we've got a situation

23   of a man who's led a good life, who's helped a lot

24   of people, who has a lot of support in the

25   community, who -- I mean, obviously, he should not

1      have done what he did in those conversations, but he

2      just was talking, just was lonely, and he said

3      inappropriate things.

4           But if you look at his history and you look at

5      the man's -- the way the man's conducted himself --

6      and, again, I can't emphasize too much that the

7      government found nothing in his records, in his AOL

8      records, in his e-mails, in his correspondence, in

9      his images that were on his computer that would

10     indicate that there was any interest in children.

11     And, in fact, when you talk to people, you'll see he

12     has no interest in children.

13          And I would ask the Court to consider

14     leniency, to consider the 3553 factors, and give him

15     leniency and sentence him well below the guideline

16     recommendations, because I think that is too harsh

17     for the facts in this action, too harsh for the

18     facts in this case; that, although you can take into

19     consideration the Court allowed as relevant conduct

20     the Spector -- the Port St. Lucie case, I think you

21     can take into consideration that nothing ever

22     happened there.

23          Detective Romanosky also asked him the

24     question during his interview, "Am I going to get a

25     bunch of calls from parents and other individuals

1    once this thing hits the press?"  And my client

2    said, "no."  And, in fact, it did hit the press and,

3    in fact, there were no calls.

4         So, Your Honor, I look at this and we know

5    it's not -- it doesn't qualify for the aberrant

6    behavior departure, but it is an isolated incident.

7    It is aberrant in the general sense of he does not

8    conduct himself this way.  There's no history of it.

9         I know the Court has done other cases like

10   this, and we've heard testimony.  It is an

11   extremely, out of the heartland situation where we

12   don't find any child pornography, where we don't

13   find any interest in children, where we don't find

14   any children, where we don't find any e-mails or

15   conversations, nothing like that.

16        And as an example of his loneliness, remember

17   the AOL expert, how many hours and hours and hours

18   was he online just talking to people, and yet we

19   find no children.  We found that he never talked to

20   children.  And even in this case -- these cases, he

21   didn't talk to children.

22        So I would ask the Court to take all that into

23   consideration when granting him leniency.

24        THE COURT:  Thank you, Mr. Tragos.

25   Ms. Kaiser?

1          MS. KAISER:  Your Honor, the United States

2     would request a guideline sentence in this case.

3     This case involves some of the most despicable facts

4     that I've encountered in ten years of prosecuting

5     these type of cases.  It's just when you think

6     things can't get worse, all of a sudden they do.

7          Most of the time individuals that travel who

8     want to have sex with children discuss at length

9     engaging in various sex acts with kids before they

10    travel.  And in this case, this defendant went a

11    step further.  Not only did he talk about wanting to

12    engage in various sex acts with the children, this

13    defendant discussed at length wanting to tie the

14    children up, strip them naked -- strip them naked,

15    tie them up to a chair, bound them, and then whip

16    them.  And he wanted -- he wanted to beat them first

17    before he engaged in sex with them.

18          If anything, that puts this defendant's case

19    outside the heartland where it's more egregious than

20    what we normally see.  This defendant not only

21    wanted to engage in sex with them, he wanted to beat

22    them first.

23          And he drives up from Ft. Myers.  And we know

24    that the Court is aware of all the implements of

25    torture that he had in his vehicle.  He had all

1    sorts of whips, he had riding crops, he had all the

2    implements of torture that he had discussed at

3    length using on 10 and 11-year-old little boys.

4         The defendant's conduct wasn't aberrant.  We

5    know for a fact that at least for the last three

6    years he's been engaged in this type of behavior,

7    because the same detective, Detective Corporal

8    Romanosky, spoke to the defendant back in 2005.  So

9    it's at least the three years that we know about.

10         Mr. Tragos mentioned that there was no other

11    chats that were found.  Well, I believe the

12    testimony at trial was that chats don't get saved on

13    people's computers.  The only reason we had the

14    chats in this case is because law enforcement

15    preserved them.  Chats aren't typically recorded by

16    computers.

17         This is a -- this case certainly doesn't call

18    out for the low end.  This defendant -- low end is

19    reserved for people that accept responsibility,

20    don't put the government to the burden of proof and

21    have trials.  They accept their responsibility and

22    admit their guilt.

23         This defendant has never admitted his guilt.

24    If anything, he took the stand and lied repeatedly

25    at the first trial.  He said -- I believe the

1    testimony was he had a riding crop in his car to

2    fend off muggers.  It was -- it was preposterous,

3    his testimony at the first trial was preposterous.

4    If anything, a sentence at the high end, given what

5    acts he wanted to commit, is appropriate.

6         In reviewing Detective Spector's transcript

7    from the first trial for the hearing today, I came

8    across a section on page 33 of that transcript where

9    the defendant says -- basically says, I'm not into

10   fantasy, I'm into real.  He's talking I'm in this

11   for real.  And as the Court's aware, he sent the

12   picture to Detective Spector and wanted to have sex

13   with Detective Spector's little 11-year-old girl.

14        So the video in this case, if the Court will

15   recall, is also fairly telling.  Before the

16   cameras -- before the defendant realizes the cameras

17   are rolling, he says, "I shouldn't have done it.  I

18   shouldn't have done it."

19        Then when he's being interviewed by Detective

20   Romanosky, he says, "Well, you know, I couldn't -- I

21   couldn't actually have had sex with the children

22   because I'm impotent."  And Corporal Romanosky

23   pinned him down and said, well, that's not -- we

24   didn't discuss necessarily just intercourse.  What

25   did we discuss?  And the defendant kind of hemmed

1    and hawed.

2        And finally Detective Romanosky said, "Well,

3    we discussed oral sex."  And the defendant's

4    reaction in that one instant in time is completely

5    telling.  His reaction wasn't like, "Oh, my God,

6    what are you talking about."  What this defendant

7    said was, "I thought they were going to do that to

8    me.  I thought the children were going to perform

9    oral sex on me," is what the defendant said.

10       This case, Your Honor, has got the worst facts

11   that I've dealt with and, you know, the video, the

12   proof, the whips, the chats, they're filthy, they're

13   disgusting, they show what this defendant's intent

14   was.

15       What's extremely disturbing is a 78-year-old,

16   who, by all appearances -- and I have no doubt that

17   he has a wide group of friends, he's probably a very

18   affable guy.  But the reality is what he was

19   involved in is as dark as they come.  He came up

20   here to beat and have sex with two little boys, and

21   he should not get a sentence at the low end of the

22   guidelines.  Thank you.

23       THE COURT:  Brief response, Mr. Tragos.  Thank

24   you, Ms. Kaiser.

25       MR. TRAGOS:  Your Honor, first on this three

1    years that he's been involved in this, the

2    interesting thing is we only know about Romanosky.

3    But if you remember, there was a list that was

4    introduced into evidence of all the screen names of

5    people he talked to, and which included Romanosky

6    and Spector on that list.  And nobody on that list,

7    they didn't find a single person on that list that

8    was anything inappropriate.  They knew everybody

9    that he was talking to.

10        Secondly, the whipping and the horrible facts,

11   and it's not aberrant, well, if you look at Spector,

12   there was no whipping, there was no violence.  He

13   talked the way Spector wanted him to talk, just like

14   he talked that way with Romanosky.  He thought this

15   was the way these people wanted him to talk.

16        Your Honor, he did -- he's here, he's

17   convicted.  But I would ask the Court to take his 78

18   years into consideration, and the fact that there

19   was no other information whatsoever anywhere

20   surrounding this that indicated that there was any

21   other victims or any other activity by him like

22   this.

23        THE COURT:  All right.  Thank you, counsel.

24   Mr. Friedlander, I do not have a prepared statement

25   for you.  It's my practice to simply talk to you as

1          I impose sentence.

2              The law requires that I consider under Section

3      3553(a) of Title 18 your background and

4      characteristics, and I have.  I have read 42

5      letters, some of which were single spaced, multi

6      page, heartfelt, sincere letters, much more detailed

7      than I could have written.

8              And they do attest to your sizeable network of

9      friends and supporters, and many of them are here

10     today.  A few of them sat through the trial.  They

11     have each written a letter, and they're heartfelt

12     letters.  No question about it.

13             And, understandably, none of them accept this.

14     None of them can accept that you did what you did

15     and you engaged in this conduct because it's so

16     inconsistent with what they know of you as a friend,

17     as a mentor, as a social worker, if you will, a

18     therapist.

19             But I have to tell them that that's not

20     unusual to see in these courtrooms in these

21     particular offenses.  Most of the individuals I see

22     who commit offenses of this nature don't look like

23     animals and beasts.  They look like everyday human

24     beings.  But there is a dark side to their lives.

25             And the internet has provided an opportunity,

1    unfortunately, for people like you to pursue that

2    dark side.  But it's not AOL's fault.  It's the

3    person who does the act.  And that's why you're

4    here.

5         So while these supporters and family members

6    will never accept this side of you, the fact remains

7    that a jury listened to the evidence, found you

8    guilty beyond a reasonable doubt.  And I don't think

9    there's any other verdict they could have reached.

10   You did what you did.

11        This conduct was not mere discussions or chat

12   or fantasy.  That's nonsense.  You got in your car

13   with whips and razor straps, drove directly to

14   St. Petersburg, anticipating meeting with a 10 and

15   11-year-old boy to do despicable things and have

16   them do things to you.

17        Ms. Kaiser has touched upon some of the

18   evidence.  It goes beyond that.  I can remember some

19   of the jurors averting their eyes at the mere words.

20   But they did their duty.  They were courageous, and

21   I can't say enough about those jurors.

22        As judges and lawyers, we become, by

23   necessity, somewhat hardened, if you will, to this

24   type of conduct and this type of evidence.  It's

25   just our way of dealing with it.  But I can assure

1    you it affects me as much as it affects those jurors

2    as much as it affects Ms. Kaiser and, I'm sure, your

3    lawyers.  You were represented very ably by two very

4    good lawyers, competent lawyers.  There's nothing

5    they could have done to change the facts.

6         I agree with Ms. Kaiser.  You lied in the

7    first trial.  You could have been enhanced under the

8    guidelines for obstruction of justice.  I made

9    notations in my notes of specific testimony that I'm

10   absolutely convinced was self-serving and

11   untruthful.  But probation has not recommended that.

12   The government has not recommended that.  I'm not

13   going to do it sua sponte.

14        Any sentence I impose in this case is likely

15   to be a death sentence, as a practical matter, given

16   your age and health.  And there's no need other than

17   to point out, as I should, that I'm considering

18   everything about you.

19        The letter and the testimony of Dr. Berlin was

20   interesting in the first trial.  And the letter I've

21   read again today is interesting.  He is imminently

22   qualified.  I was impressed with his -- by his

23   credentials and his background.

24        He has opinions and he's entitled to those

25   opinions.  But I have to say I can't accept them.

1       This wasn't just fantasy.  You got in your car and

2       you drove two and a half hours, or two hours to get

3       up here.  That's not fantasy.  He engaged in a lot

4       of fact finding in expressing opinions, and that's

5       why, for the most part, much of his testimony was

6       not going to be admissible.  In any event, it wasn't

7       offered in the second trial, so that's somewhat moot

8       at this point in time.

9            But I've read his letter.  I listened to his

10      testimony very carefully.  And, of course, we had an

11      extensive *Daubert* hearing.  And I just have to

12      disagree with his opinions.  The facts speak for

13      themselves.

14           There is obviously a hope and an intent on the

15      part of Mr. Tragos to minimize your conduct,

16      pointing out that it's somewhat isolated.  And

17      although not qualifying for departure under the

18      guidelines for aberrant behavior, it is, if you just

19      compare it to the rest of your life, facially

20      aberrant.

21           But I don't know everything about you, neither

22      does Mr. Tragos, neither do the detectives or

23      Ms. Kaiser or your friends.  For one to engage in

24      this type of conduct, to delve into this, as

25      Ms. Kaiser says, dark side, nothing would surprise

1    me.

2         But you are only here for the offenses for

3    which you've been found guilty and the conduct which

4    I've determined to be relevant.  I'm not going to

5    impose a sentence based on what I perceive to be

6    untruthfulness in the first trial.  I'm simply

7    pointing out that that would have been a serious

8    enhancement.

9         There's a statement made today by Mr. Tragos

10   that you had no interest in children.  I have to

11   disagree.  Your conduct belies that statement.  This

12   wasn't a matter of mere words, mere fantasy chat.

13   You did engage in similar conversations with

14   Detective Spector.

15        The three-year span that Ms. Kaiser points to

16   is borne out by the evidence.  You're 79.  You have

17   serious health issues, understandably so for a man

18   who's lived this long.  And I have no desire or

19   purpose to jeopardize your health.  I'll impose a

20   sentence which I believe to be just.  You will be

21   taken care of by the Bureau of Prisons.  You will

22   have all your medical care and needs addressed.

23        In addition to your background and

24   characteristics, of course, the offense behavior is

25   a consideration under Section 3553.  The seriousness

1        of this offense cannot be understated, cannot be

2        minimized.  It was shocking, it was despicable.

3             To learn and understand that there are people

4        in this world that would sexually abuse children,

5        beat them, bind them is beyond comprehension.  And

6        I'm sure -- forgive me, I'm used to saying Father

7        Kaufman, but it's certainly not father -- Reverend

8        Kaufman, I share your faith.  But, certainly, you

9        would have to agree that this is conduct that is

10       incomprehensible, because those who are here to

11       protect children, who decide to offer them up for

12       other's pleasures, I cannot even comprehend that.

13            Dr. Singer, I appreciate your heartfelt

14       remarks.  I'm sure this is a disappointment for you.

15       You are a learned man.  You are a medical

16       professional.  You know, as I say, that there are

17       things we learn about in life that shock us for

18       which there's no medical explanation.

19            And, Mr. Hughes, I appreciate how nervous you

20       were today and how heartfelt your remarks are.  And

21       I can only say, again, that sometimes those who we

22       care about most can disappoint us.

23            I hope all of you will continue to support

24       Mr. Friedlander as he serves his sentence, that

25       you'll correspond with him, give him strength.  He

1    will need it.  If you are truly concerned about his

2    well-being, then be there for him as he endures this

3    sentence.

4        I have used the title "doctor" from time to

5    time and at other times I have not, on purpose.  In

6    my judgment, you're not entitled to use that title.

7    You've abused whatever rights and privileges you

8    once enjoyed.  As a family counselor, to engage in

9    this type of conduct over a course of years is just

10   so inconsistent with serving your patients and

11   preserving their confidences.

12       You pose a risk.  Another factor in the

13   guidelines -- excuse me, under the statute, Section

14   3553(a) is protecting the public.  Your conduct

15   convinces me that, had you not been arrested, you

16   posed a threat to other children, real children.

17       The sentence I impose should reflect not only

18   the seriousness of the offense, but promote respect

19   for the law, deter others.  Unfortunately, people

20   who engage in this activity are not going to be

21   deterred by sentences imposed, in my opinion.

22       Whether you're a pedophile or not is not the

23   issue.  But those who are, those who would derive

24   pleasure from images and videos of children being

25   sexually and physically abused are not going to be

1    deterred by this sentence.  I hope that they are.

2         Ultimately, the sentence should be just, it

3    should be sufficient but not greater than necessary

4    to achieve the statutory purposes of sentencing.

5    This defendant faces an advisory guideline range of

6    27 years, minimum, if I do my math correctly; or if

7    I have erred, something less than that.

8         He faces a minimum mandatory sentence required

9    by law of ten years.  So, Mr. Friedlander, my

10   decision is whether to impose a sentence at the

11   minimum, which is ten years, or a sentence that

12   truly reflects the conduct that you engaged in.  I

13   am mindful that any sentence I impose is likely to

14   result in you dying in prison.  Every lawyer in this

15   room is mindful of that.

16   I am going to impose a sentence which I

17   believe is called for, after considering Section

18   3553 (a), including the advisory guideline range, a

19   sentence which I believe to be reasonable, a

20   sentence which I believe to be sufficient but not

21   greater than necessary to achieve the statutory

22   purposes.

23        A sentence at the minimum would not adequately

24   reflect the seriousness of this offense.  It would

25   undermine respect for the law.  It would certainly

1      not deter others.

2           Accordingly, having considered all of these

3      matters, it is the judgment and sentence of the

4      Court, pursuant to the Sentencing Reform Act of

5      1984, that the defendant be committed to the custody

6      of the Bureau of Prisons for a term of 360 months.

7      Upon release, he will serve a period of supervised

8      release for the rest of his life, subject to the

9      standard terms and conditions adopted by this court.

10          I must impose conditions of supervised release

11     as I deem appropriate, notwithstanding that it is

12     unlikely that this defendant will serve a period of

13     supervised release.  Accordingly, he will

14     participate in a mental health program specializing

15     in sexual offender treatment, and submit to

16     polygraph testing for treatment and monitoring

17     purposes, and follow his probation officer's

18     instructions regarding implementation of this court

19     directive.

20          He will contribute to the cost of those

21     services in an amount determined to be reasonable by

22     probation.  He is to register with the State Sexual

23     Offender Registration Agency in any state in which

24     he resides, visits, is employed or carries on a

25     vocation, as directed by his probation officer.

1          He is to provide state officials all

2     information required under the Florida Sexual

3     Predator and Sexual Offender Notification and

4     Registration Statutes found in Chapter 943 of the

5     Florida statutes, and the Sex Offender Registration

6     and Notification Act, otherwise referred to as

7     Title I of the Adam Walsh Child Protection and

8     Safety Act of 2006.  And probation may direct you to

9     report to those agencies personally for additional

10    processing, including fingerprinting, photographs

11    and DNA collection.

12         You are to have no contact with any minors

13    under the age of 18, that is, without the written

14    approval of your probation officer.  And you are to

15    refrain from entering into any area where children

16    frequently congregate, including schools, daycare

17    centers, theme parks and playgrounds.

18         You are prohibited from possessing,

19    subscribing to or viewing any video, magazines or

20    literature depicting children in a state of undress

21    or in sexually explicit positions.  You shall not

22    possess or use a computer with access to any online

23    service at any location, without the written

24    approval of your probation officer.

25         This includes access through any internet

1    service provider, bulletin board system, chat room,

2    etcetera, any public or private computer network

3    system.  To the extent you've been granted

4    permission to use a computer, you are to permit

5    routine inspection of that computer, its system hard

6    drives and other media storage materials to confirm

7    compliance with this condition.  That inspection

8    shall be no more intrusive than as is necessary to

9    ensure compliance with this condition.

10    You are to inform any third party who may be

11    impacted by this condition of this computer-related

12    restriction, and the inspection and search provision

13    of this condition.

14    You are to submit to a search of your person,

15    residence, place of business, and any storage units

16    under your control, including vehicles, computer --

17    I should say computers, conducted by the United

18    States Probation Office at such reasonable time and

19    in such reasonable manner as is requested upon

20    reasonable suspicion of contraband or evidence of

21    violation of any condition of release.

22    Failure to submit to a search may be grounds

23    for revocation of your supervised release.  And you

24    are to inform any third parties, including

25    co-residents, of those premises that they may be

1   subject to a search under this condition, meaning

2   that premises.

3        You are to provide probation with access to

4   any requested financial information.  This is a

5   qualifying felony.  You are to cooperate in the

6   collection of DNA as directed by your probation

7   officer.

8        I will waive the mandatory drug testing

9   requirements of the Violent Crime Control Act.  But

10  you are subject to random drug testing not to exceed

11  104 tests per year.  You are to pay to the United

12  States a special assessment of $100, which is due

13  immediately.

14       You have the ability to pay a fine.

15  Accordingly, I am imposing a fine in the amount of

16  $25,000, payable immediately.

17       I have considered the manner of recommended

18  designation, Mr. Tragos.  Do you have any

19  suggestions?

20       MR. TRAGOS:  Yes, Your Honor, Butner, North

21  Carolina.

22       THE COURT:  That is exactly the facility I was

23  contemplating.  Any objection, Ms. Kaiser?

24       MS. KAISER:  No, Your Honor.

25       THE COURT:  It's my understanding that Butner

1  has a sexual offender screening and evaluation unit.

2      MR. TRAGOS:  They also have a medium low and

3  full medical unit.

4      THE COURT:  And that would be appropriate at

5  a minimum for classification purposes and

6  evaluation.  And I will recommend Butner to the

7  United States Bureau of Prisons.

8      What else, Mr. Tragos?

9      MR. TRAGOS:  I don't believe there's anything

10  else, Your Honor.

11      THE COURT:  Having pronounced sentence, is

12  there any objection to the sentence imposed or the

13  manner in which it has been pronounced?  Ms. Kaiser?

14      MS. KAISER:  No, Your Honor.

15      THE COURT:  On behalf of the defendant,

16  Mr. Tragos?

17      MR. TRAGOS:  None other than have already been

18  stated, Your Honor.

19      THE COURT:  All right.  So noted and same

20  rulings.  I will remand the defendant to the custody

21  of the United States Marshal to await his

22  designation.

23      Sir, you do have ten days within which to

24  appeal the judgment and sentence of the court.  If

25  you do not appeal within that ten-day period, you

1          will waive or give up your right to appeal.

2                  You are advised that you are entitled to be

3          represented by counsel.  One will be appointed to

4          represent you if you're not able to pay a lawyer,

5          and the clerk will accept your notice of appeal

6          without payment of the filing fee.

7                  Mr. Tragos or Mr. Sartes will discuss with you

8          the advantages and disadvantages of an appeal.

9          Listen carefully to their advice, but it is your

10         decision.  If you choose to appeal, they are

11         obligated to file a notice of appeal on your behalf

12         and perfect it.

13                 If you tell them not to appeal, they will

14         document their file to ensure there's no

15         misunderstanding about your decision in that regard.

16         Do you have any questions about your right to

17         appeal?

18                 THE DEFENDANT:  No, sir.

19                 THE COURT:  All right.  Anything else,

20         counsel?

21                 MS. KAISER:  No, Your Honor.

22                 MR. TRAGOS:  No, Your Honor.

23                 THE COURT:  Thank you.  We will be in recess.

24                 COURTROOM SECURITY OFFICER:  All rise.

25                 (Proceedings concluded at 12:24 PM.)

```
 1

 2                        C E R T I F I C A T E

 3

 4    STATE OF FLORIDA              )

 5    COUNTY OF HILLSBOROUGH        )

 6        I, Linda Starr, RPR, Official Court Reporter for

 7    the United States District Court, Middle District,

 8    Tampa Division,

 9        DO HEREBY CERTIFY, that I was authorized to and

10    did, through use of Computer Aided Transcription,

11    report in machine shorthand the proceedings and

12    evidence in the above-styled cause, as stated in the

13    caption hereto, and that the foregoing pages,

14    numbered 1 through 91, inclusive, constitute a true

15    and correct transcription of my machine shorthand

16    report of said proceedings and evidence.

17        IN WITNESS WHEREOF, I have hereunto set my hand in

18    the City of Tampa, County of Hillsborough, State of

19    Florida, this 13th day of September 2009.

20

21

22              /s/ Linda Starr
              Linda Starr, RPR, Official Court Reporter
23

24

25
```

# Certificate of Service

# Certificate of Service

I certify that a copy of this appendix and the notice of electronic filing

was sent by CM/ECF on January 29, 2020, to:

JAMES B. CRAVEN, III, ESQ.
JOSEPH E. PARRISH, ESQ.

*Counsel for Charles Jackson Friedlander*

*s/ Todd B. Grandy*
TODD B. GRANDY
Assistant United States Attorney
